SEAN SULLIVAN (CA State Bar No. 229104)
SPENCER PERSSON (CA State Bar No. 235054)
MONICA GIBBONS (CA State Bar No. 348888)
DAVIS WRIGHT TREMAINE LLP
50 California Street, 23rd Floor
San Francisco, California 94111-4701
Telephone: (415) 276-6500
Facsimile: (415) 276-6599
Email: seansullivan@dwt.com
spencerpersson@dwt.com
monicagibbons@dwt.com

Attorneys for Defendant MASHABLE, INC.

IN THE UNITED STATES DISTRICT COURT

THE NORTHERN DISTRICT OF CALIFORNIA

DAWN FREGOSA, individually and on behalf of all others similarly situated,

Plaintiff,

v.

MASHABLE, INC.,

Defendant.

Case No. 3:25-CV-01094-CRB

[Removed From the Alameda County Superior Court, Case No. 24CV103566]

**DEFENDANT MASHABLE, INC.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

DATE: March 21, 2025
TIME: 10:00 a.m.
CTRM: 6, 17th Floor

Complaint Filed: December 17, 2024
Action Removed: February 3, 2025

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..... 1
II. STATEMENT OF ISSUES TO BE DECIDED – LR 7-4(3) ..... 2
III. PROCEDURAL AND FACTUAL BACKGROUND ..... 2
A. Mashable is a Delaware Corporation Based in New York ..... 2
B. Plaintiff Alleges Mashable Violates the Law By Capturing Her IP Address. ..... 2
IV. LEGAL STANDARD ..... 3
V. ARGUMENT ..... 4
A. The Court Lacks Personal Jurisdiction Over Mashable. ..... 4
1. The Court Lacks General Jurisdiction. ..... 4
2. The Court Lacks Specific Jurisdiction. ..... 4
B. Penal Code § 638.51 Does Not Provide a Private Right of Action. ..... 6
1. The Legislature Did Not Intend To Authorize Private Lawsuits. ..... 6
2. *Greenley v. Kochava* Does Not Save Plaintiff's Claim. ..... 9
C. Plaintiff Fails to Allege a Violation of Section 638.51. ..... 10
1. The Pen Register Law Cannot Apply to Mashable ..... 10
2. Section 638.51 Does Not Prohibit Collection of an IP Address. ..... 11
3. The Software at Issue Does Not Constitute a Pen Register. ..... 13
4. Both Mashable and Plaintiff Consented to the Collection. ..... 14
5. Mashable's Conduct is Excepted Under the Pen Register Law. ..... 15
VI. CONCLUSION ..... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Animal League Defense Fund v. Mendes*,
160 Cal. App. 4th 136 (2008) .......... 7

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 3

*Ballard v. Savage*,
65 F.3d 1495 (9th Cir. 1995) .......... 5

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 3

*Bell v. Farmers Ins. Exchange*,
87 Cal. App. 4th 805 (2001) .......... 9

*Cal. Sch. Bds. Ass'n v. State Bd. of Educ.*,
240 Cal. App. 4th 838 (2015) .......... 7

*Coburn v. Sievert*,
133 Cal. App. 4th 1483 (2005) .......... 7

*Columbia Pictures Indus. v. Bunnell*,
2007 WL 2080419 (C.D. Cal. May 29, 2007) .......... 2, 14, 15

*Crawford v. Lawson*,
2022 WL 16700675 (S.D. Cal. 2022) .......... 5

*Daimler AG v. Bauman*,
571 U.S. 117 (2014) .......... 3, 4

*Dish Network, LLC v. Jadoo TV, Inc.*,
2020 WL 6536659 (C.D. Cal. Mar. 16, 2020) .......... 6

*Glob. Naps, Inc. v. Bell Atl.-New Jersey, Inc.*,
287 F. Supp. 2d 532 (D.N.J. 2003) .......... 8

*Graham v. Noom*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) .......... 8, 13

*Greenley v. Kochava*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023) .......... 9, 10, 11, 13

*Guido v. Mount Lemmon Fire Dist.*,
859 F.3d 1168 (9th Cir. 2017) .......... 12

*Heeger v. Facebook, Inc.*,
509 F. Supp. 3d 1182 (N.D. Cal. 2020) ........................................................ 11, 14

*Herbal Brands, Inc. v. Photoplaza, Inc.*,
72 F.4th 1085 (9th Cir. 2023)........................................................................ 1, 5

*Hughes v. Vivint, Inc.*,
2024 WL 5179916, *4 (C.D. Cal. July 12, 2024), *adopted* at
2024 WL 5179917 (C.D. Cal. Aug. 5, 2024) ........................................................ 11

*Ingram v. Money Map Press, LLC*,
2024 WL 3540993 (N.D. Cal. Jul. 24, 2024) ........................................................ 4

*Insight Invs., LLC v. Bos. Mkt. Corp.*,
No. 23-CV-1077-GBW, 2024 WL 1637320 (D. Del. Apr. 16, 2024) ............................ 6

*Karriem v. County of Los Angeles*,
2021 WL 1231432 (C.D. Cal. Feb. 1, 2021)........................................................ 9, 10

*Licea v. Hickory Farms LLC*,
2024 WL 1698147 (Cal. Super. Ct. 2024) ........................................................ 14

*LNS Enterprises LLC v. Cont'l Motors, Inc.*,
22 F.4th 852 (9th Cir. 2022)........................................................................ 4, 5

*Martinez v. Aero Caribbean*,
764 F.3d 1062 (9th Cir. 2014)........................................................................ 4

*Matus v. Premium Nutraceuticals, LLC*,
715 F. App'x 662 (9th Cir. 2018)........................................................................ 5

*Mayron v. Google LLC*,
54 Cal. App. 5th 566 (2020)........................................................................ 6, 9

*Mirmalek v. Los Angeles Times Commc'ns LLC*,
2024 WL 5102709 (N.D. Cal. Dec. 12, 2024) ........................................................ *passim*

*Rodriguez v. Autotrader.com, Inc.*,
2025 WL 65409 (C.D. Cal. Jan. 8, 2025)........................................................ 14

*Schwarzenegger v. Fred Martin Motor Co.*,
374 F.3d 797 (9th Cir. 2004)........................................................................ 3, 4, 5, 6

*Shah v. Fandom, Inc.*,
2024 WL 4539577 (N.D. Cal. Oct 21, 2024)........................................................ 10, 11, 14

*Smith v. NBC Universal*,
524 F. Supp. 2d 315, 323 (S.D.N.Y. 2007)........................................................ 6

*Timphony v. City of Pasadena*,
669 Fed. App'x. 484 (9th Cir. 2016)........................................................................ 6

*Tr. of Summers Fam. Tr. TA Neak Prods. Buff WA Pty, Ltd. v. Nat'l Distrib. Warehouse, Inc.*,
2021 WL 2354507 (C.D. Cal. 2021) ........ 5

*United States v. Forrester*,
512 F.3d 500 (9th Cir. 2008) ........ 14, 15

*Vicko Ins. Services v. Ohio Indem. Co.*,
70 Cal. App. 4th 55 (1999) ........ 9

*Warden* v. *Kahn*,
99 Cal. App. 3d 805 (1979) ........ 9

*X Corp. v. Ctr. for Countering Digital Hate Ltd.*,
724 F. Supp. 3d 921 (N.D. Cal. 2024) ........ 5

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) ........ 8

**Statutes**

18 U.S.C.
§ 3121 ........ 9
§§ 3121-27 ........ 10
§ 3121(b)(1) ........ 15

California Civil Code
§ 1798.100-1798.196 ........ 12
§ 1798.140(v)(1)(A) ........ 12, 15
§ 1798.175 ........ 12

California Penal Code, Pen Register Law
§ 638.50 *et seq*. ........ 1, 7, 8, 13
§ 638.51 ........ *passim*
§ 638.51(b)(1) ........ 15
§ 638.51(b)(5) ........ 14
§ 638.52(a) ........ 1, 7, 10, 11
§§ 638.52(b), (d), (e) ........ 11
§ 638.53 ........ 1, 7, 11
§ 638.55 ........ 1, 9

California Penal Code, Invasion of Privacy Act
§ 631 ........ 14
§ 635 ........ 8
§ 637.2 ........ 1, 3, 7, 8
§ 637.2(a)(1) ........ 8

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ........................................................................ 1, 3

Federal Rules of Civil Procedure 12(b)(2) ................................................................... 2, 3, 4

**Other Authorities**

Thomas A. Papageorge, *California Antitrust and Unfair Competition Law Update: Substantive Law*, 30 Competition: J. Anti., UCL & Privacy Sec. Cal. L. Assoc. 1 (2020), at *14 ........................................................................................................... 12

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on March 21, 2025, at 10:00 a.m. or as soon thereafter as the matter may be heard, Defendant Mashable, Inc. ("Mashable") will bring on for hearing in Courtroom 6 (17th Floor) of the above-captioned court located at 450 Golden Gate Avenue, San Francisco, California 94102, a Motion seeking an Order to Dismiss Plaintiff's Complaint.

**STATEMENT OF RELIEF SOUGHT - L.R. 7-2(B)(3)**

Mashable moves for dismissal pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), on the grounds that:

(1) This Court lacks personal jurisdiction over Mashable; and

(2) Plaintiff fails to satisfy the basic pleading standards required to state a claim for relief.

This Motion is based upon this Notice of Motion, the supporting Memorandum of Points and Authorities, the declaration of Julianna Orgel-Eaton, the Request of Judicial Notice and attached exhibit, the pleadings and other papers on file herein, and upon such oral argument as the Court may entertain at the hearing on this Motion.

**SUMMARY OF ARGUMENT**

Plaintiff Dawn Fregosa's complaint must be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6) for the following reasons:

(1) Mashable is a Delaware corporation with its principal place of business in New York and has done nothing to avail itself of this forum, such that this matter must be dismissed pursuant to Rule 12(b)(2) for lack of personal jurisdiction. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800–01 (9th Cir. 2004); *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014); *Ingram v. Money Map Press, LLC*, 2024 WL 3540993, at *3 (N.D. Cal. Jul. 24, 2024). The mere operation of a website cannot constitute purposeful direction and subject a company to specific jurisdiction. *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1091 (9th Cir. 2023).

(2) Penal Code § 638.50, *et seq*. (the "pen register law") does not authorize a private right of action. The legislative history underlying section 638.51 as well as the nearly identical federal statute show that there is no private right of action. *Karriem v. County of Los Angeles*, 2021 WL 1231432, *6 (C.D. Cal. Feb. 1, 2021)

(3) Section 638.51 cannot apply to Mashable's acquisition of an IP address because Mashable could never obtain a court order that would be necessary for its website to exist. Rather, the pen register law only allows a "peace officer" to obtain a court order and only as part of a criminal investigation. Cal. Penal Code §§ 638.52, 638.53.

(4) Section 638.51 does not prohibit the collection of IP addresses and the CCPA expressly authorizes that collection. Cal. Civ. Code § 1798.140(v)(1)(A). This is not a preemption issue and the Court's interpretation of the pen register law and the CCPA cannot be harmonized as suggested in *Mirmalek v. Los Angeles Times Commc'ns LLC*, 2024 WL 5102709 (N.D. Cal. Dec. 12, 2024). There is no plausible way to harmonize the interpretation of the pen register law in *Mirmalek* with the CCPA because a website could never apply for or obtain a court order to collect IP addresses under the pen register law—something the CCPA expressly permits. Further, there is no legally protected interest in an IP address. *Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1190 (N.D. Cal. 2020).

(5) The pen register law only prohibits an interception or capture of information by a non-party to the communication. Plaintiff intentionally visited Mashable's website which necessitates an exchange of IP addresses in order for her to reach her intended destination. *Columbia Pictures Indus. v. Bunnell*, 2007 WL 2080419, *2 (C.D. Cal. May 29, 2007); *United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2008).

(6) Both Mashable and Plaintiff consented to the exchange of IP addresses. Plaintiff impliedly consented to the collection of her IP address when she visited Mashable's

website because "IP addresses are necessary for basic website operability," *Rodriguez v. Autotrader.com, Inc.*, 2025 WL 65409, at *6 (C.D. Cal. Jan. 8, 2025).

(7) Mashable's collection of Plaintiff's IP address is excepted under Cal. Penal Code § 638.51(b)(1). To find otherwise would be to hold that no private website operator could operate in California because they could never obtain the requisite court order to do so under the pen register law.

DATED: February 10, 2025

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP

By: Spencer Persson

Spencer S. Persson

Attorneys for Defendant Mashable, Inc.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This case, brought by Plaintiff Dawn Fregosa ("Plaintiff"), must be dismissed because this Court lacks personal jurisdiction over Defendant Mashable, Inc. Mashable is a Delaware corporation with its principal place of business in New York and has done nothing to avail itself of this forum. (Orgel-Eaton Decl. ¶ 2-5; Compl. ¶ 9). Controlling authority shows that the mere operation of a website cannot constitute purposeful direction and subject a company to specific jurisdiction. *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1091 (9th Cir. 2023). To find otherwise would subject a website "to specific jurisdiction in every forum in which the website was visible. . . [t]hat result would be too broad to comport with due process." *Id.*

Plaintiff's claim must also be dismissed under Federal Rule of Civil Procedure 12(b)(6). While this Court denied a motion to dismiss involving the same counsel in *Mirmalek v. Los Angeles Times Commc'ns LLC*, 2024 WL 5102709 (N.D. Cal. Dec. 12, 2024), there, the defendant failed to argue that California Penal Code sections 638.50–55 (the "pen register law") does not provide a private right of action The limited penal code sections relating to California's pen register law were enacted to close a gap between federal and state pen register law and to "authorize state and local law enforcement offices to use pen register and trap and trace devices, including during emergency situations," so California law enforcement agencies would not run afoul of federal law. C.A. B. An., A.B. 929 Assem., 4/21/2015. Critically, the pen register law includes its own criminal and civil enforcement mechanisms that are fundamentally at odds with California's Invasion of Privacy Act ("CIPA") § 637.2's private right of action—the section under which Plaintiff seeks recovery. *See* Cal. Penal Code § 638.55.

The defendant in *Mirmalek* also failed to inform this Court that the pen register law effectively cannot apply to a private entity (such as Mashable) because no private entity could obtain the requisite court order to operate under the statute. Under both Sections 638.52(a) and 638.53 only a "peace officer" can obtain a court order to install a pen register or trap and trace device. Further, a peace officer can only obtain a court order pursuant to section 638.52 as part of a criminal investigation, must identify the person targeted and the information sought, and the

order may only remain in place "for a period not to exceed 60 days."

Plaintiff may argue that it is irrelevant that a private entity could not obtain a court order to capture her IP address. This Court must reject this argument for two reasons. First, capture of an IP address by a website operator is required for the internet to function:

> In general, when a user clicks on a link to a page or a file on a website, the website's web server program receives from the user a request for the page or file. The request includes the IP address of the user's computer, . . . among other things.

*Columbia Pictures Indus. v. Bunnell*, 2007 WL 2080419, *2 (C.D. Cal. May 29, 2007). Second, the CCPA expressly permits websites like Mashable to collect IP addresses. This Court should therefore not strain to apply a law that is silent regarding IP address capture when the more recently enacted CCPA expressly outlines the parameters for businesses to capture IP addresses.

Ultimately, if the interpretation of the pen register law in *Mirmalek* were applied broadly it would serve to criminalize the operation of virtually every website. Plaintiff's theory is untenable. The Complaint should be dismissed with prejudice.

## II. STATEMENT OF ISSUES TO BE DECIDED – LR 7-4(3)

Whether this Court should dismiss Plaintiff's Complaint against Mashable with prejudice: (i) pursuant to Rule 12(b)(2), as this Court lacks jurisdiction over Mashable, and/or (ii) under 12(b)(6), for failure to state a claim upon which relief can be granted.

## III. PROCEDURAL AND FACTUAL BACKGROUND

### A. Mashable is a Delaware Corporation Based in New York

Mashable is a Delaware corporation with its principal place of business in New York. (Orgel-Eaton Decl. ¶ 2; Compl. ¶ 7). Mashable has never been incorporated or had its principal place of business in California. (Orgel-Eaton Decl. ¶ 3). Mashable does not have any offices in California. (*Id.*). Mashable is an online multi-platform media and entertainment content provider that operates Mashable.com, a news website. (*Id.* ¶ 4).

### B. Plaintiff Alleges Mashable Violates the Law By Capturing Her IP Address.

California Penal Code section 638.51 makes it a crime for "a person" to install a "pen register" or "trap and trace software" without first obtaining a court order, and the only "person" that can apply for a court order is a "peace officer" as part of a criminal investigation. Cal. Penal

Code, § 638.51–53. Plaintiff alleges that she regularly visited Mashable's website between 2017 and December 2024 on her desktop browser. (Compl. ¶ 102). She alleges that, when visiting the website, Mashable installs "Trackers" on her device to obtain her IP address. (*Id.*, ¶¶ 22, 44, 48, 57, 66, 103). Plaintiff urges that Mashable's capture of her IP address and use of third-party service providers absent a court order somehow violates the pen register law, and that she is entitled to statutory damages under Section 637.2 of the CIPA. (Compl. ¶¶ 103-107, 119–128).

### C. Procedural History

Plaintiff filed her Complaint on December 17, 2024 in the Superior Court of the State of California for the County of Alameda alleging that Mashable violated California Penal Code § 638.51. (*See* Compl.). On February 3, 2025, Mashable timely removed this case to the United States District Court for Northern District of California. (Dkt. No. 1).

## IV. LEGAL STANDARD

Mashable moves to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6). Under Rule 12(b)(2), a plaintiff must demonstrate that the defendant has sufficient "minimum contacts" with the forum state such that the exercise of personal jurisdiction "does not offend traditional notions of fair play and substantial justice." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800–01 (9th Cir. 2004) (quotation omitted). A plaintiff may establish personal jurisdiction by showing either "general or all-purpose jurisdiction" or "specific or conduct-linked" jurisdiction. *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014).

Under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. It requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" of the misconduct alleged. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. (quotation omitted).

## V. ARGUMENT

### A. The Court Lacks Personal Jurisdiction Over Mashable.

Plaintiff cannot establish that this Court has personal jurisdiction over Mashable under Rule 12(b)(2). *See Schwarzenegger*, 374 F.3d at 800 ("[T]he plaintiff bears the burden of demonstrating [personal] jurisdiction is appropriate."). Because Mashable is not—and has never been—a citizen of California, (Orgel-Eaton Decl. ¶ 3), and Mashable does not have the requisite "minimum contacts with [California] that are relevant to the lawsuit," *LNS Enterprises LLC v. Cont'l Motors, Inc.*, 22 F.4th 852, 859 (9th Cir. 2022), Plaintiff cannot show that this Court has either general or specific jurisdiction over Mashable.

#### 1. The Court Lacks General Jurisdiction.

For corporations, "the place of incorporation and principal place of business are 'paradig[m] . . . bases for general jurisdiction.'" *Daimler*, 571 U.S. at 137 (citation omitted). "Only in an 'exceptional case' will general jurisdiction be available anywhere else." *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1070 (9th Cir. 2014) (quoting *Daimler*, 571 U.S. at 139 n.19). These circumstances occur only where a defendant's activities in the forum are so "substantial" or "continuous and systematic" that the forum is "fairly regarded as home" for the defendant. *Ingram v. Money Map Press, LLC*, 2024 WL 3540993, at *3 (N.D. Cal. Jul. 24, 2024).

Mashable is a Delaware corporation with its principal place of business in New York. (Orgel-Eaton Decl. ¶ 2; Compl. ¶ 7). Plaintiff makes the conclusory allegation that Mashable "has significant, continuous, and pervasive contacts with the State of California," (Compl. ¶ 9), but she does not plead any facts to support the allegation. Because Plaintiff provides no evidence that Mashable's activities in California are substantial or continuous and systematic such that it could be regarded as at home in California, the Court should not exercise general personal jurisdiction over Mashable. *See, e.g.*, *Ingram*, 2024 WL 3540993 at *3 (concluding general personal jurisdiction could not be exercised in California over Maryland defendant).

#### 2. The Court Lacks Specific Jurisdiction.

Specific jurisdiction exists only where the plaintiff can establish two elements: (1) that the defendant "purposeful[ly] direct[ed] [its] activities or consummate[d] some transaction with

the forum or resident thereof" and (2) that the claim before the court "arises out of or relates to the defendant's forum-related activities." *Schwarzenegger*, 374 F.3d at 802. If a plaintiff successfully establishes both, the court will consider a third element: whether "the exercise of jurisdiction comport[s] with fair play and substantial justice, *i.e.*, it must be reasonable." *Id.* Plaintiff alleges only that "[Mashable] conducts substantial business such that [Mashable] has significant, continuous, and pervasive contacts with the State of California." (Compl. ¶ 9). These conclusory allegations are not sufficient to establish specific jurisdiction. *See X Corp. v. Ctr. for Countering Digital Hate Ltd.*, 724 F. Supp. 3d 921, 933 (N.D. Cal. 2024) ("[B]are bones assertions of minimum contacts with the forum or legal conclusions unsupported by specific factual allegations will not satisfy a plaintiff's pleading burden." (quotations omitted)).

Plaintiff does not, and cannot, show that Mashable purposefully directed its activities toward California. Mashable operates a news website and does not sell any products on its website. (Orgel-Eaton Decl. ¶¶ 4-5). As such, Plaintiff only can point to Mashable's operation of a website that Plaintiff purportedly viewed from California. (Compl. ¶¶ 2, 6, 72). The "mere existence of a 'passive website' maintained by [a defendant] is insufficient to render the company subject to personal jurisdiction." *LNS Enters. LLC*, 22 F.4th at 863; *Tr. of Summers Fam. Tr. TA Neak Prods. Buff WA Pty, Ltd. v. Nat'l Distrib. Warehouse, Inc.*, 2021 WL 2354507, at *7 (C.D. Cal. 2021); *Herbal Brands*, 72 F.4th at 1091.

Nor can Plaintiff establish that her claim "arises out of or relates to the defendant's forum-related activities." *Schwarzenegger*, 374 F.3d at 802. This requirement turns on whether plaintiff's claim would not have arisen "but for" the defendant's contacts with the forum state. *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995). Here, Plaintiff's claim is based on accessing Mashable's website, which she could do from anywhere as Mashable's website is "aimed at the entire world," not specifically California. *See Matus v. Premium Nutraceuticals, LLC*, 715 F. App'x 662, 663 (9th Cir. 2018) (finding plaintiff failed to show "forum-related" activities prong because plaintiff's claims arose from "online activities that [the defendant] aimed at the entire world"); *Crawford v. Lawson*, 2022 WL 16700675, at *5 (S.D. Cal. 2022) (finding no personal jurisdiction based on the operation of a website).

Because Plaintiff fails to establish that (1) Mashable "purposefully directed" its activities or "consummated some transaction" in California, or (2) Plaintiff's harm "arises out of or relates to" Mashable's alleged activities in California (there were none), the Court need not consider the reasonableness of exercising jurisdiction. *See Schwarzenegger*, 374 F.3d at 802. Nevertheless, the Court should find it unreasonable to subject Mashable to jurisdiction in California. Mashable's only activity germane to this suit is operation of a website that can be viewed from anywhere across the globe. If the Court finds it has personal jurisdiction over Mashable, any website operator could be brought into litigation in any forum. Plaintiff, on the other hand, would not be burdened by litigating in Mashable's home forum, as her attorneys have long had an office in New York. Further, courts in Mashable's home forum regularly apply California law. *See, e.g.*, *Smith v. NBC Universal*, 524 F. Supp. 2d 315, 323 (S.D.N.Y. 2007) (applying California privacy laws); *Insight Invs., LLC v. Bos. Mkt. Corp.*, No. 23-CV-1077-GBW, 2024 WL 1637320, at *2 (D. Del. Apr. 16, 2024) (applying California law). Given these factors, it would be unreasonable for this Court to exercise personal jurisdiction over Mashable. *See Dish Network, LLC v. Jadoo TV, Inc.*, 2020 WL 6536659, at *8 (C.D. Cal. Mar. 16, 2020) (finding no personal jurisdiction because: (1) defendant did not direct his activities at the forum; and (2) the reasonableness factors weighed against the exercise of jurisdiction).

**B. Penal Code § 638.51 Does Not Provide a Private Right of Action.**

**1. The Legislature Did Not Intend To Authorize Private Lawsuits.**

Plaintiff's claim fails because there is no private right of action under Section 638.51. Permitting a private right of action would be contrary to the legislative intent behind the pen register law and conflict with the comprehensive enforcement scheme. "Under California law, a criminal statute authorizes private civil suits only where the legislature intended to create a private right of action or where compelling reasons of public policy justify the recognition of such a right." *Timphony v. City of Pasadena*, 669 Fed. App'x. 484, 485 (9th Cir. 2016). "[W]ithout clear statutory language, legislative history can reveal the Legislature's intent to create a private right of action . . . though, it must be 'clear' that was the intent." *Mayron v. Google LLC*, 54 Cal. App. 5th 566, 573 (2020). "If [the court] determine[s] the Legislature

expressed no intent on the matter either way, directly or impliedly, there is no private right of action." *Animal League Defense Fund v. Mendes*, 160 Cal. App. 4th 136, 142 (2008).

Even where statutory language appears clear, the Court must assess whether the statute contains a latent ambiguity, or "some extrinsic evidence creates a necessity for interpretation for a choice among two or more *possible meanings*." *Coburn v. Sievert*, 133 Cal. App. 4th 1483, 1495 (2005) (quotations omitted). "Such a necessity is present" where, as here, "a literal construction would produce absurd consequences." *Id*. If a latent ambiguity exists, the Court then looks to "extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part." *Id*. at 1496 (quotations omitted); *Cal. Sch. Bds. Ass'n v. State Bd. of Educ.*, 240 Cal. App. 4th 838, 854 (2015) ("[W]e must read the words in their context and with a view to their place in the overall statutory scheme. Our duty, after all, is to construe statutes, not isolated provisions." (quotations and citations omitted)).

The legislative history for California Penal Code Section 638.50 *et seq*. confirms that the pen register law does *not* confer a private right of action upon which Plaintiff can base her claim. Section 638.51 was enacted in 2015 for a very narrow purpose: to provide local law enforcement agencies with the ability to seek emergency pen registers or trap and trace devices without running afoul of federal law. Indeed, pursuant to section 638.52(a), only a "peace officer may make an application to a magistrate for an order or an extension of an order authorizing or approving the installation and use of a pen register or a trap and trace device." A "peace officer" is similarly the only "person" who can seek oral approval for installation under section 638.53.

Unlike CIPA, which was enacted in the 1960s, California Penal Code sections 638.50–53 were proposed as Assembly Bill (AB) 929, introduced and enacted in 2015. "This bill is intended to authorize state and local law enforcement agencies to seek emergency orders for pen registers/trap and trace devices used in telephone surveillance, while requiring as a precondition a standard of evidence higher than under federal law." Assembly Committee on Privacy and Consumer Protection, AB 929, April 21, 2015, at 4. Prior to AB 929, federal law provided for the use of pen register devices but did not allow states or local law enforcement agencies to

> obtain an emergency order unless there [wa]s a state statute authorizing and creating a process for states and local law enforcement officers to do so. . . . As a result of the lack of an authorizing statute, the Los Angeles District Attorney's Office suggest[ed] that some law enforcement agencies have utilized warrantless emergency declarations without proper authorization, which is technically a federal misdemeanor. In response, AB 929 would explicitly authorize state and local law enforcement offices to use pen register and trap and trace devices, including during emergency situations.

*Id*. This history confirms that the pen register law was intended to "create a comprehensive pen register/trap and trace device statute in the Penal Code to cover all requests [by law enforcement] for pen registers and trap and trace devices in California, including emergency pen registers." Senate Committee on Public Safety, Bill No. 929, June 16, 2015, at 12–13. Nowhere does this limited addition to the Penal Code confer any private right of action, except for those narrow mechanisms provided for within Sections 638.50–55.

Nevertheless, Plaintiff assumes that she can prosecute a purported violation of Section 638.51 under CIPA § 637.2(a)(1). (Compl. ¶¶ 119–28). CIPA § 637.2 provides that "[a]ny person who has been injured by a violation of this chapter may bring an action against the person who committed the violation . . . ." Cal. Penal Code § 637.2(a). But this language predates passage of the pen register law and courts do not automatically confer a private right of action for any alleged violation that a plaintiff alleges falls under section 637.2. *See, e.g.*, *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1085 (C.D. Cal. 2021) (noting "the parties d[id] not cite, and the Court could not find, authority on whether § 637.2(a) provides a private right of action for claims arising under [CIPA] § 635" and finding no private right of action); *Graham v. Noom*, 533 F. Supp. 3d 823, 835 (N.D. Cal. 2021) (finding no private right of action under CIPA where plaintiff suffered no injury). In similar contexts where a statutory scheme is modified to include additional provisions, courts have refused to apply old private rights of action to the new provisions enacted thereafter. *See, e.g.*, *Glob. Naps, Inc. v. Bell Atl.-New Jersey, Inc.*, 287 F. Supp. 2d 532, 545 (D.N.J. 2003) (refusing to apply private right of action of federal statute where substantive provision giving rise to alleged violation was enacted later in time).

Allowing Plaintiff to pursue a private right of action under section 637.2 would conflict with the penalties and remedies provided under the pen register law. Individuals may seek to suppress information obtained through pen register or otherwise petition a court for

modifications of any warrant or order issued under the pen register law. Cal. Penal Code §§ 638.55(a), (c). And the "Attorney General may commence a civil action to compel any government entity to comply with the provisions of this chapter." Cal. Penal Code § 638.55(b). But there is no private right of action and courts will not infer legislative intent for a private right of action where, as here, the Legislature has provided for Attorney General enforcement. *Mayron*, 54 Cal. App. 5th at 573-74 (finding no private right of action where statute expressly provided for enforcement action by Attorney General); *see also, Vicko Ins. Services v. Ohio Indem. Co.*, 70 Cal. App. 4th 55, 66 (1999) (finding existing remedies "together with the absence of any reference to a private right of action" to be "strong evidence the Legislature did not intend to create such a private right to sue for damages"). To the extent the Court finds any ambiguity as to whether a private right of action exists for violations of section 638.51, a criminal statute, the rule of lenity requires any ambiguities be "interpreted in favor of the alleged violator;" in this case, Mashable. *Warden* v. *Kahn*, 99 Cal. App. 3d 805, 828 n.3 (1979).

Finally, interpreting Section 638.51 to include a private right of action would create an inconsistency with the parallel federal law on which it was modeled, 18 U.S.C. § 3121, which was enacted in 1986. The federal pen register law *does not* confer a private right of action. *See Karriem v. County of Los Angeles*, 2021 WL 1231432, *6 (C.D. Cal. Feb. 1, 2021). This interpretation is entitled to deference in interpreting similar provisions of California's parallel law. *See Bell v. Farmers Ins. Exchange*, 87 Cal. App. 4th 805, 817 (2001) (noting California courts give deference to interpretations of analogous federal laws).

#### 2. *Greenley v. Kochava* Does Not Save Plaintiff's Claim.

The primary basis for Plaintiff's novel interpretation that Section 638.51 carries a private right of action appears to be *Greenley v. Kochava*, 684 F. Supp. 3d 1024 (S.D. Cal. 2023). In *Greenley*, the plaintiff alleged that Kochava, a data broker that provided software developer kits to application developers, created software that allowed it to "surreptitiously intercept location data" from app users. *Id.* at 1035. Importantly, the issue of whether Section 638.51 carried a private right of action was not before the court. Indeed, the Court noted only that "Defendant argue[d] that its SDK is not a 'pen register,'" not that defendant argued that section 638.51 lacks

a private right of action. The *Greenley* court simply found that section 638.51 "does not limit its prohibition on installing pen registers to law enforcement," and then assumed that non-government actors could be held civilly liable under the statute based on the language of Section 638.51 prohibiting "a *person*" from installing or using a pen register without court order. *Id*. at 1050. But the federal pen register law uses the *same language*, ("Except as provided in this section, *no person* may install or use a pen register . . ."), but *does not* confer a private right of action. *Karriem*, 2021 WL 1231432, at *6 (referring to 18 U.S.C. §§ 3121-27).

This Court, therefore, is not bound by—and should not follow—*Greenley*'s dicta on an issue not raised or briefed by the parties (and which was not raised in *Mirmalek* either) that directly conflicts with the legislative intent behind section 638.51 and analogous federal law.[1] Because a purported violation of section 638.51is the only grounds upon which she seeks relief, the Complaint should be dismissed with prejudice.

### C. Plaintiff Fails to Allege a Violation of Section 638.51.

#### 1. The Pen Register Law Cannot Apply to Mashable

In *Mirmalek*, 2024 WL 5102709, *2, this Court found that "[t]o state a claim for a violation of CIPA's pen register provision, a plaintiff must allege that a '[d]efendant installed a pen register without a court order.'" *Id.* The Court held that the language of the law was "expansive" enough to include trackers capturing "IP addresses" and the plaintiff had pled that "Defendant did not obtain a court order before installing or using the Trackers." *Id.* at *2, 4.

In taking an expansive view of what constitutes a pen register this Court assumed without analysis that the statute could apply to an entity like Mashable. While section 638.51 certainly uses the word "person" when stating that "a person may not install or use a pen register or a trap and trace device without first obtaining a court order pursuant to Section 638.52 or 638.53," these latter two sections show that a person can only refer to a "peace officer." Specifically, section 638.52(a), states that a "peace officer may make an application to a magistrate for an order or an extension of an order authorizing or approving the installation and use of a pen

[1] *Shah v. Fandom, Inc.*, 2024 WL 4539577 (N.D. Cal. Oct 21, 2024), upon which *Mirmalek* relied, similarly did not address whether the pen register law included a private right of action.

register or a trap and trace device." Cal. Penal Code § 638.52(a). To obtain a court order, the "peace officer" must establish the existence of a criminal investigation, identify the person subject to installation and identify the information likely to be obtained, and limit the installation "for a period not to exceed 60 days." Cal. Penal Code §§ 638.52(b), (d), (e). Similarly, only a "peace officer" can seek "oral approval" for installation under section 638.53, but only if "[t]here is probable cause to believe that an emergency situation exists with respect to the investigation of a crime" and "a substantial danger to life or limb exists." Cal. Penal Code § 638.53(a).

Here, Mashable could never meet any of these requirements to obtain a court order. Mashable "owns and operates" "a digital news and entertainment offering with focus areas such as tech, science, social media, and shopping." (Compl. ¶ 72). It does not conduct criminal investigations or apply for devices that assist such investigations. It could not even identify visitors like Plaintiff for purposes of installation because it is a passive news website. Given the plain language of these provisions and the legislative history outlined in the prior section, the pen register law cannot plausibly apply to Mashable or support the "expansive" view of the pen register law discussed in *Shah* and *Greenley* (and relied on in *Mirmalek*).

**2. Section 638.51 Does Not Prohibit Collection of an IP Address.**

In the Complaint, Plaintiff spends a great deal of space arguing that simple HTTP and GET requests whereby IP addresses are necessarily exchanged constitute pen registers and that Mashable, a website owner, installs trackers on users' browsers. (Compl. ¶¶ 20–22, 45–85). But the pen register law does not define "pen register" or a "trap and trace device" as something that captures an IP address, and persuasive authority shows that an IP address is not protected information that website operators or other businesses are prohibited from obtaining. Indeed, California state and federal courts have recognized—including *after* section 638.51 was enacted—that "[t]here is no legally protected privacy interest in IP addresses alone." *Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1190 (N.D. Cal. 2020) (dismissing claims because plaintiffs could not "be injured from the collection of IP addresses, and so lack Article III standing"); *see also Hughes v. Vivint, Inc.*, 2024 WL 5179916, *4 (C.D. Cal. July 12, 2024), *adopted* at 2024 WL 5179917 (C.D. Cal. Aug. 5, 2024) (granting motion to dismiss because

plaintiff was not injured by purported capture of device and browser information, geographic information, referral tracking, and URL tracking).

The California legislature enacted the CCPA in 2018, years after section 638.51 was adopted. The CCPA is California's groundbreaking privacy law designed to specifically address the online privacy concerns of consumers. Cal. Civ. Code §§ 1798.100-1798.196. The "CCPA provides comprehensive codification of consumer privacy rights and establishes remedies for violations of those rights." Thomas A. Papageorge, *California Antitrust and Unfair Competition Law Update: Substantive Law*, 30 Competition: J. Anti., UCL & Privacy Sec. Cal. L. Assoc. 1 (2020), at *14. The CCPA expressly acknowledges that businesses operating online will and do collect personal information, including IP addresses, *see* Cal. Civ. Code § 1798.140(v)(1)(A), and provides the parameters for doing so.

Thus, whereas CIPA and the pen register law make no mention of IP addresses, the CCPA does and expressly permits their collection. ***If the Legislature had intended to outlaw the internet in California by establishing an impossible to obtain court order and criminal penalties imposed on businesses for collecting IP address information, it would have done so when it enacted the CCPA.*** The Court should not permit Plaintiff to expand the scope of section 638.51 beyond the Legislature's intent and criminalize the operability of the internet. *Guido v. Mount Lemmon Fire Dist.*, 859 F.3d 1168, 1174 (9th Cir. 2017) ("Courts should rarely depart from a statute's clear meaning because it risks creating a perception that they are inserting their own policy preferences into a law.").

In *Mirmalek*, 2024 WL 5102709, *5, this Court rejected defendant's arguments relating to the CCPA by stating that the "CCPA does not preempt CIPA. In fact, CCPA states that 'law relating to consumers' personal information should be construed to harmonize with the provisions of this title.'" *Id.* (citing Cal. Civ. Code § 1798.175). But this is not a preemption issue because there is no conflict between the laws. The pen register law does not mention the collection of IP addresses or the operability of the internet at all, and the CCPA permits websites to collect that information. Thus, contrary to the Court's statement in *Mirmalek* that the "CCPA and CIPA are complementary," there is no plausible way to harmonize Plaintiff's interpretation

of the pen register law with the CCPA because a website could never apply for or obtain a court order to collect IP addresses under the pen register law—something the CCPA expressly permits.

**3. The Software at Issue Does Not Constitute a Pen Register.**

Read together, sections 638.50, 638.51, 638.52, and 638.53 allow a "person" or "peace officer" to seek a court order for "the installation and use of a pen register or trap and trace device." According to Plaintiff, "[i]n plain English, a 'pen register' is a 'device or process' that records *outgoing* information, while a 'trap and trace device' is a 'device or process' that records *incoming* information." (Compl. ¶ 15). "Historically, law enforcement used 'pen registers' to record the numbers of outgoing calls from a particular telephone line, while law enforcement used 'trap and trace devices' to record the numbers of incoming calls." (Compl. ¶ 16).

Under any plausible reading of the statute there must be an interception or capture of information by a peace officer or a non-party to the communication—another point not raised by the defendant in *Mirmalek*. Here, Plaintiff alleges that she intentionally and repeatedly visited Mashable's website. (Compl. ¶ 102). As part of that visit, Mashable necessarily received her IP address. But there was no interception or capture of an IP address by a third-party because—in visiting Mashable's website—Plaintiff necessarily reached her intended destination. This case is therefore unlike *Greenley*, relied on by Plaintiff, because there a third-party data broker secretly intercepted information for its own gain. *Greenley*, 684 F. Supp. 3d at 1035. Ultimately, the reasoning in *Greenley* is "unpersuasive," because "[i]n that case the defendant was a data broker that provided software to application developers in return for which it surreptitiously intercepted location data from application users." *Casillas v. Transitions Optical, Inc.*, LASC Case No. 23STCV30742, April 23, 2024 Minute Order (RJN Ex. 1) ("*Transitions Optical*").

That Mashable uses a particular software or service provider in the operation of its website is also irrelevant to this analysis. *Graham v. Noom*, 533 F. Supp. 3d 823, 832–833 (N.D. Cal. 2021) (vendor who "captures" and "hosts" client data for defendant's own use acts as extension of defendant). She (and her IP address) reached her intended destination, and, therefore, she has alleged no capture or interception by a nefarious third-party that could plausibly violate the pen register law. Plaintiff's attempt to insinuate that her IP address was

only sent to Mashable.com after Mashable had installed "Trackers" on her device, (Compl. ¶¶ 22, 44, 48, 57, 66, 103), is simply untrue, as any website necessarily obtains and records auser's IP address at the start of the visit; it must do so to send the sought after html images to the user's browser.[2] *See Columbia Pictures*, 2007 WL 2080419, at *2 ("[W]hen a user clicks on a link to a page or a file on a website, the website's web server program receives from the user a request for the page or the file. The request includes the IP address of the user's computer, and the name of the requested page or file, among other things."); *Heeger*, 509 F. Supp. 3d at 1189 ("IP addresses 'are voluntarily turned over in order to direct the third party's servers,' and so no reasonable expectation of privacy attaches to them.") quoting *United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2008); *Licea v. Hickory Farms LLC*, 2024 WL 1698147, *4 (Cal. Super. Ct. 2024).

The capture of an IP address by a website operator is ultimately no different than caller ID in the telephone context. If Plaintiff's attempt to apply the pen register law to website operators made any sense at all, then everyone who has a telephone or device with caller ID would also necessarily run afoul of the pen register law by capturing telephone numbers. Of course there is no case that says that; only a device or software that surreptitiously intercepts a telephone number on behalf of a third-party would potentially run afoul of the law.

**4. Both Mashable and Plaintiff Consented to the Collection.**

Section 638.51 necessarily requires an interception because it only prohibits use of a pen register or trap and trace absent "consent of the user." Cal. Penal Code, § 638.51(b)(5), *compare* Cal. Penal Code, § 631 (prohibiting wiretapping "without the consent of all parties."). Here, as a content provider website and a party to the communication, Mashable consents to users visiting its site and those visitors have to provide their IP address to view the website. But Plaintiff also impliedly consented to the collection of her IP address when she visited Mashable's website because "IP addresses are necessary for basic website operability," *Rodriguez v. Autotrader.com, Inc.*, 2025 WL 65409, at *6 (C.D. Cal. Jan. 8, 2025), and Plaintiff "should know that [IP addresses] [are] provided to and used by Internet service providers for the specific purpose of

[2] It was this misstatement of internet operability that allowed Plaintiff's counsel to defeat the motion to dismiss in *Shah*, 2024 WL 4539577, *2.

directing and routing the information." *Forrester*, 512 F.3d at 510. In short, by intentionally visiting Mashable's website, Plaintiff consented to the collection of her IP address information.

**5. Mashable's Conduct is Excepted Under the Pen Register Law.**

There is only one portion of the pen register law that discusses private entities. Section 638.51 specifically allows a "provider of electronic or wire communication service . . . [t]o operate, maintain, and test a wire or electronic communication service." Cal. Penal Code § 638.51(b)(1). If this Court is going to find that the pen register law applies to Mashable—even though Mashable cannot obtain a court order thereunder and the internet can only work with the exchange of IP addresses—then it must also find that Mashable and every other website operator is a "provider of electronic or wire communication service." *Id.*

In analyzing the nearly-identical exception in the federal pen register law, 18 U.S.C. §3121(b)(1), the court in *Columbia Pictures* found the website owners' "collection of incoming IP addresses" exempt from the general requirement of a court order for a pen register "because defendants already and necessarily capture such data . . . to operate the website." 2007 WL 2080419, at *11. This interpretation is consistent with the CCPA, which permits businesses to collect IP addresses. Cal. Civ. Code § 1798.140(v)(1)(A). As in *Columbia Pictures*, this Court should find that Mashable is exempt from nearly identical provisions within Penal Code Section 638.51(b)(1). Any other construction would result in an unworkable statutory scheme for the functioning of the internet.

## VI. CONCLUSION

The Court should dismiss Plaintiff's Complaint, and because Plaintiff will be unable to overcome the Complaint's legal deficiencies, it should be dismissed with prejudice.

DATED: February 10, 2025

DAVIS WRIGHT TREMAINE LLP

SPENCER PERSSON

By: [signature]

Spencer Persson
Attorneys for Defendant Mashable, Inc.

DAVIS WRIGHT TREMAINE LLP

## CERTIFICATE OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the county of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 350 S. Grand Avenue, 27th Floor, Los Angeles, California 90071.

On February 10, 2025, I served the foregoing document described as **DEFENDANT MASHABLE, INC.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT** on the interested parties in this action as follows:

**ATTORNEYS FOR PLAINTIFF**
L. Timothy Fisher, Esq.
Emily A. Home, Esq.
Bursor & Fisher, P.A.
1990 North California Blvd., 9th Floor
Walnut Creek, California 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
ehorne@bursor.com

__X__ **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):** I electronically filed the Notice of Removal with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to those attorneys of record registered on the CM/ECF system. All other parties (if any) shall be served in accordance with the Federal Rules of Civil Procedure.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made. Executed on February 10, 2025, at Los Angeles, California.

SPENCER PERSSON