SEAN SULLIVAN (CA State Bar No. 229104)
SPENCER PERSSON (CA State Bar No. 235054)
MONICA GIBBONS (CA State Bar No. 348888)
DAVIS WRIGHT TREMAINE LLP
50 California Street, 23rd Floor
San Francisco, California 94111-4701
Telephone: (415) 276-6500
Facsimile: (415) 276-6599
Email: seansullivan@dwt.com
spencerpersson@dwt.com
monicagibbons@dwt.com

Attorneys for Defendant MASHABLE, INC.

IN THE UNITED STATES DISTRICT COURT

THE NORTHERN DISTRICT OF CALIFORNIA

DAWN FREGOSA, individually and on behalf of all others similarly situated,

Plaintiff,

v.

MASHABLE, INC.,

Defendant.

Case No. 3:25-CV-01094-CRB

[Removed From the Alameda County Superior Court, Case No. 24CV103566]

**DEFENDANT MASHABLE, INC.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

DATE: April 11, 2025
TIME: 10:00 a.m.
CTRM: 6, 17th Floor

Complaint Filed: December 17, 2024
Action Removed: February 3, 2025

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..... ii

NOTICE OF MOTION AND MOTION ..... 1

STATEMENT OF RELIEF SOUGHT - L.R. 7-2(B)(3) ..... 1

SUMMARY OF ARGUMENT ..... 1

MEMORANDUM OF POINTS AND AUTHORITIES ..... 1

I. INTRODUCTION ..... 1

II. STATEMENT OF ISSUES TO BE DECIDED – LR 7-4(3) ..... 2

III. BACKGROUND ..... 2

IV. LEGAL STANDARD ..... 3

V. ARGUMENT ..... 3

A. Plaintiff Has Not Established Personal Jurisdiction Over Mashable ..... 3

1. Plaintiff Cannot Establish General Jurisdiction ..... 3

2. Plaintiff Cannot Establish Specific Jurisdiction ..... 5

a. Mashable Did Not "Purposefully Direct" Activities at California ..... 5

b. Plaintiff's Claim Does Not Arise From Forum-Related Activities ..... 6

c. Exercising Jurisdiction Would Be Unreasonable ..... 7

B. Penal Code § 638.51 Does Not Provide a Private Right of Action ..... 8

C. Plaintiff Fails to Allege a Violation of Section 638.51 ..... 10

1. The Pen Register Law Cannot Apply to Mashable ..... 10

2. The Pen Register Law Has Nothing to Do With Internet Marketing ..... 11

3. Section 638.51 Does Not Prohibit Collection Technical Information ..... 13

4. Mashable's Conduct is Excepted Under the Pen Register Law ..... 15

VI. CONCLUSION ..... 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*3123 SMB LLC v. Horn*
880 F.3d 461 (9th Cir. 2018) ... 6

*AMA Multimedia, Ltd. Liab. Co. v. Wanat*
970 F.3d 1201 (9th Cir. 2020) ... 7, 9

*Animal League Defense Fund v. Mendes*
160 Cal. App. 4th 136 (2008) ... 11

*Ashcroft v. Iqbal*
556 U.S. 662 (2009) ... 3

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*
874 F.3d 1064 (9th Cir. 2017) ... 2, 9

*Baton v. Ledger SAS*
740 F. Supp. 3d 847 (N.D. Cal. 2024) ... 5

*Bell v. Farmers Ins. Exchange*
87 Cal. App. 4th 805 (2001) ... 14

*Brodsky v. Apple, Inc.*
445 F. Supp. 3d 110 (N.D. Cal. 2020) ... 5

*Burger King Corp. v. Rudzewicz*
471 U.S. 462 (1985) ... 10

*Coburn v. Sievert*
133 Cal. App. 4th 1483 (2005) ... 11

*Columbia Pictures Indus. v. Bunnell*
2007 WL 2080419 (C.D. Cal. May 29, 2007) ... 4, 2

*Crandon v. United States*
494 U.S. 152 (1990) ... 3, 15

*Crawford v. Lawson*
2022 WL 16700675 (S.D. Cal. 2022) ... 9

*Cybersell, Inc. v. Cybersell, Inc.*
130 F.3d 414 (9th Cir. 1997) ... 8

*Daimler AG v. Bauman*,
571 U.S. 117 (2014) ... 1, 4, 5, 6, 10

*Ford Motor Co. v. Montana Eighth Judicial Dist. Ct.*
141 S. Ct. 1017 (2021) ... 8

*Gabrielli v. Insider, Inc.*
2025 WL 522515 (S.D.N.Y. Feb. 18, 2025) .......... 17, 18

*Glob. Naps, Inc. v. Bell Atl.-New Jersey, Inc.*
287 F. Supp. 2d 532 (D.N.J. 2003) .......... 12

*Graham v. Noom*
533 F. Supp. 3d 823 (N.D. Cal. 2021) .......... 12, 17

*Greenley v. Kochava*
684 F. Supp. 3d 1024 (S.D. Cal. 2023) .......... 13, 15, 16

*Guido v. Mount Lemmon Fire Dist.*
859 F.3d 1168 (9th Cir. 2017) .......... 19

*Handsome Music, LLC v. Etoro USA LLC*
2020 WL 8455111 (C.D. Cal. 2020) .......... 2, 8

*Heeger v. Facebook, Inc.*
509 F. Supp. 3d 1182 (N.D. Cal. 2020) .......... 4, 17

*Hughes v. Vivint, Inc.*
2024 WL 5179916 (C.D. Cal. July 12, 2024) .......... 17

*In re Packaged Seafood Prods. Antitrust Litig.*
338 F. Supp. 3d 1118 (S.D. Cal. 2018) .......... 6

*Ingram v. Money Map Press, LLC*
2024 WL 3540993 (N.D. Cal. Jul. 24, 2024) .......... 2, 4

*Int'l Shoe Co. v. Washington*
326 U.S. 310 (1945) .......... 3

*Karriem v. County of Los Angeles*
2021 WL 1231432 (C.D. Cal. Feb. 1, 2021) .......... 2, 14

*Kormylo v. Forever Resorts, LLC*
2015 WL 106379 (S.D. Cal. 2015) .......... 5

*Matus v. Premium Nutraceuticals, LLC*
715 F. App'x 662 (9th Cir. 2018) .......... 2, 9

*Mavrix Photo, Inc. v. Brand Techs., Inc.*
647 F.3d 1218 (9th Cir. 2011) .......... 6, 7

*Mayron v. Google LLC*
54 Cal. App. 5th 566 (2020) .......... 11, 13

*Mirmalek v. Los Angeles Times Commc'ns LLC*
2024 WL 5102709 (N.D. Cal. Dec. 12, 2024) .......... 4, 1, 2, 14, 15, 18, 19

*Pebble Beach Co. v. Caddy*
453 F.3d 1151 (9th Cir. 2006) .......... 4

*Perkins v. Benguet Mining Co.*
342 U.S. 437 (1952) .......... 5

*Ranza v. Nike*
793 F.3d 1059 (9th Cir. 2015) .......... 4, 6

*Rodriguez v. Autotrader.com, Inc.*
2025 WL 65409 (C.D. Cal. 2025) .......... 4, 18

*Schwarzenegger v. Fred Martin Motor Co.*
374 F.3d 797 (9th Cir. 2004) .......... 1, 7, 8

*Smith v. NBC Universal*
524 F. Supp. 2d 315 (S.D.N.Y. 2007) .......... 10

*Spacey v. Burgar*
207 F. Supp. 2d 1037 (C.D. Cal. 2001) .......... 9

*Timphony v. City of Pasadena*
669 Fed. App'x. 484 (9th Cir. 2016) .......... 10

*United States v. Bass*
404 U.S. 336 (1971) .......... 19

*United States v. Forrester*
512 F.3d 500 (9th Cir. 2008) .......... 4, 18

*United States v. Lanier*
520 U.S. 259 (1997) .......... 3, 15

*United States v. Nosal*
676 F.3d 854 (9th Cir. 2012) .......... 19

*United States v. Thompson/Center Arms Co.*
504 U.S. 505 (1992) .......... 3, 15

*Vicko Ins. Services v. Ohio Indem. Co.*
70 Cal. App. 4th 55 (1999) .......... 13

*Walden v. Fiore*
571 U.S. 277 (2014) .......... 8

*Warden v. Kahn*
99 Cal. App. 3d 805 (1979) .......... 2, 13

*Williams v. Yamaha Motor Co. Ltd.*
851 F.3d 1015 (9th Cir. 2017) .......... 4

*Yoon v. Lululemon USA, Inc.*
549 F. Supp. 3d 1073 (C.D. Cal. 2021) .......... 12

**Statutes**

18 U.S.C. Section 3121 .......... 10

California's Invasion of Privacy Act ("CIPA")
Section 637.2 .......... 1

Civil Code Section 1798.115 .......... 2, 12

Civil Code Section 1798.120 .......... 2, 12, 14

Civil Code Section 1798.130 .......... 2, 12, 14

Civil Code Section 1798.135 .......... 2, 12, 14

Civil Code Section 1798.140 .......... 2, 12

Civil Code Section 1798.99.80–89 .......... 12

Civil Code Sections 1798.100-1798.196 .......... 14

Penal Code Section 638.50 .......... 2, 8, 12

Penal Code Section 638.51 .......... 2, 3, 2, 8, 9, 10, 12, 13, 15

Penal Code Section 638.52 .......... 2, 1

Penal Code Section 638.53 .......... 2, 1, 11, 12

Penal Code Section 638.55 .......... 1, 10

**Other Authorities**

Assembly Committee on Privacy and Consumer Protection
AB 929, April 21, 2015 .......... 9

Senate Committee on Public Safety
Bill No. 929, June 16, 2015 .......... 9

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on April 11, 2025, at 10:00 a.m. or as soon thereafter as the matter may be heard, Defendant Mashable, Inc. ("Mashable") will bring on for hearing, in Courtroom 6 (17th Floor) of the above-captioned court located at 450 Golden Gate Avenue, San Francisco, California 94102, a Motion seeking an Order to Dismiss Plaintiff's First Amended Complaint.

**STATEMENT OF RELIEF SOUGHT - L.R. 7-2(B)(3)**

Mashable moves for dismissal pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), on the grounds that:

(1) This Court lacks personal jurisdiction over Mashable; and

(2) Plaintiff fails to satisfy the basic pleading standards required to state a claim for relief.

This Motion is based upon this Notice of Motion, the supporting Memorandum of Points and Authorities, the declaration of Julianna Orgel-Eaton, the Request of Judicial Notice and attached exhibit, the pleadings and other papers on file herein, and upon such oral argument as the Court may entertain at the hearing on this Motion.

**SUMMARY OF ARGUMENT**

Plaintiff Dawn Fregosa's First Amended Complaint must be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6) for the following reasons:

(1) Mashable is a Delaware corporation with its principal place of business in New York and has done nothing to avail itself of this forum, such that this matter must be dismissed pursuant to Rule 12(b)(2) for lack of personal jurisdiction. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800–01 (9th Cir. 2004); *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014); *Ingram v. Money Map Press, LLC*, 2024 WL 3540993, at *3 (N.D. Cal. Jul. 24, 2024). The mere operation of a website cannot constitute purposeful direction and subject a company to specific jurisdiction. *Handsome Music, LLC v. Etoro USA LLC*, 2020 WL 8455111, at *9

(C.D. Cal. 2020); *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1069-71 (9th Cir. 2017); *Matus v. Premium Nutraceuticals, LLC*, 715 F. App'x 662, 663 (9th Cir. 2018).

(2) Penal Code §638.50, *et seq*. (the "pen register law") does not authorize a private right of action and the rule of lenity requires a criminal statute like the pen register law to be interpreted in favor of the alleged violator. *Warden v. Kahn*, 99 Cal. App. 3d 805, 828 n.3 (1979). The legislative history underlying section 638.51 as well as the nearly identical federal statute further show that there is no private right of action. *Karriem v. County of Los Angeles*, 2021 WL 1231432, *6 (C.D. Cal. Feb. 1, 2021).

(3) Section 638.51 does not apply to Mashable's acquisition of an IP address and other non-sensitive device information because Mashable could never obtain a court order that would be necessary for its website to exist. Rather, the pen register law only allows a "peace officer" to obtain a court order and only as part of a criminal investigation. Cal. Penal Code §§638.52, 638.53. Again, the rule of lenity requires criminal statutes like the pen register law to be limited "to conduct clearly covered." *See United States v. Lanier*, 520 U.S. 259, 266 (1997); *United States v. Thompson/Center Arms Co.*, 504 U.S. 505, 517–518 (1992); *Crandon v. United States*, 494 U.S. 152, 168 (1990).

(4) The pen register law only prohibits a recording or capture of information by a non-party to the communication. It has nothing to do with what a party to the communication does with information after it is voluntarily transmitted.

(5) Section 638.51 does not address the collection of IP addresses and other non-sensitive device information, while the CCPA expressly authorizes that collection. Cal. Civ. Code §§ 1798.115, 1798.120, 1798.130, 1798.135, 1798.140(v)(1)(A). This is not a preemption issue and the Court's interpretation of the pen register law and the CCPA cannot be harmonized as suggested in *Mirmalek v. Los Angeles Times Commc'ns LLC*, 2024 WL 5102709 (N.D. Cal. Dec. 12, 2024). There is no

plausible way to harmonize the interpretation of the pen register law in *Mirmalek* with the CCPA because a website could never apply for or obtain a court order to collect IP addresses or other non-sensitive device information under the pen register law—something the CCPA expressly permits. Further, there is no legally protected interest in an IP address because IP addresses are necessary for basic website operability. *Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1190 (N.D. Cal. 2020); *Rodriguez v. Autotrader.com, Inc.*, 2025 WL 65409, at *6 (C.D. Cal. Jan. 8, 2025); *United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2008).

(6) Mashable's collection of Plaintiff's IP address and other device information is excepted under Cal. Penal Code §638.51(b)(1). *Columbia Pictures Indus. v. Bunnell*, 2007 WL 2080419, *2 (C.D. Cal. May 29, 2007). To find otherwise would be to hold that no private website operator could operate in California because they could never obtain the requisite court order to do so under the pen register law.

DATED: March 4, 2025

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP

By: /s/ Spencer S. Persson

Spencer S. Persson

Attorneys for Defendant Mashable, Inc.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

This matter, filed by Plaintiff Dawn Fregosa ("Plaintiff"), must be dismissed because this Court lacks personal jurisdiction over Defendant Mashable, Inc. In a misguided attempt to bolster jurisdiction, Plaintiff alleges in the First Amended Complaint ("FAC") that Mashable used to be a California corporation and runs advertisements directed to Californians. But neither allegation can establish jurisdiction. Mashable is a Delaware corporation with its principal place of business in New York. Orgel-Eaton Decl. ¶ 2-5; FAC ¶ 8. Controlling authority shows that the mere operation of a website with advertising cannot subject a company to specific jurisdiction. To find otherwise would subject a website to specific jurisdiction in every forum in which the website was visible would be too broad to comport with due process.

Even if jurisdiction were appropriate, Plaintiff's claim must be dismissed under Federal Rule of Civil Procedure 12(b)(6). While this Court denied a motion to dismiss involving the same counsel in *Mirmalek v. Los Angeles Times Commc'ns LLC*, 2024 WL 5102709 (N.D. Cal. Dec. 12, 2024), the briefing in that case was incomplete. First, there the defendant failed to recognize that California Penal Code sections 638.50–55 (the "pen register law") do not provide a private right of action. Rather, the pen register law was enacted to close a gap between federal and state pen register law and to authorize state law enforcement to obtain critical criminal investigation information without running afoul of federal law. The pen register law includes its own criminal and civil enforcement mechanisms that are fundamentally at odds with California's Invasion of Privacy Act ("CIPA") §637.2's private right of action—the section under which Plaintiff seeks recovery. *See* Penal Code § 638.55.

The defendant in *Mirmalek* also failed to inform this Court that the pen register law cannot apply to a private entity (such as Mashable) because no private entity could ever obtain the requisite court order to operate under the statute. Under both Sections 638.52(a) and 638.53, only a "peace officer" directing a criminal investigation can obtain a court order to install a pen register or trap and trace device. Thus, to argue that Mashable violated the pen register law by collecting IP addresses when (1) it could never obtain the requisite court order and (2) the

exchange of that information is necessary for the internet to function defies common sense and finds no support under the express language of the pen register law. Regarding the second point:

> In general, when a user clicks on a link to a page or a file on a website, the website's web server program receives from the user a request for the page or file. The request includes the IP address of the user's computer, . . . among other things.

*Columbia Pictures Indus. v. Bunnell*, 2007 WL 2080419, *2 (C.D. Cal. 2007).

The CCPA expressly permits websites like Mashable to collect IP addresses and device information. This Court should therefore not strain to apply a law that is silent regarding the capture of IP address and non-sensitive device information when the more recently enacted CCPA expressly outlines the parameters for businesses to capture that information. Ultimately, if the interpretation of the pen register law in *Mirmalek* were applied broadly, it would serve to criminalize the operation of virtually every website in California.

Plaintiff's theory is untenable. The FAC should be dismissed with prejudice.

## II. STATEMENT OF ISSUES TO BE DECIDED – LR 7-4(3)

Whether this Court should dismiss Plaintiff's Complaint against Mashable with prejudice: (i) pursuant to Rule 12(b)(2), as this Court lacks jurisdiction over Mashable, and/or (ii) under 12(b)(6), for failure to state a claim upon which relief can be granted.

## III. BACKGROUND

Mashable is a Delaware corporation with its principal place of business in New York. Orgel-Eaton Decl. ¶ 2; FAC ¶ 8. Mashable operates Mashable.com, a news website. *Id*. ¶ 3.

The Complaint alleges one cause of action based on California Penal Code section 638.51 which makes it a crime for "a person" to install a "pen register" or "trap and trace software" without first obtaining a court order. The only "person" that can apply for a court order is a "peace officer" engaged in a criminal investigation. Penal Code, §638.51–53. Plaintiff alleges that she regularly visited Mashable's Website between 2017 and December 2024 on her desktop browser. FAC ¶ 146. When visiting the Mashable's Website, Mashable allegedly installed "Trackers" on her device to obtain her IP address and her "Device Fingerprints" (i.e., "information such as device type, browser type, and unique and persistent identifiers"). *Id.*, ¶¶ 2, 22, 44, 48, 57, 66, 103. Plaintiff claims that by capturing this information without her consent,

Mashable is subject to statutory damages under Section 637.2 of CIPA. FAC ¶¶ 158–167.

## IV. LEGAL STANDARD

Mashable moves to dismiss the FAC pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6). To satisfy due process under Rule 12(b)(2), Plaintiff must show that Mashable, a non-resident defendant, has sufficient "minimum contacts" with California "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (cleaned up); *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800–01 (9th Cir. 2004).

Under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

## V. ARGUMENT

### A. Plaintiff Has Not Established Personal Jurisdiction Over Mashable

Plaintiff cannot meet her burden to establish personal jurisdiction over Mashable in California. Personal jurisdiction exists if permitted by a state's long-arm statute, subject to the limits of federal due process. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006); Fed. R. Civ. P. 4(k)(1)(A). A plaintiff may establish personal jurisdiction by showing either "general" or "specific" jurisdiction. *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014). The Complaint establishes neither.

#### 1. Plaintiff Cannot Establish General Jurisdiction

General jurisdiction requires a corporation to have "connections [with] the forum state" that are "so continuous and systematic" that the corporation is "essentially at home" there. *Williams v. Yamaha Motor Co. Ltd.*, 851 F.3d 1015, 1020 (9th Cir. 2017) (internal quotations omitted). This is an "exacting standard," and merely having "continuous activity of some sort within a state" is generally "not enough." *Ranza v. Nike*, 793 F.3d 1059, 1069 (9th Cir. 2015). In all but an "exceptional case," a corporate defendant is only "at home" in its "place of incorporation and principal place of business." *Daimler*, 571 U.S. at 137–39 & n.19; *Ingram v.*

*Money Map Press, LLC*, 2024 WL 3540993, at *3 (N.D. Cal. 2024) (concluding general personal jurisdiction could not be exercised in California over Maryland defendant). Mashable is a Delaware corporation with headquarters in New York. Orgel-Eaton Decl. ¶ 2; FAC ¶ 7. It does not have continuous or systematic operations that would make it "at home" in California.[1]

Nevertheless, Plaintiff alleges that Mashable was incorporated in California from 2008 to 2013 (FAC ¶ 11)—over 12 years ago, but this is legally irrelevant. Courts determine general jurisdiction based on a corporation's status at the time the lawsuit is filed. *Kormylo v. Forever Resorts, LLC*, 2015 WL 106379, at *10 (S.D. Cal. 2015). If a corporation has relocated, courts assess only a reasonable look-back period in considering general jurisdiction, typically three to seven years. *Baton v. Ledger SAS*, 740 F. Supp. 3d 847, 892 (N.D. Cal. 2024). No authority supports finding jurisdiction based on a registration that ended well over a decade ago. *See, e.g.*, *id.* Any look-back would be particularly unwarranted here, where the statute at issue has a one-year limitations period. *Brodsky v. Apple, Inc*., 445 F. Supp. 3d 110, 134 (N.D. Cal. 2020).

Plaintiff also incorrectly claims that Mashable maintains an office in San Francisco, citing an outdated LinkedIn post. FAC ¶ 12. But Mashable's San Francisco office closed prior to May 2023, *see* Orgel-Eaton Decl. ¶¶ 5, again predating the limitations period under the pen register law. Moreover, the presence of an office alone does not establish general jurisdiction. *See In re Packaged Seafood Prods. Antitrust Litig.*, 338 F. Supp. 3d 1118, 1141 (S.D. Cal. 2018).

Plaintiff finally alleges that general jurisdiction exists because Mashable is a wholly owned subsidiary of Ziff Davis, a company with offices in San Francisco and Los Angeles. FAC ¶ 12. However, a parent's forum contacts do not automatically establish jurisdiction over its subsidiary, and Plaintiff fails to allege any facts that would justify disregarding the corporate distinction between Mashable and Ziff Davis. *See 3123 SMB LLC v. Horn*, 880 F.3d 461, 467 (9th Cir. 2018). Indeed, nothing in the complaint suggests that Mashable and Ziff Davis operate as alter egos or a single entity for jurisdictional purposes. *See Ranza*, 793 F.3d at 1070. And, just

[1] It appears that the Supreme Court has recognized only one example of an "exceptional" case, in *Perkins v. Benguet Mining Co.*, 342 U.S. 437 (1952), wherein a foreign corporation completely relocated its operations to Ohio due to wartime conditions. *See Daimler*, 571 U.S. at 139 n.19. Here, nothing about Mashable's alleged California activities comes close to the facts relating to operations in Ohio in *Perkins*, and this case is far from "exceptional" under *Daimler.*

like Mashable, Ziff Davis is incorporated in Delaware and has its principal place of business in New York, Orgel-Eaton Decl. ¶ 4. Thus, Plaintiff's allegations relating to Ziff Davis are irrelevant to the general jurisdiction analysis because it is not "at home" in California either.

Finally, Mashable's nationwide, online operations do not make it "at home" in California because the Supreme Court and the Ninth Circuit have explicitly rejected a theory that would subject digital platforms to general jurisdiction everywhere. *See Daimler*, 571 U.S. at 138–39 (broad interpretation of general jurisdiction would improperly subject nationwide businesses to jurisdiction everywhere); *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1226 (9th Cir. 2011) (general jurisdiction cannot be based on a website's interactivity). Because Plaintiff cannot meet the high bar for general jurisdiction, the Court should dismiss this case under Rule 12(b)(2).

### 2. Plaintiff Cannot Establish Specific Jurisdiction

Specific jurisdiction requires that (1) the defendant purposefully directed activities at the forum state or availed itself of conducting business there, (2) the claim arises from the defendant's forum-related activities, and (3) the exercise of jurisdiction is reasonable. *Schwarzenegger*, 374 F.3d at 802. Plaintiff fails to satisfy each of these prongs.

#### *a. Mashable Did Not "Purposefully Direct" Activities at California*

In cases sounding in tort like this one, courts apply the "effects" test. *AMA Multimedia, Ltd. Liab. Co. v. Wanat*, 970 F.3d 1201, 1208–09 (9th Cir. 2020). The test examines whether: (1) the defendant committed an intentional act, (2) expressly aimed at the forum state, and (3) caused harm that the defendant knew was likely to be suffered in the forum state. The Ninth Circuit has consistently held that merely operating a website accessible nationwide does not satisfy the "express aiming" prong; the defendant must have engaged in "something more"—i.e., conduct specifically targeting the forum. *Mavrix*, 647 F.3d at 1229. The "something more" could involve (1) the interactivity of the defendant's website, (2) the geographic scope of its commercial ambitions, and (3) whether it "individually targeted" a known forum resident. *Id.*

The Complaint does not allege that Mashable operates a website focused on California, or that it conducts substantial business transactions in the state. The Website is instead a news platform with global content. Orgel-Eaton Decl. ¶ 3. Plaintiff alleges that Mashable purposefully

directed activities at California by facilitating third-party collection of Californians' data and using that data for location-specific targeted advertisements, FAC ¶ 14, but Plaintiff neither identifies any California-specific advertising, nor alleges that California is Mashable's primary revenue source or target audience. Even if Mashable served targeted ads to Californians, "internet advertis[ing]" alone is insufficient "to subject the advertiser to jurisdiction in the plaintiff's home state." *See Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 418 (9th Cir. 1997).

Finally, Plaintiff's allegations about Mashable's former California employees and "West Coast and California" advertising partners are vague and conclusory—Plaintiff does not explain how these relationships bear on the "something more" factors, how the location of the former employees or partners causes differences in Mashable's advertising in other states, or whether California represents a disproportionate share of Mashable's business. In short, Plaintiff simply has not shown that Mashable has done "something more" than operate a website that is available to users in California. *See Handsome Music, LLC v. Etoro USA LLC*, 2020 WL 8455111, at *9 (C.D. Cal. 2020) (finding plaintiff failed to show defendant-website did "something more" where plaintiff failed to offer "evidence to show Defendant's website ha[d] a specific focus on California or ha[d] a substantial California user base," or that "Defendant post[ed] and profit[ed] from California-specific advertisements on its website," and the geographic scope of the website's ambitions could not be considered centered in California).

***b. Plaintiff's Claim Does Not Arise From Forum-Related Activities***

Even if Plaintiff could establish purposeful direction, she cannot show that her claim arises out of or relates to Mashable's California-specific activities. *Schwarzenegger*, 374 F.3d at 802. Specific jurisdiction requires a direct connection between the defendant's conduct in the forum and the plaintiff's alleged injury. *Ford Motor Co. v. Montana Eighth Judicial Dist. Ct.*, 141 S. Ct. 1017, 1026 (2021). Plaintiff's claim is based on alleged visits to the Website, but a plaintiff's residence cannot be the sole basis for jurisdiction. *See Walden v. Fiore*, 571 U.S. 277, 289 (2014). "A passive website that does little more than make information available to those who are interested in it is not grounds for the exercise [of] personal jurisdiction." *See Crawford v. Lawson*, 2022 WL 16700675, at *5 (S.D. Cal. 2022) (citation and quotations omitted).

Plaintiff's reliance on Mashable's alleged advertising activities, *see* FAC ¶¶ 14–15, is similarly misplaced. The mere fact that online ads are geo-targeted does not establish California-specific targeting sufficient to support jurisdiction. *AMA Multimedia*, 970 F.3d at 1211 (finding that with "geo-located advertisements," all users in every forum received advertisements directed at them, and "[t]o find specific jurisdiction based on this would run afoul of the Supreme Court's directive in *Walden*") (citation omitted). Plaintiff provides no evidence that Mashable's advertising strategy treats California users differently from users in any other state. *See Matus v. Premium Nutraceuticals, LLC*, 715 F. App'x 662, 663 (9th Cir. 2018) (rejecting jurisdiction where an interactive website operated identically in all states). Indeed, efforts by third parties to target California residents through programmatic advertising have not been found to constitute purposeful direction. *See Spacey v. Burgar*, 207 F. Supp. 2d 1037, 1044-45 (C.D. Cal. 2001) (no personal jurisdiction based on third-party advertisements on defendant's website). The Ninth Circuit has even found that emails sent directly to California residents do not establish specific jurisdiction. *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1069-71 (9th Cir. 2017).

Here, Plaintiff has simply not alleged anything under this prong that ties to her claim; no localized operations in California, no website structured to specifically engage California users, and no distinct advertising practices aimed exclusively at the forum. Jurisdiction is not proper.

#### *c. Exercising Jurisdiction Would Be Unreasonable*

Exercising jurisdiction over Mashable in California would also be unreasonable under the due process factors set forth in *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–77 (1985). Forcing Mashable to litigate in California would impose a significant burden, as the company is based in New York. *Id.* (noting that jurisdiction is improper where it would impose an unreasonable burden on a defendant operating primarily outside the forum). Moreover, New York courts regularly apply California law, including privacy statutes. *See, e.g.*, *Smith v. NBC Universal*, 524 F. Supp. 2d 315, 323 (S.D.N.Y. 2007) (applying California privacy law in New York court). There is no legal or public policy benefit to be gained by forcing Mashable to defend itself in California. Finding jurisdiction based on Plaintiff's allegations would expose digital media companies generally to nationwide litigation, undermining predictability in

commerce and due process principles, and contradicting Supreme Court precedent, which rejects the notion that a corporation should be subject to jurisdiction everywhere it does business, *Daimler*, 571 U.S. at 138–39.

### B. Penal Code §638.51 Does Not Provide a Private Right of Action

Plaintiff's substantive claim fails because permitting a private right of action under Section 638.51 would be contrary to the legislative intent behind the pen register law and conflict with its comprehensive enforcement scheme. "Under California law, a criminal statute authorizes private civil suits only where the Legislature intended to create a private right of action or where compelling reasons of public policy justify the recognition of such a right." *Timphony v. City of Pasadena*, 669 Fed. App'x. 484, 485 (9th Cir. 2016). "[W]ithout clear statutory language, legislative history can reveal the Legislature's intent to create a private right of action . . . though, it must be 'clear' that was the intent." *Mayron v. Google LLC*, 54 Cal. App. 5th 566, 573 (2020). "If [the court] determine[s] the Legislature expressed no intent on the matter either way, directly or impliedly, there is no private right of action." *Animal League Defense Fund v. Mendes*, 160 Cal. App. 4th 136, 142 (2008).

The Court must further assess whether the statute contains a latent ambiguity, or "some extrinsic evidence creates a necessity for interpretation for a choice among two or more *possible meanings*." *Coburn v. Sievert*, 133 Cal. App. 4th 1483, 1495 (2005) (quotations omitted). "Such a necessity is present" where, as here, "a literal construction would produce absurd consequences." *Id*. If a latent ambiguity exists, the Court then looks to "extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part." *Id*. at 1496 (quotations omitted).

The legislative history for California Penal Code Section 638.50 *et seq*. shows that the pen register law does *not* confer a private right of action upon which Plaintiff can base her claim. Unlike CIPA, which was enacted in the 1960s, California Penal Code sections 638.50–53 were proposed as Assembly Bill (AB) 929, introduced and enacted in 2015. "This bill is intended to authorize state and local law enforcement agencies to seek emergency orders for pen

registers/trap and trace devices used in telephone surveillance, while requiring as a precondition a standard of evidence higher than under federal law." Assembly Committee on Privacy and Consumer Protection, AB 929, April 21, 2015, at 4; Senate Committee on Public Safety, Bill No. 929, June 16, 2015, at 12–13. Prior to AB 929, federal law provided for the use of pen register devices but did not allow states or local law enforcement agencies to "obtain an emergency order unless there [wa]s a state statute authorizing and creating a process for state and local law enforcement officers to do so. . . . AB 929 would explicitly authorize state and local law enforcement offices to use pen register and trap and trace devices." *Id.*

Plaintiff is attempting to prosecute a purported violation of Section 638.51 under CIPA §637.2(a)(1). FAC¶¶ 158–67. Section 637.2 provides that "[a]ny person who has been injured by a violation of this chapter may bring an action against the person who committed the violation . . . ." Penal Code §637.2(a). But this language predates passage of the pen register law and courts do not automatically confer a private right of action for any alleged violation that a plaintiff alleges falls under section 637.2. *See, e.g.*, *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1085 (C.D. Cal. 2021) (noting "the parties d[id] not cite, and the Court could not find, authority on whether §637.2(a) provides a private right of action for claims arising under [CIPA] §635" and finding no private right of action); *Graham v. Noom*, 533 F. Supp. 3d 823, 835 (N.D. Cal. 2021) (finding no private right of action under CIPA where plaintiff suffered no injury). In similar contexts where a statutory scheme is modified, courts have refused to apply old private rights of action to the new provisions. *See, e.g.*, *Glob. Naps, Inc. v. Bell Atl.-New Jersey, Inc.*, 287 F. Supp. 2d 532, 545 (D.N.J. 2003).

Allowing Plaintiff to pursue a private right of action under section 637.2 would conflict with the penalties and remedies provided under the pen register law.[2] Individuals may seek to suppress information obtained by authorities or otherwise petition a court for modifications of any warrant or order issued under the pen register law. Penal Code §§638.55(a), (c). But only the

[2] Plaintiff cites to *Greenley v. Kochava*, 684 F. Supp. 3d 1024 (S.D. Cal. 2023), in support of her interpretation that Section 638.51 carries a private right of action. The issue of whether Section 638.51 carried a private right of action was not before the court. "Defendant argue[d] that its SDK is not a 'pen register,'" not that section 638.51 lacks a private right of action.

"Attorney General may commence a civil action to compel any government entity to comply with the provisions of this chapter." Penal Code § 638.55(b). Courts will not infer a private right of action where, as here, the Legislature has exclusively provided for Attorney General enforcement. *Mayron*, 54 Cal. App. 5th at 573-74 (no private right of action where statute expressly provided for enforcement action by Attorney General); *see also, Vicko Ins. Services v. Ohio Indem. Co.*, 70 Cal. App. 4th 55, 66 (1999) (finding existing remedies "together with the absence of any reference to a private right of action" to be "strong evidence the Legislature did not intend to create such a private right to sue for damages"). To the extent the Court finds any ambiguity as to whether a private right of action exists for violations of section 638.51, a criminal statute, the rule of lenity requires any ambiguities be "interpreted in favor of the alleged violator;" in this case, Mashable. *Warden* v. *Kahn*, 99 Cal. App. 3d 805, 828 n.3 (1979).

Finally, interpreting Section 638.51 to include a private right of action would create an inconsistency with the parallel federal law on which it was modeled, 18 U.S.C. §3121, which was enacted in 1986. The federal pen register law *does not* confer a private right of action despite near identical language. *See Karriem v. County of Los Angeles*, 2021 WL 1231432, *6 (C.D. Cal. Feb. 1, 2021). This interpretation is entitled to deference in interpreting similar provisions of California's parallel law. *See Bell v. Farmers Ins. Exchange*, 87 Cal. App. 4th 805, 817 (2001) (noting California courts give deference to interpretations of analogous federal laws).

**C. Plaintiff Fails to Allege a Violation of Section 638.51**

**1. The Pen Register Law Cannot Apply to Mashable**

In *Mirmalek*, 2024 WL 5102709, *2, this Court found that "[t]o state a claim for a violation of CIPA's pen register provision, a plaintiff must allege that a '[d]efendant installed a pen register without a court order.'" *Id.* The Court held that the language of the law was "expansive" enough to include trackers capturing "IP addresses" and the plaintiff had pled that "Defendant did not obtain a court order before installing or using the Trackers." *Id.* at *2, 4.

In taking an expansive view of what constitutes a pen register this Court assumed without analysis that the statute applies to a private entity. While section 638.51 uses the word "person" when stating that "a person may not install or use a pen register or a trap and trace device

without first obtaining a court order pursuant to Section 638.52 or 638.53," these latter two sections show that a person can *only* refer to a "peace officer." Specifically, under section 638.52(a), only a "peace officer may make an application to a magistrate for an order. . . authorizing or approving the installation and use of a pen register or a trap and trace device." Penal Code §638.52(a). To obtain a court order, the "peace officer" must establish the existence of a criminal investigation, identify the person subject to installation and the information likely to be obtained, and limit the installation "for a period not to exceed 60 days." Penal Code §§638.52(b), (d), (e). Similarly, only a "peace officer" can seek "oral approval" for installation under section 638.53, but only if "[t]here is probable cause to believe that an emergency situation exists with respect to the investigation of a crime." Penal Code §638.53(a).

Here, Mashable is not a peace officer who could apply for a court order, it is "a digital news and entertainment offering with focus areas such as tech, science, social media, and shopping." (FAC ¶ 1). Mashable does not conduct criminal investigations and cannot renew orders for those investigations every 60 days. Under the plain language of the pen register law and the legislative history outlined in the prior section, the pen register law cannot plausibly apply to Mashable or support the "expansive" view of the pen register law discussed in *Greenley* (and relied on in *Mirmalek*). A finding taking such an expansive view would not only be implausible under *Iqbal*, but would run afoul of the rule of lenity, which requires courts to limit the application of criminal statutes "to conduct clearly covered." *See United States v. Lanier*, 520 U.S. 259, 266 (1997). This rule applies with equal force in a civil context. *United States v. Thompson/Center Arms Co.*, 504 U.S. 505, 517–518 (1992) (applying rule of lenity to tax statute); *Crandon v. United States*, 494 U.S. 152, 168 (1990) (applying lenity to civil case alleging violations of criminal anti-bribery statute).

**2. The Pen Register Law Has Nothing to Do With Internet Marketing**

Plaintiff's amendments to the FAC focus largely on data brokers and what data brokers do with IP address and "Device Fingerprint" information for marketing purposes. As Plaintiff concedes, California's privacy laws permit the use of data brokers as long as they fulfill registration and other requirements. Civ. Code §§1798.99.80–89; (*see* FAC ¶ 97). Nevertheless,

Plaintiff alleges that Mashable's Website captures Plaintiff's IP address and "Device Fingerprints," and then allows data brokers to install trackers which Plaintiff labels "pen registers" on user's browsers for marketing purposes.[3] (FAC ¶¶ 2, 5, 27–29, 95-142). While Plaintiff takes pains to make it all sound very nefarious, the pen register law does not have anything to do with what happens to a user's information after the user reaches her intended destination—as discussed in the next section, that is the province of the CCPA.

Read together, sections 638.50, 638.51, 638.52, and 638.53 allow a "peace officer" to seek a court order for "the installation and use of a pen register or trap and trace device." According to Plaintiff, "[i]n plain English, a 'pen register' is a 'device or process' that records *outgoing* information, while a 'trap and trace device' is a 'device or process' that records *incoming* information." (FAC ¶ 22). "Historically, law enforcement used 'pen registers' to record the numbers of outgoing calls from a particular telephone line, while law enforcement used 'trap and trace devices' to record the numbers of incoming calls."[4] (FAC ¶ 23).

In sum, the statute governs the recording of information by a peace officer that is unknown to the parties to the communication. Indeed, in *Greenley* it was a third-party data broker that secretly intercepted information for its own gain without the knowledge of the destination website. 684 F. Supp. 3d at 1025; *see Casillas v. Transitions Optical, Inc.*, LASC Case No. 23STCV30742, April 23, 2024 Minute Order (RJN Ex. 1). Here, Plaintiff alleges that she intentionally and repeatedly visited Mashable's Website. (FAC ¶ 146). But she cannot allege the unknown recording of an IP address by a third-party because in visiting Mashable's Website Plaintiff necessarily reached her intended destination, and only at that point does she claim Mashable shared her information. Whether Mashable thereafter shares her information with data brokers or other service providers for marketing purposes has nothing to do with a law designed to allow peace officers to intercept criminal communications. *Graham v. Noom*, 533 F. Supp. 3d

[3] An IP address is personal information under the CCPA but the law permits capture of this information. Civ. Code § 1798.140(v)(1)(A); 1798.115, 1798.120, 1798.130, 1798.135. "Device Fingerprints" are not defined as personal information or sensitive information.

[4] Notably, Plaintiff alleges that Mashable records through pen registers even though the delivery of an IP address would plainly be "incoming" information. This further underscores the inapplicability of the statute and justifies dismissal.

823, 832–833 (N.D. Cal. 2021) (vendor who "captures" and "hosts" client data for defendant's own use acts as extension of defendant); *Gabrielli v. Insider, Inc.*, 2025 WL 522515, at *10 (S.D.N.Y. Feb. 18, 2025) (pen register law requires "the *intrusion* to have caused an injury, not a subsequent disclosure of the information gained from the intrusion."), *quoting Spitz v. Caine & Weiner Co.,* 2024 WL 69089, at *5 (E.D.N.Y. 2024).

The capture of an IP address or device information by a website operator is ultimately no different than caller ID in the telephone context. If Plaintiff's attempt to apply the pen register law to website operators made any sense at all, then everyone who has caller ID would also necessarily run afoul of the pen register law by capturing telephone numbers. Of course there is no case that says that; only a device or software that surreptitiously intercepts a telephone number on behalf of a third-party would potentially run afoul of the law.

**3. Section 638.51 Does Not Prohibit Collection Technical Information**

The pen register law does not define a "pen register" or a "trap and trace device" as something that captures an IP address or "Device Fingerprints." Indeed, California state and federal courts have recognized—including *after* section 638.51 was enacted—that "[t]here is no legally protected privacy interest in IP addresses alone" or in the non-sensitive information Plaintiff labels as "Device Fingerprints." *Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1190 (N.D. Cal. 2020) (dismissing claims because plaintiffs could not "be injured from the collection of IP addresses, and so lack Article III standing"); *see also Hughes v. Vivint, Inc*., 2024 WL 5179916, *4 (C.D. Cal. July 12, 2024), *adopted* at 2024 WL 5179917 (C.D. Cal. Aug. 5, 2024) (granting motion to dismiss because plaintiff was not injured by purported capture of device and browser information, geographic information, referral tracking, and URL tracking). Nor does the pen register law address the use of information for marketing or advertising purposes. Indeed, "[s]ection 638.51 of the CIPA . . . is not a wiretapping statute that codifies a substantive privacy right." *Gabrielli*, 2025 WL 522515, at *8.

The CCPA does codify substantive privacy rights and, unlike the pen register law, it *does* address the sharing of information that Plaintiff alleges is wrongful. The California legislature enacted the CCPA in 2018, years after section 638.51 was adopted. The CCPA is California's

privacy law designed to specifically address the online privacy concerns of consumers. Civ. Code §§ 1798.100-1798.196. The CCPA expressly acknowledges that businesses operating online collect personal information, including IP addresses, *see* Civ. Code §1798.140(v)(1)(A), and provides the parameters for doing so. Civ. Code §§1798.115 (right to know what PI is sold and shared), 1798.120 (right to opt out), 1798.130 (notice, disclosure, correction, and deletion requirements), 1798.135 (methods of limiting sale, sharing, and use of information). Any other framework would functionally ban the internet because "IP addresses are necessary for basic website operability," *Rodriguez v. Autotrader.com, Inc.*, 2025 WL 65409, at *6 (C.D. Cal. 2025), "provided to and used by Internet service providers for the specific purpose of directing and routing the information." *United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2008).

In *Mirmalek*, 2024 WL 5102709, *5, this Court rejected defendant's arguments relating to the CCPA by stating that the "CCPA does not preempt CIPA. In fact, CCPA states that 'law relating to consumers' personal information should be construed to harmonize with the provisions of this title.'" *Id.* (citing Civ. Code § 1798.175). But this is not a preemption issue because there is no conflict between the laws. The pen register law does not address a website's collection or sharing of information and the CCPA permits that collection and sharing.

Thus, contrary to the Court's statement in *Mirmalek* that the "CCPA and CIPA are complementary," there is no way to harmonize Plaintiff's interpretation of the pen register law with the CCPA, including because a private entity website could never apply for or obtain a court order to collect personal information under the pen register law—which the CCPA permits and which is necessary for internet operability. *Guido v. Mount Lemmon Fire Dist*., 859 F.3d 1168, 1174 (9th Cir. 2017) ("Courts should rarely depart from a statute's clear meaning because it risks creating a perception that they are inserting their own policy preferences into a law."). Again, under the rule of lenity, the Court "must choose the interpretation least likely to impose penalties unintended" by the Legislature. *United States v. Nosal*, 676 F.3d 854, 863 (9th Cir. 2012) (citation omitted). "[B]ecause of the seriousness of criminal penalties, and because criminal punishment usually represents the moral condemnation of the community, legislatures and not courts should define criminal activity." *United States v. Bass*, 404 U.S. 336, 348 (1971).

Here, this Court should not find Mashable liable under the criminal pen register law, which is silent as to the conduct as alleged, and particularly where the CCPA permits the same activity.

**4. Mashable's Conduct is Excepted Under the Pen Register Law**

There is only one portion of the pen register law that discusses private entities. Section 638.51 specifically allows a "provider of electronic or wire communication service . . . [t]o operate, maintain, and test a wire or electronic communication service." Penal Code §638.51(b)(1). If this Court is going to find that the pen register law applies to Mashable—even though Mashable cannot obtain a court order thereunder and the internet can only work with the exchange of IP addresses—then the only way that Mashable and virtually every other website can exist is as an exempt "provider of electronic or wire communication service." *Id.*

In analyzing the nearly-identical exception in the federal pen register law, 18 U.S.C. §3121(b)(1), the court in *Columbia Pictures* found the website owners' "collection of incoming IP addresses" exempt from the general requirement of a court order for a pen register "because defendants already and necessarily capture such data . . . to operate the website." 2007 WL 2080419, at *11. This interpretation is consistent with the CCPA, which permits businesses to collect IP addresses and other personal information. Civ. Code §1798.140(v)(1)(A). As in *Columbia Pictures*, even if this Court finds that the pen register law otherwise applies, it should find that Mashable is exempt from nearly identical provisions within Section 638.51(b)(1). Any other construction would result in an unworkable statutory scheme for internet functionality.

**VI. CONCLUSION**

The Court should dismiss Plaintiff's FAC, and because Plaintiff's amendment shows that she will be unable to overcome the FAC's deficiencies, it should be dismissed with prejudice.

DATED: March 4, 2025

DAVIS WRIGHT TREMAINE LLP
SPENCER PERSSON

By: [signature]
Spencer Persson
Attorneys for Defendant Mashable, Inc.