**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Emily A. Horne (State Bar No. 347723)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
ehorne@bursor.com

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

DAWN FREGOSA, individually and on behalf of all other persons similarly situated,

Plaintiff,

v.

MASHABLE, INC.,

Defendant.

Case No. 3:25-cv-01094-CRB

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

Date: April 11, 2025
Time: 10:00 a.m.
Courtroom: 6, 17th Floor
Judge: Hon. Charles R. Breyer

# TABLE OF CONTENTS

PAGE

INTRODUCTION .......... 1

ARGUMENT .......... 2

I. THE COURT HAS SPECIFIC PERSONAL JURISDCTION OVER DEFENDANT .......... 2

A. Defendant Purposefully Availed Itself Of The Privilege Of Doing Business In California .......... 2

B. Plaintiff's Claim Relates To Defendant's California Contacts .......... 4

C. Exercising Jurisdiction Over Defendant Would Be Reasonable .......... 5

D. If There Is Any Doubt, The Court Should Allow For Jurisdictional Discovery .......... 5

II. CIPA § 637.2 PROVIDES PLAINTIFF WITH A PRIVATE RIGHT OF ACTION .......... 6

III. PLAINTIFF SUFFICIENTLY ALLEGES A VIOLATION OF CIPA § 638.51 .......... 8

A. CIPA § 638.51 Does Not Only Apply To "Peace Officers" .......... 8

B. CIPA § 638.51 Covers Defendant's Conduct .......... 9

C. Plaintiff Has Been Injured By Defendant's CIPA Violation .......... 12

D. CIPA § 638.51 Does Not Conflict With The CCPA .......... 12

E. Defendant Is Not Exempt From The CIPA .......... 14

CONCLUSION .......... 15

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Agredano v. Mutual of Omaha Cos.*, 75 F.3d 541 (9th Cir. 1996) .......... 9

*AMA Multimedia v. Wanat*, 970 F.3d 1201 (9th Cir. 2020) .......... 3

*Bergstein v. Parmar*, 2014 WL 12586073 (C.D. Cal. June 23, 2014) .......... 5

*Cheneau v. Garland*, 997 F.3d 916 (9th Cir. 2021) .......... 9

*Chien v. Bumble Inc.*, 641 F. Supp. 3d 913 (S.D. Cal. 2022) .......... 3, 4

*Columbia Pictures Indus. v. Bunnell*, 2007 WL 2080419 (C.D. Cal. May 29, 2017) .......... 15

*Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799 (2024) .......... 7

*Curry v. Revolution Labs., LLC*, 949 F.3d 385 (7th Cir. 2020) .......... 3

*Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414 (9th Cir. 1997) .......... 3

*Doe v. WebGroup Czech Republic, a.s.*, 93 F.4th 442 (9th Cir. 2024) .......... 3, 5

*EasyWeb Innovations, LLC v. Facebook, Inc.*, 888 F. Supp. 2d 342 (E.D.N.Y. 2012) .......... 5

*Gabrielli v. Insider, Inc.*, 2025 WL 522515 (S.D.N.Y. Feb. 18, 2025) .......... 10

*Grahm v. Noom, Inc.*, 533 F. Supp. 3d 823 (N.D. Cal. 2021) .......... 6

*Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024 (S.D. Cal. 2023) .......... 1, 8, 11, 12

*Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891 (N.D. Cal. 2023) .......... 10

*Javier v. Assurance IQ, LLC*,
2022 WL 1744107 (9th Cir. May 31, 2022) ..... 14

*Jones v. Ford Motor Co.*,
85 F.4th 570 (9th Cir. 2023) ..... 10, 12

*Lesh v. Cable News Network, Inc.*,
2025 WL 563358 (S.D.N.Y. Feb. 20, 2025) ..... passim

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
647 F.3d 1218 (9th Cir. 2011) ..... 3

*Menken v. Emm*,
503 F.3d 1050 (9th Cir. 2007) ..... 5

*Mirmalek v. Los Angeles Times Commc'ns LLC*,
2024 WL 2479940 (N.D. Cal. May 23, 2024) ..... 6

*Mirmalek v. Los Angeles Times Communications LLC*,
2024 WL 5102709 (N.D. Cal. Dec. 12, 2024) ..... passim

*Monster Energy Co. v. Wensheng*,
136 F. Supp. 3d 897 (N.D. Ill. 2015) ..... 5

*Moody v. C2 Educational Systems Inc.*,
742 F. Supp. 3d 1072 (C.D. Cal. 2024) ..... 1, 6, 9, 13

*Price v. Carnival Corp.*,
712 F. Supp. 3d 1347 (S.D. Cal. 2024) ..... 9

*Quigley v. Guvera IP Pty Ltd.*,
2010 WL 5300867 (N.D. Cal. Dec. 20, 2010) ..... passim

*Rancourt v. Meredith Corp.*,
2024 WL 381344 (D. Mass. Feb. 1, 2024) ..... 3, 4, 6

*Ribas v. Clark*,
38 Cal. 3d 355 (1985) ..... 13

*Rodriguez v. Autotrader.com, Inc.*,
2025 WL 65409 (C.D. Cal. Jan. 8, 2025) ..... 11, 12

*Roney v. Miller*,
705 F. App'x 670 (9th Cir. 2017) ..... 15

*Sgouros v. TransUnion Corp.*,
817 F.3d 1029 (7th Cir. 2016) ..... 15

*Shah v. Fandom, Inc.*,
2024 WL 4539577 (N.D. Cal. Oct. 21, 2024) ..... passim

*Smith v. LoanMe, Inc.*,
11 Cal. 5th 183 (2021) ........ 8

*Spacey v. Burgar*,
207 F. Supp. 2d 1037 (C.D. Cal. 2001) ........ 3

*TBG Ins. Serv. Corp. v. Super. Ct.*,
96 Cal. App. 4th 443 (2002) ........ 15

*U.S. Dep't of Just. v. Reporters Comm. For Freedom of Press*,
489 U.S. 749 (1989) ........ 12

*UMG Recordings, Inc. v. Kurbanov*,
963 F.3d 344 (4th Cir. 2020) ........ 3, 4, 5

*Valentine v. NebudAd, Inc.*,
804 F. Supp. 2d 1022 (N.D. Cal. 2011) ........ 8

*Vera v. O'Keefe*,
791 F. Supp. 2d 959 (S.D. Cal. 2011) ........ 8

*Vicko Ins. Serv., Inc. v. Ohio Indem. Co.*,
70 Cal. App. 4th 55 (1999) ........ 7

*Will Co. v. Lee*,
47 F.4th 917 (9th Cir. 2022) ........ 2, 3, 6

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) ........ 6

*Zarif v. Hwareh.com, Inc.*,
2025 WL 486317 (S.D. Cal. Feb. 13, 2025) ........ 4

**STATUTES**

18 U.S.C. § 3121 ........ 7

Cal. Civ. Code § 1798 ........ 13, 14

Cal. Pen. Code § 630 ........ 2

Cal. Pen. Code § 631 ........ 10, 11, 14

Cal. Pen. Code § 637.2 ........ 6, 7, 12

Cal. Pen. Code § 638 ........ passim

**OTHER AUTHORITIES**

Assembly Bill 1671 ........ 7

**INTRODUCTION**

This Court and numerous others have rejected every argument Defendant makes in its Motion to Dismiss, including jurisdiction. *See generally Mirmalek v. Los Angeles Times Communications LLC*, 2024 WL 5102709 (N.D. Cal. Dec. 12, 2024) (Breyer, J.); *Shah v. Fandom, Inc.*, --- F. Supp. 3d ---, 2024 WL 4539577 (N.D. Cal. Oct. 21, 2024); *Moody v. C2 Educational Systems Inc.*, 742 F. Supp. 3d 1072 (C.D. Cal. 2024); *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024 (S.D. Cal. 2023); *Lesh v. Cable News Network, Inc.*, 2025 WL 563358 (S.D.N.Y. Feb. 20, 2025); *Quigley v. Guvera IP Pty Ltd.*, 2010 WL 5300867 (N.D. Cal. Dec. 20, 2010) (Breyer, J.). Plaintiff's allegations here give the Court no reason to deviate from these holdings. When Plaintiff's counsel filed *Mirmalek*, their investigation had only scratched the surface. Plaintiff's allegations here, by contrast, are a deep dive into the complex web of Internet advertising. This case is not just about third parties collecting IP addresses. This case is about how, within *milliseconds* of accessing the Website,[1] Third Party data brokers collected Plaintiff's and other Californians' IP addresses and other information, used that information to link Plaintiff and Class Members to comprehensive user profiles, and offered those profiles up for sale to a virtually unlimited number of advertisers. *See*, *e.g.*, FAC ¶¶ 97-98, 104-109, 112-118, 121-123, 127-129, 132-135, 138-144, 148, 164. All of this is done with Defendant's knowledge and blessing. Defendant configured its Website to install the Third Party Trackers on its users browsers, Defendant profits from the disclosure of its users' information to advertisers (and the increased identifiability of its users), and Defendant both knows that Californians are subject to this invasion of privacy and can even target campaigns at California. *See*, *e.g.*, *id.* ¶¶ 13-14, 27-29, 45-48, 57-60, 116, 121-123, 142. And all of this is done *without* the knowledge or consent of users. *Id.* ¶¶ 3, 30, 61, 120, 166.

To the extent this conduct sounds "nefarious" (MTD at 12:4), it is. As some privacy scholars have noted, what occurs on Defendant's Website is "[t]he biggest data breach ever recorded" because of the sheer number of entities that receive personal information.[2] And governmental organizations from the FTC to NATO have decried the harms associated with Defendant's conduct. *See*, *e.g.*, FAC

---

[1] All capitalized terms not otherwise defined herein shall have the same meaning as in the FAC.

[2] DR. JOHNNY RYAN, "RTB" ADTECH & GDPR, https://assortedmaterials.com/rtb-evidence/ (video).

¶¶ 99, 103, 117. Defendant's answer to this privacy-invading conduct is not to deny that it happened, but to say consumers are powerless to stop it. Plaintiff proposes a better solution. The CIPA was enacted decades ago to protect consumers from the "invasion of privacy resulting from the continual and increasing use … devices and techniques" that the California Legislature believed "created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society." Cal. Pen. Code § 630. This includes Cal. Pen. Code §§ 638.50 and 638.51, which proscribe Defendant's installation and use of the Third Party Trackers without consent, as this Court and others have found. For the reasons set forth below, Defendant's Motion should be denied.

# <u>ARGUMENT</u>

## I. THE COURT HAS SPECIFIC PERSONAL JURISDCTION OVER DEFENDANT

### A. Defendant Purposefully Availed Itself Of The Privilege Of Doing Business In California

Defendant contends that "internet advertising alone is insufficient to subject the advertiser to jurisdiction in the plaintiff's home state." MTD at 6:5-6. Defendant misses the point. Plaintiff's allegations are not simply that Defendant advertises to Californians. Instead, Defendant enables the *sale of Californians' information* to advertisers by installing and using the Third Party Trackers and Defendant reaps substantial revenue from those sales. *See*, *e.g.*, FAC ¶¶ 13, 112-116, 121, 123; *see also Quigley*, 2010 WL 5300867, at *4 ("[A]lthough Guvera USA does not directly sell products through its website, it generates revenue through consumer interaction on the website."). And Defendant knows it is selling Californians' information because IP addresses specify the location of the user and Defendant can specifically choose to target Californians for sale in advertising campaigns. FAC ¶¶ 14, 42, 44-48, 142. Likewise, the Third Party Trackers use Californians' IP addresses and other information "to match consumer profiles with the profiles [Defendant's] advertisers have chosen to target." *Quigley*, 2010 WL 5300867, at *4; *see also* FAC ¶¶ 51-52, 75, 107-109, 116, 122, 133-135, 148, 164. Thus, "it is not merely foreseeable that [the Website] is being used by consumers in California … but rather an intended consequence of [Defendant's] strategy." *Quigley*, 2010 WL 5300867, at *4.

Notably, Defendant's business model relies on "selling the advertising space on its website to third-party advertisers." *Will Co. v. Lee*, 47 F.4th 917, 925 (9th Cir. 2022); *Quigley*, 2010 WL

5300867, at *4; FAC ¶¶ 16, 121. In such circumstances, the Fourth Circuit and courts in this Circuit (and elsewhere) have sustained jurisdiction based on allegations similar to those here:

> Far from being indifferent to geography, any advertising displayed on the Websites is directed towards specific jurisdictions like Virginia. Kurbanov ultimately profits from visitors by selling directed advertising space and data collected to third-party brokers, thus purposefully availing himself of the privilege of conducting business within Virginia.

*UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 353 (4th Cir. 2020) (cleaned up); *see also*, *e.g.*, *Quigley*, 2010 WL 5300867, at *4 ("[A]lthough Guvera USA does not directly sell products through its website, it generates revenue through consumer interaction on the website. The website cannot fairly be described as passive…"); *Chien v. Bumble Inc.*, 641 F. Supp. 3d 913, 928-29 (S.D. Cal. 2022) (finding defendant "purposefully availed itself to the forum State" because "it has collected personal and location information for the purpose of sending targeted 'marketing information,' promotions, and advertisements"); *Rancourt v. Meredith Corp.*, 2024 WL 381344, at *9 (D. Mass. Feb. 1, 2024) (sustaining jurisdiction based on advertising revenue generated from mobile app where "Meredith is not merely aware of its many Massachusetts users and the resulting ad revenue, but it also uses the information it collects to tailor advertisements … increase user engagement").[3]

Whether Defendant "may have *also* differentially targeted other particular locations does not detract from" the advertising revenue Defendant generated from California. *See Doe v. WebGroup Czech Republic, a.s.*, 93 F.4th 442, 455 (9th Cir. 2024); *see also Curry v. Revolution Labs., LLC*, 949 F.3d 385, 399 (7th Cir. 2020) ("There is no *per se* requirement that the defendant *especially* target the forum in its business activity.") (emphasis added); *Rancourt*, 2024 WL 381344, at *9 ("[T]he Court rejects Meredith's arguments that the Court should discount its Massachusetts sales or

[3] This is in contrast to *AMA Multimedia v. Wanat*, 970 F.3d 1201, 1210-11 (9th Cir. 2020), where, unlike here, "all of the videos were uploaded by users, and all of the advertisements were placed by third parties not located in the United States who tailored the advertising themselves." *Will Co.*, 47 F.4th at 923 (distinguishing *Wanat*). Regardless, it is immaterial whether the third-party advertisers or [Defendant] targeted California residents." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1230 (9th Cir. 2011). And unlike in *Wanat*, the allegations here are that Defendant earns revenue through the sale of Californians' information, not simply that it advertises to Californians. Likewise, in *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414 (9th Cir. 1997), the website was "passive," whereas here, Defendant "generates revenue through consumer interaction on the website." *Quigley*, 2010 WL 5300867, at *4. Finally, unlike here, there was no evidence "that Defendants were involved in the solicitation and negotiation of advertisement placement" in *Spacey v. Burgar*, 207 F. Supp. 2d 1037, 1045 (C.D. Cal. 2001).

ad revenue because those sales were part of a nationwide sales effort.") (cleaned up); *Quigley*, 2010 WL 5300867, at *4 (defendants "model is premised on widespread use throughout the United States … including California.").

Other allegations "when viewed in the context of other jurisdictionally relevant facts" support finding purposeful direction. *UMG Recordings*, 963 F.3d at 354. As Defendant admits, it was previously "incorporated in California," had an office in San Francisco at least prior to 2017 "to 'keep[] a keen eye on Silicon Valley startups'" and a Culver City office until 2023, and previously "ran its advertising out of California." Orgel-Eaton Decl. ¶¶ 4-7; FAC ¶¶ 12, 15. Defendant attempts to cast these aside as "predating the limitations period under the pen register law." MTD at 4:16-17. On the contrary, "the implication is clear that [Defendant] found success in targeting and exploiting the California market with its [W]ebsite." *Zarif v. Hwareh.com, Inc.*, 2025 WL 486317, at *4 (S.D. Cal. Feb. 13, 2025) (cleaned up) ("Health Warehouse argues its promotional efforts from the early 2010s are entirely irrelevant to any pertinent analysis. The Court is not persuaded."). And "[i]n addition to being aware of California users of [the Website], [Defendant] established a California-specific privacy policy in order to comply with California law." *Quigley*, 2010 WL 5300867, at *4.[4]

**B. Plaintiff's Claim Relates To Defendant's California Contacts**

Defendant avers that "[e]ven if Plaintiff could establish purposeful direction, she cannot show that her claim arises out of or relates to Mashable's California-specific activities." MTD at 6:20-21. On the contrary, Plaintiff's claims relate directly to the revenue Defendant earns from the sale of Californians' information (*i.e.*, Defendant's California connections), as that sale is caused by Defendant's installation and use of the Third Party Trackers. *See*, *e.g.*, FAC ¶¶ 94, 121, 123; *see also Chien*, 641 F. Supp. 3d at 931 ("Regardless of where the App's servers are located or where the defendants are headquartered, these forum-related activities all relate to Chien's claims that Bumble improperly collected user data."); *Rancourt*, 2024 WL 381344, at *10 ("Meredith's use of advertising … that targets individual Massachusetts residents (as it does residents of other states) increases user engagement … thus allowing Meredith to collect and disclose more of users' information").

[4] https://www.ziffdavis.com/ztg-privacy-policy.

### C. Exercising Jurisdiction Over Defendant Would Be Reasonable

Given Defendant's extensive sale of Californians' information (and profits resulting therefrom), it cannot meet its burden to show exercising jurisdiction over it would amount to "inconvenience [] so great as to constitute a deprivation of due process." *Quigley*, 2010 WL 5300867, at *5. Defendant's "argument that it would be burdened by defending suit in California might well be true, given that it is based in New York and incorporated in Delaware. However … [P]laintiff's choice of forum is given great weight." *Id.* Moreover, "with the advances in transportation and telecommunications and the increasing interstate practice of law, any burden is substantially less than in days past." *Menken v. Emm*, 503 F.3d 1050, 1060 (9th Cir. 2007) (cleaned up). On the flipside, where, as here, "a disparity exists between the means of the parties, such as in the case of an individual suing a large corporation, the court may consider the relative means of the parties in determining where a case should proceed." *EasyWeb Innovations, LLC v. Facebook, Inc.*, 888 F. Supp. 2d 342, 352 (E.D.N.Y. 2012). Finally, "California maintains a strong interest in providing an effective means of redress for its residents who are tortiously injured." *Bergstein v. Parmar*, 2014 WL 12586073, at *6 (C.D. Cal. June 23, 2014).

Defendant also contends "[f]inding jurisdiction based on Plaintiff's allegations would expose digital media companies generally to nationwide litigation." MTD at 7:27-28. Defendant, however, "knew the Website[] w[as] serving [Californian] visitors and yet took no actions to limit or block access, all while profiting from the data harvested from the same visitors." *UMG Recordings*, 963 F.3d at 354. On top of this, Defendant has a long history of being stationed in California. If Defendant does not want to be sued in California, it can configure its Website differently for California visitors. Absent that, "[D]efendant[] expressly elected to do business with the residents of all fifty states, including [California]." *Monster Energy Co. v. Wensheng*, 136 F. Supp. 3d 897, 906 (N.D. Ill. 2015). It is not unjust or unforeseeable for Defendant to be haled into court here.

### D. If There Is Any Doubt, The Court Should Allow For Jurisdictional Discovery

While Plaintiff has made a *prima facie* showing for jurisdiction, the Court should allow for jurisdictional discovery to the extent there is any doubt. *See Doe*, 93 F.4th at 459 (Lee, J.,

concurring) (sustaining jurisdiction but noting "it would have been prudent for the district court to have ordered very limited jurisdictional discovery here," as "[s]uch discovery would have tethered the district court's analysis more tightly onto our circuit's personal jurisdiction framework"); *Mirmalek v. Los Angeles Times Commc'ns LLC*, 2024 WL 2479940, at *6 (N.D. Cal. May 23, 2024) (Breyer, J.) (permitting jurisdictional discovery to "fill [a] gap"); *Rancourt*, 2024 WL 381344, at *3 (finding jurisdiction after "allow[ing] jurisdictional discovery to develop a better understanding of the revenue Meredith derives from App users in Massachusetts"). That discovery would show, for instance, the extent to which Defendant "profited from a [California] audience, and thus expressly aimed the site at [California]." *Will Co.*, 47 F.4th at 926. This would be demonstrable from both the number of California users of the Website, the revenue Defendant earns from advertisements shown to those users, and from the disclosure of those users' information to advertisers.

## II. CIPA § 637.2 PROVIDES PLAINTIFF WITH A PRIVATE RIGHT OF ACTION

Cal. Pen. Code § 637.2(a) states that "[a]ny person who has been injured by a violation of this chapter may bring an action against the person who committed the violation." CIPA § 638.51 is part of "this chapter." According to that plain statutory language, Plaintiff may pursue a cause of action against Defendant. Resisting this simple conclusion and unambiguous statutory language, Defendant contends Cal. Pen. Code § 637.2(a) does not permit Plaintiff to bring a private cause of action for a violation of CIPA § 638.51. *See* MTD at 8:5-7. The *Moody* court rejected Defendant's exact argument. *First*, *Moody* found that "[w]hile Defendant is correct that criminal statutes *generally* do not create private rights of action, § 637.2 expressly states that all CIPA violations, including § 638.51, confer a private right of action. Defendant offers no convincing authority to suggest that this § 637.2 is per se invalid or that it does not apply to § 638.51." *Moody*, 742 F. Supp. 3d at 1078. *Second*, the *Moody* court noted *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1085 (C.D. Cal. 2021)—which Defendant relies on—held only that "the plaintiffs lacked injuries necessary [to bring a cause of action] for § 637.2," *not* that "§ 637.2 simply did not apply" to another provision of CIPA. *Moody*, 742 F. Supp. 3d at 1078. "Here, there is no credible dispute that Plaintiff has alleged an injury necessary for both § 637.2 and standing." *Id.*; *see also Mirmalek*, 2024 WL 5102709, at *4. The same reasoning distinguishes *Grahm v. Noom, Inc.*, 533 F. Supp. 3d

823, 835 (N.D. Cal. 2021), which also found there was no injury to support a cause of action (because it found no CIPA claim), as opposed to no right to bring an action at all.

Defendant also contends "[t]he legislative history … shows that the pen register law does not confer a private right of action upon which Plaintiff can base her claim." MTD at 8:24-25. But "the Court's analysis must begin with the statutory text, and if that text is clear, must end there." *Shah*, 2024 WL 4539577, at *3. Here, the language of CIPA § 637.2(a) is unambiguous: it permits a private right of action for any person "who has been injured by a violation of this chapter." "[T]he text of a law controls over purported legislative intentions unmoored from any statutory text" and "the Court may not replace the actual text with speculation as to Congress' intent." *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 815 (2024).

Defendant notes that "California Penal Code sections 638.50–53 were … enacted in 2015," and CIPA § 637.2 "predates the passage of the pen register law." MTD at 8:26-27, 9:12. Defendant ignores that CIPA § 637.2(a) was amended just one year later in 2016. *See* 2016 Cal. Legis. Serv. Ch. 855 (A.B. 1671). Had the California Legislature intended to exclude CIPA § 638.51 from the purview of CIPA § 637.2(a), they could have easily done so via this amendment. The Legislature did not do so, instead keeping the "this chapter" language intact. That speaks volumes. *Contra Vicko Ins. Serv., Inc. v. Ohio Indem. Co.*, 70 Cal. App. 4th 55, 66 (1999) ("[T]he Legislature's failure to amend the statute to provide explicit authorization of a private right of action when given this opportunity is conclusive evidence of its intent that the sole remedy for violations of section 769 remain administrative.").

Defendant further argues that because "[t]he Attorney General may commence a civil action to compel any government entity to comply with the provisions of this chapter," that suggests there is no private cause of action. MTD at 10:1-4. Of course, that language does not say that *only* the Attorney General may commence such an action. But this language is not inconsistent with CIPA § 637.2(a). Instead, it suggests that while an individual can bring a cause of action pursuant to CIPA § 637.2(a) if they have been *injured* by a violation, only the AG can bring a civil action pursuant to CIPA § 638.55(b) against the government to enforce *compliance*. Defendant also argues that because "[t]he federal pen register law [18 U.S.C. § 3121] does not confer a private right," the Court should

read that same limitation into the CIPA. *See* MTD at 10:12-15 (cleaned up). But there is no requirement that these two statutes be identical. *Lesh*, 2025 WL 563358, at *5 ("The Court will not use a similar federal statute so as to read a requirement into the text of a California statute."). And the ECPA does not preempt more protective state laws. *Valentine v. NebudAd, Inc.*, 804 F. Supp. 2d 1022, 1029 (N.D. Cal. 2011) ("[T]he ECPA does not preempt the CIPA.").

Last, Defendant avers that "[t]o the extent the Court finds any ambiguity as to whether a private right of action exists … the rule of lenity requires any ambiguities be interpreted in favor of … Mashable." MTD at 10:9-11 (cleaned up). "But the rule of lenity only applies where there is a grievous ambiguity or uncertainty in the language and structure of the statute." *Vera v. O'Keefe*, 791 F. Supp. 2d 959, 964 (S.D. Cal. 2011) (cleaned up). As noted above, there is no ambiguity—let alone "grievous ambiguity"—in the text of the CIPA, and indeed, courts have rejected the rule of lenity's application to other provisions of the CIPA. *Id.* at 965 ("Giles has at most shown that a narrower interpretation of [CIPA] § 632 is conceivable, but that is insufficient to establish ambiguity."); *Smith v. LoanMe, Inc.*, 11 Cal. 5th 183, 202 (2021) (declining to "apply the rule of lenity" to CIPA § 632.7). And "the California Supreme Court has instructed courts to interpret CIPA in the manner that fulfills the legislative purpose of CIPA by giving greater protection to privacy interests," which includes enforcement by private citizens. *See Shah*, 2024 WL 4539577, at *4.

## III. PLAINTIFF SUFFICIENTLY ALLEGES A VIOLATION OF CIPA § 638.51

### A. CIPA § 638.51 Does Not Only Apply To "Peace Officers"

Defendant contends that "[w]hile section 638.51 uses the word 'person' … [CIPA § 638.52(a)] shows that a person can only refer to a 'peace officer.'" MTD at 10:27-11:2. *Greenley* rejected this exact argument, noting that "private companies and persons have the ability to hack into a person's telephone and gather the same information as law enforcement," and thus opining that, "[p]erhaps for this reason, the California legislature *does not limit its prohibition on installing pen registers to law enforcement*." *Greenley*, 684 F. Supp. 3d at 1050 (emphasis added) (comparing use of "person" in CIPA § 638.51(a) with "peace officer" in CIPA § 638.52).

Other courts have likewise rejected similar arguments to limit the scope of CIPA § 638.51 by referencing CIPA § 638.52. *Shah*, 2024 WL 4539577, at *4 ("Although Fandom points to § 638.52,

that section does not alter the definition of a pen register. Instead, that section lists the procedures that law enforcement officers must follow when applying for a pen register."); *Moody*, 742 F. Supp. 3d at 1076 ("Though § 638.52 refers to pen registers and trap and trace devices as physically attached to telephone lines, the definitions set forth under § 638.50 do not state any such requirement."). Rudimentary principles of statutory interpretation support these courts' reasoning. If the Legislature wanted the term "person" to mean only a "peace officer," they could have clearly done so. *See Cheneau v. Garland*, 997 F.3d 916, 920 (9th Cir. 2021) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion … Therefore, from the outset we presume that the terms have different meanings.") (cleaned up). Further, Defendant's interpretation does not make sense given the exception for "provider[s] of electronic or wire communication service[s]." Cal. Pen. Code § 638.51(b). If "person" meant "peace officer," there would be no need for this exception because said providers would already be outside the statute's scope. *See Agredano v. Mutual of Omaha Cos.*, 75 F.3d 541, 544 (9th Cir. 1996) ("[T]erms of the same statute are not to be construed so as to be redundant."). Thus, the presence of the exception for certain types of service providers indicates that "person" was intended to cover private entities and not just "peace officers." Finally, Defendant believes that "taking such an expansive view … would run afoul of the rule of lenity." MTD at 11:17-19. That argument is unpersuasive for the reasons set forth above. Argument § II, *supra*.

**B. CIPA § 638.51 Covers Defendant's Conduct**

Defendant argues that "the pen register law does not have anything to do with what happens to a user's information after the user reaches her intended destination." MTD at 12:4-6. As an initial matter, Plaintiff alleges her information was collected by the Third Parties *when* Plaintiff visited Defendant's Website, not that Defendant at some later point shared this information. *See*, *e.g.*, FAC ¶¶ 27-29, 65-68, 76-79, 86-89. The collection of Plaintiff's information by the Third Parties at the same time as or within milliseconds of Defendant is covered by the CIPA. *Price v. Carnival Corp.*, 712 F. Supp. 3d 1347, 1356 (S.D. Cal. 2024) (distinguishing situation involving the "simultaneous

interception by a third party," which involves "a third-party eavesdropper," from a situation where a party "received the communications and later disclosed those communications") (cleaned up).

Regardless, nothing in the text of CIPA § 638.50 relates to the timing of the collection of information by the Third Parties. Unlike Cal. Pen. Code § 631—which requires any such collection to occur "while the [communication] is in transit"—Cal. Pen. Code § 638.50(b) only requires that the pen register "records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted." Defendant's citation to *Gabrielli v. Insider, Inc.*, 2025 WL 522515 (S.D.N.Y. Feb. 18, 2025), is unpersuasive. That court failed to grasp that disclosure of IP addresses to a website is different from "hav[ing] Trackers installed that send [] IP addresses to third parties," as Plaintiff alleges here. *Shah*, 2024 WL 4539577, at *5; *see*, *e.g.*, FAC ¶¶ 2, 58-59. Further, *Gabrielli* dealt with Article III standing, which Defendant has conceded here by removing this action. *Jones v. Ford Motor Co.*, 85 F.4th 570, 573 (9th Cir. 2023) ("Upon removal, the burden to demonstrate Article III jurisdiction shifts to the Defendant as the party invoking federal jurisdiction.") (cleaned up). Which facts are necessary to show Article III standing for intrusion upon seclusion are different than what is necessary to state a claim. And *Gabrielli* did not deal with Plaintiff's more expansive allegations here about data brokers and real-time bidding.

Defendant also appears to argue that Plaintiff "cannot allege the unknown recording of an IP address by a third-party" because the collection was not done "on behalf of a third-party." MTD at 12:19-20, 13:9-11. This Court has already rejected an interpretation of another provision of the CIPA that rested on the third party's "intentions or the use to which they put the information they obtained." *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 900 (N.D. Cal. 2023).

Nonetheless, Plaintiff does allege the Third Parties can independently use the data they collect. For instance, Plaintiff alleges that, as a result of Defendant's installation of the Bounce Exchange Tracker, "Wunderkind continues to track Plaintiff and Class Members wherever they go online, thus building even more comprehensive user profiles over time that are provided to Wunderkind's other clients." FAC ¶¶ 77, 123; *see also id.* ¶ 133 ("Wunderkind provides that data set to companies interested in showing advertisements to Defendant's Website users through the

RTB process, in addition to maintaining those profiles for its own purposes."). Plaintiff also alleges PubMatic "track[s] users across the Internet" (FAC ¶¶ 87, 104, 107), sells packages of users to interested advertisers (*id.* ¶¶ 143-144), and is itself further enriched the better it is at identifying users (*id.* ¶ 116). Indeed, the whole point of being a data broker is tracking users across the Internet and selling their data to whoever is interested. *See*, *e.g.*, *id.* ¶¶ 5, 56, 98, 104-106. Microsoft likewise uses "the cookie, IP addresses, and Device Fingerprints … to track and identify Website users across the Internet" (*id.* ¶ 66) and uses data that it independently obtains in bid requests. *Id.* ¶¶ 126-127. And all three Third Parties use the information they collect to "unjustly enrich themselves through this improperly collected information." *Id.* ¶¶ 60, 148, 164. These allegations are like *Greenley*, where the defendant was a data broker who "packaged [] data and sold it to clients for advertising purposes." *Greenley*, 684 F. Supp. 3d at 1035; *see also*, *e.g.*, FAC ¶¶ 113-114, 121-122, 127-128, 134-135, 140-141, 143-144.[5] And Plaintiff alleges "the tracking software captured more than just her IP address … and that this information was sent to third parties, not just Defendant." *Rodriguez v. Autotrader.com, Inc.*, --- F. Supp. 3d ---, 2025 WL 65409, at *6 (C.D. Cal. Jan. 8, 2025).

Last, Defendant contends "[i]f Plaintiff's attempt to apply the pen register law to website operators made any sense at all, then everyone who has caller ID would also necessarily run afoul of the pen register law by capturing telephone numbers." MTD at 13:7-9. This is a red herring. Again, Plaintiff's claim is about the collection of her information by *third parties*—as caused by Defendant's actions—not by Defendant itself. Like a party to the communication under CIPA § 631, Defendant is not liable for its own collection of IP addresses and other information. It is liable, however, for installing the Trackers and thus enabling "the Third Parties—through their respective Trackers—to collect Plaintiff's and Class Members' IP addresses and Device Fingerprints, and pervasively track

[5] Defendant claims that the third party in *Greenley* "secretly intercepted information for its own gain *without the knowledge of the destination website*." MTD at 12:15-17 (emphasis added). On the contrary, the third party in *Greenley* "provide[d] a software developer kit ('SDK') to software application [] developers to assist them in developing their apps. In return, the app developers allow Defendant to surreptitiously intercept location data from an app user [] via its SDK." *Greenley*, 684 F. Supp. 3d at 1035. Thus, as here, there was a contractual relationship at issue in *Greenley*.

them across the Internet." FAC ¶ 58; *see also Shah*, 2024 WL 4539577, at *5. Such tracking is not "analogous to a caller ID system." *Rodriguez*, 2025 WL 65409, at *6 [6]

**C. Plaintiff Has Been Injured By Defendant's CIPA Violation**

In passing, Defendant appears to argue that Plaintiff has not been harmed by Defendant's violation of CIPA § 638.51, nor suffered an injury-in-fact sufficient for Article III standing, because "there is no legally protected privacy interest in IP addresses alone or in the non-sensitive information Plaintiff labels as 'Device Fingerprints.'" MTD at 13:14-17. As to Article III standing, Defendant conceded this argument by removing this action to federal court. *Jones*, 85 F.4th at 573. Further, Plaintiff has suffered injury-in-fact in that the Third Parties, as caused by Defendant's installation of the Trackers, "collected [her] personal information," used this information to deanonymize her, compiled it into comprehensive profiles, and offered it to sale to advertisers, which deprived Plaintiff of the right to "control or prevent the unauthorized exploration of his private affairs." *Greenley*, 684 F. Supp. 3d at 1037 (cleaned up); FAC ¶¶ 60, 125-129, 132-135, 139-144, 147-149.

For these same reasons, Plaintiff also has statutory standing to sue pursuant to Cal. Pen. Code § 637.2(a) because she alleges "she was injured by being tracked across multiple visits for marketing and advertising purposes, and that she did not expect or agree to such tracking." *See*, *e.g.*, *Mirmalek*, 2024 WL 5102709, at *4 (cleaned up); *Shah*, 2024 WL 4539577, at *5. "[T]he fact that law enforcement can install a warrantless pen register without offending the Fourth Amendment is immaterial." *Greenley*, 684 F. Supp. 3d at 1051. "The question of the statutory meaning of privacy under the [CIPA] is … not the same as the question whether a tort action might lie for invasion of privacy or the question whether an individual's interest in privacy is protected by the Constitution." *U.S. Dep't of Just. v. Reporters Comm. For Freedom of Press*, 489 U.S. 749, 763 (1989).

**D. CIPA § 638.51 Does Not Conflict With The CCPA**

The Court previously found the "CCPA and CIPA are complementary," and "[e]ven if a conflict existed, Plaintiff may bring her claim under CIPA" because "as CCPA states, 'the provisions

[6] Defendant contends "the delivery of an IP address [to Defendant] would plainly be 'incoming' information." MTD at 12 n.4. Notwithstanding that Plaintiff's claim is about the *Third Parties* collecting her information, information coming from Plaintiff's computer is "outgoing." *Shah*, 2024 WL 4539577, at *3; *Mirmalek*, 2024 WL 5102709, at *4.

of the law that afford the greatest protection for the right of privacy for consumers shall control.'" *Mirmalek*, 2024 WL 5102709, at *5 (quoting Cal. Civ. Code § 1798.175)). Defendant provides no basis to deviate from that holding. *First*, Defendant contends the Court previously ignored that "CCPA states that 'law relating to consumers' personal information should be construed to harmonize with the provisions of this title.'" MTD at 14:12-14 (quoting Cal. Civ. Code § 1798.175). Notwithstanding the Court acknowledged this language (*Mirmalek*, 2024 WL 5102709, at *5), Defendant fails to quote the entire provision:

> *Wherever possible*, law relating to consumers' personal information should be construed to harmonize with the provisions of this title, *but in the event of a conflict* between other laws and the provisions of this title, the provisions of the law that *afford the greatest protection for the right of privacy for consumers shall control*.

Cal. Civ. Code § 1798.175 (emphasis added). So, as the Court held in *Mirmalek*, 2024 WL 5102709, at *5, the "CIPA should control" to the extent there is a conflict between the two statutes. *Second*, the "CCPA and CIPA are complementary." *Id.* CIPA § 638.51 prohibits companies—such as Defendant—from installing a pen register that enables third parties to collect users' personal information without notice and consent. The CCPA sets forth, for instance what that notice and consent must look like (Cal. Civ. Code §§ 1798.100, 1798.115, 1798.130), and the right of consumers to opt-out of that collection (Cal. Civ. Code §§ 1798.120, 1798.135). And the CCPA pertains largely to information businesses collect and who they disclose it to later, whereas the CIPA is about prohibiting the "simultaneous dissemination" of that information "to an unannounced second auditor." *Ribas v.* Clark, 38 Cal. 3d 355, 360 (1985).

*Third*, Defendant argues "the pen register law does not address a website's collection or sharing of information and the CCPA permits that collection and sharing." MTD at 14:15-16. Except the CIPA *does* encompass Internet communications, as numerous courts have held. *See*, *e.g.*, *Mirmalek*, 2024 WL 5102709, at *3 (rejecting argument that "CIPA's pen register definition applies only to telephone technology.") (cleaned up); *Lesh*, 2025 WL 563358, at *4 ("CNN argues that CIPA's prohibition on pen registers does not apply to the Website but instead applies solely to the capture of telephone information. The Court is not persuaded that the scope of the statute is so narrow.") (cleaned up); *Moody*, 742 F. Supp. 3d at 1076 (applying statute to "[s]oftware [] embedded

in the Website"); *cf. Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *1 (9th Cir. May 31, 2022) ("Though written in terms of wiretapping, Section 631(a) applies to Internet communications."). Relatedly, Defendant claims that Plaintiff's interpretation of the CIPA prohibits conduct that "the CCPA permits." MTD at 15:1-2. The CIPA does not categorically bar Defendant's activities, it simply requires Defendant to get prior consent from its users for them. The CCPA is no different: it only permits Defendant to collect and share information with consent. Cal. Civ. Code § 1798.100(a).

*Finally*, Defendant contends siding with Plaintiff "would functionally ban the internet because IP addresses are necessary for basic website operability." MTD at 14:6-8. Again, Plaintiff's claim is about the collection of her information by *third parties*—as caused by Defendant's actions—not by Defendant itself. Data brokers and real-time bidding are not "necessary for basic website operability." *See Shah*, 2024 WL 4539577, at *5. Defendant's rule of lenity argument remains unpersuasive. Argument § II, *supra*.

**E. Defendant Is Not Exempt From The CIPA**

Defendant contends that "[i]f this Court is going to find that the pen register law applies to Mashable … then the only way that Mashable and virtually every other website can exist is as an exempt 'provider of electronic or wire communication service.'" MTD at 15:7-10. Defendant's argument fails. *First*, Cal. Penal Code § 638.51(b) only applies to "[a] provider of electronic or wire communication service." Defendant is "a digital news and entertainment offering." FAC ¶ 1. As in *Mirmalek*, "Defendant fails to establish that it is a provider of an electronic or wire communication service. Thus, Section 638.51(b) does not apply to Defendant." *Mirmalek*, 2024 WL 5102709, at *5 (cleaned up). Indeed, Defendant's interpretation "would absolve many actors from liability under CIPA based on their self-serving consent to the use of pen registers they installed or caused to be installed." *Lesh*, 2025 WL 563358, at *5. Likewise, data brokers and real-time bidding partners—which is what the Third Parties are—are not used to "operate, maintain, and test a[n] … electronic communication service." Cal. Pen. Code § 638.51(b)(1); *see also* FAC ¶¶ 124-145 (describing functionality of the Third Parties).

*Second*, Defendant contends that because "*website owners'* 'collection of incoming IP addresses'" is necessary "'to operate the website,'" Defendant should be exempt from the CIPA.

MTD at 15:11-14 (emphasis added) (quoting *Columbia Pictures Indus. v. Bunnell*, 2007 WL 2080419, at *11 (C.D. Cal. May 29, 2017)). But Plaintiff's claim is about the collection of her personal information by the *Third Parties* (as caused by Defendant), not Defendant itself, and "[a] user who consents to disclose their IP address to [Defendant] as part of accessing its website does not necessarily consent to disclose their IP address to the third parties operating the Trackers." *Shah*, 2024 WL 4539577, at *5; *see also id.*, at *5 n.3 (distinguishing cases like *Columbia Pictures* from allegations like Plaintiff's here because "users were directly communicating with the party alleged to be operating the pen register and voluntarily sent that party their IP address"). Thus, whether Plaintiff's personal information is necessarily collected by Defendant is irrelevant.

*Finally*, Defendant claims the sky will fall if the Court agrees with Plaintiff because any construction other than absolving Defendant "would result in an unworkable statutory scheme for internet functionality." MTD at 15:19. Of course, the Internet has not stopped functioning since the Court issued *Mirmalek*, or Judge Bashant issued *Greenley* nearly two years ago. "To the extent that [Defendant] believes the statute may impose too many burdens when applied to the realities of modern technologies … the question of whether the statute's scope should be narrowed ultimately rests with the Legislature, not the courts." *Shah*, 2024 WL 4539577, at *6. But to be clear, Defendant is not *per se* precluded from employing the Third Parties; it simply must procure its users' prior consent to do so. *See Lesh*, 2025 WL 563358, at *6-7 (evaluating, although rejecting, consent defense to a CIPA § 638.51 claim); *see also TBG Ins. Serv. Corp. v. Super. Ct.*, 96 Cal. App. 4th 443, 450 n.5 (2002) ("Zieminski's consent [i]s a complete defense to his invasion of privacy claim."). "This is not hard to accomplish, as the enormous volume of commerce on the Internet attests." *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1036 (7th Cir. 2016).

## **CONCLUSION**

For the foregoing reasons, the Court should deny Defendant's Motion. If the Court grants the Motion in any respect, Plaintiff respectfully requests leave to amend. *See Roney v. Miller*, 705 F. App'x 670, 671 (9th Cir. 2017).

Dated: March 18, 2025

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: */s/ L. Timothy Fisher*
L. Timothy Fisher

L. Timothy Fisher (State Bar No. 191626)
Emily A. Horne (State Bar No. 347723)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
ehorne@bursor.com

*Attorneys for Plaintiff*