James G. Snell (CA State Bar No. 173070)
Timothy M. Carter (CA State Bar No. 335212)
PERKINS COIE LLP
3150 Porter Drive
Palo Alto, California 94304
Telephone: (650) 838-4300
Facsimile: (650) 838-4350
Email: JSnell@perkinscoie.com
TCarter@perkinscoie.com

Mikella M. Hurley (*Pro Hac Vice Forthcoming*)
PERKINS COIE LLP
700 13th Street, NW
Washington, DC 20005
Telephone: (202) 654-6200
Facsimile: (202) 654-6211
Email: MHurley@perkinscoie.com

Attorneys for Defendant MASHABLE, INC.

IN THE UNITED STATES DISTRICT COURT

THE NORTHERN DISTRICT OF CALIFORNIA

DAWN FREGOSA, individually and on behalf of all others similarly situated,

Plaintiff,

v.

MASHABLE, INC.,

Defendant.

Case No. 3:25-CV-01094-CRB

[Removed From the Alameda County Superior Court, Case No. 24CV103566]

**DEFENDANT MASHABLE, INC.'S REPLY TO PLAINTIFF'S OPPOSITION MOTION TO DISMISS**

DATE: April 11, 2025
TIME: 10:00 a.m.
CTRM: 6, 17th Floor

Complaint Filed: December 17, 2024
Action Removed: February 3, 2025

**TABLE OF CONTENTS**

**Page**

SUMMARY OF ARGUMENT ..... 1
I. INTRODUCTION ..... 1
II. ARGUMENT ..... 1
A. Plaintiff Has Not Established Personal Jurisdiction Over Mashable ..... 1
1. Plaintiff Cannot Establish General Jurisdiction ..... 2
2. Plaintiff Cannot Establish Specific Jurisdiction ..... 2
a. Mashable Did Not "Purposefully Direct" Activities at California ..... 2
b. Plaintiff's Claim Does Not Arise Out of Mashable's Supposed California Contacts ..... 6
c. Exercising Jurisdiction Over Mashable Would Not Be Reasonable ..... 7
3. Jurisdictional Discovery Is Unwarranted ..... 7
B. Plaintiff's Sole Claim Should Be Dismissed ..... 8
1. The Pen Register Law Does Not Permit the Aiding and Abetting Claim Plaintiff is Pursuing Here ..... 8
2. The Rule of Lenity Requires Dismissal ..... 11
a. The Pen Register Law is Silent as to Whether it Forbids Aiding and Abetting ..... 12
b. The Pen Register Law's Application to Public Websites is Ambiguous ..... 12
c. The CCPA Further Establishes the Ambiguity in the Pen Register Law ..... 14
III. CONCLUSION ..... 15

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*AMA Multimedia, LLC v. Wanat*,
970 F.3d 1201 (9th Cir. 2020) .......... 2, 4, 5, 7

*Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*,
551 F.2d 784 (9th Cir. 1977) .......... 6

*Boim v. Holy Land Found. for Relief & Dev.*,
549 F.3d 685 (7th Cir. 2008) .......... 10

*Casillas v. Transitions Optical, Inc.*,
No. 23STCV30742, 2024 WL 4873370 (Cal.Super. Sep. 9, 2024) .......... 14

*Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*,
511 U.S. 164 (1994) .......... 3, 10

*Chien v. Bumble Inc.*,
641 F. Supp. 3d 913 (S.D. Cal. 2022) .......... 6

*Cody v. Ring LLC*,
718 F.Supp.3d 993 (N.D. Cal., 2024) .......... 2

*Curry v. Revolution Labs., LLC*,
949 F.3d 385 (7th Cir. 2020) .......... 6

*DFSB Kollective Co. v. Bourne*,
897 F. Supp. 2d 871 (N.D. Cal. 2012) .......... 3

*Doe v. WebGroup Czech Republic, a.s*
93 F.4th 442, 455 (9th Cir. 2024) .......... 5

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023) .......... 11

*Herbal Brands, Inc. v. Photoplaza, Inc.*,
72 F.4th 1085 (9th Cir. 2023 .......... 2

*In re Carrier IQ, Inc.*,
78 F. Supp. 3d 1051 (N.D. Cal. 2015) ........................................................................ 10, 12
*Incorp. Servs. v. Incsmart.biz Inc.*,
No. 11-CV-4660-EJD-PSG, 2012 WL 3685994 (N.D. Cal. Aug. 24, 2012)........................... 5
*Ji v. Naver Corp.*,
No. 21-CV-05143-HSG, 2022 WL 4624898 (N.D. Cal. Sept. 30, 2022) ................................ 2
*Kellytoy Worldwide, Inc. v. Jay at Play Int'l Hong Kong Ltd.*,
No. CV19CV07831ABMRW, 2019 WL 8064196 (C.D. Cal. Dec. 5, 2019)....................... 4, 8
*Leocal v. Ashcroft*,
543 U.S. 1 (2004) ............................................................................................................... 11
*LNS Enters. LLC v. Cont'l Motors, Inc.*,
22 F.4th 852 (9th Cir. 2022)................................................................................................. 8
*Matus v. Premium Nutraceuticals, LLC*,
715 F. App'x 662 (9th Cir. 2018)........................................................................................... 7
*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
647 F.3d 1218 (9th Cir. 2011)....................................................................................... 2, 3, 4, 5
*Merritt v. Countrywide Fin. Corp.*,
583 F. App'x. 662 (9th Cir. 2014)........................................................................................... 3
*Mirmalek v. Los Angeles Times Commc'ns LLC*,
2024 WL 2479940 (N.D. Cal. May 23, 2024) ......................................................................... 7
*Pebble Beach Co. v. Caddy*,
453 F.3d 1151 (9th Cir. 2006)................................................................................................ 8
*People v. Sephora, USA*,
No. CGC-22-601380 ............................................................................................................ 15
*Quigley v. Guvera IP Pty Ltd.*,
No. C 10-03569 CRB, 2010 WL 5300867 (N.D. Cal. Dec. 20, 2010) ................................ 5, 6
*Rancourt v. Meredith Corp.*,
2024 WL 381344 (D. Mass. Feb. 1, 2024)............................................................................... 6

*Ratha v. Patthana Seafood Co.*,
35 F.4th 1159 (9th Cir. 2022) ........ 3, 7

*Rupert v. Bond*,
68 F. Supp. 3d 1142 (N.D. Cal. 2014) ........ 2

*Schwarzenegger v. Fred Martin Motor Co.*,
374 F.3d 797 (9th Cir. 2004) ........ 2

*UMG Recordings, Inc. v. Kurbanov*,
963 F.3d 344 (4th Cir. 2020) ........ 6

*United States v. Lanier*,
520 U.S. 259 (1997) ........ 11, 12, 14

*United States v. Nosal*,
676 F.3d 854 (9th Cir. 2012) ........ 12, 15

*Vita v. New England Baptist Hospital*,
494 Mass. 824 (2024) ........ 12

*Voodoo SAS v. SayGames LLC*,
No. 19-CV-07480-BLF, 2020 WL 3791657 (N.D. Cal. July 7, 2020) ........ 2, 5

*Walden v. Fiore*,
571 U.S. 277 (2014) ........ 3, 4, 7

*Wis. Pro. Police Ass'n v. Pub. Serv. Comm'n of Wis.*,
555 N.W.2d 179 (Wis. Ct. App. 1996) ........ 10

*Yeager v. Airbus Grp. SE*,
No. 819CV01793JLSADS, 2021 WL 750836 (C.D. Cal. Jan. 26, 2021 ........ 4

*Zarif v. Hwareh.com, Inc.*,
No. 23-CV-0565-BAS-DEB, 2025 WL 486317, (S.D. Cal. Feb. 13, 2025) ........ 6

**STATUTES**

Cal. Civ. Code § 1798.100 ........ 14

Cal. Code Regs. Title 11, § 7000 ........ 15

Cal. Penal Code § 1798.120 ........ 14

Cal. Penal Code § 1798.135 ........ 14
Cal. Penal Code § 1798.140(v)(1) ........ 14
Cal. Penal Code § 631 ........ 10
Cal. Penal Code § 638.50. ........ 1, 12, 13
Cal. Penal Code § 638.51 ........ 1, 8, 10, 12, 13
California Consumer Privacy Act ........ 14
California Privacy Rights Act ........ 15

## SUMMARY OF ARGUMENT

This Court should dismiss Plaintiff's FAC with prejudice pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6) for the reasons in Mashable's Motion to Dismiss, and because:

(1) Plaintiff effectively concedes in her Opposition that Mashable, a Delaware corporation with its principal place of business in New York, is not subject to general jurisdiction in California.

(2) Plaintiff also fails to establish specific jurisdiction, because she does not show that Mashable's business or Website are expressly aimed at the California market, as required here. Plaintiff relies on unsupported hypotheticals about Mashable's alleged use of Website visitors' locations for advertising purposes, but hypotheticals are insufficient to show express aiming and should not be credited as true. And even if the Court credited Plaintiff's hypotheticals, they still would not support jurisdiction. Ninth Circuit precedent is clear: geographically targeted advertising does not show express aiming because such ads always target visitors based on their locations, regardless of where those locations might be. *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1208–09 (9th Cir. 2020). The cases Plaintiff cites simply do not support her position that specific jurisdiction exists here. Plaintiff also claims that Mashable has historic ties to California that establish specific jurisdiction, but these alleged connections ceased to exist well before this dispute arose and cannot provide a basis for jurisdiction. *Ratha v. Patthana Seafood Co.*, 35 F.4th 1159, 1171 (9th Cir. 2022).

(3) The Court should reject Plaintiff's request for jurisdictional discovery because the FAC does not present "a colorable basis that jurisdiction exists." *Kellytoy Worldwide, Inc. v. Jay at Play Int'l Hong Kong Ltd.*, No. CV19CV07831ABMRW, 2019 WL 8064196, at *5 (C.D. Cal. Dec. 5, 2019). Her request is improper because it amounts to a "mere hunch" that discovery "might yield jurisdictionally relevant

facts" not present in the FAC. *LNS Enters. LLC v. Cont'l Motors, Inc.*, 22 F.4th 852, 864 (9th Cir. 2022).

(4) In addition to the reasons raised in Mashable's Motion, Plaintiff fails to state a claim under California's pen register law. Plaintiff concedes in opposition that, like a user of caller ID, websites have every right to capture the IP addresses and so-called "device fingerprints" that website visitors broadcast to them. *See* Opp. at 11. And consequently, the pen register law does not prohibit a website from "installing" or "using" a device or process to lawfully capture visitor information. Plaintiff argues, however, that Mashable violates the pen register law by installing a device or process that *enables* third parties to unlawfully capture visitors' information. *See id.* This is an *aiding and abetting* theory of liability, and is fatal to Plaintiff's case, because the pen register law does not expressly impose liability for aiding and abetting. *See* Cal. Penal Code § 638.51(a); *see also Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 176 (1994) (legislatures "kn[ow] how to impose aiding and abetting liability" when they wish to do so).

(5) And even if the Court were to find Plaintiff's aiding-and-abetting theory of liability potentially viable, her claim must still be dismissed under the rule of lenity, because the conduct that Plaintiff alleges to be wrongful is not "clearly covered" by the text of the pen register law. *United States v. Lanier*, 520 U.S. 259, 266 (1997). The fundamental ambiguity in the law's application to web-browsing data is evident from the law's own text and from Plaintiff's inconsistent arguments. In addition, more recent (and more specific) legislation, as well as relevant enforcement actions by the California Attorney General, demonstrate that neither the California Legislature nor regulators interpret the pen register law in the way Plaintiff does. The Court should "choose the interpretation least likely to impose penalties unintended" by the drafters of the pen register law and reject Plaintiff's claim. *United States v. Nosal*, 676 F.3d 854, 863 (9th Cir. 2012).

DATED: March 25, 2025

Respectfully submitted,

PERKINS COIE LLP

By: */s/ James G. Snell*
James G. Snell

*Attorneys for Defendant Mashable, Inc.*

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff's Opposition does not address the numerous deficiencies in her FAC that Mashable identified in its Motion to Dismiss.[1] With respect to jurisdiction, Plaintiff does not address—and therefore concedes—the lack of general jurisdiction over Mashable in California. And she fails to show that Mashable's business or Mashable.com (the "Website") are expressly aimed at the California market, as required to support a finding of specific jurisdiction. Instead, Plaintiff resorts to a series of hypotheticals, unsupported conclusions, and misleading citations—none of which support jurisdiction.

But even if Plaintiff cleared the required jurisdictional hurdles, the FAC should still be dismissed because it fails to state a claim under California's pen register law. *See* Cal. Penal Code § 638.50 *et seq*. In addition to the deficiencies raised in Mashable's Motion, Plaintiff's Opposition makes a fatal admission—specifically, that website operators like Mashable *have every right* to capture the IP addresses (and so-called "Device Fingerprints") of visitors to their websites. *See* Opp. at 11. Plaintiff thus logically concedes that Mashable may install and use alleged pen registers to capture visitor information. Plaintiff contends that Mashable's alleged installation of pen registers was nevertheless wrongful because other companies (whom she has not sued here) use the supposed pen registers to track visitors on Mashable's Website and across the Internet. *Id*. But this is an aiding-and-abetting theory of liability, which the pen register law does not recognize. *See* Cal. Penal Code § 638.51(a) (prohibiting only the "installation and use" of a pen register or trap-and-trace device). And even if this Court were to entertain such a theory, Plaintiff's claim would still fail under the rule of lenity because the pen register law's application to this case is, at the very least, highly ambiguous.

## II. ARGUMENT

### A. Plaintiff Has Not Established Personal Jurisdiction Over Mashable

Plaintiff cannot meet her burden to establish that Mashable—a Delaware corporation with its principal place of business in New York—is subject to jurisdiction in California.

[1] All capitalized terms have the same meaning as in Mashable's Motion to Dismiss ("Motion").

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). Nothing in Plaintiff's Opposition changes this conclusion.

**1. Plaintiff Cannot Establish General Jurisdiction**

Mashable is not "at home" in California because it is incorporated in Delaware and headquartered in New York. *See* Mot. 3–5. Plaintiff's Opposition does not argue otherwise, and she thus concedes that Mashable is not subject to general jurisdiction. *See Cody v. Ring LLC*, 718 F.Supp.3d 993, 1003 n.4 (N.D. Cal., 2024) ("fail[ing] to oppose this argument []concedes it").

**2. Plaintiff Cannot Establish Specific Jurisdiction**

Plaintiff does not satisfy the "purposeful direction" test[2] for specific jurisdiction because she has not shown that: (1) Mashable purposefully directed activities at California, (2) her claim arises from those activities, and (3) the exercise of jurisdiction would be reasonable. *See Ji v. Naver Corp.*, No. 21-CV-05143-HSG, 2022 WL 4624898, at *6 (N.D. Cal. Sept. 30, 2022).

***a. Mashable Did Not "Purposefully Direct" Activities at California***

To show "purposeful direction," Plaintiff must establish that (a) Mashable committed an intentional act, (b) that was expressly aimed at California, and (c) that caused harm Mashable knew was likely to be suffered in California. *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1208–09 (9th Cir. 2020). Failure to "sufficiently plead any one of these three elements is fatal" to specific jurisdiction. *Rupert v. Bond*, 68 F. Supp. 3d 1142, 1163 (N.D. Cal. 2014).

Plaintiffs face a high bar when seeking to demonstrate "express aiming" for a nationally accessible website like Mashable's. Under binding Ninth Circuit precedent, merely operating a nationally accessible website does not, on its own, constitute "express aiming." *See, e.g.*, *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1091 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 693, 217 L. Ed. 2d 389 (2024); *AMA Multimedia, LLC*, 970 F.3d at 1210; *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1231 (9th Cir. 2011). Instead, a website operator must have engaged in "something more" in the form of "conduct directly targeting the forum." *AMA*

[2] Plaintiff appears to incorrectly argue that Mashable is subject to specific jurisdiction because it "purposefully availed" itself of the privilege of doing business in the state. *See* Opp. 2–4. This is not the correct test. "Purposeful direction" and "purposeful availment" are "two distinct concepts," and courts only apply the latter in cases sounding in contract. *See Schwarzenegger*, 374 F.3d at 802; *Voodoo SAS v. SayGames LLC*, No. 19-CV-07480-BLF, 2020 WL 3791657, at *3 (N.D. Cal. July 7, 2020).

*Multimedia, LLC*, 970 F.3d at 1210. Courts typically consider (1) whether the website is interactive, (2) the geographic scope of its commercial ambitions, and (3) whether the website "individually targeted" a known forum resident. *Mavrix Photo, Inc.*, 647 F.3d at 1229. Interactivity alone is not sufficient; even a highly interactive website will not meet this exacting standard unless it specifically targets the forum in some way. *See DFSB Kollective Co. v. Bourne*, 897 F. Supp. 2d 871, 881 (N.D. Cal. 2012).

Plaintiff's arguments about Mashable's historic and attenuated California contacts—*e.g.*, corporate residency 12 years ago, former California offices closed for more than a year, a former employee who left 7 years ago, a parent company's location, *see, e.g.*, Opp. at 4; *see also* Orgel-Eaton Decl. ¶¶ 5-6—fail for the reasons explained in Mashable's Motion. Most importantly, courts must "measure[] the extent of a defendant's contacts with a forum at the time of the events underlying the dispute," not before. *Ratha v. Patthana Seafood Co.*, 35 F.4th 1159, 1171 (9th Cir. 2022) (cleaned up). These stale connections do not establish specific jurisdiction here.

Plaintiff's arguments about Mashable's alleged targeted advertising also fail for at least three reasons. ***First***, Plaintiff's allegations about targeted advertising are hypothetical, not actual. She alleges, for instance, by using third-party tools Mashable "*enables* the sale of Californians' information." Opp. at 2 (emphasis added); *see also* FAC ⁋16 (Mashable "*is able* to sell specific California userbases to advertisers, or target advertising campaigns specifically at California users.") (emphasis added). Likewise, she posits that Mashable "*can specifically choose* to target Californians for sale in advertising campaigns." Opp. at 2 (emphasis added). These hypothetical allegations about things Mashable *might be able* to do are insufficient to show express aiming at California. *See Merritt v. Countrywide Fin. Corp.*, 583 F. App'x. 662, 665 (9th Cir. 2014) ("the court need not accept as true facts that the pleader does not even claim to be true"). They also fail to the extent they rely on allegations about *third-party* contacts with California. *Cf.* Opp. at 2 ("the Third Party Trackers use Californians' IP addresses and other information to match consumer profiles with the profiles [Defendant's] advertisers have chosen to target.") (cleaned up), *with Walden v. Fiore*, 571 U.S. 277, 284 (2014) (holding that jurisdiction arises out of the contacts that the "'defendant himself' creates with the forum State," and not the defendant's

contacts with entities that do business or reside there). Courts consistently "reject[] attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between plaintiff (or third parties) and the forum state." *Id*. (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). Mashable's alleged dealings with third parties, which may themselves have California contacts, "is an insufficient basis for jurisdiction." *Kellytoy Worldwide, Inc. v. Jay at Play Int'l Hong Kong Ltd.*, No. CV19CV07831ABMRW, 2019 WL 8064196, at *5 (C.D. Cal. Dec. 5, 2019) (cleaned up).

***Second***, even if true, Plaintiff's ad-targeting hypotheticals would fail under binding Ninth Circuit precedent. Specifically, "geo-located advertisements, which tailor advertisements based on the perceived location of the viewer," are insufficient to establish express aiming because they "are *always* directed at the forum," and do not show that the website operator "tailored the website to attract [] traffic" from the forum. *AMA Multimedia, LLC*, 970 F.3d at 1210–11 (emphasis in original). This is precisely the argument Plaintiff tries to make—she contends that by "using the Trackers," Mashable "is *able* to target users with advertisements relevant to not only who they are, but where they are located," meaning that "California Website users will see different advertisements than New York Website users." FAC ⁋ 14. But the same could be said for virtually any other location and does not suffice to show that Mashable "tailored the [W]ebsite to attract [] traffic" from California. *AMA Multimedia, LLC*, 970 F.3d at 1210–11; *see also Yeager v. Airbus Grp. SE*, No. 819CV01793JLSADS, 2021 WL 750836, at *6 (C.D. Cal. Jan. 26, 2021), *aff'd*, No. 21-55162, 2022 WL 1175236 (9th Cir. Apr. 20, 2022) (the Ninth Circuit has rejected the "argument that geographically targeted advertising" showed "express aiming" because such ads "target a consumer based on geographic location, no matter where the consumer was located").

***Third***, Plaintiff has not shown that the Mashable Website specifically targets the California market. A website, like Mashable's, that has a "national viewership and scope," will only satisfy express aiming where it has a "forum-specific focus," meaning it "appeals to, and profits from, an audience *in a particular state*." *Mavrix Photo, Inc.*, 647 F.3d at 1231 (emphasis added). The forum audience must be "an integral component" of the website's "business model

and its profitability," as evident from, e.g., the website's "subject matter," and the "size and commercial value of the [] market" in the forum. *Id*. at 1230.

The Website is a news platform with articles about a range of topics, such as technology, science, and entertainment. *See* Orgel-Eaton Decl. ¶ 3. Plaintiff does not argue otherwise, describing the Website in one line as "a digital news and entertainment offering with focus areas such as tech, science, social media, and shopping." FAC ¶ 1. These generic allegations do not suggest a California-specific focus. *Mavrix Photo, Inc.*, 647 F.3d at 1230; *cf. Quigley v. Guvera IP Pty Ltd.*, No. C 10-03569 CRB, 2010 WL 5300867, at *4 (N.D. Cal. Dec. 20, 2010) (use of "a girl from California as an example to explain the payment model" indicated California focus). Indeed, Plaintiff does not point to a single California-specific feature, California-specific service, or California-specific piece of advertising to indicate that Mashable "tailored the website to attract" California visitors. *AMA Multimedia, LLC*, 970 F.3d at 1210–11; *cf., e.g., Incorp. Servs. v. Incsmart.biz Inc.*, No. 11-CV-4660-EJD-PSG, 2012 WL 3685994, at *7 (N.D. Cal. Aug. 24, 2012) (website with "218 different web pages that offer California-specific services" was expressly aimed at California).[3] Nor does Plaintiff suggest that the "size and commercial value" of Mashable's California market shows a California-specific focus. *Mavrix Photo, Inc.*, 647 F.3d at 1230. In sum, Plaintiff provides "no suggestion" that "the California market in particular is an integral component of [Mashable's] business model and profitability." *Voodoo SAS*, 2020 WL 3791657, at *4 (cleaned up).

The authorities Plaintiff relies upon are all distinguishable and in fact support Mashable's position. She cites *Doe v. WebGroup Czech Republic, a.s.* for the proposition that targeting other locations does not detract from "the advertising revenue Defendant generated from California," Opp. at 3 (*citing* 93 F.4th 442, 455 (9th Cir. 2024)). But, as stated above, the FAC contains no concrete allegations about Mashable's California advertising revenue. And, unlike here, *Doe* found express aiming because the website "only actively appealed to" an audience in the relevant market and "earned considerable revenue" there. *Id*. at 455 (cleaned up).

[3] Plaintiff mentions, for the first time in opposition, that the Website contains a privacy policy designed to comply with California's comprehensive privacy law. *See* Opp. at 4. But this can arguably be said about almost any nationally accessible website. And standing alone, it is not sufficient to show express aiming. *See Voodoo*, 2020 WL 3791657, at *5.

Similarly, Plaintiff cites *Quigley* in support of specific jurisdiction, but *Quigley*, unlike here, involved a highly *interactive* website that allowed users to download music only after entering "personal information, including their zip code," which would identify "California users." 2010 WL 5300867, at *4 (emphasis added). In addition, the website in *Quigley* featured "a girl from California as an example to explain the payment model," which "further support[ed] the finding that" the website was expressly aimed at "California residents." *Id*. Here, by contrast, Plaintiff does not allege that Mashable's Website is interactive, that the Website visitors must provide their zip codes or other personal information in exchange for services, or that the Website features California-specific content like the website in *Quigley* did. Aside from the unsupported conclusion that Mashable "target[]s users with advertisements relevant to" California, FAC ¶ 15, which is not sufficient for the reasons explained above, Plaintiff has not shown the Website was expressly aimed at California and her "bare allegations" are insufficient. *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977).

Finally, unlike as alleged here, the defendant in *Zarif v. Hwareh.com, Inc.* explicitly and repeatedly advertised to and targeted California consumers with, among other things, ads on their website stating the company was "licensed to ship Rx drugs to California," touting savings for California residents, and wishing "the 37 million residents of California a warm welcome," in addition to selling physical goods to Californians.[4] No. 23-CV-0565-BAS-DEB, 2025 WL 486317, at *1 (S.D. Cal. Feb. 13, 2025).

### ***b. Plaintiff's Claim Does Not Arise Out of Mashable's Supposed California Contacts***

Plaintiff's allegation that her claim arises out of defendant's California contacts is simply a restatement of her express-aiming arguments. She alleges that her claim relates to the revenue Mashable earns from the sale of Californians' information, Opp. at 4, but, as stated, the mere fact

[4] Plaintiff also resorts to out-of-district decisions to attempt to support her claim, but those cases are similarly unpersuasive. *Curry v. Revolution Labs., LLC*, 949 F.3d 385, 399 (7th Cir. 2020), involved the sale of physical goods into the jurisdiction, which Plaintiff does not allege here; *Chien v. Bumble Inc.*, 641 F. Supp. 3d 913, 920–21 (S.D. Cal. 2022), involved users asked to provide a significant amount of personal information to use the defendant's services; both *UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 353 (4th Cir. 2020) and *Rancourt v. Meredith Corp.*, 2024 WL 381344, at *9 (D. Mass. Feb. 1, 2024) involved recurring business to forum residents or purported revenue from forum residents.

that online ads are geo-targeted based on a visitor's location does not show California-specific targeting sufficient to support jurisdiction. *AMA Multimedia, LLC*, 970 F.3d at 1211 (finding that with "geo-located advertisements," all users in every forum received advertisements directed at them, and "[t]o find specific jurisdiction based on this would run afoul of the Supreme Court's directive in *Walden*") (citation omitted) (emphasis in original); *Matus v. Premium Nutraceuticals, LLC*, 715 F. App'x 662, 663 (9th Cir. 2018) (rejecting jurisdiction where an interactive website operated identically in all states).

***c. Exercising Jurisdiction Over Mashable Would Not Be Reasonable***

Plaintiff's main arguments for why it would be reasonable to exercise jurisdiction over Mashable in California essentially boil down, again, to a reiteration of her unsupported and hypothetical arguments for express aiming. For instance, she argues that Mashable's supposedly "extensive sale of Californians' information (and profits resulting therefrom)" make jurisdiction here reasonable. Opp. at 5. But as discussed at length above, at best, Plaintiff has only offered hypotheses about how Mashable might "enable" the sale of Californian's information or might be "able" to sell specific California user bases. Opp. at 2; FAC ⁋16. She does not allege that Mashable actually does so, much less that any such sales are "extensive." Opp. at 5. She also appeals to Mashable's "long history of being stationed in California." *Id*. But this alleged "long history" is irrelevant because the Court must look to Mashable's "contacts with a forum at the time of the events underlying the dispute," not before. *Ratha*, 35 F.4th at 1171.

**3. Jurisdictional Discovery Is Unwarranted**

Plaintiff contends that "if there is any doubt, the Court should allow for jurisdictional discovery" to fill a "gap"[5] and to determine the number of California users of Mashable's Website and any purported revenue Mashable earns from advertisements shown to those users. Opp. at 5-6. This is not the right standard. "[W]here a plaintiff's claim of personal jurisdiction

[5] Plaintiff misleadingly cites this Court's order in *Mirmalek*, denying the plaintiff's motion to remand. *See* Opp. at 6 (*citing Mirmalek v. Los Angeles Times Commc'ns LLC*, 2024 WL 2479940, at *6 (N.D. Cal. May 23, 2024)). But in that case, this Court applied a Ninth Circuit decision allowing for limited jurisdictional discovery when analyzing the local-controversy exception to the Class Action Fairness Act of 2005, following denial of the plaintiff's motion to remand. *Mirmalek* does not support Plaintiff's argument for jurisdictional discovery here.

appears to be both attenuated and based on bare allegations in the face of specific denials made by the defendants, the Court need not permit even limited discovery." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1160 (9th Cir. 2006). Jurisdictional discovery is not a gap-filling tool that Plaintiff can use to rehabilitate the FAC's obviously deficient attempt to show specific jurisdiction—it is only appropriate when either "pertinent facts bearing on the question of jurisdiction are controverted," or "a more satisfactory showing of the facts is necessary." *LNS Enters. LLC v. Cont'l Motors, Inc.*, 22 F.4th 852, 864 (9th Cir. 2022) (cleaned up). Plaintiff is essentially requesting discovery on a "mere hunch" that it "might yield jurisdictionally relevant facts" not present in the FAC. *Id*. (internal citations and quotation marks omitted). Because Plaintiff's FAC fails to "present at least a colorable basis that jurisdiction exists," the Court should deny her request for a third bite at the apple. *Kellytoy Worldwide, Inc.*, 2019 WL 8064196, at *7 (cleaned up).

**B. Plaintiff's Sole Claim Should Be Dismissed**

The Court should dismiss Plaintiff's sole pen register claim for each of the reasons set forth in Mashable's motion (namely, that the pen register law does not provide a private right of action, cannot apply to Mashable, has nothing to do with Internet marketing, does not prohibit the collection of technical information, and Mashable's conduct is excepted). Plaintiff's Opposition further confirms that dismissal is appropriate because Plaintiff acknowledges in her Opposition that her sole claim boils down to an aiding-and-abetting theory, which the pen register law does not authorize, and Plaintiff's novel interpretation of that law is at least ambiguous and would violate the rule of lenity.

**1. The Pen Register Law Does Not Permit the Aiding and Abetting Claim Plaintiff is Pursuing Here**

In relevant part, the pen register law forbids the unauthorized "install[ation] or use [of] a pen register," which is a "device or process" that records or decodes certain information associated with a communication. Cal. Penal Code §§ 638.51(a), 638.50(b). The FAC focuses primarily on the alleged actions of third parties—none of whom are involved in this suit. *See, e.g.*, FAC ¶ 147 ("Through their respective Trackers, the Third Parties collected Plaintiff's IP address, Device Fingerprints, and set a cookie that allowed them to pervasively track Plaintiff

across multiple Website sessions and even other websites."); *id.* ¶ 2 (other "Third Parties collect Website users' [IP] addresses and other" information to use "for targeted marketing and advertising"); *id.* ¶¶ 29, 51-52 (describing, e.g., the "collection of IP addresses by the Third Parties," including from cross-site tracking). With respect to Mashable, Plaintiff asserts that Mashable "installed the Trackers—which are pen registers," *id.* ¶ 163, but the FAC attributes comparatively little space to the specifics of Mashable's alleged conduct.

In her Opposition, Plaintiff concedes that her focus is on the actions of third parties: "Plaintiff's claim is about the collection of her information by *third parties—as caused by Defendant's actions*—not by Defendant itself." Opp. at 11 (second emphasis added); *see also id.* at 9 ("Plaintiff alleges her information was collected by the Third Parties when Plaintiff visited Defendant's Website"); *see also* FAC ¶ 39, n. 8 ("by installing the Trackers" Mashable "allows third parties to collect information that is analogous to a telephone number"). And Plaintiff further concedes in her Opposition that the pen register law does not prohibit Mashable from using a device or process to log visitors' IP addresses and other, so-called "Device Fingerprints," because "[l]ike a party to the communication," Mashable "is not liable for its own collection of IP addresses and other information." *See* Opp. at 11. As Plaintiff acknowledges in the FAC, an "IP address is essential for identifying a device on the internet" and "facilitating smooth communication between devices," and when a website visitor is "actively sending data packets out," that visitor's IP address is "broadcast to the wider internet." FAC ¶¶ 32, 38, 34.

Simply stated, Plaintiff admits that Mashable can lawfully install and use what Plaintiff calls a "pen register" to collect Website visitor's IP addresses and other information without violating the pen register law, if Mashable does so for its own purposes. However, Plaintiff argues that Mashable is liable here for installing a pen register that third parties then use to collect information about Website visitors, thereby "caus[ing]" and "enabling" third parties to capture visitors' IP addresses and other information. At base, therefore, her claim is that Mashable is liable for *aiding and abetting* third parties in violating the pen register law (by unlawfully "using" a pen register).

These admissions in Plaintiff's Opposition are fatal to her case—Plaintiff cannot attempt to hold Mashable liable for "enabling the Third Parties" to capture information about website visitors because the pen register law does not contain any language authorizing aiding-and-abetting claims. *Cf.* Cal. Penal Code § 638.51(a) (prohibiting, in relevant part, only the "install[ation] or use a pen register," except under certain conditions) *with* Cal. Penal Code § 631 (making it crime for "[a]ny person" to engage in unlawful wiretapping and to "aid[], agree[] with, employ[], or conspire[] with any person or persons to unlawfully do, or permit, or cause to be done any" such offenses). Legislatures "kn[ow] how to impose aiding and abetting liability" when they wish to do so. *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 176 (1994). And "statutory silence on the subject of secondary liability means there is none." *Boim v. Holy Land Found. for Relief & Dev.*, 549 F.3d 685, 689 (7th Cir. 2008). Courts construing the federal Wiretap Act routinely dismiss secondary aiding-and-abetting claims because, like California's pen register law, the federal Wiretap Act does not expressly authorize them. *See, e.g.*, *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1089 (N.D. Cal. 2015) (no secondary claim for wiretapping because "courts should presume that Congress does not create a cause of action for aiding and abetting unless it specifically says so in the text") (cleaned up).

As explained in Mashable's opening brief, if California's pen register law prohibited website operators from using a device or process to capture or log information about traffic to their sites, it would have seismic implications well beyond the Internet–anyone who used caller ID would *commit a crime*. Mot. at 13. Courts considered and rejected the application of pen register laws to first parties decades ago, when caller ID was a new technology. *See Wis. Pro. Police Ass'n v. Pub. Serv. Comm'n of Wis.*, 555 N.W.2d 179, 188 (Wis. Ct. App. 1996) (pen register laws were "designed to protect telephone users from unauthorized third-party or governmental intrusions," and not "to protect telephone users from one another"). Plaintiff's argument in opposition is that the legality of caller ID is a "red herring," because her claim is about the actions of "third parties." Opp. at 11. But this argument only further demonstrates that she is actually making a non-actionable aiding and abetting claim here.

Finally, although Plaintiff insists that this case is "*like Greenley*, where the defendant was a data broker who packaged data and sold it to clients for advertising purposes," Opp. at 11 (cleaned up), this is not so. *Greenley*, unlike this case, involved direct claims against a single data broker, Kochava—not claims against a website for installing a device or process to capture information that, as Plaintiff concedes, websites are allowed to collect from visitors. *See Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1035 (S.D. Cal. 2023) ("Defendant is a 'data broker' that provides a software developer kit ('SDK') to software application ('app') developers," and once that SDK was "embedded it in third-party apps," it "secretly collected app users' data" which "Defendant packaged" and "sold it to clients for advertising purposes") (cleaned up). The plaintiff in *Greenley* did not sue the app developers (the equivalent to Mashable here) who allegedly "embedded" Kochava's SDKs in their apps, presumably because (as Plaintiff admits in her Opposition) those app developers, "[l]ike a party to the communication" would not be "liable for [their] own collection" of user information. Opp. at 11. In contrast, Plaintiff here has not sued any alleged third parties, and has instead sued Mashable, an entity that she now admits has every right to "collect[s] [the] IP addresses and other information" about Website visitors. Opp. at 11. Since Plaintiff admits that Mashable can install and use devices to collect information about visitors to the Website, and since the pen register law contains no aiding and abetting prohibitions, her sole claim must be dismissed with prejudice (as no amendment could cure these infirmities).

**2. The Rule of Lenity Requires Dismissal**

Even if the Court were to find that, despite the arguments made by Mashable in its Motion and Plaintiff's reliance on an impermissible aiding-and-abetting theory, Plaintiff has alleged colorable arguments against Mashable, the Court should still dismiss this case under the rule of lenity. When a penal statute is ambiguous, the rule of lenity requires courts to limit its reach to the clear import of its text, and to only apply it "to conduct clearly covered." *United States v. Lanier*, 520 U.S. 259, 266 (1997). This rule applies with equal force "in a criminal or noncriminal context." *Leocal v. Ashcroft*, 543 U.S. 1, 11 n.8 (2004). When in doubt, the Court "must choose the interpretation least likely to impose penalties unintended" by the drafters.

*United States v. Nosal*, 676 F.3d 854, 863 (9th Cir. 2012) (cleaned up). Here, none of the conduct that Plaintiff alleges is "clearly covered" by the pen register law, and the Court should apply the rule of lenity and dismiss Plaintiff's claim for several reasons, including those identified in Mashable's Motion.

***a. The Pen Register Law is Silent as to Whether it Forbids Aiding and Abetting***

As discussed above, a penal statute does not "create a cause of action for aiding and abetting unless it specifically says so in the text." *See, e.g., In re Carrier IQ, Inc.*, 78 F. Supp. 3d at 1089. The pen register law prohibits the unauthorized installation and use of pen registers and trap-and-trace devices, but makes no mention of aiding or abetting a third party's violation of this prohibition. *See* Cal. Penal Code § 638.51(a). Even if there was a plausible argument that the pen register law creates liability for secondary violations without saying so expressly (there are none), the rule of lenity would prohibit courts from endorsing this interpretation because doing so would be "likely to impose penalties unintended" by the law's drafters. *Nosal*, 676 F.3d at 863 (citation omitted). The Court should reject the theory that Mashable can be liable for "*enabling* the Third Parties—through their respective Trackers—to collect Plaintiff's and Class Members' IP addresses" and other data, Opp. at 11 (emphasis added), because this conduct is not "clearly covered" by the statute. *Lanier*, 520 U.S. at 266.

***b. The Pen Register Law's Application to Public Websites is Ambiguous***

Nowhere does the pen register law clearly indicate that it governs the use of web-based tools used to capture or log traffic on publicly available websites, meaning that it is at least highly ambiguous. *See, e.g.*, *Nosal*, 676 F.3d at 863; *Vita v. New England Baptist Hospital*, 494 Mass. 824, 848 (2024) (applying the rule of lenity because "the transmission of data about a user's web browser configuration and IP address bear little resemblance" to the contexts for which wiretapping laws were developed). While Plaintiff contends the statute is clear, it is actually replete with language confirming that its provisions do not apply to the use of web-based tools like those at issue here. For instance, the pen register law applies to "wire or electronic communication[s]," and the services that facilitate those communications. Cal. Penal

Code § 638.50(b); *id.* § 638.51(b)(1)-(5). And the statute defines a "pen register," in relevant part, as "a device or process that records" certain "information transmitted by an instrument or facility from which a *wire or electronic communication* is transmitted." *Id.* § 638.50(b) (emphasis added). The law's statutory exemptions likewise extend only to "electronic or wire communication service providers," *id.* § 638.51(b)(1)-(5), a category that, according to Plaintiff, does not include publicly available news or entertainment websites like Mashable's, *see* Opp. at 14. Plaintiff's proposed interpretation—that Section 638.51 prohibits a website from installing any third-party tools that are then used to recognize or log visitor's information, and that websites cannot rely upon the statutory exemptions for any purpose because they do not qualify as electronic and wire communication services—is nonsensical.[6] Indeed, Plaintiff's creative arguments ably demonstrate why the pen register law's provisions are, at the very least, highly ambiguous when it comes to websites.

As Plaintiff herself acknowledges, an "IP address is essential for identifying a device on the internet" and "facilitating smooth communication between devices." FAC ¶ 32. But Plaintiff contends that when she voluntarily visited Mashable's website, and—to use Plaintiff's terminology—"broadcast" her IP address "to the wider internet," Mashable violated the law because it neither "procured" her "consent" nor "obtain[ed] a court order" that authorized the collection of her IP address and other information with a third-party tool. *Id.* ¶¶ 27-30, 61; *see also* Opp. at 11. Taken to its logical conclusion, Plaintiff's argument is that the basic operation of websites on the Internet is always subject to the pen register law. And any time a website uses a third-party tool that captures or logs the IP address of visitor traffic, it is committing *a crime*. Plaintiff's reading would criminalize the use of essential third-party tools that businesses and individuals use every day—for instance, third-party traffic-monitoring software that identifies and blocks traffic associated with malicious IP addresses. As one court noted in rejecting a

[6] Indeed, Plaintiff's argument that Mashable should have gotten her consent before allegedly using a third-party tool to capture her IP address, *see, e.g.*, FAC, ¶ 4, conflicts with her position that Mashable cannot qualify for any of the exemptions in Section 638.51, *see* Opp. at 14-15. Like the statute's other exemptions, only a "provider of electronic or wire communication service" can "use a pen register or trap and trace device" if "the consent of the user of that service has been obtained." Cal. Penal Code § 638.51(b)(5). This irreconcilable conflict in Plaintiff's position showcases the statute's plain ambiguity here as interpreted by Plaintiff.

similar argument, "[t]he pen register statute did not, and does not, criminalize the process by which all websites communicate with all users who choose to access them." *Casillas v. Transitions Optical, Inc.*, No. 23STCV30742, 2024 WL 4873370, at *4 (Cal.Super. Sep. 9, 2024) (RJN, Ex. 1). The pen register law is devoid of any suggestion that such conduct is "clearly covered," and Plaintiff's sole claim should be dismissed under the rule of lenity for this further reason. *Lanier*, 520 U.S. at 266.

#### *c. The CCPA Further Establishes the Ambiguity in the Pen Register Law*

The existence of a more specific and more recent California law, which clearly applies to the use of third-party tools to capture and log the IP addresses and other information people broadcast when visiting a website (and indeed *permits* such collection subject to an opt-out right), further demonstrates that the pen register law is at least ambiguous. Just three years after the California Legislature enacted the pen register law in 2015, the California Legislature in 2018 passed the California Consumer Privacy Act, Cal. Civ. Code § 1798.100 *et seq*. ("CCPA"), which, unlike the pen register law, expressly applies to the collection of IP addresses on a website and to the use of third-party web-based tools like those at issue. The CCPA comprehensively governs businesses' collection, use, and sharing of "personal information," which includes IP addresses, "Internet or other electronic network activity information," and "information regarding a consumer's interaction with an Internet website." *See id.* § 1798.140(v)(1). And instead of prohibiting websites from using tools to collect IP addresses without first obtaining visitors' opt-in consent (as Plaintiff argues is required by the pen register law), the CCPA permits websites to do so, subject to notice and a right to opt-out. *See, e.g.*, *id.* § 1798.120 (right to opt out of sales and sharing of personal information); *id.* § 1798.135 (establishing acceptable opt-out mechanisms). The fact that the California Legislature adopted an *opt-out* system for the CCPA at least suggests that the Legislature did not believe that the pen register law already required *opt-in* consent to collect such information.[7] And the CCPA has

[7] Plaintiff attempts to misconstrue Mashable's argument, suggesting that Mashable takes the position that the pen register law *conflicts* with the CCPA by prohibiting something that the CCPA permits. *See* Opp. at 12-14. This is not Mashable's argument; instead, Mashable contends that the fact that the CCPA specifically addresses Mashable's conduct under an opt-out regime at

been subsequently amended through a ballot measure and supplemented by regulations, none of which disturbed the CCPA's opt-out regime or its application to web-browsing data. *See* Cal. Prop. 24 (Nov. 3, 2020) (the "California Privacy Rights Act"); Cal. Code Regs. tit. 11, § 7000 *et seq*. There is simply no indication that the California legislature or regulators believed the pen register law's provisions applied to the collection of web-browsing data.[8]

In sum, had the Legislature intended to upend the Internet in 2015 by imposing an opt-in regime on the collection of IP addresses in the pen register law, it could have clearly said so. It did not, and Plaintiff cannot now rewrite California law to "turn ordinary citizens into criminals." *Nosal*, 676 F.3d at 862–63. The Court must "choose the interpretation least likely to impose penalties unintended" by the drafters. *Id.* at 863. The Court should dismiss Plaintiff's claim.

## III. CONCLUSION

For the reasons stated above and in Mashable's Motion, the Court should dismiss Plaintiff's FAC, and because Plaintiff's amendment shows that she will be unable to overcome the FAC's deficiencies, it should be dismissed with prejudice.

DATED: March 25, 2025

PERKINS COIE LLP

By: <u>/s/ James G. Snell</u>
James G. Snell

*Attorneys for Defendant Mashable, Inc.*

---

least renders the application of the pen register law's provisions to the same conduct highly ambiguous and improper under the rule of lenity.

[8] Indeed, the California Attorney General recently enforced the CCPA against online-retailer Sephora. *See* Complaint, *People v. Sephora, USA*, No. CGC-22-601380, ¶ 2 (Cal.Super. Aug. 23, 2022). In that case, the Attorney General took issue with the fact that Sephora failed to provide visitors with notice and the ability to opt out of sharing information about their visits with third parties as required by the CCPA. The California Attorney General has the authority to prosecute violations of the pen register law. *See* Cal. Penal Code § 638.51(c) (violations can be punished by fine and/or imprisonment). But the Attorney General did not do so here. The failure to enforce the pen register law against Sephora further illustrates the ambiguity in Plaintiff's position and supports that Plaintiff's allegations cannot survive the rule of lenity.