James G. Snell (CA State Bar No. 173070)
JSnell@perkinscoie.com
Timothy M. Carter (CA State Bar 335212)
TCarter@perkinscoie.com
**PERKINS COIE LLP**
3150 Porter Drive
Palo Alto, California 94304-1212
Telephone: +1.650.838.4300
Facsimile: +1.650.838.4350

Mikella M. Hurley (Admitted *pro hac vice*)
MHurley@perkinscoie.com
**PERKINS COIE LLP**
700 Thirteenth Street, N.W., Suite 800
Washington, D.C. 20005-3960
Telephone: +1.202.654.6200
Facsimile: +1.202.654.6211

Attorneys for Defendant MASHABLE, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

DAWN FREGOSA, individually and on behalf of all others similarly situated,

Plaintiff,

v.

MASHABLE, INC.,

Defendant.

Case No. 3:25-CV-01094-CRB

[Removed from the Alameda County Superior Court, Case No. 24CV103566]

**DEFENDANT MASHABLE, INC.'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

[*Request for Judicial Notice filed concurrently herewith*]

DATE: August 8, 2025
TIME: 10:00 a.m.
CTRM: 6, 17th Floor

Complaint Filed: December 17, 2024
Action Removed: February 3, 2025

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on August 8, 2025, at 10 a.m. or as soon thereafter as the matter may be heard, Defendant Mashable, Inc. ("Mashable") will bring on for hearing in Courtroom 6 (17th Floor) of the above-captioned court located at 450 Golden Gate Avenue, San Francisco, California 94102, a Motion seeking an Order to Dismiss Plaintiff's Second Amended Complaint.

## STATEMENT OF RELIEF SOUGHT - L.R. 7-2(B)(3)

Mashable moves for dismissal pursuant to Fed. Rules of Civ. Proc., Rule 12(b)(6), on the grounds that Plaintiff fails to satisfy the basic pleading standards required to state a claim for relief.

This Motion is based upon this Notice of Motion, the supporting Memorandum of Points and Authorities, the Request of Judicial Notice and attached exhibits, the pleadings and other papers on file herein, and upon such oral argument as the Court may entertain at the hearing on this Motion.

## SUMMARY OF ARGUMENT

Plaintiff Dawn Fregosa's Second Amended Complaint must be dismissed pursuant to Fed. Rules of Civ. Proc., Rule 12(b)(6) for the following reasons:

1. ***California's pen register law does not apply here***. As evident from its legislative history, text, and recent legislative developments, California's Pen Register Trap and Trace Act (the "Pen Register Act" or the "Act") does not apply to the conduct Plaintiff alleges in this suit. The Pen Register Act, like the federal law upon which it is based, was only intended to apply to person-to-person communications, i.e., communications between or among people that occur on services like phone, text messages, email, and the like. It was never intended to govern commercial websites that do not provide people with any means to communicate with one another, meaning that the Act simply does not govern Mashable's ability to collect information about site visitors.

2. ***The SAC fails to state a pen register claim***. Even if the Pen Register Act applied to the conduct alleged in the SAC, Plaintiff still fails to state a claim for at least four independently sufficient reasons:

a. The conduct alleged in the SAC does not meet the basic definition of a "pen register." Plaintiff alleges that Mashable (and several third parties) installed and used a pen register to capture Plaintiff's IP address, her "Device Metadata," and other identifiers associated with Plaintiff's browser. Plaintiff analogizes this data to her own phone number. But this is not the type of information that a pen register captures. The law is clear: in telephonic terms, pen registers capture the *outgoing* numbers that someone dials from a monitored phone, and not the caller's own phone number.

b. In order to state a claim for an unlawful pen register, Plaintiff must allege that she engaged in some form of communication with content. She has not done so. Instead, the SAC merely alleges that Plaintiff visited Mashable's website. Simply accessing a public website is not a communication with content, and is insufficient to state a claim for a pen register.

c. Even if Plaintiff alleged a communication with content, her claim would still fail because Mashable would be the intended recipient of that communication. And as Plaintiff has previously conceded to this Court, the Pen Register Act does not prohibit a party to a communication from capturing information about those who contact them or communicate with them.

d. Most of the SAC's allegations pertain to the alleged actions of third parties who are not before this Court. None of these allegations can provide a basis for Mashable's liability because the Pen Register Act does not recognize aiding and abetting liability.

3. ***The rule of lenity requires dismissal with prejudice***. Even if Plaintiff had a colorable pen register claim against Mashable, the Pen Register Act is, at a minimum, grievously ambiguous as to its applicability here. The Act does not contain any language clearly indicating that it applies to the use of web-based technologies like those at issue here, as contrasted with the California Consumer Privacy Act ("CCPA"), which unequivocally does. Recent legislative developments further demonstrate that the California Legislature never intended the Act to apply

to the conduct alleged here. Because the Pen Register Act is a penal statute, the rule of lenity requires that the Court read it narrowly and to limit it to conduct clearly covered, meaning that Plaintiff's claim must be dismissed.

Dated: June 4, 2025

**PERKINS COIE LLP**

By: */s/ James G. Snell*
James G. Snell
Mikella M. Hurley
Timothy M. Carter

Attorneys for Defendant MASHABLE, INC.

## TABLE OF CONTENTS


Page

MEMORANDUM OF POINTS AND AUTHORITIES ........ 1

I. INTRODUCTION ........ 1

II. STATEMENT OF ISSUES TO BE DECIDED – L.R. 7-4(3) ........ 2

III. BACKGROUND ........ 2

IV. ARGUMENT ........ 3

A. The Pen Register Act is Not Applicable to the Mashable Website ........ 4

1. The Pen Register Act, Like its Federal Analog, Was Only Intended to Apply to Person-to-Person Communications ........ 4

2. The Act's Text Confirms That It Does Not Apply Here ........ 6

3. Recent Legislative Activity Confirms the Act Does Not Apply ........ 8

B. Even if the Act Applies Here, the SAC Still Fails to State a Claim ........ 8

1. The SAC Does Not Allege a Pen Register ........ 9

2. The Complaint Does Not Allege A "Communication" With Content ........ 10

3. Parties to the "Communication" are Exempt ........ 10

4. The Pen Register Act Does Not Extend to Aiding and Abetting ........ 11

C. The Rule of Lenity Requires Dismissal ........ 12

V. CONCLUSION ........ 15

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Augustine v. Great Wolf Resorts, Inc.*,
No. 3:23-cv-00281, 2024 WL 3450967 (S.D. Cal. July 18, 2024) ........................................ 10

*Boim v. Holy Land Found. for Relief & Dev.*,
549 F.3d 685 (7th Cir. 2008)................................................................................................. 12

*Capitol Recs. Inc. v. Thomas-Rasset*,
No. CIV 06-1497(MJD/RLE), 2009 WL 1664468 (D. Minn. June 11, 2009) ....................... 11

*Casillas v. Cypress Ins. Co.*,
770 F. App'x 329 (9th Cir. 2019) ............................................................................................ 7

*Casillas v. Transitions Optical, Inc.*,
No. 23STCV30742, 2024 WL 4873370 (Cal. Super. Sep. 9, 2024)...................................... 13

*Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*,
511 U.S. 164 (1994) ....................................................................................................... 1,11, 12

*Crowley v. Cybersource Corp.*,
166 F. Supp. 2d 1263 (N.D. Cal. 2001) ................................................................................... 7

*Gonzales v. Uber Techs., Inc.*,
305 F. Supp. 3d 1078 (N.D. Cal. 2018) .............................................................................. 6, 10

*Heiting v. Taro Pharms. USA, Inc.*,
709 F. Supp. 3d 1007 (C.D. Cal. 2023).................................................................................... 6

*In re Application of U.S. for an Ord. Authorizing use of A Pen Reg. & Trap On (XXX) Internet Serv. Acct./User Name, (xxxxxxxx@xxx.com)*, 396 F. Supp. 2d 45 (D. Mass. 2005)..................................................... 7

*In re Carrier IQ, Inc.*,
78 F. Supp. 3d 1051 (N.D. Cal. 2015) .................................................................................... 12

*In re U.S. for an Ord. Authorizing Roving Interception of Oral Commc'ns*,
349 F.3d 1132 (9th Cir. 2003)........................................................................................... 2, 7, 9

*Leocal v. Ashcroft*,
543 U.S. 1 (2004) .................................................................................................................... 12

*Licea v. Hickory Farms LLC*,
No. 23STCV26148, 2024 WL 1698147 (Cal. Super. Mar. 13, 2024) ................................... 13

*Lopez v. Apple, Inc.*,
519 F. Supp. 3d 672 (N.D. Cal. 2021) ..................................................................................... 7

TABLE OF AUTHORITIES (continued)

Page(s)

*Mirmalek v. L.A. Times Commc'ns LLC*,
No. 24-CV-01797-CRB, 2024 WL 5102709 (N.D. Cal. Dec. 12, 2024)................................. 4

*People v. Sephora, USA, Inc.*,
No. CGC-22-601380 (Cal. Super. Ct. S.F. Cty. filed Aug. 23, 2022) .................................. 14

*Rodriguez v. Plivo Inc.*,
No. 24STCV08972, 2024 WL 5184413 (Cal. Super. Oct. 2, 2024) ...................................... 10

*Sanchez v. Cars.com Inc.*,
No. 24STCV13201, 2025 WL 487194 (Cal. Super. Jan. 27, 2025) ........................................ 5

*Twitter, Inc. v. Garland*,
61 F.4th 686 (9th Cir. 2023)................................................................................................... 10

*United States v. Ellis*,
270 F. Supp. 3d 1134 (N.D. Cal. 2017) .................................................................................. 9

*United States v. Gonzalez*,
412 F.3d 1102 (9th Cir. 2005).................................................................................................. 9

*United States v. Lanier*,
520 U.S. 259 (1997) ........................................................................................... 12, 13, 15

*United States v. N.Y. Tel. Co.*,
434 U.S. 159 (1977) ................................................................................................................. 2, 9

*United States v. Nosal*,
676 F.3d 854 (9th Cir. 2012)............................................................................ 12, 13, 14

*United States v. Taketa*,
923 F.2d 665 (9th Cir. 1991)..................................................................................................... 9

*Vita v. New Eng. Baptist Hosp.*,
243 N.E.3d 1185 (Mass. 2024) ........................................................................................... 6, 13

*Wis. Pro. Police Ass'n v. Pub. Serv. Comm'n of Wis.*,
555 N.W.2d 179 (Wis. Ct. App. 1996) ................................................................................ 11

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021)............................................................................. 6, 10

**STATUTES**

18 U.S.C. § 3123 ........................................................................................................................ 5

18 U.S.C. § 3127(3) .................................................................................................................... 3

TABLE OF AUTHORITIES (continued)

Page(s)

Cal. Civ. Code § 1798.120 .......... 13

Cal. Code Regs. tit. 11 § 7000 .......... 14

Cal. Penal Code § 631(a) .......... 12

Cal. Penal Code §§ 638.50(a), (b) .......... 6, 7, 8, 10

Cal. Penal Code § 638.50(c) .......... 3, 9

Cal. Penal Code §§ 638.51(a)-(b) .......... 8, 11

Cal. Penal Code §§ 638.52(d)(1), (3) .......... 6

Cal. Penal Code § 1546(e) .......... 7

California Consumer Privacy Act .......... 2, 13

California Privacy Rights Act .......... 14

**Other Authorities**

147 Cong. Rec. S10990-02 .......... 4

*Assembly Bill Policy Committee Analysis: Hearing on A.B. 929 Before the Assemb. Comm. on Pub. Safety*, 2015-2016 Reg. Sess. (Cal. 2015) .......... 5

*Senate Public Safety Committee Analysis: Hearing on S.B. 690 Before the Sen. Comm. on Pub. Safety*, 2025-2026 Reg. Sess. (Cal. 2025) .......... 8

*Senate Floor Analysis – Third Reading of S.B. 690 Before the S. Rules Comm.*, 2025-2026 Reg. Sess. (Cal. 2025) .......... 8

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The Court should dismiss Plaintiff Dawn Fregosa's ("Plaintiff's"), Second Amended Complaint ("SAC") without leave to amend pursuant to Rule 12(b)(6) because it fails to state a claim. Plaintiff, on behalf of a putative class of visitors to the Mashable.com website, alleges that Mashable, Inc. ("Mashable") violated the law because, like most websites, it used common technology like pixels and cookies (which Plaintiff refers to as "Trackers") to collect IP addresses and other information that visitors broadcast when they visit the website. Plaintiff has already admitted to this Court that Mashable has the right to capture this information from visitors to its website. Nevertheless, Plaintiff asserts that Mashable installed and used the so-called Trackers, which Plaintiff claims are illegal "pen registers," in violation of the California Pen Register Trap and Trace Act, Cal. Penal Code § 638.51 (2024) *et seq.* (the "Pen Register Act" or the "Act").

Plaintiff's claim fails. At the outset, Plaintiff ignores both statutory language and legislative history that establish that the Pen Register Act applies only to person-to-person forms of communication (such as phone calls and emails), and not the collection of basic information about visitors to commercial websites.

But even if the Act plausibly applied here (it does not), Plaintiff fails to state a claim for several, independently sufficient reasons. *First*, by definition, a "pen register" captures the *outgoing numbers a person dials* (or equivalent information), rather than that person's own phone number (or, as alleged in this case, Plaintiff's own IP address, "Device Metadata," and certain "unique user identifiers" generated through the use of the so-called Trackers). *Second*, the SAC fails to allege a "communication" with content, which is an essential element of a claim under the Pen Register Act. *Third*, even if Plaintiff had alleged a communication with content, Mashable would be the intended recipient of that communication. And as Plaintiff conceded in prior briefing, like the user of caller ID, the Pen Register Act does not prohibit parties from capturing the phone numbers, IP addresses, or similar identifiers of those who communicate with them. *Fourth*, to the extent that Plaintiff seeks to hold Mashable liable for the alleged acts of third parties, the Pen Register Act does not authorize aiding-and-abetting claims.

And finally, even if there were colorable arguments that the Pen Register Act applies here and Plaintiff had alleged the essential elements of a pen register claim, the Act's scope is highly ambiguous at a minimum, meaning that the SAC must still be dismissed with prejudice pursuant to the rule of lenity.

## II. STATEMENT OF ISSUES TO BE DECIDED – L.R. 7-4(3)

Whether this Court should dismiss Plaintiff's Complaint against Mashable with prejudice under Fed. Rules of Civ. Proc., Rule 12(b)(6), for failure to state a claim upon which relief can be granted.

## III. BACKGROUND

The Pen Register Act is California's version of a decades-old federal criminal statute developed to govern "pen registers" and "trap and trace" devices. Pen registers and trap and trace devices are common law-enforcement surveillance tools that first emerged in the era of wire communications, and particularly telephonic communications. In popular parlance, a "pen register," or a "dialed number recorder" ("DNR"), is "a device that registers the numbers dialed from a telephone." *Pen Register*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/penregister (last visited May 30, 2025). Courts consistently apply this same definition, describing a "pen register" as a "device that records the [outgoing] numbers *dialed* on a telephone," but that "does not overhear oral communications." *United States v. N.Y. Tel. Co.*, 434 U.S. 159, 161 n.1 (1977) (emphasis added); *see also, e.g.*, *In re U.S. for an Ord. Authorizing Roving Interception of Oral Commc'ns*, 349 F.3d 1132, 1136 n.7 (9th Cir. 2003) ("A pen register is a mechanical device that *records the numbers dialed on a telephone* by monitoring the electrical impulses caused when the dial on the telephone is released.") (emphasis added). As communications technologies evolved, the federal statutory definition of a "pen register" was broadened to encompasses more modern, electronic forms of communication like email, voice over Internet protocol ("VoIP") calls, and web-based chats, as discussed in greater detail below. California's Pen Register Act, which substantively adopted the definition of its federal analog, defines a "pen register" as:

> [A] device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a

> wire or electronic communication is transmitted, but not the contents of a communication.

Cal. Penal Code § 638.50(c); *see also* 18 U.S.C. § 3127(3).

Plaintiff accuses Mashable of a single count of violating the Pen Register Act. *See* SAC ¶¶ 4, 218-30. But the SAC's 230 paragraphs and 64 pages of allegations say relatively little about Mashable. Instead, Plaintiff dedicates the lion's share of the SAC to the alleged conduct of third parties not before the Court. *See, e.g.,* SAC ¶¶ 54, 61, 63, 65-81, 86, 88, 90-93, 98-108, 110-11, 115, 117-21, 126-137, 141-44, 146-47, 150-53.

Plaintiff's allegations about Mashable's conduct are limited, and essentially boil down to the following:

- Mashable operates the mashable.com website, "which is a digital news and entertainment offering with focus areas such as tech, science, social media, and shopping." SAC ¶ 1.
- Plaintiff visited the Mashable website using her desktop browser. SAC ¶ 187.
- Code that Mashable "programmed" on its website "cause[d] the Trackers to be installed" on Plaintiff's browser, which "then cause[d] the browser to send [Plaintiff's] identifying information" to Mashable and third parties, including Plaintiff's IP address, "Device Metadata" (consisting of device type, browser type, and unique and persistent identifiers), and certain "unique user identifier[s]" that the Trackers set on Plaintiff's browser. *Id.* ¶¶ 2, 22-25, 188-89, 223-26.
- Mashable (along with the third parties) then received this information and used it "for targeted marketing and advertising" purposes, among other things. *Id.* ¶¶ 2, 22-25, 188-89, 226.
- Mashable thereby violated the Pen Register Act "[b]y installing and using the Trackers without Plaintiff's prior consent and without a court order." *Id.* ¶ 4, *see also, e.g.*, ¶¶ 191, 218-30.

## IV. ARGUMENT

The Court should dismiss the SAC with prejudice pursuant to Rule 12(b)(6) because Plaintiff does not (and cannot state a claim) for multiple, independently sufficient reasons.

### A. The Pen Register Act is Not Applicable to the Mashable Website

The Court should dismiss the SAC with prejudice because the Act does not apply to the routine collection of information generated when people visit commercial websites like Mashable's, which do not facilitate person-to-person communications. To the contrary, the Pen Register Act's legislative history, statutory language, and recent legislative developments make clear that the Act is intended to address communications between and among *people* on services like telephone and email, and not the collection if IP addresses and Device Metadata from an individual visiting a website.[1]

#### 1. The Pen Register Act, Like its Federal Analog, Was Only Intended to Apply to Person-to-Person Communications

Congress enacted the country's first pen register statute—the federal Pen Register Act, 18 U.S.C. § 3121 *et seq.*—in 1986. The federal Pen Register Act established a baseline prohibition on capturing outbound calling information (subject to certain, limited exemptions), while providing law enforcement a mechanism to obtain pen registers. *See id.* §§ 3121-3125. The federal Act's legislative history reflects that Congress originally understood that pen registers only captured information about who was speaking with whom—i.e., person-to-person communications—on telephone lines. *See, e.g.*, S. REP. NO. 99-541, at 10 (1986), as reprinted in 1986 U.S.C.C.A.N. 3555, 3564 (pen registers "record the telephone numbers to which calls have been placed from a particular telephone").

Congress expanded the federal Act in 2001 to account for emerging technologies such as cellular networks and email, but the legislative history reflects Congress's continued intent that the law apply only to communications between or among *people*. *See* 147 CONG. REC. S10990-02, S10999-1000 (daily ed. Oct. 12, 1999 (statement of Sen. Leahy), 2001 WL 1297566 (the "rapid computerization of the *telephone system* has changed the tracing process," and functions

[1] To be clear, Mashable does not maintain that the Act is limited only to telephones. *See Mirmalek v. L.A. Times Commc'ns LLC*, No. 24-CV-01797-CRB, 2024 WL 5102709 at *3-4 (N.D. Cal. Dec. 12, 2024) (rejecting defendant's argument that the Pen Register Act applies only to telephone communications). Mashable contends that the Act governs the collection of dialing, routing, addressing, and signaling information for communications that occur on services like phone, email, and other services that allow people to engage in substantive communications with one another.

"normally accomplished by physical hardware components attached to *telephone lines*" were now "typically performed by computerized collection and retention of *call routing information passing through a communications system*") (emphasis added). Indeed, the text of the federal Act says nothing about its application to collection of information related to visits to commercial websites that do not allow people to communicate directly with one another.

California law enforcement could not obtain pen register orders until 2015, when the Legislature enacted the Pen Register Act. *See* A.B. 929, 2015-2016 Reg. Sess. (Cal. 2015). The Legislature adopted the structure, text, and definitions of the federal Act with few substantive changes, and the California Pen Register Act's prohibitions and exemptions are virtually identical to those in the federal Act. *Compare* 18 U.S.C. § 3123 *with* Cal. Penal Code § 638.51.

As with the federal Act, the legislative history of California's Pen Register Act also reflects its focus on person-to-person communications, and particularly, on telephonic communications. A 2015 bill analysis states that pen registers and trap and trace devices "generally track incoming and outgoing telephone calls," and show "which *people*" are "*communicating with one another* and at what times." *Assembly Bill Policy Committee Analysis: Hearing on A.B. 929 Before the Assemb. Comm. on Pub. Safety*, 2015-2016 Reg. Sess. (Cal. 2015) at 10-11 (emphasis added).

In sum, nothing in the legislative history of the Pen Register Act (or its federal analog) suggests that the drafters intended to ensnare the operators of publicly accessible commercial websites like Mashable's that do not enable person-to-person communications through services like phone, email, and the like. *See* RJN, Ex. A, *Sanchez v. Cars.com Inc.*, No. 24STCV13201, 2025 WL 487194, at *3 (Cal. Super. Jan. 27, 2025) ("the legislative history of the CIPA suggests that "pen register" and "track and trace devices" refers to devices or processes that are used to record or decode dialing, routing, addressing, or signaling information from telephone numbers"). Instead, everything suggests that the legislatures intended to cover telephone and other similar communications between people. The Mashable website is a "digital news and entertainment offering," SAC ¶ 1, and Plaintiff does not (and cannot) allege that Mashable offers website

visitors anything remotely approaching the types of communication services that the Act's drafters anticipated would be within the Act's scope.

**2. The Act's Text Confirms That It Does Not Apply Here**

This same limited focus is evident from the text of the Pen Register Act itself. For example, the Act's requirements for pen register orders refer to "subscribers" and "telephone line[s]," language that only logically applies to person-to-person communication services. *See* Cal. Penal Code §§ 638.52(d)(1), (3) (order must identify "the person to whom is leased or in whose name is listed the *telephone line*," and the "number" and "physical location of the *telephone line*") (emphasis added); *see also id.* § 638.52(d)(5)(g) ("the person owning or leasing the line" must not notify the "listed subscriber").

By definition, a pen register operates on a communication that conveys some "content." *See* Cal. Penal Code § 638.50(b) (a pen register records "information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the *contents of a communication*.") (emphasis added); §§ 638.52(d)(1), (3), (5)(g). This "content" involves the "substance, purpo[rt], or meaning" of an "intended message" that is distinct from "record information regarding the characteristics of the message." *Heiting v. Taro Pharms. USA, Inc.*, 709 F. Supp. 3d 1007, 1017-18 (C.D. Cal. 2023) (cleaned up). People convey the substance, purport, or meaning of a message when, for example, they talk on the phone or exchange emails. There is no support for stretching a statute designed to address person-to-person communications like telephone calls and their equivalents to the collection of information from visitors to commercial websites. As one court recently noted with respect to a similar statute, instead of "having a personal conversation or sending a personal message," website visitors simply "access[] publicly available data." *Vita v. New Eng. Baptist Hosp.*, 243 N.E.3d 1185, 1205 (Mass. 2024) (no wiretapping claim for web-tracker under state law because interactions with a commercial website did not entail "person-to-person" communication); *see also, e.g.*, *Gonzales v. Uber Techs., Inc.*, 305 F. Supp. 3d 1078, 1086 (N.D. Cal. 2018) ("opening a webpage" is "not a communication with content"); *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082 (C.D. Cal. 2021) ("keystrokes, mouse clicks, pages viewed" are not "contents" of a "communication").

The fact that the Act's exemptions apply only to "electronic or wire communication service providers" further confirms the Pen Register Act's limited scope. Cal. Penal Code §§ 638.51(b)(1)-(5). Related provisions of California law define an "electronic communications service" as one that provides subscribers "the ability to send or receive electronic communications." Cal. Penal Code § 1546(e).[2] Courts interpreting the same term under federal law consistently hold that such services include, e.g., "email provider[s]" because they "permit users to communicate directly with one another," *Casillas v. Cypress Ins. Co.*, 770 F. App'x 329, 330 (9th Cir. 2019), and "internet service providers" that enable users to engage in "communications over the internet." *In re Application of U.S. for an Ord. Authorizing use of A Pen Reg. & Trap On (XXX) Internet Serv. Acct./User Name, (xxxxxxxx@xxx.com)*, 396 F. Supp. 2d 45, 47 (D. Mass. 2005).

But courts consistently hold that ordinary websites do not qualify among these services. *See, e.g.*, *In re U.S. for an Ord. Pursuant to 18 U.S.C. § 2705(b)*, 289 F. Supp. 3d 201, 210 (D.D.C. 2018) (unlike "a user-to-user messaging service," a "service that merely allows users to contact or interact with the company electronically" is not an electronic communication service); *Crowley v. Cybersource Corp.*, 166 F. Supp. 2d 1263 (N.D. Cal. 2001) (online retailer was not electronic communication service). Indeed, the argument "that sending information to servers" makes something an electronic communication service would expand the term to "all online services and thus render [it] meaningless." *Lopez v. Apple, Inc.*, 519 F. Supp. 3d 672, 687 (N.D. Cal. 2021). And it would be illogical to find that the Act applies to individual websites, but that such websites cannot not rely on the Act's exemptions.

Like the federal Act, the text of California's Pen Register Act says nothing about whether or how it applies to ordinary commercial websites that do not facilitate person-to-person forms of communication using services like phone or email. And to hold that it does so would read language into the Act that would expose any website to claims it violated criminal law by

---

[2] The term "wire communication service" encompasses services that "use[] wire and cable connections to connect calls." *In re U.S. for an Ord. Authorizing Roving Interception of Oral Commc'ns*, 349 F.3d 1132, 1139 n.14 (9th Cir. 2003) (interpreting the federal Wiretap Act, which shares common definitions with the federal Pen Register Act).

engaging in routine commercial functions. *See, e.g.*, Cal. Penal Code §§ 638.51(b)(1)-(3) (service-provider exemptions for routine commercial purposes). Because Mashable.com is alleged to be a "digital news and entertainment offering," SAC ¶ 1, and not a communication service that allows people to speak with one another or exchange messages, the Pen Register Act is inapplicable and Plaintiff's sole claim must be dismissed with prejudice.

**3. Recent Legislative Activity Confirms the Act Does Not Apply**

A recent legislative initiative in California—Senate Bill 690—also demonstrates that members of the California Legislature disagree with Plaintiff's theory that the Pen Register Act extends to the conduct alleged here. *See* S.B. 690, 2025-2026 Reg. Sess. (Cal. 2025) ("SB 690"). According to the bill's sponsor, SB 690 aims to stop "stop the thousands of shakedown letters and lawsuits against California businesses of all sizes for typical business activities, like website analytics or online advertising that are already governed by" other laws. *Senate Floor Analysis – Third Reading of S.B. 690 Before the S. Rules Comm.*, 2025-2026 Reg. Sess. (Cal. 2025) at 8. As a proponent of the bill testified at a recent hearing of the Senate Committee on Public Safety, the provisions of the Act, which were developed to protect the privacy of peoples' phone calls, "w[ere] never intended to apply" to the use of commercial tools for "website analytics or online advertising." *Senate Public Safety Committee Analysis: Hearing on S.B. 690 Before the Sen. Comm. on Pub. Safety*, 2025-26 Reg. Sess. (Cal. 2025) at 10-11.

**B. Even if the Act Applies Here, the SAC Still Fails to State a Claim**

Even if the Pen Register Act was not limited to services that facilitate person-to-person communications, the Court should still dismiss the SAC with prejudice because it fails to state a claim. The Act contains a single, narrow prohibition that makes it unlawful to "install or use" a pen register without either a court order or one of the Act's enumerated exemptions for service providers. Cal. Penal Code §§ 638.51(a)-(b).[3] Plaintiff's pen register claim—which is the sole basis for her suit against Mashable—fails for at least four independently sufficient reasons.

---

[3] The Pen Register Act does not govern the collection of any personal data beyond the narrow category of "dialing, routing, addressing, and signaling" information. *See* Cal. Penal Code §§ 638.50(a), (b). Nor does it govern the subsequent disclosure of any such information once collected. *See id.* § 638.51.

### 1. The SAC Does Not Allege a Pen Register

Plaintiff's core allegation is that Mashable programmed code on its website that allowed Mashable and third parties to collect *Plaintiff's IP address* (along with Device Metadata and other identifiers)—which she alleges is the Internet equivalent of her phone number—when Plaintiff accessed the website. *See, e.g.*, SAC ¶¶ 2, 22-25, 52-54, 188-89, 223-26. This allegation, even if true, does not meet the definition of a pen register. In the Ninth Circuit and across the country, courts have long agreed that, by definition, a pen register records *the called party's information*, and not the calling party's information. Here, Plaintiff is claiming she is the equivalent of the "calling party," not the "called party." Because a pen register is "a device that records the *numbers dialed* from a monitored telephone," Plaintiff's pen register claim is nonsensical. *United States v. Taketa*, 923 F.2d 665, 668 n.1 (9th Cir. 1991) (emphasis added); *see also, e.g.*, *N.Y. Tel. Co.*, 434 U.S. at 161 n.1 (pen register "records the numbers dialed on a telephone"); *In re U.S.*, 349 F.3d at 1136 n. 7 ("A pen register is a mechanical device that records the numbers dialed on a telephone by monitoring the electrical impulses caused when the dial on the telephone is released.").[4]

Plaintiff admits that "[h]istorically, law enforcement used 'pen registers' to record the numbers of outgoing calls from a particular telephone line." SAC ¶ 17. But Plaintiff then misconstrues this clear and settled law, suggesting that "for example, if a user sends an email, a 'pen register' might record the email address it was sent from because this is the user's *outgoing* information." *Id.* ¶ 18. Not so. The "email address [an email] was sent from" is equivalent to a calling party's number, not "the *numbers dialed* from a monitored telephone." *Taketa*, 923 F.2d at 668 n.1 (emphasis added). As one California court recently concluded when dismissing a similar claim, "Plaintiff's IP address is not the type of information collected by pen registers," because

[4] By contrast, a "trap and trace device"—which the SAC does not allege and is not at issue here—captures the "incoming electronic or other impulses that *identify the originating number* or other dialing, routing, addressing, or signaling information reasonably likely to identify the *source* of a wire or electronic communication, but not the contents of a communication"). Cal. Penal Code § 638.50(c) (emphasis added). In other words, a trap and trace device "record[s] the [numbers of] incoming calls" to a monitored telephone. *United States v. Gonzalez*, 412 F.3d 1102, 1112 (9th Cir. 2005); *see also, e.g., United States v. Ellis*, 270 F. Supp. 3d 1134, 1148 (N.D. Cal. 2017) (defining a "trap and trace" as "a device which captures information from incoming calls made to the target phone").

pen registers "collect outgoing information, such as outgoing telephone numbers, outgoing email addresses." RJN, Ex. B, *Rodriguez v. Plivo Inc.*, No. 24STCV08972, 2024 WL 5184413, at *2 (Cal. Super. Oct. 2, 2024).

**2. The Complaint Does Not Allege A "Communication" With Content**

Plaintiff also does not allege that she engaged in any form of communication with content, as required to state a pen-register claim. By definition, a pen register must capture information about a *communication*, but not that communication's contents. *See* Cal. Penal Code § 638.50(b) (pen register records information "transmitted by an instrument or facility from which a wire or electronic *communication* is transmitted, but not the *contents*") (emphasis added). *See, e.g.*, *Twitter, Inc. v. Garland*, 61 F.4th 686, 691 n.2 (9th Cir. 2023) ("Pen registers and trap and trace devices, respectively, capture the phone number associated with an outgoing or incoming call (or other communication) on a given communication line.").

Accordingly, to state a pen-register claim, Plaintiff must allege that she exchanged some sort of communication with Mashable that contained content. She has not. While the SAC broadly asserts that IP addresses are "the *means* through which [a] user actually communicates with [a] website and the Internet at large," SAC ¶¶ 32, 34 (emphasis added), it does not allege any actual "communications" or "content" of communications with Mashable or anyone else. Instead, the SAC merely alleges that Plaintiff "visited" the website. *See, e.g.*, *id.* ¶¶ 52-53. But simply "opening a webpage or mobile application is not a communication with content." *Gonzales*, 305 F. Supp. 3d at 1086; *see also, e.g.*, *Augustine v. Great Wolf Resorts, Inc.*, No. 3:23-cv-00281, 2024 WL 3450967, at *6 (S.D. Cal. July 18, 2024) (plaintiff "fail[ed] to show *communications* between Plaintiff" and the website and did not allege that she "intended to convey a message") (emphasis original). Nor are keystrokes and mouse clicks. *See, e.g.*, *Yoon*, 549 F. Supp. 3d at 1082 ("keystrokes, mouse clicks, pages viewed" are not "contents" of a "communication"). Accordingly, Plaintiff's claim fails.

**3. Parties to the "Communication" are Exempt**

Even if the SAC alleged any sort of "communication" with content (it does not), Plaintiff's claim would still fail because Mashable, as the website operator, would be the other

party to that supposed communication. Since the advent of technologies like caller ID (which are devices or processes that capture and display to the called party the telephone number of a calling party), courts have recognized that PRTT laws do not prohibit the recipient of a communication from capturing information about the identity of someone who calls or contacts them. *See Wis. Pro. Police Ass'n v. Pub. Serv. Comm'n of Wis.*, 555 N.W.2d 179, 188 (Wis. Ct. App. 1996). As one court explained nearly three decades ago, pen register laws were "designed to protect telephone users from unauthorized third-party or governmental intrusions," and not "to protect telephone users from one another." *Id.* Courts have applied this same logic to the more recent technologies and have held that PRTT laws "cannot be intended to prevent individuals who receive electronic communications from recording the IP information sent to them." *Capitol Recs. Inc. v. Thomas-Rasset*, No. CIV 06-1497(MJD/RLE), 2009 WL 1664468, at *3 (D. Minn. June 11, 2009) (applying federal PRTT Act in context of peer-to-peer file sharing). Indeed, Plaintiff conceded this point in prior briefing in this case, stating that "[l]ike a party to the communication," Mashable "is not liable for its own collecting of IP addresses," and that "Plaintiff's claim is about the collection of her information by *third parties*—as caused by Defendant's actions." Plfs' Opp. to Mashable's Mot. to Dismiss Plfs' First Amend. Compl. (ECF No. 14), at 11. Plaintiff's allegation that Mashable installed and used a pen register therefore fails for the additional reason that Mashable, as a party to the supposed "communication" is exempt from the Pen Register Act's prohibitions.

**4. The Pen Register Act Does Not Extend to Aiding and Abetting**

Plaintiff's SAC contains voluminous allegations about the supposed actions of third parties. *See, e.g.*, SAC ¶¶ 54, 61, 63, 65-81, 86, 88, 90-93, 98-108, 110-11, 115, 117-121, 126-137, 141-44, 146-47,150-53. Those allegations are irrelevant to the claim against Mashable and the Court should ignore them because the Pen Register Act does not authorize aiding and abetting liability. *See* Cal. Penal Code § 638.51(a) (prohibiting, in relevant part, only the "install[ation] or use a pen register," except under certain conditions). Legislatures "kn[ow] how to impose aiding and abetting liability" when they wish to do so. *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 176 (1994). When a legislature "enacts a statute under which

a person may sue and recover damages from a private defendant for the defendant's violation of some statutory norm, there is no general presumption that the plaintiff may also sue aiders and abettors." *Id.* at 182. And the California Legislature did so in other portions of CIPA that govern wiretapping. *See* Cal. Penal Code § 631(a) (making it crime for "[a]ny person" to "aid[], agree[] with, employ[], or conspire[] with any person or persons to" engaged in unlawful wiretapping). "[S]tatutory silence on the subject of secondary liability means there is none." *Boim v. Holy Land Found. for Relief & Dev.*, 549 F.3d 685, 689 (7th Cir. 2008). For example, courts construing the federal Wiretap Act dismiss secondary aiding-and-abetting claims because that law, like the Pen Register Act, does not expressly authorize them. *See, e.g., In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1089 (N.D. Cal. 2015) ("[C]ourts should presume that Congress does not create a cause of action for aiding and abetting unless it specifically says so in the text.") (cleaned up). The same result applies here.

### C. The Rule of Lenity Requires Dismissal

Even if the Court finds that the SAC could potentially state a colorable pen register claim against Mashable, the Court should still dismiss this case under the rule of lenity. When a penal statute is ambiguous, the "rule of lenity" requires courts to limit its reach "to conduct clearly covered." *See United States v. Lanier*, 520 U.S. 259, 266 (1997). This rule applies with equal force "in a criminal or noncriminal context" to ensure consistency. *Leocal v. Ashcroft*, 543 U.S. 1, 11 n.8 (2004). When in doubt, the Court "must choose the interpretation least likely to impose penalties unintended" by the drafters. *United States v. Nosal*, 676 F.3d 854, 863 (9th Cir. 2012) (citation omitted).

For the reasons detailed at length above, the Pen Register Act is at a minimum highly ambiguous as to whether it applies to Mashable in the ways Plaintiff alleges, and none of the alleged conduct is "clearly covered" by the Pen Register Act. When the Legislature enacted the Pen Register Act in 2015, the web-based tools at issue here were commonplace, and the Legislature could have drafted the Act to clearly cover them if it had wanted to do so. But nowhere does the Pen Register Act expressly indicate that it governs the use of web-based tools used to capture or log traffic on publicly available websites, meaning that it is at least highly

ambiguous. *See Nosal*, 676 F.3d at 863; *Vita*, 494 Mass. at 848 (applying the rule of lenity to wiretapping claim because "the transmission of data about a user's web browser configuration and IP address bear little resemblance" to the contexts for which wiretapping laws were developed). To hold that the Pen Register Act applies here would have the further effect of criminalizing the use of numerous tools and technologies that permit the modern Internet to function smoothly, for example, traffic-monitoring software that captures IP addresses to detect malicious traffic and protect websites against cyber-attacks. As one California court recently admonished, "[t]he pen register statute did not, and does not, criminalize the process by which all websites communicate with all users who choose to access them." RJN, Ex. C, *Casillas v. Transitions Optical, Inc.*, No. 23STCV30742, 2024 WL 4873370, at *4 (Cal. Super. Sep. 9, 2024); *see also* RJN, Ex. D*, Licea v. Hickory Farms LLC*, No. 23STCV26148, 2024 WL 1698147, at *4 (Cal. Super. Mar. 13, 2024) ("public policy strongly disputes Plaintiff's potential interpretation of privacy laws as one rendering every single entity voluntarily visited by a potential plaintiff, thereby providing an IP address for purposes of connecting the website, as a violator"). For the Act to apply here, there must be at least some indication in its text that this conduct is "clearly covered." *Lanier*, 520 U.S. at 266. There is none.

In addition to the ambiguity in the Pen Register Act itself, the existence of the California Consumer Privacy Act ("CCPA")—a more specific California law, which clearly does apply to the so-called Trackers and websites like Mashable's—further demonstrates why the rule of lenity requires dismissal. *See* Cal. Civ. Code § 1798.100 (2024) *et seq*. The California Legislature passed the CCPA in 2018, just three years after the Pen Register Act took effect. Unlike the Pen Register Act, the CCPA comprehensively governs businesses' collection, use, and sharing of "personal information," which includes IP addresses, "Internet or other electronic network activity information," and "information regarding a consumer's interaction with an internet website." *See id.* § 1798.140(v)(1)(F). And instead of prohibiting websites from collecting IP addresses without visitors' opt-in consent (as Plaintiff alleges is required), the CCPA allows such collection subject to a notice and *opt-out* regime. *See, e.g.*, Cal. Civ. Code § 1798.120 (right to opt out of sales and sharing of personal information); *id*. § 1798.135 (establishing acceptable opt-

out mechanisms and prohibiting sales/sharing after consumer opts out). It would have made no sense for the California Legislature to adopt an opt-out system under the CCPA if it believed that the Pen Register Act already required opt-in consent to collect information about website visits. And the CCPA has since been amended through a ballot measure and supplemented by regulations, none of which did anything to disturb the CCPA's opt-out regime or its application to web-browsing data. *See* Cal. Prop. 24 (Nov. 3, 2020) (the "California Privacy Rights Act"); Cal. Code Regs. tit. 11 § 7000 *et seq.* In sum, the CCPA's use of an opt-out regime confirms that the California Legislature, the electorate, and regulators did not believe the Pen Register Act applies here.[5]

Recent legislation pending in the California Senate further underscores the Pen Register Act's fundamental ambiguity. As described above in Section IV.A.3., SB 690 would amend the Pen Register Act to clarify that the Legislature intended for the CCPA (and not the Pen Register Act) to govern websites' collection, use, and sharing of "information regarding a consumer's interaction with an Internet website." *See id.* § 1798.140(v)(1); *see* Senate Comm. on Pub. Safety, Analysis of SB 690, at 10. It would do so by exempting any mechanism used to collect personal data from, e.g., visitors to a website, from, among other things, the Pen Register Act's definition of a "pen register" if that mechanism is "consistent with a commercial business purpose" including because it is "subject to a consumer's opt-out rights under" the CCPA. SB 690, Sec. 5. But even if not enacted, the fact that the drafters contend that the Pen Register Act was never intended to cover collection of information individuals visiting commercial websites visits demonstrates the Pen Register Act's fundamental ambiguity here.

The California Legislature could have clearly stated that the criminal Pen Register Act applies to the conduct alleged here. It did not. The Court should not allow Plaintiff to rewrite California law to "turn ordinary citizens into criminals." *Nosal*, 676 F.3d at 862-63. The rule of

[5] A recent enforcement action against online-retailer Sephora further confirms this. *See* Compl., *People v. Sephora, USA, Inc.*, No. CGC-22-601380 (Cal. Super. Ct. S.F. Cty. filed Aug. 23, 2022). In that matter, the California AG faulted Sephora for failing to provide visitors with CCPA required notice and the ability to opt out of sharing information about their visits with third parties. *See id.* ¶ 2. The California AG did not raise a Pen Register Act claim. Nor is Mashable aware of any instance in which the California AG has sought to enforce the Pen Register Act against a website for the conduct that Plaintiff alleges here.

lenity limits the Act "to conduct clearly covered," and requires dismissal of Plaintiff's claim. *Lanier*, 520 U.S. at 266.

**V. CONCLUSION**

For the reasons stated above, the Court should dismiss Plaintiff's Second Amended Complaint with prejudice.

Dated: June 4, 2025

**PERKINS COIE LLP**

By: */s/ James G. Snell*
James G. Snell
Mikella M. Hurley
Timothy M. Carter

Attorneys for Defendant MASHABLE, INC.