**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Emily A. Horne (State Bar No. 347723)
Joshua R. Wilner (State Bar No. 353949)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
ehorne@bursor.com
jwilner@bursor.com

**BURSOR & FISHER, P.A.**
Philip L. Fraietta (State Bar No. 354768)
Max S. Roberts (*Pro Hac Vice*)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-mail: pfraietta@bursor.com
mroberts@bursor.com

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DAWN FREGOSA, individually and on behalf of all other persons similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MASHABLE, INC.,<br><br>Defendant. | Case No. 3:25-cv-01094-CRB<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**<br><br>Date: August 8, 2025<br>Time: 10:00 a.m.<br>Courtroom: 6, 17th Floor<br>Judge: Hon. Charles R. Breyer |

# TABLE OF CONTENTS

PAGE(S)

INTRODUCTION ... 1

ARGUMENT ... 2

I. CIPA §§ 638.50-638.51 APPLY TO DEFENDANT'S CONDUCT ... 2

A. As This Court Found In *Mirmalek*, The Trackers Are "Pen Registers" Under The Plain Text Of The Statute, Which Controls ... 2

B. California Supreme Court Precedent And The Legislative History Support Applying The CIPA To Defendant's Conduct ... 5

C. An Unenacted, Non-Retroactive Bill That Has Been Frozen In The Legislature Has No Bearing On This Matter ... 7

II. THE TRACKERS ARE "PEN REGISTERS" UNDER CIPA § 638.50(B) BECAUSE THEY IDENTIFY THE USER COMMUNICATING WITH THE WEBSITE ... 8

III. THE TRANSMISSIONS CAPTUERED BY THE TRACKERS ARE ELECTRONIC COMMUNICATIONS ... 9

IV. THERE IS NO PARTY EXCEPTION TO CIPA § 638.51, AND EVEN IF THERE WERE, IT DOES NOT APPLY HERE ... 11

V. DEFENDANT'S INSTALLATION AND USE OF THE TRACKERS IS PROHIBITED BY CIPA'S PLAIN TEXT AND IS NOT "AIDING AND ABETTING" LIABILITY ... 12

VI. DEFENDANT'S RULE OF LENITY ARGUMENT FAILS UNDER CALIFORNIA SUPREME COURT PRECEDENT ... 13

CONCLUSION ... 15

## TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Augustine v. Great Wolf Resorts, Inc.*,
2024 WL 3450967 (S.D. Cal. July 18, 2024) .... 10

*Briskin v. Shopify, Inc.*,
135 F.4th 739 (9th Cir. 2025) .... 1

*Capitol Recs. Inc. v. Thomas-Rasset*,
2009 WL 1664468 (D. Minn. June 11, 2009) .... 11

*Conohan v. Rad Power Bikes Inc.*,
2025 WL 1111246 (C.D. Cal. Apr. 3, 2025) .... 1, 2, 11

*Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*,
603 U.S. 799 (2024) .... 5

*Flanagan v. Flanagan*,
27 Cal. 4th 766 (2002) .... 6

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023) .... 1, 2, 3, 9

*Heiting v. FKA Distributing Co.*,
2025 WL 736594 (C.D. Cal. Feb. 3, 2025) .... 9, 11

*Howard v. Lab. Corp. of Am.*,
2024 WL 42560677 (M.D.N.C. Aug, 8, 2024) .... 14

*In re Meta Pixel Tax Filing Cases*,
724 F. Supp. 3d 987 (N.D. Cal. 2024) .... 13

*James v. Walt Disney Co.*,
701 F. Supp. 3d 942 (N.D. Cal. 2023) .... 13, 15

*Javier v. Assurance IQ, LLC*,
2022 WL 1744107 (9th Cir. May 31, 2022) .... 4

*Lesh v. Cable News Network, Inc.*,
2025 WL 563358 (S.D.N.Y. Feb. 20, 2025) .... passim

*M.G. v. Therapymatch, Inc.*,
2024 WL 4219992 (N.D. Cal. Sept. 16, 2024) .... 15

*Matera v. Google Inc.*,
2016 WL 8200619 (N.D. Cal. Aug. 12, 2016) .... 6

*Mirmalek v. Los Angeles Times Communications LLC*,
2024 WL 5102709 (N.D. Cal. Dec. 12, 2024) ........ passim

*Moody v. C2 Educ. Sys. Inc.*,
742 F. Supp. 3d 1072 (C.D. Cal. 2024) ........ passim

*Ocasio v. United States*,
578 U.S. 282 (2016) ........ 14

*People v. Eckard*,
195 Cal. App. 4th 1241 (2011) ........ 3

*Ribas v. Clark*,
38 Cal. 3d 355 (1985) ........ 11

*Rodriguez v. Autotrader.com, Inc.*,
762 F. Supp. 3d 921 (C.D. Cal. 2025) ........ 1, 2, 11, 12

*Rodriguez v. Plivo Inc.*,
2024 WL 5184413 (Cal. Super. Ct. Oct. 2, 2024) ........ 9

*Roney v. Miller*,
705 F. App'x 670 (9th Cir. 2017) ........ 15

*Sanchez v. Cars.com Inc.*,
2025 WL 487194 (Cal. Super. Jan. 27, 2025) ........ 6

*Sgouros v. TransUnion Corp.*,
817 F.3d 1029 (7th Cir. 2016) ........ 5

*Shah v. Fandom, Inc.*,
754 F. Supp. 3d 924 (N.D. Cal. 2024) ........ passim

*Smith v. LoanMe, Inc.*,
11 Cal. 5th 183 (2021) ........ 13, 14

*TBG Ins. Serv. Corp. v. Super. Ct.*,
96 Cal. App. 4th 443 (2002) ........ 5

*United States v. Forrester*,
512 F.3d 500 (9th Cir. 2008) ........ 7

*United States v. Hawkins*,
228 F.2d 517 (9th Cir. 1955) ........ 15

*United States v. Soybel*,
13 F.4th 584 (7th Cir. 2021) ........ 7

*Valentine v. NebudAd, Inc.*,
804 F. Supp. 2d 1022 (N.D. Cal. 2011) ........ 7

*Venckiene v. United States*,
929 F.3d 843 (7th Cir. 2019) .......... 7

*Vera v. O'Keefe*,
791 F. Supp. 2d 959 (S.D. Cal. 2011) .......... 14

*Vita v. New Eng. Baptist Hosp.*,
494 Mass. 824 (2024) .......... 4

*Yeager v. Blue Cross of Cal.*,
175 Cal. App. 4th 1098 (2009) .......... 3

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) .......... 15

*Zarif v. Hwareh.com, Inc.*,
2025 WL 486317 (S.D. Cal. Feb. 13, 2025) .......... 2

**STATUTES**

18 U.S.C. § 3121 .......... 6

Cal. Civ. Code § 1798.175 .......... 15

Cal. Penal Code § 629.51(a)(2) .......... 10

Cal. Penal Code § 630 .......... 14

Cal. Penal Code § 631(a) .......... 10

Cal. Penal Code § 632.7 .......... 13, 14

Cal. Penal Code § 637.2 .......... 13

Cal. Penal Code § 638.50 .......... 9, 10, 14

Cal. Penal Code § 638.50(a) .......... 10

Cal. Penal Code § 638.50(b) .......... 4, 8, 9, 10

Cal. Penal Code § 638.50(c) .......... 9

Cal. Penal Code § 638.51(b) .......... 4, 5, 11, 12

Cal. Penal Code § 638.51(b)(1) .......... 4

Cal. Penal Code § 638.52 .......... 3

Mass. Gen. Laws Ann. ch 272, § 99(C)(1) .......... 4

**OTHER AUTHORITIES**

Assembly Bill 929 ........ 6

California Senate Bill 690 ........ 7, 8, 15

## INTRODUCTION

Stripped of its personal jurisdiction defense by the Ninth Circuit (*see generally Briskin v. Shopify, Inc.*, 135 F.4th 739 (9th Cir. 2025), Defendant resorts to a smorgasbord of 12(b)(6) arguments that have been widely rejected by this Court and other federal courts. *See generally*, *e.g.*, *Mirmalek v. Los Angeles Times Communications LLC*, 2024 WL 5102709 (N.D. Cal. Dec. 12, 2024) (Breyer, J.); *Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924 (N.D. Cal. 2024); *Moody v. C2 Educ. Sys. Inc.*, 742 F. Supp. 3d 1072 (C.D. Cal. 2024); *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024 (S.D. Cal. 2023); *Rodriguez v. Autotrader.com, Inc.*, 762 F. Supp. 3d 921 (C.D. Cal. 2025); *Conohan v. Rad Power Bikes Inc.*, 2025 WL 1111246 (C.D. Cal. Apr. 3, 2025) (same); *Lesh v. Cable News Network, Inc.*, 767 F. Supp. 3d 33 (S.D.N.Y. 2025). And while Plaintiff's allegations elaborate on the capabilities of the Third Parties[1] and the harms caused by Defendant's conduct, her allegations still fit neatly within CIPA §§ 638.50-638.51. Specifically, Plaintiff alleges Defendant installed and used the Third Party Trackers, which are "devices or processes," that recorded or decoded "routing, addressing, or signaling information" (Plaintiff's IP address, Device Metadata, and unique user identifiers) "transmitted by an instrument or facility from which a wire or electronic communication is transmitted" (*i.e.*, transmitted from Plaintiff's computer when she accessed the Website). *See*, *e.g.*, SAC ¶¶ 22, 24, 36-38, 60-61, 78-81, 85-86, 105-108, 113-114, 118-121.

Defendant's argument that Plaintiff's allegations "say relatively little about Mashable" is worth dispelling at the outset. MTD at 3:5-6. The SAC alleges it is Defendant who was "responsible for integrating the third-party script into its own [W]ebsite." *Shah*, 754 F. Supp. 3d at 931; *see also*, *e.g.*, SAC ¶¶ 24, 52-53, 60, 85, 113. It is Defendant whose installation and use of the Trackers caused data brokers to collect Plaintiff and Class Members' information and use it to de-anonymize them, and it is Defendant who caused all of the harms flowing from that conduct. *See*, *e.g.*, SAC ¶¶ 71-72, 82, 85, 93, 99, 109, 113, 125, 131-133, 138-139. And it is Defendant who installed and used the Trackers for its own financial benefit, to enable the Third Parties to sell users' information to advertisers on its Website, and again caused the harms flowing from that conduct. *See*, *e.g.*, *id.* ¶¶

[1] All capitalized terms not otherwise defined herein shall have the same meaning as in the SAC.

140, 143-145, 148-152, 154, 161-164. None of the conduct alleged was an accident or unrelated to Defendant. Instead, every harm Plaintiff alleges flows directly from Defendant's installation and use of the Trackers, which was done intentionally by Defendant to line its pockets at the expense of consumers' privacy. Drawing an artificial line between Defendant's installation and use of the Trackers and the harms stemming from that conduct is untenable.

For the following reasons, Defendant's Motion should be denied.

## ARGUMENT

### I. CIPA §§ 638.50-638.51 APPLY TO DEFENDANT'S CONDUCT

#### A. As This Court Found In *Mirmalek*, The Trackers Are "Pen Registers" Under The Plain Text Of The Statute, Which Controls

CIPA § 638.50(b) defines a "pen register" as a "device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." As this Court found in *Mirmalek*, the "California Legislature's chose[]" "expansive language" for the "definition of pen register" that "the Court cannot ignore," language that is "specific as to the type of data collected," but "vague and inclusive as to the form of the collection tool (*i.e.* 'device or process')." *Mirmalek*, 2024 WL 5102709, at *3 (internal brackets removed) (citing *Greenley*, 684 F. Supp. 3d at 1050).

Thus, federal courts, including this Court, have held that online trackers or tracking software such as the Trackers at issue here are "pen registers." *See*, *e.g.*, *Mirmalek*, 2024 WL 5102709, at *3 ("[U]nder the inclusive language of CIPA's definition of a pen register, Plaintiff sufficiently alleges that the Trackers are a 'device or process…'"); *Shah*, 754 F. Supp. 3d at 929 (agreeing with "[p]laintiffs' theory [] that the third-party Trackers operate as pen registers under the meaning of the statute because they are processes that record users' IP addressing information"); *Moody*, 742 F. Supp. 3d at 1076 ("Plaintiff's allegations that the TikTok Software is embedded in the Website and collects information from visitors plausibly fall within the scope of §§ 638.50 and 638.51.") *Greenley*, 684 F. Supp. 3d at 1050 (finding software constituted a "pen register"); *Autotrader.com*, 762 F. Supp. 3d at 929 (same); *Conohan*, 2025 WL 1111246, at *6 (same); *Lesh*, 767 F. Supp. 3d at 40 (same); *Zarif v. Hwareh.com, Inc.*, 2025 WL 486317, at *12 (S.D. Cal. Feb. 13, 2025) (same).

Resisting this straightforward conclusion, Defendant contends the "limited focus [on person-to-person communications] is evident from the text of the Pen Register Act itself." MTD at 6:4. Not so. CIPA § 638.50(b) does not limit the definition of a "pen register" to only communications between two people. In fact, the word "person" appears nowhere in the definition of a "pen register" in CIPA § 638.50(b). That should be dispositive of any argument that the CIPA is limited to only "person-to-person" communications. *Yeager v. Blue Cross of Cal.*, 175 Cal. App. 4th 1098, 1103 (2009) ("We may not make a silent statute speak by inserting language the Legislature did not put in the legislation."); *People v. Eckard*, 195 Cal. App. 4th 1241, 1248 (2011) ("We do not have the power to add to the statute what the Legislature may have left out or to conform it to an assumed intent that does not appear from its language."); *Shah*, 754 F. Supp. 3d at 929 ("Nothing in the statutory definition limits pen registers to those that operate the same way as a traditional phone pen register.")

Defendant's attempts to insert words into a statute where they do not appear fail. *First*, Defendant cites to the "requirements for pen register orders" in Cal. Pen. Code § 638.52 to claim the Act only "applies to person-to-person communication services." MTD at 6:5-7.[2] "Section 638.52, however, merely lists requirements relating to a particular type of pen register: one that is installed on a telephone line … But that does not alter the statutory definition of a pen register stated in § 638.50(b) or the prohibition on non-law enforcement use of such pen registers." *Shah*, 754 F. Supp. 3d at 930; *see also Moody*, 742 F. Supp. 3d at 1076 ("Though § 638.52 refers to pen registers and trap and trace devices as physically attached to telephone lines, the definitions set forth under § 638.50 do not state any such requirement."); *Lesh*, 767 F. Supp. 3d at 41 ("Section 638.52 lists requirements authorizing a warrant for a pen register on a telephone line but does not redefine 'pen register.'"); *Greenley*, 684 F. Supp. 3d at 1050 ("[T]he California legislature does not limit its prohibition on installing pen registers to law enforcement."). Thus, CIPA § 638.52 "bears little relevance here." *Lesh*, 767 F. Supp. 3d at 41.

---

[2] Defendant contends it "does not maintain that the Act is limited only to telephones." MTD at 4 n.1. Yet, in making the argument above, Defendant emphasizes the portions of Cal. Pen. Code § 638.52 referencing "telephone lines." MTD at 6:7-10. Defendant's contentions thus seem at odds with one another.

*Second*, Defendant argues "[b]y definition, a pen register operates on a communication that conveys some 'content.'" MTD at 6:11. The statute says the opposite: "'Pen register' means a device or process that records or decodes dialing, routing, addressing, or signaling information … *but not* the contents of a communication." Cal. Pen. Code § 638.50(b). Thus, the statute only applies in instances when content is *not* collected. And nothing in the statute requires that content also be sent to a "pen register" but not recorded or decoded. *Vita v. New Eng. Baptist Hosp.*, 494 Mass. 824, 834 (2024) is inapplicable as it analyzed Massachusetts' wiretapping act. And Massachusetts' wiretapping act prohibits only the interception of "wire or oral communication[s]," rather than also regulating electronic communications. Mass. Gen. L. c. 272, § 99(C)(1). Thus, the plain text of the Massachusetts statute made clear it did not apply to "browsing a website." *Vita*, 494 Mass. at 839. By contrast, CIPA § 638.50—and numerous other provisions of the CIPA—regulate the collection of "wire *or* electronic communication[s]." CIPA § 638.50(b) (emphasis added). That gives CIPA a broader reach that encompasses "Internet communications." *Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *1 (9th Cir. May 31, 2022) (analyzing CIPA § 631).

*Third*, Defendant claims that because Cal. Pen. Code § 638.51(b) includes exemptions for "electronic … communication service providers," that somehow confirms the act is limited to "person-to-person" communications because that exemption "include[s], *e.g.*, "email providers," but excludes "ordinary websites." MTD at 7:1-12. This argument is confusing and also contradictory to Defendant's prior briefing. *See* ECF No. 13 at 15:7-10 (asking the Court to find Defendant is "an exempt 'provider of electronic or wire communication service'"). Two things can simultaneously be true. On the one hand, "electronic … communication service providers" like "email providers" or companies like Xfinity that provide access to the Internet or operate telephonic services can install "pen registers" for one of the five permitted purposes (*e.g.*, "[t]o operate, maintain, and test a wire or electronic communication service" (Cal. Pen. Code § 638.51(b)(1)). On the other hand, website operators like Defendant who install the trackers of data brokers to de-anonymize users and sell their information to advertisers can both be regulated by the CIPA and not fall within any of the statute's exemptions. *See Mirmalek*, 2024 WL 5102709, at *5 ("Section 638.51(b) does not apply because Defendant fails to establish that it is a 'provider of electronic or wire communication service.'").

Holding "the Act applies to individual websites, but that such websites cannot not rely on the Act's exemptions" is not "illogical." MTD at 7:20-21. It simply shows the CIPA does not permit Defendant's conduct here.

*Finally*, Defendant argues the sky will fall if the Court sides with Plaintiff. MTD at 7:24-8:1 (arguing that siding with Plaintiff would "expose any website to claims it violated criminal law by engaging in routine commercial functions."). Of course, the Internet has not collapsed since the Court issued *Mirmalek*, or Judge Bashant issued *Greenley* nearly two years ago. And notwithstanding whether Defendant's conduct is "routine," "[t]o the extent that [Defendant] believes the statute may impose too many burdens when applied to the realities of modern technologies … the question of whether the statute's scope should be narrowed ultimately rests with the Legislature, not the courts." *Shah*, 754 F. Supp. 3d at 933. But to be clear, Defendant is not *per se* precluded from installing the Third Parties' Trackers; it simply must procure its users' prior consent to do so. *See Lesh*, 767 F. Supp. 3d at 42-43 (evaluating, although rejecting, consent defense to a CIPA § 638.51 claim); *see also TBG Ins. Serv. Corp. v. Super. Ct.*, 96 Cal. App. 4th 443, 450 n.5 (2002) ("Zieminski's consent [i]s a complete defense to his invasion of privacy claim."). "This is not hard to accomplish, as the enormous volume of commerce on the Internet attests." *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1036 (7th Cir. 2016). Defendant's failure to take this simple step is a problem of Defendant's own making, not an issue with the law.

### B. California Supreme Court Precedent And The Legislative History Support Applying The CIPA To Defendant's Conduct

Rather than focusing on the text of the Act, Defendant begins its analysis by arguing "the legislative history of California's Pen Register Act also reflects its focus on person-to-person communications, and particularly, on telephonic communications," MTD at 5:11-13. However, "the text of a law controls over purported legislative intentions unmoored from any statutory text," and "the Court may not replace the actual text with speculation as to Congress' intent." *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 815 (2024); *see also Shah*, 754 F. Supp. 3d at 929 ("[T]he Court's analysis must begin with the statutory text, and if that text is clear, must

end there.”). As the text of the law is clear here, Defendant’s citations to legislative history are irrelevant. Argument § I.A, *supra*.[3]

Even incorporating legislative intent, Defendant is still wrong. “CIPA was passed, in part, because ‘the development of new devices and techniques for the purpose of eavesdropping upon private communications [] has created a serious threat to the free exercise of personal liberties.’” *Lesh*, 767 F. Supp. 3d at 41 (quoting Cal. Pen. Code § 630). “In light of this intent, the California Supreme Court has instructed courts to interpret CIPA in the manner that ‘fulfills the legislative purpose of CIPA by giving greater protection to privacy interests.’” *Matera v. Google Inc.*, 2016 WL 8200619, at *19 (N.D. Cal. Aug. 12, 2016) (Koh, J.) (quoting *Flanagan v. Flanagan*, 27 Cal. 4th 766, 775 (2002)). “As such, courts have repeatedly held that [the] provisions of CIPA are not limited to the traditional versions of the tools at issue, based on the plain language of the statute, the California Supreme Court’s pronouncements regarding the broad legislative intent underlying CIPA to protect privacy, and the California courts’ approach to updating obsolete statutes in light of emerging technologies.” *Shah*, 754 F. Supp. 3d 930-31 (cleaned up); *see also Javier*, 2022 WL 1744107, at *1 (“Though written in terms of wiretapping, Section 631(a) applies to Internet communications.”).

Defendant ignores this legislative history and cites to Assembly Bill 929. *See* MTD at 5:11-17. “Those materials, however, merely describe traditional telephone-based pen registers as being among the variety of electronic tools used by law enforcement “to apprehend criminals in this age of rapidly changing technology.” *Shah*, 754 F. Supp. 3d at 930 n.2. “Nowhere in those materials did the Legislature state an intent to add a statutory requirement limiting pen registers to those traditional forms.” *Id.*

Defendant also cites to the legislative history of the Federal Pen Register Act, 18 U.S.C. §§ 3121, *et seq.*, to argue “the text of the federal Act says nothing about its application to collection

[3] Defendant’s citation to *Sanchez v. Cars.com Inc.*, 2025 WL 487194 (Cal. Super. Jan. 27, 2025), is unpersuasive for this reason: it jumped straight to legislative history without analyzing the plain text of the statute first. *Id.*, at *3 (“In construing a statute, the court's fundamental task is to ascertain legislative intent to effectuate the purpose of the statute, and by giving the words their usual and ordinary meaning.”).

of information related to visits to commercial websites." MTD at 4:10-5:5. But the Federal Pen Register Act *has* been applied to monitoring internet communications. *See United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2008) ("We conclude that the surveillance techniques [that reveal IP addresses] are constitutionally indistinguishable from the use of a pen register."); *United States v. Soybel*, 13 F.4th 584, 586-87 (7th Cir. 2021) (pen register installed under federal statute "to monitor internet traffic in and out of the building generally and Soybel's unit specifically"). Regardless, as the *Lesh* court held:

> [Defendant's] argument that the *federal* Pen[] Register Act is limited to information transmitted on telephone lines – and thus CIPA should be limited to telephone lines – is without merit. [Plaintiff] does not bring any claims under the federal Pen[] Register Act and, as explained above, CIPA broadly defines "pen register." The Court will not use a similar federal statute so as to read a requirement into the text of a California statute.

*Lesh*, 767 F. Supp. 3d at 41 (emphasis in original); *Moody*, 742 F. Supp. 3d at 1076 (rejecting argument that limitations in federal pen register statute should be applied to California law). And, of course, the ECPA—which encompasses the federal pen register law—does not preempt more protective state laws. *Valentine v. NebuAd, Inc.*, 804 F. Supp. 2d 1022, 1029 (N.D. Cal. 2011) ("[T]he ECPA does not preempt the CIPA."). Thus, the Federal Pen Register Act's legislative history has no bearing on the CIPA.

### C. An Unenacted, Non-Retroactive Bill That Has Been Frozen In The Legislature Has No Bearing On This Matter

Defendant also cites to an unenacted bill, S.B. 690, as illustrative of legislative intent. MTD at 11. This is a tenuous argument. As an initial matter, "[f]ederal courts apply duly enacted laws; they do not try to guess which bills may or may not be enacted into law." *Venckiene v. United States*, 929 F.3d 843, 864 (7th Cir. 2019). Thus, the Court must apply CIPA as written, not as an unenacted amendment purports to rewrite it as based what the bill's sponsors want.

There are also several reasons why S.B. 690 should be given no value. As an initial matter, the bill's retroactive application was struck following strong opposition,[4] meaning it has no effect on this lawsuit or the CIPA as written. Moreover, the bill has been frozen in the Assembly until 2026

[4] CALIFORNIA SENATE BILL 690, https://legiscan.com/CA/text/SB690/2025.

after the sponsor faced "outstanding concerns around consumer privacy."[5] During this pause, it is possible the bill will be amended and rewritten to address these concerns. Thus, a bill that has no effect on this lawsuit and whose ultimate form (and passage at all) is currently up in the air should be given no weight. Even ascribing a modicum of weight to this bill (which the Court should not do), the bill supports Plaintiff's argument. S.B. 690 states it would "specify that a pen register does not include a device or process used in a manner consistent with a commercial business purpose."[6] In other words, the bill is not clarifying legislative intent or re-writing the CIPA. Instead, it is an implicit acknowledgment that CIPA's plain text covers Defendant's conduct and thus requests a broad exemption to excuse privacy-invasive conduct like Defendant's. So, even S.B. 690 shows Plaintiff and this Court were right that Defendant's conduct is covered by the CIPA's plain text.

## II. THE TRACKERS ARE "PEN REGISTERS" UNDER CIPA § 638.50(B) BECAUSE THEY IDENTIFY THE USER COMMUNICATING WITH THE WEBSITE

Defendant claims the Trackers are not "pen registers" because, "by definition, a pen register records *the called party's information*, and not the calling party's information." MTD at 9:7-8 (emphasis in original). Again, the text of the CIPA says otherwise. The CIPA defines a "pen register" as a "device or process that records or decodes … information *transmitted by* an instrument or facility *from which* a wire or electronic communication is transmitted." Cal. Pen. Code § 638.50(b) (emphasis added). Nothing about that "statutory definition limits pen registers to those that operate the same way as a traditional phone pen register." *Shah*, 754 F. Supp. 3d at 929. Instead, the statute's definition makes clear that the Trackers qualify as a "pen register" if they "record addressing information *transmitted by* the user's computer or smartphone in connection with the outgoing HTTP request to [Defendant's] website, regardless of whether that addressing information pertains to the sender or the recipient of the communication at issue." *Id.* (emphasis added); *see also id.* ("By the plain meaning of § 638.50(b), collection of the recipient phone number or IP address is not a required element."); *Mirmalek*, 2024 WL 5102709, at *4 (following *Shah*); *Lesh*, 767 F. Supp. 3d at 40 (same). Based on this plain language, courts have held that a tracker is a "pen register"

[5] Tyler Katzenberger, *California Democrat Delays Effort To Limit Data Privacy Lawsuits*, POLITICO (July 1, 2025), https://tinyurl.com/7ybpzdd2.

[6] CALIFORNIA SENATE BILL 690, https://legiscan.com/CA/text/SB690/2025.

under Cal. Pen. Code § 638.50(b) if it "identifies consumers, gathers data, and correlates that data through unique 'fingerprinting.'" *Greenley*, 684 F. Supp. 3d at 1050. Plaintiff has so alleged here. *See*, *e.g.*, SAC ¶¶ 46-48, 60-61, 67-71, 75, 77, 80-81, 85-87, 91-93, 99, 104, 107-108, 113-114, 120-121, 125, 138-139, 162, 169, 175-176, 183-184.

All but one of Defendant's cited authorities predate the enactment of Cal. Pen. Code § 638.50 and so do not consider the statute's plain text. MTD at 9:10-15. The sole exception—*Rodriguez v. Plivo Inc.*, 2024 WL 5184413 (Cal. Super. Ct. Oct. 2, 2024)—was already considered by this Court, who clearly rejected its reasoning. *See Mirmalek*, 2024 WL 5102709, at *2, *4 (taking "judicial notice of [*Plivo*]," but ultimately following *Shah*). And *Plivo* ignored the plain statutory text in its analysis, diminishing its persuasive value. *Plivo*, 2024 WL 5184413, at *2.

Defendant also claims that a "trap and trap device," unlike a "pen register," is defined to encompass trackers that "capture[] the incoming electronic or other impulses that identify the originating … information reasonably likely to identify the source of a wire or electronic communication." Cal. Pen. Code § 638.50(c); *see also* MTD at 9 n.4. But the statute's use of the word "incoming" shows this provision refers to trackers that identify the identities of those entities *communicating with* Plaintiff, rather than Plaintiff herself. Regardless, even if Defendant is correct (and it is not), that would simply mean Defendant installed "trap and trace devices" on Plaintiff's browser rather than "pen registers," and either is sufficient to state a CIPA § 638.51 claim. *See Heiting v. FKA Distributing Co.*, 2025 WL 736594, at *3 (C.D. Cal. Feb. 3, 2025) (finding software that "identifies the source of visitors to Defendant's website" was a "trap and trace device").

## III. THE TRANSMISSIONS CAPTUERED BY THE TRACKERS ARE ELECTRONIC COMMUNICATIONS

Defendant claims that "to state a pen-register claim, Plaintiff must allege that she exchanged some sort of communication with Mashable that contained content." MTD at 10:13-14. Again, the plain text of the CIPA says the opposite: "'Pen register' means a device or process that records or decodes … information … *but not the contents* of a communication." Cal. Pen. Code § 638.50(b) (emphasis added). Thus, the Trackers are "pen registers" because, while they record or decode "routing, addressing, or signaling information transmitted by" Plaintiff's computer, they do *not*

capture the contents of those communications. SAC ¶¶ 60-61, 85-86, 113-114, 228; *see also Shah*, 754 F. Supp. 3d at 929 ("[T]he 'electronic communication' at issue is the transmission of the HTTP request from the user's computer or smartphone to Fandom's website. The Trackers are not alleged to collect the contents of that HTTP request…"); *Mirmalek*, 2024 WL 5102709, at *4 ("Plaintiff sufficiently alleges that the Trackers record addressing information in the form of IP addresses."); *Moody*, 742 F. Supp. 3d at 1077 ("Plaintiff's allegations that the TikTok Software gathers device and browser data plausibly fall within the scope of §§ 638.50 and 638.51."); *Lesh*, 767 F. Supp. 3d at 40. Defendant's authorities, by contrast, each analyzed whether a third party captured the content of a communication for the purposes of a CIPA § 631 claim. MTD at 10:19-24; *see also*, *e.g.*, *Augustine v. Great Wolf Resorts, Inc.*, 2024 WL 3450967, at *6 (S.D. Cal. July 18, 2024) ("Plaintiff does not allege the transmission of a URL as the content of a message or in any way specify the nature of the alleged intercepted communications here."). And unlike CIPA § 638.50(b), CIPA § 631, requires that the third party "read … *the contents or meaning* of any … communication." Cal. Pen. Code § 631(a) (emphasis added).

To the extent Defendant argue there is no "communication" at issue, that argument also fails. Cal. Pen. Code § 629.51(a)(2) defines an "[e]lectronic communication" as "any transfer of signs, signals, writings, images, sounds, data, or intelligence of any nature." *See also* Cal. Pen. Code § 638.50(a) ("'Wire communication' and 'electronic communication' have the meanings set forth in subdivision (a) of Section 629.51."). As courts have held, "[t]he HTTP request transmitted from users' computers or smartphones constitutes an electronic communication, and the Trackers record the addressing information associated with this communication." *Shah*, 754 F. Supp. 3d at 931; *Mirmalek*, 2024 WL 5102709, at *4 (following *Shah* and noting "Plaintiff alleges that users' devices transmit electronic communication in the form of Hypertext Transfer Protocol (HTTP) or GET requests to load Defendant's website.") (cleaned up); *Lesh*, 767 F. Supp. 3d at 40 ("These facts adequately allege the transmission of an electronic communication."). Plaintiff here alleges that when she accessed the Website, multiple such "signals" or "data" were transmitted from her computer to the Trackers that Defendant installed. *See*, *e.g.*, SAC ¶¶ 60-63, 85-86, 113-114, 138.

## IV. THERE IS NO PARTY EXCEPTION TO CIPA § 638.51, AND EVEN IF THERE WERE, IT DOES NOT APPLY HERE

Defendant argues it is exempt from the CIPA because "Mashable, as the website operator, would be the other party to that supposed communication." MTD at 10:28-11:1. "Defendant does not cite any case law applying the third party requirement to section 638.51." *Heiting*, 2025 WL 736594, at *3. Nor can it, because "section 638.51 applies to circumstances *beyond* the wiretapping context." *Id.* (emphasis in original).

In any event, Defendant's argument misses the mark. Plaintiff's claim is *not* that Defendant itself collected her information, but that Defendant installed and used the Trackers—which are operated by the Third Parties—and that the *Third Parties* collected Plaintiff's information through this process. *See*, *e.g.*, SAC ¶¶ 2, 65, 90, 117. Courts have had no trouble distinguishing allegations like Plaintiff's here from cases like *Capitol Recs. Inc. v. Thomas-Rasset*, 2009 WL 1664468 (D. Minn. June 11, 2009), which "involve[d] situations where users were directly communicating with the party alleged to be operating the pen register and voluntarily sent that party their IP address." *Shah*, 754 F. Supp. 3d at 932 n.3. "A user who consents to disclose their IP address [and other addressing information] to [Defendant] as part of accessing its website does not necessarily consent to disclose their IP address [and other addressing information] to the third parties operating the Trackers." *Id.* at 932; *Conohan*, 2025 WL 1111246, at *6 (following *Shah* on this point); *Autotrader.com*, 762 F. Supp. 3d at 930 (sustaining CIPA claim where plaintiff alleged her "information was sent to third parties, not just Defendant"). This comports with the "substantial distinction" recognized by the CIPA between the recording of a communication by a party and "its simultaneous dissemination to an unannounced second auditor, whether that auditor be a person or mechanical device." *Ribas v. Clark*, 38 Cal. 3d 355, 360-61 (1985)

In addition, Plaintiff alleges "the tracking software captured more than just her IP address," including her "operating system information," "browser information," and unique identifiers. *Autotrader.com*, 762 F. Supp. 3d at 930; *see also Moody*, 742 F. Supp. 3d at 1076-77 ("Plaintiff does not allege that the TikTok Software records only IP addresses. Instead, Plaintiff alleges that the TikTok Software recorded various other types of information such as browser and device data…");

SAC ¶¶ 61-62, 65-69, 80, 86-87, 90, 114, 117, 120. In short, Plaintiffs' claim here is that, because of Defendant's installation and use of the Trackers, the *Third Parties* recorded and decoded Plaintiff's information. The Third Parties are not parties to the communication, and Defendant is liable for installing and using their Trackers.

## V. DEFENDANT'S INSTALLATION AND USE OF THE TRACKERS IS PROHIBITED BY CIPA'S PLAIN TEXT AND IS NOT "AIDING AND ABETTING" LIABILITY

Defendant also rehashes its argument that "the Pen Register Act does not authorize aiding and abetting liability." MTD at 11:24-25. As Plaintiff previously articulated (ECF No. 26), this ignores both Plaintiff's theory and the plain text of the CIPA. Cal. Pen. Code § 638.51(a) prohibits Defendant from "install[ing] or us[ing] a pen register." That is exactly what Plaintiff alleges: that Defendant installed the Third Party Trackers (*i.e.*, pen registers) on Defendant's Website, which enabled the Third Parties to collect Plaintiff's IP address and other identifying information. *See*, *e.g.*, SAC ¶¶ 2, 61-62, 65-69, 80, 86-87, 90, 114, 117, 120. This is not an "aiding and abetting" theory of liability. It is the law's plain text, and a claim that this Court and others have sustained. *See*, *e.g.*, *Mirmalek*, 2024 WL 5102709, at *5 ("Plaintiff asserts that Defendant's alleged CIPA violation injured her by causing Plaintiff's IP address to be disclosed to unconsented-to third parties…") (cleaned up); *see also*, *e.g.*, *Shah*, 754 F. Supp. 3d at 931 ("Even if third parties developed and used the Tracker software, it is alleged that Fandom was responsible for integrating the third-party script into its own website.") (cleaned up); *Autotrader.com*, 762 F. Supp. 3d at 930 (sustaining claim where plaintiff alleged "the software also captured her … information … and that this information was sent to third parties, not just Defendant").

Defendant also asks the Court to disregard "voluminous allegations about the supposed actions of third parties." MTD at 11:21-22. This seeks to create an artificial and unsupportable line between the installation and use of the Trackers by Defendant and the actions of the Third Parties stemming from it. Defendant "was responsible for integrating the third-party script into its own website." *Shah*, 754 F. Supp. 3d at 931. That means that all of the conduct alleged in the SAC—the de-anonymization of Plaintiff and the matching of her information to profiles maintained by data brokers, the real-time sale of her information to advertisers, and each of the harms that caused—

stemmed from *Defendant's conduct*. And, to be clear, these actions were done to financially benefit Defendant, who was able to monetize its Website by having its users de-anonymized so their data could be sold for greater profit to advertisers. *See*, *e.g.*, SAC ¶¶ 59, 67-77, 91-104, 128, 134-139, 143-148, 160-164, 167, 169, 173-180, 182-186. Defendant cannot wipe its hands clean of conduct that Defendant caused and that was designed to benefit Defendant. *See James v. Walt Disney Co.*, 701 F. Supp. 3d 942, 954 (N.D. Cal. 2023) ("[O]ne can infer Disney intended to have Oracle intercept because Disney entered into a contract with Oracle so that Oracle would provide such services."); *cf. In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987, 1009 (N.D. Cal. 2024) (finding "[t]he better interpretation" of Cal. Pen. Code § 637.2, as applied to a CIPA § 635, "is that injuries caused by use of an eavesdropping device are traceable to the manufacture, sale, and provision of that device, and that an injured party therefore has a private right of action against the creator of the device").

## VI. DEFENDANT'S RULE OF LENITY ARGUMENT FAILS UNDER CALIFORNIA SUPREME COURT PRECEDENT

Last, Defendant argues that because "the Pen Register Act is at a minimum highly ambiguous," "the Court should [] dismiss this case under the rule of lenity." MTD at 12:15-24. Remarkably, Defendant has now spent seven pages of briefing on this topic between its current Motion and prior Reply Brief (ECF No. 20 at 11-15) without *once* acknowledging or even attempting to distinguish *Smith v. LoanMe, Inc.*, 11 Cal. 5th 183 (2021). That decision disposes of Defendant's argument here.

In *LoanMe*, 11 Cal. 5th at 189, the California Supreme Court evaluated whether Cal. Pen. Code § 632.7 "prohibits a party from intentionally recording a communication … or whether the section forbids only the intentional recording of such communications by persons other than parties."[7] Like here, the defendant argued "the rule of lenity applies here and support[ed]" the latter interpretation of the statute. *Id.* at 202. The California Supreme Court disagreed. The California Supreme Court noted the rule of lenity only applies "when two reasonable interpretations of the same provision stand in relative equipoise," not "every time there are two or more reasonable

---

[7] Cal. Pen. Code § 632.7 states that "every person who, without the consent of all of the parties to a communication, intercepts or receives and intentionally records … a communication transmitted between two … telephones" shall be liable. The question in *LoanMe* was whether "every person" meant only non-parties or both parties and non-parties alike.

interpretations of a penal statute." *Id.* (cleaned up); *see also Ocasio v. United States*, 578 U.S. 282, 295 n.8 (2016) (noting the rule of lenity only applies "when a criminal statute contains a grievous ambiguity or uncertainty") (cleaned up). Applying that standard, the California Supreme Court found "the statutory language" weighed against the defendant's argument, which the California Supreme Court accorded the most "significance." *LoanMe*, 11 Cal. 5th at 202. But the California Supreme Court also looked at "the legislative history, the purpose of the statute, [and] general public policy concerns" that Plaintiff references here (Argument § I.B, *supra*), all of which the California Supreme Cour weighed against the defendant. *LoanMe*, 11 Cal. 5th at 199-200.

Applying *LoanMe* here, Defendant's argument fails. There is no "grievous ambiguity or uncertainty" in Cal. Pen. Code §§ 638.50-638.51. *Ocasio*, 578 U.S. at 295 n.8. On the contrary, the "text is clear" that it applies to the technology at issue. *Shah*, 754 F. Supp. 3d at 929. The statute may be broad, but that does not give the Court leeway to set aside "the California Legislature's chosen definition." *Mirmalek*, 2024 WL 5102709, at *3. That definition should be accorded the most "significance" and end the debate. *LoanMe*, 11 Cal. 5th at 202. Further, the statute was drafted broadly because the CIPA was intended to protect Californians from "the invasion of privacy resulting from" "advances in science and technology [that] have led to the development of new devices and techniques for the purpose of eavesdropping … [that] has created a serious threat … and cannot be tolerated in a free and civilized society." Cal. Pen. Code § 630. Based on "the California Supreme Court's pronouncements regarding the broad legislative intent underlying CIPA to protect privacy, and the California courts' approach to updating obsolete statutes in light of emerging technologies," "courts have repeatedly held that [] provisions of CIPA are not limited to the traditional versions of the tools at issue." *Shah*, 754 F. Supp. 3d at 930-31 (cleaned up); *see also id.* (noting "the California Supreme Court has instructed courts to interpret CIPA in the manner that fulfills the legislative purpose of CIPA by giving greater protection to privacy interests").

Based on the CIPA's plain statutory text and legislative principles, courts have rejected application of the rule of lenity to disputed provisions of the CIPA. *See LoanMe*, 11 Cal. 5th at 202; *Vera v. O'Keefe*, 791 F. Supp. 2d 959, 965 (S.D. Cal. 2011) (rejecting application of rule of lenity to CIPA § 632); *Howard v. Lab. Corp. of Am.*, 2024 WL 42560677, at *8 (M.D.N.C. Aug, 8, 2024),

*report and recommendation adopted*, 2024 WL 4326898 (M.D.N.C. Sept. 27, 2024) (rejecting application of rule of lenity to CIPA because "the statutes appear to apply, at least facially, to the conduct alleged"); *cf. James*, 701 F. Supp. 3d at 960 (rejecting application of rule of lenity to Pennsylvania wiretapping statute).

Defendant argues the later-enacted CCPA and S.B. 690 "demonstrate[] the Pen Register Act's fundamental ambiguity." MTD at 14:21. Plaintiff has already addressed S.B. 690 above, and demonstrated that the bill is of dubious relevance given its prospective-only application and current legislative status. *See* Argument § I.C, *supra*. As to the CCPA, the California Legislature "is presumed to know its own laws, and a later general statute does not overrule an earlier specific one unless it does so clearly." *United States v. Hawkins*, 228 F.2d 517, 518 (9th Cir. 1955); *see also Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082 n.29 (C.D. Cal. 2021) ("Quantum Metric briefly suggests that it should be considered an extension of Lululemon under the California Consumer Privacy Act … but it offers no authority to suggest that the Consumer Privacy Act rewrote CIPA in that way."). There is no such indication here. Indeed, courts have had no trouble harmonizing CIPA and the CCPA in sustaining claims brought under both statutes. *See M.G. v. Therapymatch, Inc.*, 2024 WL 4219992, at *5, 7 (N.D. Cal. Sept. 16, 2024). This is because the CIPA protects against the unauthorized surveillance of Californians without *prior* consent, while the CCPA governs how data is managed and used *after* it is collected. Thus, as this Court recognized, the "CCPA and CIPA are complementary." *Mirmalek*, 2024 WL 5102709, at *5. To the extent there is a conflict, however, the "CIPA should control" "by Defendant's own argument" because the CIPA's prior consent requirement "'afford[s] the greatest protection for the right of privacy for consumers.'" *Id.* (quoting Cal. Civ. Code § 1798.175). In any event, the CCPA's enactment does not create ambiguity in the CIPA for the rule of lenity to apply. At best, the two statutes complement another. At worst, CIPA governs based on the CCPA's plain text.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendant's Motion. If the Court grants the Motion in any respect, Plaintiff respectfully requests leave to amend. *See Roney v. Miller*, 705 F. App'x 670, 671 (9th Cir. 2017).

Dated: July 7, 2025

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: */s/ L. Timothy Fisher*
L. Timothy Fisher

L. Timothy Fisher (State Bar No. 191626)
Emily A. Horne (State Bar No. 347723)
Joshua R. Wilner (State Bar No. 353949)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
ehorne@bursor.com
jwilner@bursor.com

**BURSOR & FISHER, P.A.**
Philip L. Fraietta (State Bar No. 354768)
Max S. Roberts (*Pro Hac Vice*)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-mail: pfraietta@bursor.com
mroberts@bursor.com

*Attorneys for Plaintiff*