James G. Snell (CA State Bar No. 173070)
JSnell@perkinscoie.com
Timothy M. Carter (CA State Bar No. 335212)
TCarter@perkinscoie.com
Bo Yan J. Moran (CA State Bar No. 360289)
BMoran@perkinscoie.com
**PERKINS COIE LLP**
3150 Porter Drive
Palo Alto, California 94304-1212
Telephone: +1.650.838.4300
Facsimile: +1.650.838.4350

Mikella M. Hurley (Admitted *pro hac vice*)
MHurley@perkinscoie.com
**PERKINS COIE LLP**
700 Thirteenth Street, N.W., Suite 800
Washington, D.C. 20005-3960
Telephone: +1.202.654.6200
Facsimile: +1.202.654.6211

Attorneys for Defendant MASHABLE, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

DAWN FREGOSA, individually and on behalf of all others similarly situated,

Plaintiff,

v.

MASHABLE, INC.,

Defendant.

Case No. 3:25-CV-01094-CRB

[Removed from the Alameda County Superior Court, Case No. 24CV103566]

**DEFENDANT MASHABLE, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

Date: August 8, 2025
Time: 10:00 a.m.
Crtrm: 6, 17th Floor

Complaint Filed: December 17, 2024
Action Removed: February 3, 2025

# SUMMARY OF ARGUMENT

None of Plaintiff Dawn Fregosa's arguments in Opposition overcome the multiple, independently sufficient grounds for dismissal set out in Mashable's Motion, and the Court should dismiss Plaintiff's SAC with prejudice for the following reasons:

1. ***California's pen register law does not apply here.*** California's Pen Register Act applies only to person-to-person communications, i.e., communications between people that occur on services like phone, email, and similar services. The Act does not apply when someone merely visits a publicly accessible website, as Plaintiff alleges here. This is evident from a plain reading of the Act's text, including the "pen register" definition. And it is further evident from the Act's extensive legislative history. Plaintiff offers no authority to the contrary. Instead, she cites numerous decisions that do not consider this question, and only address arguments that Mashable does not make, notably whether the Act is limited to only telephone calls.
2. ***The SAC fails to state a pen register claim.*** Even if the Pen Register Act could apply to the conduct alleged in the SAC, Plaintiff still fails to state a claim for at least four independently sufficient reasons:
    a. As set out in Mashable's Motion, the conduct alleged in the SAC does not meet the basic definition of a "pen register." As courts across the country (including California courts) have consistently held for decades, a "pen register" captures outgoing "dialing" information, like the numbers that someone dials when placing a call or the email address of the recipient of an email. California's Pen Register Act does not adopt a different definition, and interpreting the Act to say otherwise would violate basic rules of statutory construction. While Plaintiff argues that California's "pen register" definition differs dramatically from the long-established meaning of the term, she offers no statutory evidence of this and relies on cases that do not support her position.
    b. As Plaintiff appears to implicitly acknowledge, a "pen register" must operate on a communication that contains some "content," i.e., some substance or meaning,

even though the pen register only captures dialing information and does not capture that content. Here, Plaintiff has merely alleged that she visited Mashable's website, but this is not a communication involving any "content." Consequently, she cannot state a pen register claim.

c. As Plaintiff has conceded, the Pen Register Act does not prohibit a party to a communication from installing or using a device to identify those who contact them or communicate with them. As Plaintiff has acknowledged, if the Act prohibited parties to a communication from identifying those who contact them, widely used technologies like caller ID would be unlawful. Plaintiff tries to sidestep this logic by suggesting that parties are only permitted to identify those who contact them for certain purposes. However, Plaintiff points to nothing—no statutory language or case—suggesting that the Act contains some sort of purpose restriction on a party's installation or use of a pen register.

d. In Opposition, Plaintiff does not dispute that the Pen Register Act lacks a cause of action for aiding and abetting, and she therefore concedes the point. Instead, Plaintiff insists that she is not making an aiding and abetting claim. But her arguments demonstrate otherwise. Specifically, she uses textbook aiding and abetting language—alleging that Mashable caused and enabled third parties to do various things. Her aiding and abetting claim is not actionable.

3. ***The rule of lenity requires dismissal with prejudice.*** In its Motion, Mashable identified multiple ambiguities in the Pen Register Act's application to the facts alleged here, including each of the arguments Mashable makes on the merits. Plaintiff does not substantively engage with any of these ambiguities, but instead relies on cases that did not consider the issues here, and instead addressed entirely different statutes and different arguments.

For all of these reasons, the Court should dismiss Plaintiff's SAC with prejudice.

## TABLE OF CONTENTS


Page

I. INTRODUCTION ..... 1

II. ARGUMENT ..... 1

A. The Pen Register Act Is Limited to Person-to-Person Communications and Does Not Apply Here ..... 1

1. The Act's Text Proves Its Limited Scope ..... 2

2. Legislative History Further Proves the Act's Limited Scope ..... 5

3. Plaintiff Offers No Authority Squarely Holding That the Act Applies Beyond Person-to-Person Communications ..... 6

B. Even If the Act Applies, the SAC Still Fails to State a Claim ..... 7

1. The SAC Does Not Allege a Pen Register ..... 7

2. The Complaint Does Not Allege a Communication With Content ..... 11

3. Parties to the "Communication" Are Exempt ..... 12

4. The Pen Register Act Does Not Extend to Aiding and Abetting ..... 13

C. The Rule of Lenity Requires Dismissal ..... 14

III. CONCLUSION ..... 15

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Boim v. Holy Land Found. for Relief & Dev.*,
549 F.3d 685 (7th Cir. 2008)....................14

*Caravan Canopy Intl, Inc. v. Home Depot U.S.A., Inc.*,
2021 WL 831028 (C.D. Cal. Feb. 25, 2021)....................13

*Cody v. Ring LLC*,
718 F. Supp. 3d 993 (N.D. Cal. 2024)....................13

*Colom. Pictures Indus. v. Bunnell*,
No. 06-CV-1093-FMC-JCX, 2007 WL 2080419 (C.D. Cal. May 29, 2007)....................8

*Commonwealth v. Moody*,
993 N.E.2d 715 (Mass. 2013)....................3

*Conohan v. Rad Power Bikes Inc.*,
No. CV 25-0106 PVC, 2025 WL 1111246 (C.D. Cal. Apr. 3, 2025)....................7, 10

*Duncan v. Walker*,
533 U.S. 167 (2001)....................3, 9, 12

*Gabrielli v. Motorola Mobility LLC*,
No. 24-CV-09533-JST, 2025, WL 1939957 (N.D. Cal. July 14, 2025)....................10

*Gonzales v. Uber Techs., Inc.*,
305 F. Supp. 3d 1078 (N.D. Cal. 2018)....................3, 12

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023)....................7, 10

*Heiting v. Taro Pharms. USA, Inc.*,
709 F. Supp. 3d 1007 (C.D. Cal. 2023)....................3

*Howard v. Lab'y Corp. of Am.*,
No. 1:23-cv-00758, 2024 WL 4250677 (M.D.N.C. Aug. 8, 2024)....................15

*In re Application of U.S. for Ord. Authorizing an In-Progress Trace*,
616 F.2d 1122 (9th Cir. 1980)....................7

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014)....................2, 12

*Ivey v. Bd. of Regents of Univ. of Alaska*,
673 F.2d 266 (9th Cir. 1982)....................11

*Ivey v. Harney*,
47 F.3d 181 (7th Cir. 1995)....................2

*James v. Walt Disney Co.*,
701 F. Supp. 3d 942 (N.D. Cal. 2023)....................15

*Lesh v. Cable News Network, Inc.*,
767 F. Supp. 3d 33 (S.D.N.Y. 2025)....................7, 10

*Mirmalek v. Los Angeles Times Commc'ns LLC*,
No. 24-CV-01797-CRB, 2024 WL 5102709 (N.D. Cal. Dec. 12, 2024)....................6, 10, 12

*Moody v. C2 Educ. Sys. Inc.*,
742 F. Supp. 3d 1072 (C.D. Cal. 2024)....................7, 10, 12

*Mosier v. Stonefield Josephson, Inc.*,
815 F.3d 1161 (9th Cir. 2016)....................14

*People v. Blair*,
602 P.2d 738 (Cal. 1979)....................7, 10

*People v. Larkin*,
194 Cal. App. 3d 650 (Cal. Ct. App. 1987)....................8

*People v. Suite*,
101 Cal. App. 3d 680 (Cal. Ct. App. 1980)....................7

*Ribas v. Clark*,
38 Cal. 3d 355 (Cal. 1985)....................13

*Riganian v. LiveRamp Holdings, Inc.*, No. 25-CV-00824-JST, 2025 WL 2021802,
at *11 (N.D. Cal. July 18, 2025)....................10

*Rodriguez v. Autotrader.com, Inc.*,
762 F. Supp. 3d 921 (C.D. Cal. 2025)....................7, 10

*Rodriguez v. Plivo Inc.*,
No. 24STCV08972, 2024 WL 5184413 (Cal. Super. Oct. 2, 2024)....................11

*Serv. Emps. Int'l Union v. Roselli*,
No. C 09-00404WHA, 2009 WL 3013501 (N.D. Cal. Sept. 17, 2009)....................14

*Shah v. Fandom, Inc.*,
754 F. Supp. 3d 924 (N.D. Cal. 2024)....................7, 10, 12

*Smith v. LoanMe, Inc.*,
11 Cal. 5th 183 (Cal. 2021)....................14

*United States v. Forrester*,
512 F.3d 500 (9th Cir. 2008) .......... 6

*United States v. Lanier*,
520 U.S. 259 (1997) .......... 15

*United States v. New York Tel. Co.*,
434 U.S. 159 (1977) .......... 7

*United States v. Nosal*,
676 F.3d 854 (9th Cir. 2012) .......... 15

*United States v. Torres*,
908 F.2d 1417 (9th Cir. 1990) .......... 8

*United States v. Williams*,
659 F.3d 1223 (9th Cir. 2011) .......... 3, 9

*Vera v. O'Keefe*,
791 F. Supp. 2d 959 (S.D. Cal. 2011) .......... 15

*Vita v. New England Baptist Hosp.*,
243 N.E.3d 1185 (Mass. 2024) .......... 3

*Whitman v. Am. Trucking Ass'n, Inc.*,
531 U.S. 457 (2001) .......... 4

*Wis. Pro. Police Ass'n v. Pub. Serv. Comm'n of Wis.*,
555 N.W.2d 179 (Wis. Ct. App. 1996) .......... 12

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) .......... 3, 12

*Zarif v. Hwareh.com, Inc.*,
No. 23-CV-0565-BAS-DEB, 2025 WL 486317 (S.D. Cal. Feb. 13, 2025) .......... 7, 10

**STATUTES**

18 U.S.C. § 3127(3) .......... 8

Cal. Penal Code § 631 .......... 2, 14

Cal. Penal Code § 632 .......... 15

Cal. Penal Code § 638.50 .......... 2, 3, 8, 9, 11, 13

Cal. Penal Code § 638.51 .......... 5, 13

Cal. Penal Code § 638.52 .......... 4

Federal Pen Register Act .......... 5, 6

Federal Wiretap Act .......... 3

Mass. Gen. Laws Ann. ch. 272, § 99(B)(1) .......... 3

**OTHER AUTHORITIES**

*Hearing on SB 690 Before the Sen. Pub. Safety Comm.*, 2025-26 Reg. Sess. (Cal. 2025) (Stmt. of Cal. Sen. A. Caballero) .......... 1, 15

*Committee Analysis: Hearing on SB 690 Before the Sen. Comm. on Pub. Safety*, 2025-2026 Reg. Sess. (Cal. 2025) .......... 6

147 Cong. Rec. S10990-02 (daily ed. Oct. 12, 1999) (statement of Sen. Leahy), 2001 WL 1297566 .......... 5

86 Cal. Op. Att'y Gen. 198 (2003) .......... 11

California Legislative Information, SB 690, Status, https://leginfo.legislature.ca.gov/faces/billHistoryClient.xhtml?bill_id=202520260SB690 (last visited July 15, 2025) .......... 6

*Hearing on A.B. 929 Before the Assemb. Comm. on Pub. Safety*, 2015-2016 Reg. Sess. (Cal. 2015) .......... 5

Pen Register, *Merriam-Webster.com Legal Dictionary*, https://www.merriam-webster.com/legal/pen%20register (last visited July 15, 2025) .......... 8

S. Rep. No. 99-541 (1986) .......... 5

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The Court should dismiss Plaintiff's Second Amended Complaint ("SAC") (ECF No. 30) with prejudice for numerous reasons, any one of which is sufficient standing alone. The Pen Register Act, as demonstrated by its plain language and legislative history, is limited to person-to-person communications. It does not apply when someone simply visits a website, as Plaintiff alleges she did here. But even if the Pen Register Act did apply to website visits, Plaintiff cannot state a claim because: (1) Plaintiff's allegations do not meet the definition of a "pen register," (2) Plaintiff fails to allege a communication containing "content," (3) Plaintiff admits that, as "a party to the communication," Mashable is "not liable for its own collecting of IP addresses," and (4) as Plaintiff concedes, the Act does not authorize aiding and abetting claims. Finally, even if Plaintiff ultimately had a colorable claim despite these multiple failings, the Pen Register Act is, at best, highly ambiguous given these issues and the rule of lenity requires dismissal. *See* Request for Judicial Notice, Ex. E, *Hearing on SB 690 Before the Sen. Pub. Safety Comm.,* 2025-26 Reg. Sess. (Cal. 2025) (Stmt. of Cal. Sen. A. Caballero) ("Transcript of SB 690 Hearing") ("If society decides that cookie tracking, cross-site profiling, or pixel use go too far, the fix is not to shoehorn these modern practices into" CIPA, but rather "to reform CCPA through clear and democratically accountable updates.").

## II. ARGUMENT

### A. The Pen Register Act Is Limited to Person-to-Person Communications and Does Not Apply Here

As demonstrated in Mashable's Motion, the Act's limited scope is evident from a plain reading of its whole text, its extensive legislative history, and recent legislative efforts to clarify that the Act does not authorize suits like this one. *See* Mashable's Mot. to Dismiss Plfs' Second Amend. Compl. ("Mot.") (ECF No. 34), at 4–8. Instead of addressing this evidence, Plaintiff ignores it and focuses only on the "pen register" definition. *See* Plf's Opp. to Mashable's Mot. to Dismiss Plf's Second Amend. Compl. ("Opp.") (ECF No. 37), at 3 (declaring other provisions of "little relevance") (citation omitted); *id.* 5–6 (declaring the "legislative history [to be] irrelevant").

But even if the Court were to look only at this narrow provision, it still would not support Plaintiff's argument. And Plaintiff misconstrues prior cases, suggesting they decide the very same issues that Mashable raises in its Motion, when they do not.

### 1. The Act's Text Proves Its Limited Scope

Plaintiff offers no express statutory evidence that the Pen Register Act applies beyond person-to-person communications. Instead, she asks the Court to focus myopically on the "pen register" definition, arguing that because "the word 'person' appears nowhere in th[at] definition," that "should be dispositive of any argument that the CIPA is limited to only 'person-to-person' communications." Opp. at 3 (citation omitted).

But even the definition of "pen register" supports the conclusion that the Act is limited to person-to-person communications (and is not applicable to commercial website visits), as only person-to-person communications contain "content." By definition, a "pen register" must operate on a wire or electronic communication that conveys some "content," even though the pen register does not actually intercept that content. *See* Cal. Penal Code § 638.50(b) (A "pen register" records "dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, *but not the contents of a communication*.") (emphasis added). This definition makes clear that the communication at issue must consist of two things: (1) "dialing, routing, addressing, or signaling information"—e.g., the equivalent of the phone number someone dials to place a call, and (2) communications "content[]"—i.e., the conversation that occurs on that call. *See id.* And to constitute a "pen register" (as opposed to a wiretapping or eavesdropping device, which necessarily intercepts the content of person-to-person communications, *see* Cal. Penal Code § 631), the device must capture only the dialing information, and must exclude the parties' conversation. *See* Cal. Penal Code § 638.50(b); *see also Ivey v. Harney*, 47 F.3d 181, 184 (7th Cir. 1995) ("a pen register is a cousin" to "a wiretap—a pen register requires the same sort of access to telephone lines but intercepts only the numbers dialed rather than the contents of phone conversations").

A communication has "content[]" only if it conveys some "substance, purport, or meaning"—not just technical details about the message. *In re Zynga Priv. Litig.*, 750 F.3d 1098,

1104 (9th Cir. 2014) (quoting 18 U.S.C. § 2510(8)); *see also Heiting v. Taro Pharms. USA, Inc.*, 709 F. Supp. 3d 1007, 1017–18 (C.D. Cal. 2023) (CIPA adopts federal Wiretap Act definition of "content[]"). In the absence of a person-to-person communication like an email exchange or a phone call, there is simply no substance and thus no communication with "content." A mere visit to a website does not convey "content." *See Gonzales v. Uber Techs., Inc.*, 305 F. Supp. 3d 1078, 1086 (N.D. Cal. 2018) ("opening a webpage" is "not a communication with content"); *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082 (C.D. Cal. 2021) ("keystrokes, mouse clicks, pages viewed" are not "contents" of a "communication"); *Vita v. New England Baptist Hosp.*, 243 N.E.3d 1185, 1205 (Mass. 2024) (no wiretapping claim for web-tracker because interactions with a commercial website were not "person-to-person" communication).[1]

Plaintiff's response to this point is to ask the Court to read out the term "content" from the definition, *see* Opp. at 4:1–4, but Plaintiff cites no authority for doing so and rewriting the statute in this manner would be improper. The only logical interpretation that would "give effect, if possible, to every clause and word of a statute" is that a pen register captures dialing information about a communication with content, but not the actual contents of that communication—indeed, this is stated in the statute itself. *See* Cal. Penal Code § 638.50(b); *see also Duncan v. Walker*, 533 U.S. 167, 174 (2001) (refusing to ignore presence of the term "State" in a provision because it would mean the term "has no operative effect on the scope of the provision") (internal quotation marks omitted); *see also, e.g.*, *United States v. Williams*, 659 F.3d 1223, 1227 (9th Cir. 2011) (citing "important rule" that "every word and clause in a statute [must] be given effect").

[1] Plaintiff urges the Court to ignore *Vita* because Massachusetts's wiretapping act "prohibits only the interception of 'wire or oral communication[s],'" and not electronic communications. Opp. at 4. Plaintiff is wrong—that act defines the term "wire communication" broadly to include "any communication made in whole or in part through the use of facilities for the transmission of communications by the aid of wire, cable, or *other like connection between the point of origin and the point of reception*." Mass. Gen. Laws Ann. ch. 272, § 99(B)(1) (emphasis added). This definition has been held to encompass electronic communications. *See, e.g., Commonwealth v. Moody*, 993 N.E.2d 715, 723 (Mass. 2013) (finding that "the existing statutory language . . . is broad enough to cover non-oral electronic transmissions."). And the *Vita* decision is clear that the Massachusetts act applies to electronic forms of person-to-person communications, *see Vita*, at 1199, but the statute does not apply to "web browsing activity" because "[b]rowsing and accessing the information published on a website is significantly different from having a conversation or sending a message to another person." *Id. Vita* is on point here.

Interpreting the "pen register" definition in the context of the rest of the Act further confirms it is inapplicable to websites like Mashable.com that do not allow person-to-person communications. As Mashable noted in its Motion, the Act's requirements for pen register orders refer to "subscribers" and "telephone line[s]," language that logically applies only to person-to-person communication services like phone or email services. *See* Cal. Penal Code § 638.52(c) & (d)(1), (3). And while Plaintiff appears to concede that "law enforcement" pen registers *are* limited to person-to-person communications, she maintains that the Act's prohibitions on "non-law enforcement" pen registers operate far more broadly. Opp. at 3 (quoting *Shah* for the premise that Section 638.52 "merely lists requirements relating to a particular type of pen register" available to law enforcement). But the Act itself is devoid of any support for this argument. And if the Legislature wanted to create two different definitions of "pen register" for two different contexts, it would have said so explicitly. Legislatures "do[] not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions"—in other words, they do not "hide elephants in mouseholes." *Whitman v. Am. Trucking Ass'n, Inc.*, 531 U.S. 457, 468 (2001). What is more, Plaintiff's interpretation makes no practical sense. The Legislature would not prohibit the use of a broad category of "pen registers," while implicitly restricting law enforcement to a much narrower category of "pen register" in criminal investigations.

Similarly, Plaintiff urges the Court to ignore the fact that the Act contains exemptions only for a narrow group of businesses—i.e., providers of electronic or wire communication services—while lacking exemptions for all others. Opp. at 4. Plaintiff argues that "[t]wo things can simultaneously be true": the Act can authorize telephone and email providers to "install pen registers" to operate, maintain, and test their services, whereas "website operators" can "not fall within any of the statute's exemptions." Opp. at 4 (internal quotation marks omitted). While of course those two things *could* be true, nothing in the Act supports this speculative reading. And Plaintiff's interpretation makes little sense since it would mean, for instance, that while a webmail provider could use tools on its site to screen incoming traffic from malicious IP addresses, numerous other website operators that do not offer communication services—including the District Court for the Northern District of California—could not do so to "protect the[ir] rights or

property," even when "the consent of the user of that service has been obtained." Cal. Penal Code § 638.51(b)(2), (5). Indeed, Plaintiff's argument fundamentally undermines her contention that website operators like Mashable are "not per se precluded" from capturing visitors' IP addresses because they "simply must procure [their] users' prior consent to do so." Opp. at 5:11–12. If "website operators" do "not fall within any of the statute's exemptions" as Plaintiff contends, Opp. at 4, then, according to Plaintiff, they cannot even rely on visitors' express consent, as Plaintiff also argues Mashable should do, *see id.* at 5 ("Defendant is not *per se* precluded from installing" the Trackers; "it simply must procure its users' prior consent to do so."). Far from interpreting the Pen Register Act as a "harmonious whole," Plaintiff's proposed reading would sow chaos through an "[in]coherent regulatory scheme." *Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) (citation omitted) (superseded by statute on other grounds).

**2. Legislative History Further Proves the Act's Limited Scope**

The legislative history also confirms what is evident from the statutory text: the Act is limited in scope to person-to-person communications. Almost 40 years ago, when Congress enacted the federal precursor to California's Pen Register Act, the drafters clearly understood that pen registers captured information only about who was speaking with whom—i.e., person-to-person communications. *See, e.g.*, S. Rep. No. 99-541, at 10 (1986), as reprinted in 1986 U.S.C.C.A.N. 3555, 3564 (pen registers "record the telephone numbers to which calls have been placed from a particular telephone"). And when Congress amended the federal Act to account for emerging electronic-communication technologies, Congress still understood that the Act applied only to communications *between people*. *See* 147 Cong. Rec. S10990-02, S10999-1000 (daily ed. Oct. 12, 1999) (statement of Sen. Leahy), 2001 WL 1297566.

When California adopted its own analog of the federal Act in 2015, the Legislature understood that pen registers are used to track "which *people*" are "*communicating with one another* and at what times." *Assembly Bill Policy Committee Analysis: Hearing on A.B. 929 Before the Assemb. Comm. on Pub. Safety*, 2015–2016 Reg. Sess. (Cal. 2015) at 16 (emphases added). And, as evident from recent legislation to clarify CIPA's scope and curb the wave of

abusive lawsuits, the Act was "never intended to apply" to commercial tools for "website analytics or online advertising." *Committee Analysis: Hearing on SB 690 Before the Sen. Comm. on Pub. Safety*, 2025-2026 Reg. Sess. (Cal. 2025), at 9–10.

Plaintiff offers no legislative history to the contrary, because none exists. Instead, Plaintiff simply declares this history "irrelevant," Opp. at 5–6, and mischaracterizes cases and pending legislation. For instance, Plaintiff cites *United States v. Forrester*, 512 F.3d 500 (9th Cir. 2008) claiming that "the Federal Pen Register Act *has* been applied to monitoring internet communications," Opp. at 7, but *Forrester* expressly *did not* address that issue. 512 F.3d at 509 ("whether or not the computer surveillance was covered by the then-applicable pen register statute" is "an issue that we *do not decide*") (emphasis added). As another example, Plaintiff cites a single, non-public article to incorrectly claim that SB 690—which seeks to clarify that the Pen Register Act was never intended to apply to suits like this one—"has been frozen in the [California] Assembly until 2026." Opp. at 7–8 & n.5. The current status of SB 690 (which has garnered widespread support and certainly is not "frozen"[2]) is beside the point: if the Act had clearly been intended to apply beyond person-to-person communications, there would be no need for an effort to clarify its scope or have drafted SB 690 at all.

### 3. Plaintiff Offers No Authority Squarely Holding That the Act Applies Beyond Person-to-Person Communications

None of the authority Plaintiff cites squarely considers whether the Pen Register Act is limited in its scope to person-to-person communications. *See* Opp. at 2–3. Instead, these cases consider other arguments that Mashable does not make, notably (1) whether software could constitute a "device" or "process" under the Pen Register Act, (2) whether IP addresses can be dialing, routing, addressing, or signaling information, or (3) whether the Act applies only to *telephone* calls. *See Mirmalek v. Los Angeles Times Commc'ns LLC*, No. 24-CV-01797-CRB, 2024 WL 5102709, at *3–4 (N.D. Cal. Dec. 12, 2024) (addressing whether the Act is limited to

[2] In just a few months, SB 690 unanimously passed through two Senate committees, the full Senate, and the Assembly's Committee on Public Safety. *See* Cal. Legislative Info, SB 690, Status, https://leginfo.legislature.ca.gov/faces/billHistoryClient.xhtml?bill_id=202520260SB690 (last visited July 15, 2025). The bill now awaits hearing before the Assembly Committee on Privacy and Consumer Protection. *See id.*

telephones, whether Plaintiff adequately alleged a "device" or "process," and whether Plaintiff alleged "Trackers record addressing information"); *Moody v. C2 Educ. Sys. Inc.*, 742 F. Supp. 3d 1072, 1076 (C.D. Cal. 2024) (holding Act not limited to "physical device attached to a telephone line," but not considering limitation to person-to-person communications); *Conohan v. Rad Power Bikes Inc.*, No. CV 25-0106 PVC, 2025 WL 1111246, at *6 (C.D. Cal. Apr. 3, 2025) (finding Act not limited to "telephone lines," but not considering Act's limitation to person-to-person communications); *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1050 (S.D. Cal. 2023) (finding that software could qualify as "process" under the Act, but not considering Act's limitation to person-to-person communications); *Rodriguez v. Autotrader.com, Inc.*, 762 F. Supp. 3d 921, 929 (C.D. Cal. 2025) (finding Act not limited to telephone surveillance, but not considering Act's limitation to person-to-person communications); *Zarif v. Hwareh.com, Inc.*, No. 23-CV-0565-BAS-DEB, 2025 WL 486317, at *12 (S.D. Cal. Feb. 13, 2025) (finding that software met "plain meaning of a 'process,'" but not considering Act's limitation to person-to-person communications); *Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924, 931 (N.D. Cal. 2024) (rejecting arguments that IP addresses were communications content, and argument that Act is limited to "telephone surveillance," but not considering Act's limitation to person-to-person communications); *Lesh v. Cable News Network, Inc.*, 767 F. Supp. 3d 33, 41 (S.D.N.Y. 2025) (finding Act not limited to telephones, but not considering Act's limitation to person-to-person communications). Plaintiff cannot identify a single case that squarely addresses the statutory interpretation question raised by Mashable.

### B. Even If the Act Applies, the SAC Still Fails to State a Claim

#### 1. The SAC Does Not Allege a Pen Register

For decades, across state and federal law, and even in its common dictionary definition, the term "pen register" has referred to something that captures information about a communication's destination, such as "the *numbers dialed* from a telephone." *People v. Blair*, 602 P.2d 738, 747 n.11 (Cal. 1979) (emphasis added); *United States v. New York Tel. Co.*, 434 U.S. 159, 161 n.1 (1977) (a "pen register" is a "device that records the numbers dialed on a telephone"); *In re Application of U.S. for Ord. Authorizing an In-Progress Trace*, 616 F.2d 1122,

1127 (9th Cir. 1980) (same); *People v. Suite*, 101 Cal. App. 3d 680, 687 n.4 (Cal. Ct. App. 1980) (a "pen register" is a "device which records the numbers dialed from a telephone."); *People v. Larkin*, 194 Cal. App. 3d 650, 653 (Cal. Ct. App. 1987) (same); *United States v. Torres*, 908 F.2d 1417, 1420 n.1 (9th Cir. 1990) (a "pen register records all numbers dialed from a specific line," but it "*does not identify the telephone numbers from which incoming calls originated*") (emphasis added); *Colom. Pictures Indus. v. Bunnell*, No. 06-CV-1093-FMC-JCX, 2007 WL 2080419, at *11 (C.D. Cal. May 29, 2007) (noting, in context of peer-to-peer file-sharing service, that a " pen register is essentially a device which captures outgoing telephone numbers or IP addresses" whereas a "trap and trace device," "essentially captures incoming IP addresses or telephone numbers (such as a caller identification device)"); *see also* Pen Register, *Merriam-Webster.com Legal Dictionary*, https://www.merriam-webster.com/legal/pen%20register (last visited July 15, 2025) ("pen register" is "a device that registers the numbers dialed from a telephone").

Plaintiff's Opposition tries to turn this definition on its head by alleging that a pen register actually collects the equivalent of the caller's own number, not the equivalent of numbers the caller dials. Opp. at 12 ("Defendant installed the Third Party Trackers (i.e., pen registers) on Defendant's website, which enabled Third Parties to collect Plaintiff's IP address and other identifying information."). There is no support in the Act itself for Plaintiff's novel position that in California—unlike in every other state and under federal law—a pen register captures the equivalent of the "calling" party's number, rather than the equivalent of the "called" party's number. In fact, the statutory text proves the opposite, as the California Legislature adopted the definitions in the federal Act—definitions that had already been subject to decades of consistent interpretation—almost word for word. *Compare* Cal. Penal Code § 638.50 (b) *with* 18 U.S.C. § 3127(3).[3] Save for minor, non-substantive differences, there is no daylight between the federal

---

[3] In relevant part, Section 638.50(b) adapts the federal definition as follows:

> ~~[T]he term~~ "[**P**]en register" means a device or process ~~which~~ **that** records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, ~~provided, however, that such information shall~~ **but** not ~~include~~ the contents of ~~any~~ **a** communication . . . .

and California "pen register" definitions. If the Legislature intended for the term "pen register" to mean the exact opposite of the federal definition, it would not have used the same definition.[4]

In effect, Plaintiff asks the Court to reinterpret the term "pen register" to mean the same thing as a "trap and trace" device. But "trap and trace" and "pen register" have separate and distinct definitions as they are separate and distinct devices. By its statutory definition, a "trap and trace" device, unlike a "pen register," captures incoming information identifying "the *originating number*" or other information "reasonably likely to identify *the source*" of a communication, Cal. Penal Code § 638.50(c) (emphases added)—i.e., the "originating number" of the calling party (here, Plaintiff herself). Yet while Plaintiff alleges Mashable captured her IP address (i.e., her "originating number"), Plaintiff has never alleged a "trap and trace" device in multiple rounds of pleadings—only a "pen register." *See, e.g.*, SAC at ¶¶ 49–55, 222, 223, 225. Hoping to remedy this pleading deficiency, Plaintiff essentially asks the Court to collapse these two definitions into one. *See, e.g.*, Opp. at 9. In addition to tossing aside decades of precedent, Plaintiff's novel interpretation of "pen register" would violate the rule requiring courts "to give effect, if possible, to every clause and word of a statute," because it would render the separate statutory definition for "trap and trace" devices superfluous. *Duncan*, 533 U.S. at 174 (citation omitted); *see also, e.g.*, *Williams*, 659 F.3d at 1227 (refusing to interpret two subsections to require the same thing because it "might render one of the two subsections superfluous and would thus violate an important rule of statutory construction—that every word and clause in a statute be given effect").

Plaintiff misleadingly claims that cases "have held that online trackers or tracking software such as the Trackers at issue here are 'pen registers.'" Opp. at 8. But most of these cases actually either (1) dealt with "trap and trace" allegations—not "pen register" allegations—or

---

[4] Plaintiff's interpretation would also make it pointless for law enforcement to seek an order for a pen register, at least as Plaintiff interprets that term. Section 638.52 of the Act, which sets out the requirements and process for law enforcement to obtain pen register orders, makes clear that law enforcement must already know the number of the party initiating the communication prior to obtaining a pen register, because the order must specify that information. *See id.* § 638.52(d)(3) (pen register order must "specify" the "number and, if known, physical location of the telephone line to which the pen register . . . is to be attached"). Under Plaintiff's interpretation, the very information the pen register collects (i.e., the calling party's phone number) is the same information that must be reflected on the face of the order. This makes no sense.

(2) interpreted other aspects of the "pen register" definition but did not consider whether a pen register captures the "calling" party's information as opposed to the "called" party's information. The *Moody* and *Conohan* complaints, for example, expressly alleged "trap and trace devices," Compl. ¶¶ 8–15, ECF No. 1, *Moody v. C2 Educ. Sys. Inc.*, No. 2:24-cv-04249 (C.D. Cal. May 22, 2024); Compl. ¶¶ 5–30, ECF No. 1, *Conohan v. Rad Power Bikes Inc.*, No. 2:25-cv-00106 (C.D. Cal. Jan. 6, 2025), so neither court had any reason to address the argument Mashable makes here. *See Moody*, 742 F. Supp. 3d at 1076; *Conohan*, 2025 WL 1111246, at *1.

Most of the other cases Plaintiff cites also did not consider whether a "pen register" captures the calling party's number. For example, in *Miramalek*, the defendant contended that: (1) the Pen Register Act is limited to telephones and does not extend to *any* internet-based communications, and (2) that capturing IP addresses does not violate the Act because neither the Act nor its legislative history expressly mentions IP addresses and because reading the Act in this way would "directly conflict" with the CCPA. *See* Defendant's Mot. to Dismiss at 4–8, ECF No. 22, *Mirmalek v. LA Times*, No. 3:24-CV-01797 (N.D. Cal. Oct. 4, 2024); *see id.* 5, 8–10. Consequently, this Court was not presented with, and had no reason to address, whether a device alleged to collect the "calling" party's *own IP address* (as opposed to the *"called" party's* IP address or other information) could constitute a "pen register." *Mirmalek*, 2024 WL 5102709, at *3–4. All but one of the other cases Plaintiff cites also did not consider or decide, whether a "pen register" captures the "calling" party's information.[5]

Against the great weight of above authority, Plaintiff can cite only one decision—*Shah*, 754 F. Supp. 3d, that held, in denying a motion to dismiss, that a pen register under the Act could collect information such as "the phone number called." *Id.* at 929. But even *Shah* described the "analogy to a traditional pen register is instructive," and correctly noted that a "traditional pen

[5] *See Rodriguez*, 762 F. Supp. 3d at 929; *Zarif*, 2025 WL 486317, at *12; *Greenley*, 684 F. Supp. 3d at 1050; *Lesh*, 767 F. Supp. 3d at 40–42; *Gabrielli v. Motorola Mobility LLC*, No. 24-CV-09533-JST, 2025, WL 1939957, at *11 (N.D. Cal. July 14, 2025) (addressing an argument that Mashable does not make—i.e., whether the Act "applies only to telephones."); *Riganian v. LiveRamp Holdings, Inc.*, No. 25-CV-00824-JST, 2025 WL 2021802, at *11 (N.D. Cal. July 18, 2025) (addressing argument that the Pen Register Act "applies only to telephones and so the technologies Plaintiffs identify do not qualify as pen registers").

register" would not collect such information. *Id*. Mashable respectfully suggests that the court in *Shah* did not have the benefit of the full analysis here and that the case was wrongly decided on this issue. *Shah* is also inconsistent with California cases and decades of other authorities that adopt the long-established meaning of "pen register." *See, e.g.*, *Blair*, 602 P.2d at 747 n.11 ("A pen register is a mechanical device which records the *numbers dialed* from a telephone.") (emphasis added); 86 Cal. Op. Att'y Gen. 198, at *1 (2003) ("A 'pen register' records the numbers dialed out from a particular telephone line," whereas "[a] 'trap and trace device' records the originating telephone numbers of the calls dialed into a particular telephone line."); *see* Request for Judicial Notice, Ex. B., *Rodriguez v. Plivo Inc.*, No. 24STCV08972, 2024 WL 5184413 (ECF No. 35-2), at *2 (Cal. Super. Ct. Oct. 2, 2024) (pen registers "collect outgoing information, such as outgoing telephone numbers, outgoing email addresses").

In a last-ditch effort to save her claim, Plaintiff maintains that, if the Court finds that she has failed to allege a "pen register," it "would simply mean Defendant installed 'trap and trace devices,'" and "either is sufficient" to state a claim. Opp. at 9 (quoting *Heiting v. FKA Distrib. Co.*, No. 2:24-CV-07314-HDV-AGR, 2025 WL 736594, at *3 (C.D. Cal. Feb. 3, 2025), for the proposition that "software that 'identifies the source of visitors to Defendant's website' was a 'trap and trace device'"). But Plaintiff's Complaint does not allege a trap and trace device, *see, e.g.*, SAC at ¶¶ 49–55, 222, 223, 225, and Plaintiff cannot ask the Court to "supply essential elements of the claim that were not initially pled." *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). Even if the Court were to grant Plaintiff leave to amend her complaint a *third* time to abandon her "pen register" claim and adopt a "trap and trace" theory, her claim would still fail for multiple other, independent reasons that cannot be cured through amendment, including the other arguments Mashable makes here.

**2. The Complaint Does Not Allege a Communication With Content**

Plaintiff has not alleged a communication with "contents" as required. *See* Cal. Penal Code § 638.50(b) (A "[p]en register" records "dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, *but not the contents of a communication*.") (emphasis added). As

already discussed, *see* Section II.A.1, *supra*, although a "pen register," unlike a wiretap, only captures dialing information and must not intercept the contents of a communication, its definition nevertheless requires that the communication at issue contain some content. Otherwise, the Act's reference to "contents" would serve no purpose. Treating this term as a nullity would violate the interpretive canon against surplusage, which requires a court "to give effect, if possible, to every clause and word of a statute." *Duncan*, 533 U.S. at 174 (citation omitted).

Plaintiff appears to obliquely recognize this by insisting that "the Trackers" "are 'pen registers' because, while they record or decode 'routing, addressing, or signaling information transmitted by' Plaintiff's computer, they do *not* capture the *contents of those communications*." Opp. at 9–10. (second emphasis added). But this begs the question: what are the "contents" here that are *not* being captured? Plaintiff has not alleged that she communicated any "substance, purport, or meaning of [a] communication" when she visited Mashable.com. *In re Zynga Priv. Litig.*, 750 F.3d at 1104. And she has not argued that accessing Mashable's site qualifies as an electronic communication with content, nor could she. Merely "opening a webpage" is "not a communication with content." *Gonzales*, 305 F. Supp. 3d at 1086; *see also Yoon*, 549 F. Supp. 3d at 1082 ("keystrokes, mouse clicks, pages viewed" are not "contents" of a "communication").[6]

**3. Parties to the "Communication" Are Exempt**

Mashable, as the operator of the website that Plaintiff allegedly visited, is the intended recipient of, and other party to, any supposed communication with Plaintiff and therefore cannot be liable under the Pen Register Act. *See* Mot. at 10. Plaintiff has already squarely conceded this point and admitted that Mashable can lawfully install and use a supposed "pen register" to collect visitor's IP addresses and other information without violating the Act. Plf's Opp. to Mashable's Mot. to Dismiss Plf's First Amend. Compl. (ECF No. 14), at 11 (conceding that "[l]ike a party to the communication[,]" Mashable "is not liable for its own collection of IP addresses and other

---

[6] Plaintiff's cited authorities are of little help. Her quoted excerpt from *Shah* simply recites the *plaintiff's own allegation* that the trackers at issue were "not alleged to collect the contents," but does not address whether a pen register claim requires the existence of a communication with contents. *Shah*, 754 F. Supp. 3d at 929. Plaintiff's citations to *Mirmalek* and *Moody* are even less persuasive, as *neither case* makes any mention of the existence or non-existence of content at all. *See Mirmalek*, 2024 WL 5102709, at *4; *Moody*, 742 F. Supp. 3d at 1077.

information."). Plaintiff is correct. Since the advent of caller ID, courts have recognized that pen register laws do not prohibit the called party from capturing the number about the calling party. *See Wis. Pro. Police Ass'n v. Pub. Serv. Comm'n of Wis.*, 555 N.W.2d 179, 188 (Wis. Ct. App. 1996) (pen register laws "protect telephone users from unauthorized third-party or governmental intrusions," and not "to protect telephone users from one another").

In Opposition, Plaintiff tries to sidestep her prior admission by emphasizing that "Plaintiff's claim is *not* that [Mashable] itself collected her information," but instead that Mashable "installed and used the Trackers" so that "*Third Parties* [could] collect[] Plaintiff's information" without Plaintiff's consent. Opp. at 11. Plaintiff, however, provides no support for her argument that the Act imposes some sort of purpose restriction or confidentiality obligation on the called party's installation or use of a pen register, nor is there any. The Act makes it unlawful only to "install or use a pen register." Cal. Penal Code §§ 638.51(a), 638.50(b). Plaintiff's admission that Mashable can install and use a pen register thus ends the matter.[7]

**4. The Pen Register Act Does Not Extend to Aiding and Abetting**

In Opposition, Plaintiff does not dispute Mashable's contention that the Pen Register Act does not allow for aiding and abetting claims. *See generally*, Opp. at 12–13. She therefore admits that no such cause of action exists in the statute. *Cody v. Ring LLC*, 718 F. Supp. 3d 993, 1003 n.4 (N.D. Cal. 2024); *see Caravan Canopy Intl, Inc. v. Home Depot U.S.A., Inc.*, 2021 WL 831028, at *3 (C.D. Cal. Feb. 25, 2021) ("Plaintiff does not address this argument, and arguments to which no response is supplied are deemed conceded.").

And while Plaintiff insists she does not rely on an aiding and abetting theory, her

[7] None of the authorities Plaintiff cites support the position that a party to a communication can only lawfully install and use a supposed "pen register" for a specific purpose or must keep information gathered through the pen register confidential. Plaintiff cites to *Ribas*, contending that courts draw a "substantial distinction" between "the recording of a communication by a party and 'its simultaneous dissemination to an unannounced second auditor.'" Opp. at 11 (*quoting Ribas v. Clark*, 38 Cal. 3d 355, 360–61 (Cal. 1985)). But *Ribas* is a wiretapping case, involving a very different provision of CIPA. *See id.* Most importantly, *Ribas* involved a claim against the alleged "second auditor" who listened in on a private conversation, and not against the other party to that conversation. *See id.* at 359 ("Plaintiff's primary contention is that defendant's act of monitoring his conversation with his wife constituted a breach of the Invasion of Privacy Act."). Accordingly, *Ribas* has no bearing here.

arguments in opposition prove otherwise. Plaintiff alleges: "[i]t is [Mashable] whose installation and use of the Trackers *caused* data brokers to collect" Plaintiff's information. Opp. at 1 (emphasis added). Plaintiff also alleges that Mashable "installed the Third Party Trackers" on Mashable's [w]ebsite, which *enabled the Third Parties* to collect Plaintiff's IP address and other identifying information." *Id.* at 18 (emphasis added). But characterizing Mashable's conduct as "causing" and "enabling" the actions of others is a textbook example of an aiding and abetting claim. *See, e.g.*, *Mosier v. Stonefield Josephson, Inc.*, 815 F.3d 1161, 1167–68 (9th Cir. 2016) ("Causation is an essential element of an aiding and abetting claim.") (citation omitted); *Serv. Emps. Int'l Union v. Roselli*, No. C 09-00404WHA, 2009 WL 3013501, at *6 n.7 (N.D. Cal. Sept. 17, 2009) ("the act of aiding and abetting is distinct from the primary violation; liability attaches because the aider and abettor behaves in a manner that *enables* the primary violator to commit the underlying tort") (emphasis added) (citation omitted).[8] Plaintiff's attempt to impose secondary liability fails since the Act, as Plaintiff concedes, does not authorize aiding and abetting claims. *See Boim v. Holy Land Found. for Relief & Dev.*, 549 F.3d 685, 689 (7th Cir. 2008) (Posner, J.) ("statutory silence on the subject of secondary liability means there is none"). The Court should reject Plaintiff's effort to pass her aiding and abetting allegations off as a direct claim.

**C. The Rule of Lenity Requires Dismissal**

Even if the SAC could potentially state a colorable "pen register" claim, the Court should still dismiss this case under the rule of lenity. Plaintiff's primary rebuttal to this argument is to cite a case that addressed a completely different provision of CIPA—Section 632.7. *See Smith v. LoanMe, Inc.*, 11 Cal. 5th 183, 188 (Cal. 2021). Plaintiff's reliance on *LoanMe* is misguided. First, *LoanMe*'s analysis supports Mashable's position, because it affirms that the "rule of lenity generally requires that ambiguity in a criminal statute should be resolved in favor of lenity, giving the defendant the benefit of every reasonable doubt on questions of interpretation." *Id.* at 202 (cleaned up). As detailed in Mashable's Motion, there are multiple, serious ambiguities in the Pen

[8] Notably, Section 631 of CIPA, which does authorize claims for aiding and abetting, uses the term "cause" to describe such an offense. *See* Cal. Penal Code § 631(a) (providing liability for anyone who "permit[s], or cause[s] to be done" unlawful wiretapping by another person).

Register Act's application to the facts alleged here. What is more, *LoanMe* does not mention the Pen Register Act at all, much less consider whether it applies to commercial websites. *LoanMe* only addressed whether Section 632.7—a provision uniquely focused on the interception of communications made on cordless or cellular telephones—applied to the parties to a phone call. *See id.* The other cases Plaintiff cites also considered entirely different statutes and arguments, or involved facts where the court found a lack of ambiguity in the statute.[9]

As established in Mashable's Motion, the Pen Register Act is, at a minimum, seriously ambiguous as to its application to this suit. The Act contains no language clearly indicating that it applies to websites that lack person-to-person communication features, or that it restricts website operators' ability to collect information about site visitors. *See* Motion at 12–13. Moreover, the express application of laws related to targeted advertising found in the CCPA is at least further evidence of such serious ambiguity. *See id.* at 13. Further, the current efforts in the California Legislature to clarify that the Pen Register Act was never intended to apply here, and to stem "abusive" lawsuits like this one, is strong proof of the statute's ambiguity. *See United States v. Lanier*, 520 U.S. 259, 266 (1997); RJN, Ex. E, Transcript of SB 690 Hearing. As Senator Caballero stated recently in a hearing, "SB 690 will simply clarify that the CCPA, a detailed, complex modern law -- specifically designed to regulate online business activity, should remain the guiding law on these matters," and that "business activities already regulated by the CCPA are not within the scope of CIPA." *See id* at 6. In sum, the Court "must choose the interpretation" that is "least likely to impose penalties unintended" by its drafters and dismiss the SAC with prejudice. *U.S. v. Nosal*, 676 F.3d 854, 863 (9th Cir. 2012) (citation omitted).

## III. CONCLUSION

For the reasons stated above, the Court should dismiss Plaintiff's SAC with prejudice.

[9] *See Vera v. O'Keefe*, 791 F. Supp. 2d 959 (S.D. Cal. 2011) (analyzing rule of lenity as applied to Cal. Penal Code § 632); *Howard v. Lab'y Corp. of Am.*, No. 1:23-cv-00758, 2024 WL 4250677 (M.D.N.C. Aug. 8, 2024), *report and recommendation adopted*, 2024 WL 4326898 (M.D.N.C. Sept. 27, 2024) (rejecting application of rule of lenity where defendants failed to provide specific ambiguities between CIPA or Pennsylvania's wiretapping statute); *James v. Walt Disney Co.*, 701 F. Supp. 3d 942 (N.D. Cal. 2023), *motion to certify appeal denied*, 2024 WL 664811 (N.D. Cal. Feb. 16, 2024) (analyzing the rule of lenity as applied to Pennsylvania's wiretapping statute).

Dated: July 21, 2025

**PERKINS COIE LLP**

By: */s/ James G. Snell*

James G. Snell
Mikella M. Hurley
Timothy M. Carter
Bo Yan J. Moran

Attorneys for Defendant MASHABLE, INC.