James G. Snell (CA State Bar No. 173070)
JSnell@perkinscoie.com
Timothy M. Carter (CA State Bar No. 335212)
TCarter@perkinscoie.com
**PERKINS COIE LLP**
3150 Porter Drive
Palo Alto, California 94304-1212
Telephone: +1.650.838.4300
Facsimile: +1.650.838.4350

Mikella M. Hurley (Admitted *pro hac vice*)
MHurley@perkinscoie.com
**PERKINS COIE LLP**
700 Thirteenth Street, N.W., Suite 800
Washington, D.C. 20005-3960
Telephone: +1.202.654.6200
Facsimile: +1.202.654.6211

Attorneys for Defendant MASHABLE, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

DAWN FREGOSA, individually and on behalf of all others similarly situated,

Plaintiff,

v.

MASHABLE, INC.,

Defendant.

Case No. 3:25-CV-01094-CRB

[Removed from the Alameda County Superior Court, Case No. 24CV103566]

**DEFENDANT MASHABLE, INC.'S MOTION TO CERTIY FOR INTERLOCUTORY APPEAL AND TO STAY PROCEEDINGS**

[*Request for Judicial Notice filed concurrently herewith*]

DATE: December 19, 2025
TIME: 10:00 a.m.
CTRM: 6, 17th Floor

Complaint Filed: December 17, 2024
Action Removed: February 3, 2025

ORAL ARGUMENT REQUESTED

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that, on December 19, 2025, at 10 a.m. or as soon thereafter as the matter may be heard, Defendant Mashable, Inc. ("Mashable") will bring on for hearing in Courtroom 6 (17th Floor) of the above-captioned court located at 450 Golden Gate Avenue, San Francisco, California 94102, a Motion seeking an Order to Certify this Court's Order Denying Mashable's Motion to Dismiss (ECF No. 53) for Interlocutory Appeal, and an Order staying proceedings pending resolution of any interlocutory appeal, pursuant to 28 U.S.C. § 1292(b).

## STATEMENT OF RELIEF SOUGHT – L.R. 7-2(B)(3)

Mashable respectfully moves for an Order certifying for interlocutory appeal under 28 U.S.C. § 1292(b) this Court's Order of October 9, 2025 Denying Mashable's Motion to Dismiss for failure to state a claim for relief, and an Order staying proceedings pending resolution of any interlocutory appeal should the Ninth Circuit accept the appeal.

This Motion is based upon this Notice of Motion, the supporting Memorandum of Points and Authorities, the Request for Judicial Notice and attached exhibits, the pleadings and other papers on file herein, and upon such oral argument as the Court may entertain at the hearing on this Motion.

## SUMMARY OF ARGUMENT

This Court should certify its October 9 Order on Mashable's Motion to Dismiss for interlocutory appeal because all three factors for certification under 28 U.S.C. § 1292(b) are satisfied. The Court's Order (1) "involves a controlling question of law"; (2) "as to which there is substantial ground for difference of opinion"; and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).

**1. Controlling question of law.** This Court's ruling on Mashable's motion to dismiss presented a pure legal question: whether California law's "pen register prohibition extends to software processes that record addressing information in electronic communications"—specifically, software embedded in a website that captures information about website visitors, including their IP addresses. Order at 1, 10–16. Answering that question requires judicial

interpretation of key definitions, elements, and requirements of the California Invasion of Privacy Act ("CIPA"), which are "fundamental" to Plaintiff's claims for relief. *Sterling v. Feek*, 150 F.4th 1235, 1247 (9th Cir. 2025). Accordingly, the Ninth Circuit's resolution of the legal question would "materially affect the outcome of litigation in the district court." *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1982).

**2. Substantial ground for difference of opinion.** The legal issues decided by the Order are subject to reasonable disagreement on multiple substantial grounds. Importantly, there are currently *zero* appellate decisions from state or federal courts interpreting the California Pen Register Act, so the correct interpretation of that statute raises "novel" and significant questions about "which fair-minded jurists might reach contradictory conclusions." *Reese v. BP Expl. (Alaska) In*c., 643 F.3d 681, 688 (9th Cir. 2011). Both the Ninth Circuit and this Court favor certification where there is no relevant appellate precedent. *See id.* ("a novel issue may be certified for interlocutory appeal without first awaiting development of contradictory precedent"); *see also* Order, *In re Uber Techs. Inc. Passenger Sexual Assault Litig.*, No. 23-md-3084, ECF No. 667 at 2 (N.D. Cal. Jun. 25, 2024) (Breyer, J.) ("There is substantial ground for difference in opinion on this issue, which is a matter of first impression not governed by any explicit statutory command or controlling precedent."). Given the lack of appellate precedent, there is an active debate among state and federal courts interpreting the Pen Register Act—a debate which has led courts to reach "contradictory conclusions" on at least four separate grounds. *ICTSI Oregon, Inc. v. Int'l Longshore & Warehouse Union*, 22 F.4th 1125, 1130 (9th Cir. 2022).

a. First, courts have reached conflicting conclusions about the definition of a "pen register" as it applies to a website's collection of visitors' IP addresses. Specifically, courts do not agree about whether a "pen register" exists when a device captures a website visitor's *own IP* address, rather than information analogous to that captured by a traditional pen register: the numbers *dialed* by a caller from a monitored phone. *E.g.*, *Rodriguez v. Plivo Inc.*, No. 24STCV08972, 2024 WL 5184413, at *2 (Cal. Super. Oct. 2, 2024) ("Plaintiff's IP address is not the type of information collected by pen registers"). This Court's Order cited a number of federal district court decisions touching on pen registers, but all but one did not reach this crucial question;

those cases instead rejected a different argument that pen registers *categorically* apply only to legacy telephone equipment. *E.g.*, *Mirmalek v. Los Angeles Times Commc'ns LLC*, No. 24-cv-1797, 2024 WL 5102709, at *3 (N.D. Cal. Dec. 12, 2024) (Breyer, J.) (rejecting claim that "CIPA's pen register definition applies 'only to telephone technology'"). That is not Mashable's argument. As to the legal question that Mashable's motion has raised, there is a clear divide among courts and no binding precedent.

b. Second, it is unsettled whether the Pen Register Act applies to parties to the underlying communication. It is well-established that, under CIPA's eavesdropping and wiretapping provisions, "a party to the communication cannot be liable." *Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732, 744 (N.D. Cal. 2023). And the California Supreme Court has been clear that CIPA protects private conversations against intrusions into private conversations by *third parties*. *Ribas v. Clark*, 38 Cal.3d 355, 361 (1985). California statutes "must be harmonized, both internally and with each other." *Dyna-Med, Inc. v. Fair Emp. & Hous. Comm'n.*, 743 P.2d 1323, 1334 (Cal. 1987). As courts in other jurisdictions have noted, pen-register laws "protect telephone users from unauthorized third-party or governmental intrusions"; they do not "protect telephone users from one another." *Wisconsin Pro. Police Ass'n v. Public Serv. Comm'n of Wis.*, 555 N.W.2d 179, 188 (Wis. Ct. App. 1996). But no appellate court has considered whether harmonizing the Pen Register Act with the rest of CIPA requires or justifies limiting pen-register liability for a party to the communication.

c. Third, there are additional reasonable grounds for disagreement about the extent to which visiting a website, without more, constitutes a "communication" as required for the Pen Register Act to apply. Courts have held that simply visiting a website is not a protected "communication" under other CIPA provisions, because a website visitor conveys no content or message when they merely land on the site. *Augustine v. Great Wolf Resorts, Inc.*, No. 23-cv-281, 2024 WL 3450967, at *6 (S.D. Cal. July 18, 2024). And the Ninth Circuit has defined a "pen register" in other contexts as a device that captures information "*associated with*" an underlying substantive "communication" like a phone call. *Twitter, Inc. v. Garland*, 61 F.4th 686, 691 n.2 (9th Cir. 2023) (emphasis added). These established principles raise additional questions that have not

been resolved under the Pen Register Act. Given the need to read CIPA as a cohesive whole, there is substantial reason to believe that the Ninth Circuit would—in analyzing the Pen Register Act for the first time—determine that liability must be limited to an underlying communication with *substantive content* beyond what is captured by the simple act of visiting a website.

d. Finally, the implications of the Court's Order highlight the reasonable grounds for disagreement. The California Legislature "does not … hide elephants in mouseholes." *Mendoza v. Fonseca McElroy Grinding Co.*, 492 P.3d 993, 1005 (Cal. 2021). Yet Plaintiff's theory risks subjecting *all websites* available to Californians to *criminal* liability for operating entirely commonplace technologies. This includes technologies used for non-advertising purposes such as offering visitors jurisdiction-specific privacy protections (which are sometimes legally required), or protecting websites against cyber-attacks. Multiple California courts have taken such consequences into account in evaluating whether a once-rarely litigated statute should be interpreted to transform the modern Internet. Courts have concluded that it was not the Legislature's intent to use unspecific language to take the dramatic step of criminalizing the collection of IP addresses. *Rodriguez v. Sparc Grp., LLC*, No. 24STCV26946, 2025 Cal. Super. Lexis 41697 (Cal. Super. July 9, 2025), *tentative ruling adopted*, 2025 Cal. Super. Lexis 38208 (Cal. Super. July 9, 2025) (holding that the Pen Register Act "cannot reasonably be read" so broadly); *Licea v. Hickory Farms LLC*, No. 23STCV26148, 2024 WL 1698147, at *4 (Cal. Super. Mar. 13, 2024) (rejecting this "broad based interpretation" that would "potentially disrupt a large swath of internet commerce."). Another judge in this District recently found that it would be inappropriate to rely on ambiguities in CIPA to "criminalize the use of web traffic data," especially where California has "adopted other statutes" like the California Consumer Privacy Act ("CCPA") that "more clearly speak to the practice of data sharing." *Doe v. Eating Recovery Ctr. LLC*, No. 23-cv-5561, 2025 WL 2971090, at *1, *6 (N.D. Cal. Oct. 17, 2025) (Chhabria, J.).

**3. Immediate appeal may materially advance termination of the litigation.** Offering the Ninth Circuit a chance to interpret the Pen Register Act for the first time would materially assist all parties and this Court in the administration of this case. If Mashable prevails on appeal, the case will likely conclude entirely. And regardless of the outcome of an interlocutory

appeal, the Ninth Circuit's guidance would "appreciably shorten the time, effort, [and] expense of conducting" these "proceedings." *ICTSI Oregon*, 22 F.4th at 1131. "[E]ven an affirmance may provide useful guidance" about the scope of "potentially wide-ranging and expensive discovery into how" Mashable—like "millions of [other] websites"—operates in California. *Best Carpet Values, Inc. v. Google LLC*, No. 5:20-cv-4700, 2022 WL 22843012, at *3 (N.D. Cal. May 2, 2022). Those interests are particularly acute where, as here, Plaintiff proceeds on behalf of a putative class and will potentially demand extraordinarily burdensome discovery. Indeed, one reason for the lack of appellate precedent on this statute appears to be the extreme "pressure to settle" placed on defendants in pen-register cases, particularly those brought as class actions, because they seek "statutory damages." *Shady Grove Orthopedic Assocs., P.A.* v. *Allstate Ins. Co.*, 559 U.S. 393, 445 n.3 (2010). Certification would also provide much-needed clarity to the parties in similar cases and would relieve at least some of the pressure on defendants to settle before an appellate court can even consider their multiple defenses.

**4. A stay is warranted.** To secure the benefits of an interlocutory appeal on an effective administration of this litigation, the Court should also stay proceedings pursuant to 28 U.S.C. § 1292(b) if the Ninth Circuit accepts the appeal. There is no reason to charge ahead with costly and complicated discovery or class-certification proceedings until the Ninth Circuit has a chance to address whether—and to what extent—Plaintiff's claims are viable.

Dated: November 10, 2025

**PERKINS COIE LLP**

By: */s/ James G. Snell*
James G. Snell
Mikella M. Hurley
Timothy M. Carter

Attorneys for Defendant MASHABLE, INC.

**TABLE OF CONTENTS**


MEMORANDUM OF POINTS AND AUTHORITIES .......... 1

I. INTRODUCTION .......... 1

II. STATEMENT OF ISSUES TO BE DECIDED – L.R. 7-4(3) .......... 3

III. FACTUAL BACKGROUND .......... 3

IV. ARGUMENT .......... 4

A. Interpreting the Pen Register Act Raises Controlling Legal Questions. .......... 5

B. There Are at Least Four Substantial Grounds for Difference of Opinion. .......... 6

C. Appellate Guidance Will Materially Advance the Litigation. .......... 13

D. The Court should stay proceedings pending appeal. .......... 15

V. CONCLUSION .......... 15

## TABLE OF AUTHORITIES

**CASES**

*Asis Internet Servs. v. Active Response Grp.*,
2008 WL 4279695 (N.D. Cal. Sept. 16, 2008) ....15

*Augustine v. Great Wolf Resorts, Inc.*,
No. 23-cv-281, 2024 WL 3450967 (S.D. Cal. July 18, 2024) ....11

*Bennett v. United States*,
44 F.4th 929 (9th Cir. 2022) ....5

*Best Carpet Values, Inc. v. Google LLC*,
No. 5:20-cv-4700, 2022 WL 22843012 (N.D. Cal. May 2, 2022).... passim

*Capitol Recs. Inc. v. Thomas-Rasset*,
No. 06-cv-1497, 2009 WL 1664468 (D. Minn. June 11, 2009)....10, 12

*Casillas v. Transitions Optical, Inc.*,
No. 23STCV30742, 2024 WL 4873370 (Cal. Super. Sep. 09, 2024)....6

*Chambers v. Whirlpool Corp.*,
980 F.3d 645 (9th Cir. 2020)....13

*Couch v. Telescope Inc.*,
611 F.3d 629 (9th Cir. 2010)....6

*Doe v. Eating Recovery Ctr. LLC*,
No. 23-cv-5561, 2025 WL 2971090 (N.D. Cal. Oct. 17, 2025) .... passim

*Dyna-Med, Inc. v. Fair Emp. & Hous. Comm'n.*,
743 P.2d 1323 (Cal. 1987) ....9, 10

*Gonzales v. Uber Techs., Inc.*,
305 F. Supp. 3d 1078 (N.D. Cal. 2018) ....10

*Greenley v. Kochava, Inc.*,
684 F. Supp.3d 1024 (S.D. Cal. 2023)....1, 5, 6

*ICTSI Oregon, Inc. v. Int'l Longshore & Warehouse Union*,
22 F.4th 1125 (9th Cir. 2022) .... passim

*In re Cement Antitrust Litig.*,
673 F.2d 1020 (9th Cir. 1982)....5

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020)....9

*In re Google Inc. Street View Elec. Commc'ns Litig.*,
No. 10-md-2184, 2011 WL 13257346 (N.D. Cal. July 18, 2011) ........................................15

*In re Uber Techs. Inc. Passenger Sexual Assault Litig.*,
No. 23-md-3084, ECF No. 667 (N.D. Cal. Jun. 25, 2024) ..................................................1, 6

*Kearney v. Salomon Smith Barney, Inc.*,
137 P.3d 914 (Cal. 2006) ....................................................................................................8, 9

*Licea v. Hickory Farms LLC*,
No. 23STCV26148, 2024 WL 1698147 (Cal. Super. Mar. 13, 2024) ................................6, 12

*Mediterranean Enters., Inc. v. Ssangyong Corp.*,
708 F.2d 1458 (9th Cir. 1983)...............................................................................................14

*Mendoza v. Fonseca McElroy Grinding Co.*,
492 P.3d 993 (Cal. 2021) ......................................................................................................11

*Mirmalek v. Los Angeles Times Commc'ns LLC*,
No. 24-cv-1797, 2024 WL 5102709 (N.D. Cal. Dec. 12, 2024)..........................................7, 14

*People v. Blair*,
602 P.2d 738 (Cal. 1979) ........................................................................................................7

*Reese v. BP Expl. (Alaska) Inc.*,
643 F.3d 681 (9th Cir. 2011)...........................................................................................1, 5, 6

*Ribas v. Clark*,
696 P.2d 637 (Cal. 1985) ...................................................................................................3, 8, 9

*Rodriguez v. Plivo Inc.*,
No. 24STCV08972, 2024 WL 5184413 (Cal. Super. Oct. 2, 2024) ............................... passim

*Rodriguez v. Sparc Grp., LLC*,
No. 24STCV26946, 2025 Cal. Super. Lexis 41697 (Cal. Super. July 9, 2025), *tentative ruling adopted*, 2025 Cal. Super. Lexis 38208 (Cal. Super. July 9, 2025) ..........................................................................................................................8, 12

*Shady Grove Orthopedic Assocs., P.A.* v. *Allstate Ins. Co.*,
559 U.S. 393 (2010).................................................................................................................14

*Shah v. Fandom, Inc.*,
754 F.Supp.3d 924 (N.D. Cal. 2024) .......................................................................................8

*Sterling v. Feek*,
150 F.4th 1235 (9th Cir. 2025) ........................................................................................ passim

*Swarts v. Home Depot, Inc.*,
689 F. Supp. 3d 732 (N.D. Cal. 2023) ......................................................................................9

*Thomasson v. GC Servs. Ltd. P'ship*,
321 F. App'x 557 (9th Cir. 2008) ....................8

*Twitter, Inc. v. Garland*,
61 F.4th 686 (9th Cir. 2023) ....................11

*United States v. New York Tel. Co.*,
434 U.S. 159 (1977) ....................8

*United States v. Real Prop. & Improvements Located at 2441 Mission St.*,
No. 13-cv-2062, 2014 WL 1350914 (N.D. Cal. Apr. 4, 2014) ....................14, 15

*United States v. Taketa*,
923 F.2d 665 (9th Cir. 1991) ....................7, 8

*Warden v. Kahn*,
99 Cal. App. 3d 805 (Ct. App. 1979) ....................9

*Williams v. What If Holdings, LLC*,
No. 22-cv-3780, 2022 WL 17869275 (N.D. Cal. Dec. 22, 2022) ....................9

*Wisconsin Pro. Police Ass'n v. Public Serv. Comm'n of Wis.*,
555 N.W.2d 179 (Wis. Ct. App. 1996) ....................10

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) ....................10

**STATUTES**

28 U.S.C. § 1292(b) .................... passim

Cal. Penal Code § 631 ....................9

Cal. Penal Code § 632 ....................8, 9

Cal. Penal Code § 638.50 ....................1, 3, 6

Cal. Penal Code § 638.50(b) ....................5

Cal. Penal Code § 638.51 ....................1, 3, 9

**RULES**

Fed. R. Civ. P. 12(b)(6) ....................3

L.R. 7-2(B)(3) ....................1

L.R. 7-4(3) ....................3

**OTHER AUTHORITIES**

Akamai, Glossary: What is Blackhole Routing?, https://www.akamai.com/glossary/what-is-blackhole-routing ................................................13

Roma Patel and Kathryn Rattigan, *California Federal Court Clarifies CIPA's Reach Over Website Tracking in Mashable Hearing*, JD Supra (Oct. 17, 2025), https://www.jdsupra.com/legalnews/california-federal-court-clarifies-cipa-1259188/ ........................................................................................................................2

Tilman Harmeling, *What you need to know about consent management: A complete guide*, Usercentrics (Mar. 26, 2025), https://usercentrics.com/knowledge-hub/consent-management/#:~:text=long%2Dterm%20relationships.-,What%20is%20a%20consent%20management%20platform%20(CMP)?,control%20over%20their%20personal%20data....................................................................12

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Mashable respectfully requests that this Court certify for interlocutory appeal, under 28 U.S.C. § 1292(b), its Order of October 9, 2025 denying Mashable's motion to dismiss Plaintiff's Second Amended Complaint ("SAC") for failure to state a claim for relief. ECF No. 53 ("Order"). This Court's Order resolved a pure legal question: whether the California Invasion of Privacy Act's ("CIPA") "pen register prohibition extends to software processes that record addressing information in electronic communications"—specifically, software embedded in websites that captures information about website visitors, including their IP addresses. Order at 1, 10–15; Cal. Penal Code §§ 638.50, 638.51. Plaintiff Dawn Fregosa alleges that, when she visited Mashable's website, Mashable used "trackers" to collect her IP address and other "device fingerprints," allegedly to facilitate targeted advertising by third parties. SAC ¶¶ 2–6; Order at 2. This Court rejected the legal arguments in Mashable's motion to dismiss and held that her SAC states a claim for an illegal pen register within the meaning of CIPA.

The Court's Order decided multiple novel and critically important questions of law about which, respectfully, there are substantial grounds for reasonable disagreement. The Ninth Circuit has never interpreted CIPA's Pen Register Act in any case. Indeed, *no* appellate court has *ever* grappled with the Act's scope or application to website operators, and "no court ha[d] interpreted this provision of CIPA" at all before 2023. *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1050 (S.D. Cal. 2023). The Ninth Circuit favors certification under these circumstances, *see Sterling v. Feek*, 150 F.4th 1235, 1247 (9th Cir. 2025); *Reese v. BP Expl. (Alaska) Inc*., 643 F.3d 681, 688 (9th Cir. 2011), as does this Court, where appellate review would facilitate resolving a "matter of first impression" for the circuit, *see, e.g.*, Order, *In re Uber Techs. Inc. Passenger Sexual Assault Litig*., No. 23-md-3084, ECF No. 667 (N.D. Cal. Jun. 25, 2024) (Breyer, J.).

Appellate review now is especially warranted because the state and federal courts that have begun to address these legal questions have come to irreconcilable results. *Compare, e.g.*, Request for Judicial Notice ("RJN"), Ex. A, *Rodriguez v. Plivo Inc*., No. 24STCV08972, 2024 WL 5184413, at *2 (Cal. Super. Oct. 2, 2024) ("*Plivo*") ("Plaintiff's IP address is not the type of information

collected by pen registers") *with* Order at 10 ("trackers capturing IP addresses and related metadata fall comfortably within the definition of a 'pen register'"). More cases reaching conflicting results are discussed below.

Also supporting certification is the reality that uncertainty about the proper application of CIPA to the modern Internet is compounding at an alarming rate. Commentators have described this Court's order as "significantly broaden[ing] the scope of CIPA compliance risk for website operators in California."[1] Those implications are not limited to digital-advertising technologies. The Court's Order has sweeping implications for other commonplace technologies used by almost every website to collect their visitors' IP information, from tools that defend against cyberattacks to the software used to present visitors with jurisdiction-specific privacy disclosures. Another judge in this District recently criticized CIPA for its terminal ambiguity—creating a "total mess" that "gets bigger and bigger as the world continues to change and as courts are called upon to apply CIPA's already-obtuse language to new technologies." *Doe v. Eating Recovery Ctr. LLC*, No. 23-cv-5561, 2025 WL 2971090, at *1 (N.D. Cal. Oct. 17, 2025) (Chhabria, J.). Allowing the Ninth Circuit to consider the Pen Register Act now through a certified order would undoubtedly help to clarify how that statute applies to modern, evolving internet technologies.

Because the Act suffers from a total lack of any appellate interpretation, it inevitably leads to uncertainty about the scope of the statute and how to assess liability under it. As a result, whether the Ninth Circuit ultimately affirms or reverses the Order, all parties and the Court would benefit from prompt appellate guidance about the Pen Register Act's permitted theories of liability, its application to ever-evolving technologies, the available defenses, relevant discovery and evidence, and more. *See Best Carpet Values, Inc. v. Google LLC*, No. 5:20-cv-4700, 2022 WL 22843012, at *3 (N.D. Cal. May 2, 2022) ("even affirmance" would aid the Court and the parties). At a minimum, an expeditious appeal would provide useful guidance to the parties and the Court before the Court is called on to supervise a potentially extensive (and expensive) discovery process—a consideration made all the more urgent by the fact that Plaintiff seeks to proceed on behalf of a putative class

---

[1] Roma Patel and Kathryn Rattigan, *California Federal Court Clarifies CIPA's Reach Over Website Tracking in Mashable Hearing*, JD Supra (Oct. 17, 2025), https://www.jdsupra.com/legalnews/california-federal-court-clarifies-cipa-1259188/.

capable of seeking wide-ranging discovery with accompanying extraordinary settlement pressure. *See Id*. (certification "may provide useful guidance before the parties engage in potentially wide-ranging and expensive discovery").

In sum: the statute cries out for prompt appellate clarification. Appellate review of the Order would provide much needed guidance to district courts and litigants who must now contend with unsettled legal rules that unpredictably drive the potential scope of discovery, litigation costs, and liability under a *criminal* statute. Because all three factors for certification under Section 1292(b) are met, this Court should certify its order for interlocutory appeal and give the Ninth Circuit a chance to either end this litigation or else significantly streamline the proceedings. The Court should also stay proceedings pending the outcome of that interlocutory appeal so that appellate construction of the statute can guide discovery, class certification, and summary judgment proceedings here, thereby avoiding unnecessary burdens and costs for both parties and the Court.

## II. STATEMENT OF ISSUES TO BE DECIDED – L.R. 7-4(3)

Whether this Court should certify for interlocutory appeal its Order denying Mashable's motion to dismiss the SAC for failure to state a claim for relief, and stay the case pending appeal.

## III. FACTUAL BACKGROUND

Plaintiff Dawn Fregosa accuses Mashable of violating California's Pen Register Act, Cal. Penal Code §§ 638.50, 638.51, by causing so-called "Trackers" to collect her IP address and other "device fingerprints," allegedly facilitating targeted advertising by third parties, SAC ¶¶ 2–6; Order at 2. As this Court has summarized the allegations in the operative complaint, this alleged "website tracking" involves the web user's browser sending an HTTP request to the website, which responds with instructions to the user's browser on how to display the website. Order at 2. Plaintiff alleges that trackers installed on Mashable's website send instructions to users' browsers to transmit the visitor's IP address and other device-identifying information to Mashable and third parties. *Id.* Plaintiff "analogizes this conduct to traditional pen registers, which record outgoing telephone numbers by capturing 'dialing, routing, addressing, or signaling information.'" *Id.* at 2–3. She brought a putative class action seeking statutory damages of $5,000 per violation. SAC ¶¶ 9, 230.

This Court denied Mashable's motion to dismiss the second amended complaint under Federal Rule of Civil Procedure 12(b)(6) on October 9, 2025. The Court first held that "the Pen Register Act applies to website-based trackers" as "described in the SAC," because "alleged trackers function similarly to traditional pen registers and fit within the statutory definition." Order at 8–9. The Court then rejected Mashable's argument that a pen register "records the *called party's* information, and not the calling party's information." *Id.* at 10 (emphasis added). The Court further rejected Mashable's argument that the Pen Register Act only applies to person-to-person forms of communications like email, phone, and the like, and concluded that a website visit of the kind alleged in the SAC is an "electronic communication" covered by the Pen Register Act, and that "website browsing" without any "interpersonal exchange" can trigger liability. *Id.* at 11–12. The Court next rejected Mashable's argument that, "as a direct party to users' communications, it cannot be liable" for using a technology to captures information about those who voluntarily contact Mashable's website. *Id.* at 12–13. The Court did not view that argument as "persuasive at this stage," reasoning that Mashable's status as a party did not mean that it could "claim a categorical exemption" from liability. *Id*. Concluding instead that Mashable's ability to capture IP addresses depends on visitors' prior consent, the Court held that any "implied" consent resulting from a visitor's access to a website is "narrow" and does not include the alleged "disclosure to unrelated third parties." *Id*. The Court also rejected Mashable's other defenses, *id.* at 13–15, including its argument that the rule of lenity requires dismissal because the Pen Register Act is an ambiguous criminal statute, *id.* at 15–16.

## IV. ARGUMENT

Mashable respectfully requests certification of this Court's Order denying its motion to dismiss. Certification is warranted in light of the novelty of the questions of law presented by the Order, the reasonable disagreement that has already emerged on those questions among "fair-minded jurists," and because "resolution" of those questions would "appreciably shorten the time, effort, [and] expense of conducting" these "proceedings." *ICTSI Oregon, Inc. v. Int'l Longshore & Warehouse Union*, 22 F.4th 1125, 1130–31 (9th Cir. 2022). The Court may certify a non-final order for interlocutory review when (1) the order "involves a controlling question of law," (2) "as to

which there is substantial ground for difference of opinion," and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).

All three requirements are satisfied here. The Court's interpretation of CIPA's Pen Register Act is a pure issue of law that without a doubt will "materially affect the outcome of litigation in the district court." *ICTSI Oregon*, 22 F.4th at 1130. The Order's holding that Plaintiff's allegations state a claim for liability raises "novel" and significant questions about "which fair-minded jurists might reach"—and indeed, are presently reaching—"contradictory conclusions." *Reese*, 643 F.3d at 688. And "resolution" of that disagreement would "appreciably shorten the time, effort, [and] expense of conducting" these "proceedings." *ICTSI Oregon*, 22 F.4th at 1131 (cleaned up). If Mashable prevails on appeal, the case may well conclude. And no matter whether an interlocutory appeal results in affirmance or reversal, certification would provide much-needed guidance to district courts and litigants who are contending with an unsettled legal regime that unpredictably drives discovery and litigation costs. Certification would also benefit countless other website operators who face exposure to liability under a *criminal* statute that, before 2023, had never received any judicial interpretation, *see Greenley*, 684 F. Supp. 3d at 1050, but has since seen an explosion of claims challenging common and widespread technologies.

**A. Interpreting the Pen Register Act Raises Controlling Legal Questions.**

This Court's Order rested on its answer to a question of law: whether "CIPA's pen register prohibition extends to software processes that record addressing information in electronic communications," specifically software embedded in websites that capture information about website visitors, including their IP addresses. Order at 1, 10–15. Such a question decided at the motion-to-dismiss stage comfortably qualifies under the first prong of Section 1292(b). *See Bennett v. United States*, 44 F.4th 929, 932 (9th Cir. 2022).

That question is also obviously controlling in this litigation. Interpretation of CIPA—and the extent to which its definition of an unlawful pen register is satisfied here—is "fundamental" to Plaintiff's claims for relief, *Sterling*, 150 F.4th at 1247, which makes that question "controlling" for purposes of Section 1292(b), *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1982). Plaintiff agrees that Mashable's motion to dismiss rested on the legal question of how "CIPA §

638.50(b) defines a 'pen register.'" ECF No. 37 at 2. Section 1292(b)'s "controlling question of law" requirement is thus easily satisfied.

### B. There Are at Least Four Substantial Grounds for Difference of Opinion.

"Courts traditionally will find that a substantial ground for difference of opinion exists where '... novel and difficult questions of first impression are presented.'" *Reese*, 643 F.3d at 688 (quoting *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010)). The Ninth Circuit favors certification where it "ha[s] not previously considered the issue presented." *Sterling*, 150 F.4th at 1247; *see also* Order, *In re Uber*, No. 23-md-3084, ECF No. 667 (Breyer, J.) ("There is substantial ground for difference in opinion on this issue, which is a matter of first impression not governed by any explicit statutory command or controlling precedent.").

That is most definitely the case here. No appellate precedent has interpreted California's Pen Register Act, much less whether the Act prohibits a website operator from embedding third-party tools that capture the IP addresses of those who visit its website. Mashable is not aware of *any* appellate opinions from state or federal courts interpreting Sections 638.50 (the Act's definitions) or 638.51 (its substantive prohibition). Indeed, before 2023, "*no court* ha[d] interpreted this provision of CIPA." *Greenley*, 684 F. Supp.3d at 1050 (emphasis added). And although contrary precedent is not required for the second prong of Section 1292(b), *see Reese*, 643 F.3d at 688, as California trial courts and federal district courts have recently begun to interpret the Pen Register Act, multiple "fair-minded jurists" have reached "contradictory conclusions," *ICTSI Oregon*, 22 F.4th at 1130 (cleaned up). In *Plivo*, the court sustained a demurrer because the "Plaintiff's IP address is not the type of information collected by pen registers." 2024 WL 5184413, at *2. Other courts have agreed. *See, e.g.*, RJN, Ex. B, *Casillas v. Transitions Optical, Inc.*, No. 23STCV30742, 2024 WL 4873370, at *4 (Cal. Super. Sep. 09, 2024) ("obtaining IP addresses from ordinary user access does not violate the pen register statute"); RJN, Ex. C, *Licea v. Hickory Farms LLC*, No. 23STCV26148, 2024 WL 1698147, at *4 (Cal. Super. Mar. 13, 2024) (finding no pen register was validly alleged). As a result, website operators increasingly face the reality that "[t]he language of CIPA" is "a total mess," causing an "untenable" "state of affairs" in which "[c]ourts

are issuing conflicting rulings, and companies have no way of telling whether their online business activities will subject them to liability." *Doe*, 2025 WL 2971090, at *1.

This Court's order weighed in on multiple, hotly disputed and novel issues that raise fundamental questions about the operation of the modern Internet—none of which the Ninth Circuit has ever considered.

***First***, there are substantial grounds for disagreement about whether a website's collection of visitors' IP-address information can satisfy the definition of a pen register. A traditional pen register is "a device that records the *numbers dialed* from a monitored telephone." *United States v. Taketa*, 923 F.2d 665, 668 n.1 (9th Cir. 1991) (emphasis added); *see also People v. Blair*, 602 P.2d 738, 747 n.11 (Cal. 1979). Plaintiff analogizes an IP address to a phone number, SAC ¶¶ 2, 22–25, 52–54, 188–89, 223–26, alleging that Mashable's "trackers" recorded her IP address when she visited the website, SAC ¶¶ 57–186; Order at 10. But applying Plaintiff's phone-call analogy, a pen register would not capture *her own* IP address, which is the conduct that Plaintiff alleges. Instead, a pen register would necessarily capture the equivalent of the numbers she *dials*—for instance, information about other websites that the Plaintiff accessed from her browser, or other Internet users who she contacted. Plaintiff does *not* allege that conduct. That logic was precisely why at least one "fair-minded juris[t]" reached a "contradictory conclusion[]" from this court, *ICTSI Oregon*, 22 F.4th at 1130, when it held that allegations materially identical to Plaintiff's *foreclose* a claim to the existence of a pen register*, see Plivo*, 2024 WL 5184413, at *2 ("Pen registers collect outgoing information" like the "IP addresses of *websites visited*") (emphasis added).

This Court's Order appeared to reason that Mashable was improperly attempting to limit the definition of a pen register to "legacy telephone equipment." Order at 10. To be clear, Mashable does not argue that the Pen Register Act is limited to telephone communications or that a pen register categorically can never be placed on an Internet-accessing device. Defendants in other cases have attempted to raise such an argument—which other "Courts in this district" have rejected. Order at 9; *see, e.g.*, *Mirmalek v. Los Angeles Times Commc'ns LLC*, No. 24-cv-1797, 2024 WL 5102709, at *3 (N.D. Cal. Dec. 12, 2024) (Breyer, J.) ("Defendant argues that CIPA's pen register definition applies 'only to telephone technology.'"). Mashable's argument is different, and more

limited: the alleged tracking of Plaintiff's originating IP address—analogous to collection of a caller's own phone number—is not a pen register. *See* Mot. to Dismiss 9–10 (ECF No. 34). *That* argument has been analyzed far less often, though Mashable explained why existing pen-register caselaw supports its position. *See* Mot. to Dismiss at 9 (citing, *inter alia*, *Taketa*, 923 F.2d at 668 n.1; *United States v. New York Tel. Co*., 434 U.S. 159, 161 n.1 (1977) (a pen register "records the numbers dialed on a telephone")). Plaintiff and this Court identified one case, *Shah v. Fandom, Inc*., 754 F. Supp. 3d 924 (N.D. Cal. 2024), rejecting that argument. *Id*. at 929. But *Plivo* reaches the opposite result. 2024 WL 5184413, at *2. No appellate court has opined on this legal question.

***Second***, the Court's order raises substantial grounds for disagreement about whether the Pen Register Act applies to parties to the underlying communication. Order at 12–13. Relying on *Shah*, the Court concluded that any "implied consent" Plaintiff gave to Mashable to collect her IP address did not include consent to "disclosure to unrelated third parties." *Id*. But that reasoning does not fully resolve the controlling legal question about which there are substantial grounds for disagreement: whether a pen-register prohibition can reasonably be interpreted to prevent a website operator from embedding software that records visitors' IP information when they contact the website, given that the website operator is a party to that communication. *See* Mot. to Dismiss 10–11; *see, e.g.*, SAC ¶¶ 22–23.

On that question—whether parties to a communication can be liable for violations of the Pen Register Act—there are substantial grounds for disagreement. A consistent line of California Supreme Court precedent has limited liability under CIPA's eavesdropping and wiretapping provisions to intrusions by *third parties* into private conversations. *Ribas v. Clark*, 696 P.2d 637, 641 (Cal. 1985). CIPA was originally enacted in 1967 "in response to what [the Legislature] viewed as a serious and increasing threat to the *confidentiality of private communications* resulting from then recent advances in science and technology that had led to the development of new devices and techniques for *eavesdropping upon* and recording *such private communications*." *Kearney v. Salomon Smith Barney, Inc.*, 137 P.3d 914, 928 (Cal. 2006) (emphases added). Section 632's prohibition on "eavesdropping" is only applicable to third parties. *See, e.g.*, *Thomasson v. GC Servs. Ltd. P'ship*, 321 F. App'x 557, 559 (9th Cir. 2008) ("California courts interpret 'eavesdrop,'

as used in § 632, to refer to a third party secretly listening to a conversation between two other parties."). Likewise, the anti-wiretapping provisions in Section 631 apply to the "surreptitious monitoring of private conversations" *by third parties*. *Ribas*, 696 P.2d at 641. For that reason, "it is established that a party to the communication cannot be liable" for primary violations of the anti-wiretapping provisions in Section 631. *Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732, 744 (N.D. Cal. 2023); *see In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 607 (9th Cir. 2020) (observing that CIPA contains "an exemption from liability for a person who is a 'party' to the communication"); *Warden v. Kahn*, 99 Cal. App. 3d 805, 811 (Ct. App. 1979) (Section 631 "applies only to eavesdropping by a third party"). This is true despite the lack of express statutory language creating an exemption for parties to the communication.

The Pen Register Act, added to CIPA in 2015, must be read in harmony with the rest of the broader law. *See Dyna-Med, Inc. v. Fair Emp. & Hous. Comm'n.*, 743 P.2d 1323, 1334 (Cal. 1987) ("statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other"). Interpreting Sections 631 and 632 to declare liable only *third parties* who wiretap or eavesdrop on private communications—but not similarly interpreting Section 638.51—would risk giving the statute different meanings and coverage across subsections. Indeed, the Court's Order appears to contemplate that a party to a communication enjoys *some* freedom from liability under the Pen Register Act based on the user's "consent," though the Order concluded that a party "cannot claim a *categorical* exemption merely because it was a party to the initial communication." Order at 13 (emphasis added). But there remains substantial reason to question whether the Ninth Circuit would interpret the Pen Register Act consistently with the rest of CIPA and would apply at least *some limits* to liability for a party to the communication—even assuming that the appellate court agreed with this Court's rejection of a "categorical" exception. Order at 12–13. Indeed, due to the statute's many ambiguities, courts have routinely been called upon to clarify CIPA's terms by judicial construction where "the language … does not explicitly address" the question. *Kearney*, 137 P.3d at 930; *see Williams v. What If Holdings, LLC*, No. 22-cv-3780, 2022 WL 17869275, at *2 (N.D. Cal. Dec. 22, 2022) (explaining how "[t]he California Supreme Court has distilled [] down" the text of Section 631). Interlocutory appeal would substantially aid the proceedings in this

case by clarifying how the Ninth Circuit understands the Pen Register Act's text, context, and history.

Recognizing at least a limited exemption from Pen Register Act liability for parties to a communication is also the only way to avoid imposing pen-register liability on everyone who uses an entirely commonplace communications tool: caller ID. As courts in other jurisdictions have noted, pen-register laws "protect telephone users from unauthorized third-party or governmental intrusions"; they do not "protect telephone users from one another." *Wisconsin Pro. Police Ass'n v. Public Serv. Comm'n of Wis.*, 555 N.W.2d 179, 188 (Wis. Ct. App. 1996). That same logic suggests that pen-register laws "cannot be intended to prevent individuals who receive electronic communications from recording the IP information sent to them." *Capitol Recs. Inc. v. Thomas-Rasset*, No. 06-cv-1497, 2009 WL 1664468, at *3 (D. Minn. June 11, 2009). At the very least, courts and website operators would benefit from clarification of that question.

Given the significant possibility that the Ninth Circuit will agree that at least *some* limitation of pen-register liability for counterparties to a communication is necessary to harmonize the Act with California law, the court of appeals should have the chance to consider that question before this Court and the parties embark on expensive and time-consuming discovery efforts grounded on a different understanding, and before yet more website operators are swept up in the current wave of pen-register lawsuits.

***Third***, it is also unsettled whether only certain types of a "electronic or wire communication[s]" can trigger liability under the Pen Register Act. While the Court accurately identified some decisions determining that *any visit* to a webpage can qualify, Order at 11, other decisions hold that merely accessing a website, without transmitting some substantive message or content, is *not* the kind of "communication" sufficient to trigger liability under closely related laws, *see Gonzales v. Uber Techs., Inc.*, 305 F. Supp. 3d 1078, 1086 (N.D. Cal. 2018) ("simply opening a webpage or mobile application is not a communication with content" under the federal Wiretap Act); *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082 (C.D. Cal. 2021) ("keystrokes, mouse clicks, pages viewed" are not "contents" of a "communication" governed by Section 631).

Requiring a communication *with content* as an element of a Pen Register Act claim makes particular sense in light of the requirement discussed above (at p.9) to read CIPA's provisions in "harmon[y]." *Dyna-Med*, 743 P.2d at 1334. In CIPA's wiretap provision (Section 631), liability depends on intercepting a "communication with content," which courts have held does not occur when a person merely accesses a website without communicating the "contents" of a "message, report, or communication." *Augustine v. Great Wolf Resorts, Inc.*, No. 23-cv-281, 2024 WL 3450967, at *6 (S.D. Cal. July 18, 2024) (cleaned up). A pen-register prohibition is another way to impose liability related to the same underlying communication, by "captur[ing] the phone number" or other dialing or addressing formation "*associated with*" that underlying "communication." *Twitter, Inc.*, 61 F.4th at 691 n.2 (emphasis added). In other words, if merely accessing a website does not qualify as a "communication" under one provision of CIPA (the wiretap prohibition), then it also should not trigger liability under the pen-register prohibition because both sections define a type of intrusion into the same underlying "communication."

These questions favor interlocutory review: if the Ninth Circuit agrees that the statute is more limited than this Court's holding that essentially *any* collection of IP addresses can constitute "communication" under the Act (Order at 11–12), it will be far more efficient for all parties and the Court (not to mention other website operators) to learn that answer sooner rather than later. Even if the Ninth Circuit substantially affirms this Court on that score, its explanation of the statute's place in CIPA's overall scheme—and the appropriate grounds for liability—would aid the parties and the Court as litigation continues.

***Fourth***, and finally, the substantial policy consequences of the Court's ruling reinforce that there are grounds for reasonable disagreement. The California Legislature "does not … hide elephants in mouseholes." *Mendoza v. Fonseca McElroy Grinding Co.*, 492 P.3d 993, 1005 (Cal. 2021). But Plaintiff's theory risks, at the very minimum, calling into question the ability of most modern websites to function, absent a strong indication that the Legislature so intended.

As Judge Chhabria recently concluded, the broad assertion that "CIPA was intended to protect Californians' privacy rights" is insufficient to answer some basic questions about the law's ambiguous text: "using a third-party company to perform data analytics for web traffic is worlds

different from wiretapping and eavesdropping. Did the Legislature really intend to subject companies like [Mashable] to criminal liability for using third-party software to track website activity? Did it really mean to criminalize the use of web traffic data?" *Doe*, 2025 WL 2971090, at *6.[2] That point is especially forceful given that "California has since adopted other statutes" like the CCPA "that more clearly speak to the practice of data sharing." *Id.* As one California trial court recently concluded, the Pen Register Act "cannot reasonably be read" so broadly as to establish liability where a website collects an "IP address"—even when the defendant allegedly enables "third part[ies]" to access that data—or else "every interaction that identifies electronic information about the user in a manner that allows the website to [f]unction" would become unlawful. RJN, Ex. D, *Rodriguez v. Sparc Grp., LLC*, No. 24STCV26946, 2025 Cal. Super. Lexis 41697 (Cal. Super. Jul 9, 2025), *tentative ruling adopted*, 2025 Cal. Super. Lexis 38208 (Cal. Super. Jul 9, 2025). Another court similarly explained that "public policy strongly disputes" finding a pen-register violation for "every single entity voluntarily visited by a potential plaintiff, thereby providing an IP address for purposes of connecting the website," because "[s]uch a broad based interpretation would potentially disrupt a large swath of internet commerce" without an indication in the statute that the Legislature so intended. *Licea*, 2024 WL 1698147, at *4. Such concerns have also led courts in other jurisdictions to reject pen-register liability in cases like this one, reasoning that if pen-register prohibitions "did apply in those cases, then the Internet could not function because standard computer operations require recording IP addresses so parties can communicate with one another over the Internet." *Capitol Records*, 2009 WL 1664468, at *3.

Indeed, many obviously permissible website functions, that are often supported by third parties, *must* capture visitors' IP addresses: from consent-management platforms that ascertain a visitor's location to comply with jurisdiction-specific privacy laws like Europe's GDPR or California's own CCPA[3]; to defenses against cyber-attacks like Distributed Denial-of-Service

---

[2] For similar reasons, this Court's decision and Judge Chhabria's recent CIPA ruling have opened an intra-circuit conflict about whether, and to what extent, the ambiguities in CIPA trigger the rule of lenity. *Compare Doe*, 2025 WL 2971090, at *6, *with* Order 15–16.

[3] *See* Tilman Harmeling, *What you need to know about consent management: A complete guide*, Usercentrics (Mar. 26, 2025), https://usercentrics.com/knowledge-hub/consent-

Attacks (DDoS), which can overwhelm websites with requests and are defended by blocking traffic from identified malicious IP addresses.[4] Certification would permit the Ninth Circuit to issue guidance on these critical questions about the extent to which California's Legislature intended the Pen Register Act to reshape the modern Internet.

* * *

In the total absence of appellate guidance from any state or federal court, this Court and the parties are largely left to guess at how the Ninth Circuit would eventually treat the hotly disputed legal questions presented by this case. The Ninth Circuit should have the opportunity to decide these issues of first impression and provide substantial guidance to this Court, the parties, and everyone who operates a website in California. *See Sterling*, 150 F.4th at 1247.

**C. Appellate Guidance Will Materially Advance the Litigation.**

The third prong of Section 1292(b) also strongly supports certification. "If the Ninth Circuit" reverses this Court, "Plaintiffs' claims will be dismissed." *Best Carpet Values*, 2022 WL 22843012, at *3. And "even an affirmance may provide useful guidance before the parties engage in potentially wide-ranging and expensive discovery into how millions of websites" may operate in California. *Id*. Resolution of the legal questions described above would thus "appreciably shorten the time, effort, [and] expense of conducting" these "proceedings." *ICTSI Oregon*, 22 F.4th at 1131 (citation omitted).

That Plaintiff brings her case as a putative class action further reinforces the appropriateness of interlocutory review, for three reasons. First, resolving the unsettled legal questions now would offer the Ninth Circuit an opportunity to craft the correct legal rule, lest the *in terrorem* effects of asymmetrical discovery preclude ultimate appellate resolution. *See Chambers v. Whirlpool Corp.*, 980 F.3d 645, 666 (9th Cir. 2020) ("[C]lass action plaintiffs typically possess no or very limited

---

management/#:~:text=long%2Dterm%20relationships.-,What%20is%20a%20consent%20management%20platform%20(CMP)?,control%20over%20their%20personal%20data.

[4] *See* Akamai, Glossary: What is Blackhole Routing?, https://www.akamai.com/glossary/what-is-blackhole-routing (last visited Nov. 10, 2025).

discoverable materials, while defendants may have reams of documents and terabytes of electronic data. Class action plaintiffs thus have an incentive to seek aggressive discovery (and log a tremendous number of hours in the process) without fear of reciprocally burdensome discovery."). Second and relatedly, the fact that Plaintiff seeks class-wide "statutory damages" increases the "pressure to settle … because a class action poses the risk of massive liability" even for meritless cases. *Shady Grove Orthopedic Assocs., P.A.* v. *Allstate Ins. Co.*, 559 U.S. 393, 445 n.3 (2010). That reason is very likely why many defendants with potentially meritorious defenses in pen-register cases never get a chance to raise them to an appellate court—preventing opportunities to make precedent that would clarify the law.[5] Third, "reviewing the question[s] at this juncture would also … clarify which putative class members are eligible for relief." *Sterling*, 150 F.4th at 1247. For instance, if (as discussed above, *see* p.10–11) recovering under the Pen Register Act requires proof of a "communication" in addition to merely accessing Mashable's website, then some members of the putative class as defined by Plaintiff would not be eligible for certification. For this reason, even if the Ninth Circuit granted review but then *affirmed* this Court's bottom-line decision, the appellate court's interpretation of the Act would be of utmost importance.

In short, even if the Ninth Circuit were to conclude that Plaintiff has alleged a pen register—but only as to certain allegations or only in a way that advances the claims of certain putative class members—that appellate ruling would significantly clarify the scope of permissible discovery for this action, the appropriate definition of a class for certification, the issues ripe for summary judgment and trial, the relevant evidence, and more.

---

[5] For example, the plaintiff in *Mirmalek* (represented by the same counsel as Plaintiff here) recently noticed the parties' intention to settle her claim for $3.85 million (plus attorneys' fees) on behalf of an unspecified number of "Settlement Class members." Memo. of P. & A. at 3, Mot. for Prelim. Approval of Class Action Settlement, *Mirmalek*, No. 24-cv-1797, ECF No. 45 (N.D. Cal. Oct. 15, 2025). Mirmalek admits in her motion that the "highly favorable settlement" she seeks depends on a "novel theory of liability" that had been rejected by "several state courts." *Id.* at 1. To reach settlement, the *Mirmalek* parties had to substantially reduce the calculation of statutory damages, which plaintiff admitted was likely "excessive." *Id.* at 3.

### D. The Court should stay proceedings pending appeal.

The Court should also stay proceedings pending resolution of any interlocutory appeal. A district court may enter a stay "both under § 1292(b) itself and the court's inherent authority to manage its docket." *United States v. Real Prop. & Improvements Located at 2441 Mission St.*, No. 13-cv-2062, 2014 WL 1350914, at *4 n.3 (N.D. Cal. Apr. 4, 2014); *see Mediterranean Enters., Inc. v. Ssangyong Corp*., 708 F.2d 1458, 1465 (9th Cir. 1983) ("A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case.").

A stay here is the "most efficient course" to "promote economy of time and effort for [the courts], counsel, and litigants." *Asis Internet Servs. v. Active Response Grp*., 2008 WL 4279695, at *4 (N.D. Cal. Sept. 16, 2008). As discussed above, even if interlocutory appeal does not dispose of the entire case, the Ninth Circuit's views will materially impact the scope of discovery, the propriety of class certification, and potentially all future stages of this litigation.

To secure the benefits of appellate review, the case should not proceed until that guidance is received. There is no doubt that the further proceedings "in this matter [are] likely to be time-consuming and expensive." *Asis Internet Servs.*, 2008 WL 4279695, at *4. It is far more efficient for both the parties and the Court to proceed only after the Ninth Circuit confirms that Plaintiff has viable claims *and* explains any relevant limitations on her theories of liability or the available defenses. By contrast, it would be extraordinarily inefficient to move ahead with class certification briefing and discovery while awaiting appellate guidance that may fundamentally alter how the case proceeds. For those reasons, courts in this district routinely grant stays pending certification of an interlocutory appeal. *E.g.*, *id.*, at *6; *Real Prop. & Improvements*, 2014 WL 1350914, at *4 & n.3; *In re Google Inc. Street View Elec. Commc'ns Litig*., No. 10-md-2184, 2011 WL 13257346, at *2 (N.D. Cal. July 18, 2011); *Best Carpet Values*, 2022 WL 22843012, at *3.

## V. CONCLUSION

This Court should certify its Order dated October 9, 2025 for interlocutory appeal pursuant to 28 U.S.C. § 1292(b) and stay the case pending the completion of any interlocutory appeal.

Dated: November 10, 2025

**PERKINS COIE LLP**

By: */s/ James G. Snell*
James G. Snell
Mikella M. Hurley
Timothy M. Carter

Attorneys for Defendant MASHABLE, INC.