**BURSOR & FISHER, P.A.**
Kaili C. Lynn (State Bar No. 334933)
Joshua R. Wilner (State Bar No. 353949)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: klynn@bursor.com
jwilner@bursor.com

**BURSOR & FISHER, P.A.**
Philip L. Fraietta (State Bar No. 354768)
50 Main Street, Suite 475
White Plains, NY 10606
Telephone: (914) 874-0710
Facsimile: (914) 206-3656
Email: pfraietta@bursor.com

**BURSOR & FISHER, P.A.**
Max S. Roberts (State Bar No. 363482)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-mail: mroberts@bursor.com

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DAWN FREGOSA, individually and on behalf of all other persons similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MASHABLE, INC.,<br><br>Defendant. | Case No. 3:25-cv-01094-CRB<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO CERTIFY FOR INTERLOCUTORY APPEAL AND TO STAY PROCEEDINGS**<br><br>Date: December 19, 2025<br>Time: 10:00 a.m.<br>Courtroom: 6, 17th Floor<br>Judge: Hon. Charles R. Breyer |

## SUMMARY OF THE ARGUMENT

Certification of an order for interlocutory appeal is a rarity, and goes against the "general rule." *Sonoda v. Amerisave Mortg. Corp.*, 2011 WL 3957436, at *1 (N.D. Cal. Sept. 7, 2011) (cleaned up). This Court should reject Defendant's attempt to deviate from that rule for the same reasons as Judge Lin did last year. *Shah v. Fandom, Inc.*, 2024 WL 6903081, at *2 (N.D. Cal. Dec. 16, 2025). *First*, there is not a "substantial ground for disagreement" because there is *zero disagreement* amongst the federal judiciary. Allegations like Plaintiff's are sufficient to state a claim under CIPA § 638.51 for the installation and use of a "pen register." *Fregosa v. Mashable, Inc.*, 2025 WL 2886399, at *9 (N.D. Cal. Oct. 9, 2025) ("Several judges in this district, including Judges Lin, Orrick, Pitts, Ryu, Tigar, and the undersigned, have held that such allegations suffice at the pleading stage."); *Bradshaw v. Lowe's Cos., Inc.*, 2025 WL 3171740, at *7 (S.D. Cal. Nov. 12, 2025) ("[T]he case law is not in Defendants' favor. Indeed, it uniformly supports the opposite outcome."). For many of Defendant's "questions," it does not cite a single decision addressing the matter, let alone a decision disagreeing with this Court. And while Defendant makes use of limited state court authority, "those opinions are not controlling, even in the California state courts," and "did not engage in the same extended interpretation of the statutory terms, but instead drew analogies based on a pen register's traditional functionality and relied on the legislative history." *Shah*, 2024 WL 6903081, at *2. "That variation is insufficient to establish a substantial ground for difference of opinion." *Id.* (cleaned up).

*Second*, an interlocutory appeal will only materially delay the litigation, not advance it. Defendant "will have the opportunity to appeal" after trial, and Defendant is "a multi-billion dollar … company" with $1.5 billion in revenue this year.[1]

*Third*, even if there were controlling questions of law, "[a]llowing discovery to proceed will permit development of a more fulsome record for consideration of the issue." *Shah*, 2024 WL 6903081, at *2.

*Finally*, because interlocutory appeal is not warranted, neither is a stay of this action.

---

[1] ABOUT ZIFF DAVIS, https://investor.ziffdavis.com/overview/default.aspx.

# TABLE OF CONTENTS


PAGE(S)

SUMMARY OF THE ARGUMENT ..... I

INTRODUCTION ..... 1

LEGAL STANDARD ..... 2

ARGUMENT ..... 3

I. THERE IS NOT SUBSTANTIAL GROUND FOR DISAGREEMENT BECAUSE EVERY FEDERAL COURT HAS DECIDED THE ISSUES THE SAME WAY, AND OTHER DECISIONS ARE DISTINGUISHABLE ..... 3

A. Federal Courts Have Unanimously Held A "Pen Register" May Record Information Related To The Visitor Of A Website ..... 3

B. California Courts—Under Multiple Provisions Of The CIPA—Have Unanimously Held A Party To The Communication May Not Cause A Third Party To Record A Communication ..... 5

C. The Plain Text Of The Statute Makes Clear A "Communication With Content" Is Not Required, And The Trackers Recorded Information Associated With An "Electronic Communication" Per The Plain Text Of The CIPA And Federal Court Opinions ..... 8

D. All Federal Courts Have Rejected The Application Of The Rule Of Lenity To CIPA §§ 638.50-638.51's Plain Language ..... 9

E. Defendant's Policy Arguments Are Not The Province Of The Court, Are Overblown, And Ignore The Legislative Purpose Behind The CIPA ..... 9

II. AN INTERLOCUTORY APPEAL WILL ONLY UNNECESSARILY DELAY THE LITIGATION, NOT MATERIALLY ADVANCE ITS ULTIMATE TERMINATION ..... 12

III. EVEN IF THERE IS A CONTROLLING QUESTION, ALLOWING DISCOVERY TO PROCEED WILL BETTER INFORM THE RECORD ..... 13

CONCLUSION ..... 15

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Augustine v. Great Wolf Resorts, Inc.*,
2024 WL 3450967 (S.D. Cal. July 18, 2024) ........ 8

*Bradshaw v. Lowe's Cos., Inc.*,
2025 WL 3171740 (S.D. Cal. Nov. 12, 2025) ........ i, 2, 3

*Camplisson v. Adidas Am., Inc.*,
2025 WL 3228949 (S.D. Cal. Nov. 18, 2025) ........ 4

*Capitol Recs. Inc. v. Thomas-Rasset*,
2009 WL 1664468 (D. Minn. June 11, 2009) ........ 11

*Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*,
603 U.S. 799 (2024) ........ 5

*Couch v. Telescope Inc.*,
611 F.3d 629 (9th Cir. 2010) ........ 4

*Deivaprakash v. Condé Nast Digital*,
2025 WL 2541952 (N.D. Cal. Sept. 4, 2025) ........ 8, 9

*Doe v. Eating Recovery Center LLC*,
2024 WL 2852210 (N.D. Cal. June 4, 2024) ........ 14

*Doe v. Eating Recovery Ctr. LLC*,
2025 WL 2971090 (N.D. Cal. Oct. 17, 2025) ........ 9

*Doe v. Talkiatry Management Servs., LLC*,
2025 WL 3190813 (C.D. Cal. Oct. 1, 2025) ........ 4

*Drummer v. CoStar Grp., Inc.*,
2025 WL 3190656 n.1 (C.D. Cal. Oct. 22, 2025) ........ passim

*Flanagan v. Flanagan*,
27 Cal. 4th 766 (2002) ........ 11

*Fregosa v. Mashable, Inc.*,
2025 WL 2886399 (N.D. Cal. Oct. 9, 2025) ........ passim

*Garon v. Keleops USA, Inc.*,
2025 WL 2522374 (N.D. Cal. Sept. 2, 2025) ........ 9, 11

*Gonzales v. Uber Techs., Inc.*,
305 F. Supp. 3d 1078 (N.D. Cal. 2018) ........ 8

*Heiting v. FKA Distributing Co.*,
2025 WL 736594 (C.D. Cal. Feb. 3, 2025) ........ 5

*In re Meta Pixel Tax Filing Cases*,
793 F. Supp. 3d 1147 (N.D. Cal. 2025) ........ 6

*James v. Walt Disney Co.*,
2024 WL 664811 (N.D. Cal. Feb. 16, 2024) ........ 14

*Kearney v. Salomon Smith Barney, Inc.*,
39 Cal. 4th 95 (2006) ........ 7

*Kellman v. Spokeo, Inc.*,
2022 WL 2965399 (N.D. Cal. July 8, 2022) ........ 4

*Lesh v. Cable News Network, Inc.*,
767 F. Supp. 3d 33 (S.D.N.Y. 2025) ........ 11

*Licea v. Hickory Farms LLC*,
2024 WL 1698147 (Super. Ct. Los Angeles Cnty. Mar. 13, 2024) ........ 11

*Matera v. Google Inc.*,
2016 WL 8200619 (N.D. Cal. Aug. 12, 2016) ........ 11

*Nacarino v. Chobani, LLC*,
2022 WL 833328 (N.D. Cal. Mar. 21, 2022) ........ 3

*Ocasio v. United States*,
578 U.S. 282 (2016) ........ 9

*Prang v. Los Angeles County Assessment Appeals Board*,
15 Cal.5th 1152 (2024) ........ 5

*Revitch v. New Moosejaw, LLC*,
2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) ........ 7

*Ribas v. Clark*,
38 Cal. 3d 355 (1985) ........ 7

*Riganian v. LiveRamp Holdings, Inc.*,
791 F. Supp. 3d 1075 (N.D. Cal. 2025) ........ 9

*Rodriguez v. Autotrader.com, Inc.*,
762 F. Supp. 3d 921 (C.D. Cal. 2025) ........ 5, 6, 7, 11

*Rodriguez v. Autotrader.com, Inc.*,
2025 WL 1085787 (C.D. Cal. Apr. 4, 2025) ........ 5

*Rodriguez v. Plivo Inc.*,
2024 WL 5184413 (Super. Ct. Los Angeles Cnty. Oct. 2, 2024) ........ 4, 5

*Rodriguez v. Sparc Grp., LLC*,
2025 WL 2993671 (Los Angeles Cnty. Super. Ct. July 9, 2025) ........ 11

*Scarlett v. Future US, LLC*,
2025 WL 2614587 (Super. Ct. San Francisco Cnty. Sept. 5, 2025) ........ 2, 5

*Sgouros v. TransUnion Corp.*,
817 F.3d 1029 (7th Cir. 2016) ........ 10

*Shah v. Fandom, Inc.*,
754 F. Supp. 3d 924 (N.D. Cal. 2024) ........ 3, 6, 9, 11

*Shah v. Fandom, Inc.*,
2024 WL 6903081 (N.D. Cal. Dec. 16, 2025) ........ passim

*Shah v. YETI Coolers, LLC*,
754 F. Supp. 3d 933 (N.D. Cal. 2024) ........ 10

*Smith v. LoanMe, Inc.*,
11 Cal. 5th 183 (2021) ........ 7, 9, 11

*Sonoda v. Amerisave Mortg. Corp.*,
2011 WL 3957436 (N.D. Cal. Sept. 7, 2011) ........ i, 2, 3

*Spears v. Washington Mut. Bank FA*,
2010 WL 54755 (N.D. Cal. Jan. 8, 2010) ........ 4

*Stuart v. Radioshack Corp.*,
2009 WL 1817007 (N.D. Cal. June 25, 2009) ........ 12

*Turner v. Nuance Communications, Inc.*,
735 F. Supp. 3d 1169 (N.D. Cal. 2024) ........ 7

*United States v. Forrester*,
512 F.3d 500 (9th Cir. 2008) ........ 13

*United States v. Soybel*,
13 F.4th 584 (7th Cir. 2021) ........ 13

*United States v. Ulbricht*,
858 F.3d 71 (2d Cir. 2017) ........ 13

*Walsh v. Dollar Tree Stores, Inc.*,
2025 WL 293922 (N.D. Cal. Oct. 16, 2025) ........ 12

*Wright v. Truecare Prop. Holdings, LLC*,
2025 WL 3248749 (S.D. Cal. Nov. 21, 2025) ........ 4

*Xu v. Reuters News & Media, Inc.*,
2025 WL 3035016 (Super. Ct. Santa Clara Cnty. Oct. 24, 2025) ........ 7

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) ........ 8

**STATUTES**

18 U.S.C. § 2510(4) ........ 8

Cal. Civ. Code § 1798.100(a) ........ 2

Cal. Pen. Code § 629.51 ........ 8, 9

Cal. Pen. Code § 630 ........ 1, 11

Cal. Pen. Code § 631 ........ 7, 8, 9

Cal. Pen. Code § 638.50 ........ passim

## INTRODUCTION

Last year, the defendant in *Shah* also moved for interlocutory appeal. *Shah v. Fandom, Inc.*, 2024 WL 6903081, at *1 (N.D. Cal. Dec. 16, 2025). Judge Lin rejected that request. At that time, "there ha[d] only been three federal district court cases, including [*Shah*], interpreting the pen register statute's application to Trackers of this type." *Id.*, at *2. "All three ha[d] reached the same conclusion: that the allegations state a claim under California's pen register statute." *Id.* Several state courts had gone the other way, but "those opinions are not controlling, even in the California state courts," and "did not engage in the same extended interpretation of the statutory terms, but instead drew analogies based on a pen register's traditional functionality and relied on the legislative history." *Id.* And even if there were policy questions or controlling questions, the better course was for discovery to proceed to "permit development of a more fulsome record for consideration of the issue[s]." *Id.*

Some things have changed in the last year. Plaintiff's allegations have laid bare a more invasive course of conduct. This case is not just "a third party recorded my IP address." It is about how, through Defendant's installation and use of Trackers, the Third Parties collected various identifiers, used those to match consumers to comprehensive, non-anonymous profiles, and sold those profiles for Defendant's benefit to advertisers in the span of milliseconds. *See*, *e.g.*, SAC ¶¶ 60-61, 70, 85-86, 91, 113-114, 125, 161-164, 188-190, 206-209. These advances in technology permitting such pervasive surveillance are exactly what the CIPA was enacted to protect against, and why it was drafted broadly to encompass such conduct. *See* Cal. Pen. Code § 630 ("[A]dvances in science and technology have led to the development of new devices and techniques for the purpose of eavesdropping upon private communications and … increasing use of such devices and techniques has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society."); *Fregosa v. Mashable, Inc.*, 2025 WL 2886399, at *9 (N.D. Cal. Oct. 9, 2025) ("The statutory text is deliberately expansive, designed to encompass new technologies and apply to conduct like that alleged here.").

What has not changed, however, is the unanimity of the federal judiciary. Countless decisions have come down addressing the merits of Plaintiff's claims and Defendant's arguments.

***They have all gone squarely against Defendant***. *Fregosa*, 2025 WL 2886399, at *2 ("Several judges in this district, including Judges Lin, Orrick, Pitts, Ryu, Tigar, and the undersigned, have held that such allegations suffice at the pleading stage."); *Bradshaw v. Lowe's Cos., Inc.*, 2025 WL 3171740, at *7 (S.D. Cal. Nov. 12, 2025) ("[T]he case law is not in Defendants' favor. Indeed, it uniformly supports the opposite outcome."). And while some (but not all) state courts have disagreed, those decisions continue to not be controlling, "even in California state courts," continue to mostly "not engage in the same extended interpretation of the statutory terms, but instead drew analogies based on a pen register's traditional functionality and relied on the legislative history," and continue to largely be based on boilerplate complaints filed by "tester" plaintiffs." *Shah*, 2024 WL 6903081, at *2; *Drummer v. CoStar Grp., Inc.*, 2025 WL 3190656, at *4 n.1 (C.D. Cal. Oct. 22, 2025) ("[A]t least some of these state cases appear to be based on far less comprehensive complaints than those submitted by Plaintiffs."); *Scarlett v. Future US, LLC*, 2025 WL 2614587, at *1 (Super. Ct. San Francisco Cnty. Sept. 5, 2025) ("[R]eading the orders demonstrates their limited utility for these purposes. The court is unable to compare the adequacy of the allegations in the complaints as to which demurrers were sustained with the detailed FAC."). The reasons Judge Lin rejected interlocutory appeal a year ago have only become more pronounced.

Simply put, this is not a case where there is grounds for disagreement amongst the federal judiciary. There is no disagreement. There is no ambiguity in the plain text. There is a broadly written statute with an eye toward the future that plainly covers Defendant's conduct—conduct Defendant could have easily gotten consent for (and was supposed to under both the CCPA and the CIPA). *See* Cal. Civ. Code § 1798.100(a). And there is no reason this case satisfies the high bar for interlocutory appeal.

For the following reasons, Defendant's Motion should be denied.

## LEGAL STANDARD

"[C]ertification of an order for interlocutory appeal is appropriate when such order [i] involves a controlling question of law [ii] as to which there is substantial ground for difference of opinion and [iii] that an immediate appeal from the order may materially advance the ultimate termination of the litigation." *Sonoda v. Amerisave Mortg. Corp.*, 2011 WL 3957436, at *1 (N.D.

Cal. Sept. 7, 2011) (internal quotations omitted). However, the "general rule is that an appellate court should not review a district court ruling until after entry of a final judgment." *Id.* (cleaned up). Even with "difficult rulings in hard cases," interlocutory appeal "was not intended merely to provide review of" those rulings. *Nacarino v. Chobani, LLC*, 2022 WL 833328, at *1 (N.D. Cal. Mar. 21, 2022). Accordingly, "Section 1292(b) certifications should be used sparingly and only in exceptional situations in which allowing an interlocutory appeal would avoid protracted and expensive litigation." *Sonoda*, 2011 WL 3957436, at *1 (cleaned up).

## ARGUMENT

### I. THERE IS NOT SUBSTANTIAL GROUND FOR DISAGREEMENT BECAUSE EVERY FEDERAL COURT HAS DECIDED THE ISSUES THE SAME WAY, AND OTHER DECISIONS ARE DISTINGUISHABLE

Principally, Defendant contends interlocutory appeal is warranted because "[t]he Order's holding … raises novel and significant questions about which fair-minded jurists might reach—and indeed, are presently reaching—contradictory conclusions." Mtn. at 5:5-7. To make this argument, Defendant must ignore the *entirety of the federal judiciary*, where the caselaw has gone *universally* against it. *Bradshaw v. Lowe's Cos., Inc.*, 2025 WL 3171740, at *7 (S.D. Cal. Nov. 12, 2025) ("[T]he case law is not in Defendants' favor. Indeed, it uniformly supports the opposite outcome."); *Shah*, 2024 WL 6903081, at *2 ("No substantial ground for difference of opinion exists at this time as to warrant certification for interlocutory appeal.").

#### A. Federal Courts Have Unanimously Held A "Pen Register" May Record Information Related To The Visitor Of A Website

Defendant contends "there are substantial grounds for disagreement about whether a website's collection of visitors' IP-address information can satisfy the definition of a pen register." Mtn. at 7:6-7. Of course, Plaintiff's claim involves more information than just an IP address. But to the extent Defendant simply argues a "pen register" cannot collect the subject's own information, the argument finds no support in the statutory text. *Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924, 929 (N.D. Cal. 2024) ("Nothing in the statutory definition limits pen registers to those that operate the same way as a traditional phone pen register."). And it was why federal courts—including but not limited to *Shah*—have unanimously rejected it. *See*, *e.g.*, *Shah*, 754 F. Supp. 3d at 929 ("All that is required is that the Trackers record addressing information transmitted by the user's computer or

smartphone in connection with the outgoing HTTP request to Fandom's website, regardless of whether that addressing information pertains to the sender or the recipient of the communication at issue."); *Doe v. Talkiatry Management Servs., LLC*, 2025 WL 3190813, at *7 (C.D. Cal. Oct. 1, 2025) (rejecting argument that "Meta Pixel's tracking Plaintiff's own device's information falls outside the ambit of § 638.51") (cleaned up); *Camplisson v. Adidas Am., Inc.*, 2025 WL 3228949, at *8 (S.D. Cal. Nov. 18, 2025) ("Plaintiffs have sufficiently alleged that the Trackers record Class members' personal information, including the addressing information contained in an IP address, and thus plausibly constitute pen registers."); *Wright v. Truecare Prop. Holdings, LLC*, 2025 WL 3248749, at *4 (S.D. Cal. Nov. 21, 2025) ("Data capable of being associated with a user's identity falls within the statutory definition of addressing information.").

Defendant claims that *Rodriguez v. Plivo Inc.*, 2024 WL 5184413 (Super. Ct. Los Angeles Cnty. Oct. 2, 2024), creates the necessary discontinuity to warrant interlocutory review. Mtn. at 7:19-20. But "the existence of [a] district court case in some tension with [this Court's] does not constitute a 'substantial ground for difference of opinion' to such an extent as to justify short-circuiting the normal appellate process." *Kellman v. Spokeo, Inc.*, 2022 WL 2965399, at *2 (N.D. Cal. July 8, 2022); *see also Spears v. Washington Mut. Bank FA*, 2010 WL 54755, at *3 (N.D. Cal. Jan. 8, 2010) ("[T]he mere fact that one district court came to a different conclusion on the same issue is insufficient to establish a substantial ground for difference of opinion."); *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010) ("[J]ust because counsel contends that one precedent rather than another is controlling does not mean there is such a substantial difference of opinion as will support an interlocutory appeal.") (cleaned up).

Moreover, *Plivo*, like all of the cases Defendant cites, is an "unpublished state trial court decision[]" that is "not controlling, even in the California state courts." *Shah*, 2024 WL 6903081, at *2. And *Plivo*, like other state court decisions Defendant cites to, and *unlike* the federal court decisions Plaintiff cites to, "did not engage in the same extended interpretation of the statutory terms, but instead drew analogies based on a pen register's traditional functionality and relied on the legislative history." *Id*. But the United States and California Supreme Courts could not be clearer: "the text of a law controls over purported legislative intentions unmoored from any statutory text,"

and "the Court may not replace the actual text with speculation as to Congress' intent." *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 815 (2024); *Prang v. Los Angeles County Assessment Appeals Board*, 15 Cal.5th 1152, 1180 (2024) ("Where statutory text is unambiguous and provides a clear answer, courts need go no further."). *Plivo* is thus not sufficient to warrant interlocutory review.[2]

Last, this question is not a controlling question of law. Even if Defendant is correct (and it is not), that would simply mean Defendant installed "trap and trace devices" on Plaintiff's browser rather than "pen registers," and either is sufficient to state a CIPA § 638.51 claim. *See Heiting v. FKA Distributing Co.*, 2025 WL 736594, at *3 (C.D. Cal. Feb. 3, 2025) (finding software that "identifies the source of visitors to Defendant's website" was a "trap and trace device").

### B. California Courts—Under Multiple Provisions Of The CIPA—Have Unanimously Held A Party To The Communication May Not Cause A Third Party To Record A Communication

Defendant contends there are "substantial grounds for disagreement about whether the Pen Register Act applies to parties to the underlying communication." Mtn. at 8:9-10. Defendant does not cite a single case going its way on this issue. *Heiting v. FKA Distributing Co.*, 2025 WL 736594, at *3 (C.D. Cal. Feb. 3, 2025) ("Defendant does not cite any case law applying the third party requirement to section 638.51.").

This Court and others have universally held that if the *website operator* receives information that "users necessarily disclose when visiting a website, such as their IP address," the *website operator* "is a direct party to any communication from the user's browser and therefore cannot be liable for learning information." *Fregosa*, 2025 WL 2886399, at *7; *see also*, *e.g.*, *Rodriguez v. Autotrader.com, Inc.*, 762 F. Supp. 3d 921, 930 (C.D. Cal. 2025) ("[C]ourts have consistently found

---

[2] *Plivo* also dealt with only the collection of the user's IP address (*Plivo*, 2024 WL 5184413, at *1), whereas Plaintiff's theory is broader. Further, potentially hamstringing *Plivo*'s analysis (and those of other state court decisions) was that *Plivo* "appear[s] to be based on far less comprehensive complaints than those submitted by Plaintiff[]." *Drummer*, 2025 WL 3190656, at *4 n.1; *Scarlett v. Future US, LLC*, 2025 WL 2614587, at *1 (Cal.Super. Sep. 05, 2025) ("[R]eading the orders demonstrates their limited utility for these purposes. The court is unable to compare the adequacy of the allegations in the complaints as to which demurrers were sustained with the detailed FAC."). This lack of detail was likely because *Plivo*, like other state court decisions, was brought by a self-professed "tester that actively seeks out privacy violations." *Rodriguez v. Autotrader.com, Inc.*, 2025 WL 1085787, at *1 (C.D. Cal. Apr. 4, 2025).

that the consent exception saves the day, as the recipient is the sole user of the caller ID system, and the recipient consented to its installation and use."); *Drummer*, 2025 WL 3190656, at *4 ("By visiting Defendant's websites, Plaintiffs have clearly consented to disclosing their IP addresses for the purpose of loading the website…").

But as this Court recognized, Plaintiff's allegations are about the collection of her information by "*outside entities* for profiling and advertising purposes"—as caused by Defendant—and "[c]ourts have rejected similar attempts to dismiss complaints when the allegations involved transmission of data to third parties." *Fregosa*, 2025 WL 2886399, at *7 (emphasis added); *Shah*, 754 F. Supp. 3d at 932 ("A user who consents to disclose their IP address to Fandom as part of accessing its website does not necessarily consent to disclose their IP address to the third parties operating."); *Drummer*, 2025 WL 3190656, at *4 ("It is the *further* retention and transmission of their IP addresses that concerns Plaintiffs. Defendant has failed to persuade the Court that liability for *further* use of IP addresses would interrupt basic internet function.") (emphasis in original); *Autotrader.com*, 762 F. Supp. 3d at 930 ("Plaintiff alleges … third information was sent to third parties, not just Defendant."); *In re Meta Pixel Tax Filing Cases*, 793 F. Supp. 3d 1147, 1152 (N.D. Cal. 2025) ("A more apt example derived from plaintiffs' allegations would involve a prosecutor who purchased a pen register, handed that pen register to a police officer and then instructed the police officer to install … and further aided the officer in doing so.").

Defendant protests, claiming that finding "a pen-register prohibition … [that] prevent[s] a website operator from embedding software that records visitors' IP information when they contact the website, given that the website operator is a party to that communication," is not "in harmony with the rest of the" CIPA. Mtn. at 8:14-16, 9:11-12. This is not what Defendant argued in its Motion to Dismiss. *See* ECF No. 34 at 11:3-4 ("[C]ourts have recognized that PRTT laws do not prohibit the recipient of a communication from capturing information about the identity of someone who calls or contacts them."); ECF No. 40 at 12:18-20 ("Mashable, as the operator of the website that Plaintiff allegedly visited, is the intended recipient of, and other party to, any supposed communication with Plaintiff and therefore cannot be liable under the Pen Register Act."). And, of

course, Plaintiff alleges the Trackers recorded "more than just her IP address." *Autotrader.com*, 762 F. Supp. 3d at 930.

In any event, the Court's ruling is perfectly in harmony with the rest of the CIPA because "some sections of the CIPA have been interpreted to apply to parties and non-parties." *Xu v. Reuters News & Media, Inc.*, 2025 WL 3035016, at *4 (Super. Ct. Santa Clara Cnty. Oct. 24, 2025). CIPA § 632 makes even a party to a confidential communication liable for "recording" the communication—notably, the same verb used in CIPA § 638.50(b). *See Turner v. Nuance Communications, Inc.*, 735 F. Supp. 3d 1169, 1182 (N.D. Cal. 2024) (citing *Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 119 (2006)). CIPA § 632.7 "prohibits parties as well as nonparties from intentionally recording a communication transmitted between a cellular or cordless phone and another device." *Smith v. LoanMe, Inc.*, 11 Cal. 5th 183, 202-03 (2021). And CIPA § 631 prohibits even a party to the communication from "aid[ing], agree[ing] with, employ[ing], or conspire[ing]" with a non-party to violate the statute. Cal. Pen. Code § 631(a); *see also Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *2 (N.D. Cal. Oct. 23, 2019) ("Although Moosejaw cannot be liable for eavesdropping on its own communications with Revitch, the complaint adequately alleges that Moosejaw violated section 631 by enabling NaviStone's wrongdoing."). As the California Supreme Court recognized forty years ago, this comports with one of the policy objectives behind the CIPA: recognition of the "substantial distinction … between the secondhand repetition of the contents of a conversation and its simultaneous dissemination to an unannounced second auditor, whether that auditor be a person or mechanical device." *Ribas v. Clark*, 38 Cal. 3d 355, 360-61 (1985). Thus, this Court's holding is perfectly in harmony with the rest of the statute.

Last, Defendant contends adopting its argument "is also the only way to avoid imposing pen-register liability on everyone who uses an entirely commonplace communications tool: caller ID." Mtn. at 10:3-5. As noted above, the *Autotrader.com* court found this was not a real issue because "the consent exception saves the day, as the recipient is the sole user of the caller ID system, and the recipient consented to its installation and use." *Autotrader.com, Inc.*, 762 F. Supp. 3d at 930. And the tracking software at issue in *Autotrader.com*, like the Trackers here, was not "analogous to a caller ID system." *Id.*

### C. The Plain Text Of The Statute Makes Clear A "Communication With Content" Is Not Required, And The Trackers Recorded Information Associated With An "Electronic Communication" Per The Plain Text Of The CIPA And Federal Court Opinions

Defendant argues there is substantial disagreement as to whether a "pen register" must record "a communication with content." Mtn. at 11:1. Defendant does not actually identify any such disagreement. Nor can it, given the plain text of the statute holds the answer. Cal. Pen. Code § 638.50(b) ("'Pen register' means a device or process that records or decodes … information … *but not the contents* of a communication.") (emphasis added); *see also Deivaprakash v. Condé Nast Digital*, --- F. Supp. 3d ---, 2025 WL 2541952, at *3 (N.D. Cal. Sept. 4, 2025) ("[T]he pen register definition does not automatically exclude devices that collect more than just these four categories of information; rather, only devices that go beyond these four categories to also collect the contents of a communication fall outside the definition.").

Defendant attempts to manufacture a dispute by citing cases discussing CIPA § 631. That provision, unlike CIPA § 638.50(b), requires that the third party "read … *the contents or meaning* of any … communication." Cal. Pen. Code § 631(a) (emphasis added); *see also Augustine v. Great Wolf Resorts, Inc.*, 2024 WL 3450967, at *6 (S.D. Cal. July 18, 2024) (dismissing CIPA § 631(a) claim because "Plaintiff has failed to adequately allege that Contentsquare intercepted the contents of communications"); *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1083 (C.D. Cal. 2021) (same). *Gonzales v. Uber Techs., Inc.*,305 F. Supp. 3d 1078 (N.D. Cal. 2018)—which evaluated a claim under the Federal Wiretap Act—does not create a dispute because the Federal Wiretap Act also requires the interception of contents. *Id.* at 1084 ("The Federal Wiretap Act makes it unlawful to intentionally intercept any wire, oral, or electronic communication.") (cleaned up); 18 U.S.C. § 2510(4) ("'Intercept' means the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device."). Indeed, each decision recognized that an "electronic communication" occurred, even if they found "content" was required to state a claim under the statutory provisions at issue.

Defendant further argues a communication with content is necessary to "read CIPA's provisions in harmony." Mtn. at 11:2-3. It is unclear as to why. Cal. Pen. Code § 629.51(a)(2)

defines an "[e]lectronic communication" as "any transfer of signs, signals, writings, images, sounds, data, or intelligence of any nature." *See also* Cal. Pen. Code § 638.50(a) ("'Wire communication' and 'electronic communication' have the meanings set forth in subdivision (a) of Section 629.51."). There is no reason a "pen register" cannot be a tracker that records information associated with such a communication, while if the communication contains content, a tracker that records such content can violate CIPA §§ 631(a) or 632. *See Shah*, 754 F. Supp. 3d at 929 ("[T]he 'electronic communication' at issue is the transmission of the HTTP request from the user's computer or smartphone to Fandom's website.").

### D. All Federal Courts Have Rejected The Application Of The Rule Of Lenity To CIPA §§ 638.50-638.51's Plain Language

In a footnote, Defendant contents there is "an intra-circuit conflict about whether, and to what extent, the ambiguities in CIPA trigger the rule of lenity." Mtn. at 12 n.2. But the decision Defendant cites for this proposition— *Doe v. Eating Recovery Ctr. LLC*, --- F. Supp. 3d ---, 2025 WL 2971090 (N.D. Cal. Oct. 17, 2025)—was a summary judgment decision that evaluating CIPA § 631(a). Meanwhile, every federal court has rejected the rule of lenity's application to the CIPA provisions at issue. *See*, *e.g.*, *Fregosa*, 2025 WL 2886399, at *9; *Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075, 1094 (N.D. Cal. 2025); *Garon v. Keleops USA, Inc.*, 2025 WL 2522374, at *6 (N.D. Cal. Sept. 2, 2025); *Deivaprakash*, 2025 WL 2541952, at *5. Even the California Supreme Court has rejected this argument. *LoanMe*, 11 Cal. 5th at 202 (rejecting rule of lenity's application to CIPA § 632.7). There is no intra-circuit conflict, much less over CIPA §§ 638.50-638.51.[3]

### E. Defendant's Policy Arguments Are Not The Province Of The Court, Are Overblown, And Ignore The Legislative Purpose Behind The CIPA

Defendant argues "the substantial policy consequences of the Court's ruling reinforce that there are grounds for reasonable disagreement." Mtn. at 11:21-22. Specifically, Defendant argues "Plaintiff's theory risks, at the very minimum, calling into question the ability of most modern

---

[3] As an aside, *Eating Recovery*, 2025 WL 2971090, at *1 found only "ambiguity" in CIPA § 631(a). But the rule of lenity only applies "when a criminal statute contains a *grievous* ambiguity or uncertainty." *Ocasio v. United States*, 578 U.S. 282, 295 n.8 (2016) (emphasis added; otherwise cleaned up). Indeed, in rejecting the rule of lenity, the California Supreme Court adopted a more expansive, privacy-protective interpretation of CIPA § 632.7 over a "narrower interpretation." *LoanMe*, 11 Cal. 5th at 199.

websites to function." *Id.* at 11:24-25. But policy is the province of the legislature, not the courts. And "[t]o the extent that [Defendant] believes the statute may impose too many burdens when applied to the realities of modern technologies … the question of whether the statute's scope should be narrowed ultimately rests with the Legislature, not the courts." *Shah v. YETI Coolers, LLC*, 754 F. Supp. 3d 933, 933 (N.D. Cal. 2024).

In any event, Defendant's policy considerations are overblown. The Internet has not collapsed since courts began addressing claims like Plaintiff's nearly two years ago. The reason for this is simple: prohibiting the "the *further* retention and transmission of" IP addresses and other identifiers without consent will not "interrupt basic internet function." *Drummer*, 2025 WL 3190656, at *4 (emphasis in original). Such prior consent "is not hard to accomplish, as the enormous volume of commerce on the Internet attests." *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1036 (7th Cir. 2016). Indeed, it is what Defendant should have already been doing under the CCPA. Cal. Civ. Code § 1798.100(a) ("A business that controls the collection of a consumer's personal information shall, *at or before the point of collection*, inform consumers of" the types of data collected) (emphasis added). All this is to say, Plaintiff's theory does not outlaw this type of data collection; it simply requires prior consent for it (in line with other privacy laws).

As an aside, Defendant's opposition to this system is not about "basic internet functionality," but its bottom line. Defendant fears consumers will be less inclined to provide their information if given an easy way not to. And less information means less advertising revenue. *See*, *e.g.*, Marcus Moretti & Michael Naughton, *Why Privacy Policies Are So Inscrutable*, THE ATLANTIC (Sept. 5, 2014) ("Gathering and analyzing that data is big business, and it creates a strong financial incentive for the firms that collect it to make it as difficult as possible for you to opt out of their net.").[4] Still, some companies are willing to strike a balance, as *The Los Angeles Times* did after Plaintiff's counsel brought suit—the LA Times now has a consent wall that asks users to agree to its privacy policy before being able to use the website.[5]

---

[4] Available at https://www.theatlantic.com/technology/archive/2014/09/why-privacy-policies-are-so-inscrutable/379615/.

[5] LOS ANGELES TIMES, https://www.latimes.com/

Regardless, Defendant's policy argument ignores the policy behind the CIPA. The "CIPA was passed, in part, because 'the development of new devices and techniques for the purpose of eavesdropping upon private communications [] has created a serious threat to the free exercise of personal liberties.'" *Lesh v. Cable News Network, Inc.*, 767 F. Supp. 3d 33, 41 (S.D.N.Y. 2025) (quoting Cal. Pen. Code § 630). "This philosophy appears to lie at the heart of virtually all the decisions construing the Invasion of Privacy Act." *LoanMe*, 11 Cal. 5th at 199 (cleaned up). "In light of this intent, the California Supreme Court has instructed courts to interpret CIPA in the manner that 'fulfills the legislative purpose of CIPA by giving greater protection to privacy interests.'" *Matera v. Google Inc.*, 2016 WL 8200619, at *19 (N.D. Cal. Aug. 12, 2016) (Koh, J.) (quoting *Flanagan v. Flanagan*, 27 Cal. 4th 766, 775 (2002)); *Shah*, 754 F. Supp. 3d 931 (recognizing "the broad legislative intent underlying CIPA to protect privacy") (cleaned up).

In line with this, as the Court recognized, "[t]he statutory text [of CIPA §§ 638.50-638.51] is deliberately expansive, designed to encompass new technologies and apply to conduct like that alleged here." *Fregosa*, 2025 WL 2886399, at *9. The fact the CIPA applies to Defendant's conduct is not surprising, but intentional. *LoanMe*, 11 Cal. 4th at 200 ("[T]he state has a strong and continuing interest in the full and vigorous application" of laws that vindicate the privacy rights that can be compromised when a communication is recorded without consent.") (cleaned up).[6]

Last, Defendant claims that "many obviously permissible website functions, that are often supported by third parties, must capture visitors' IP addresses." Mtn. at 12:21-22. Of course, those technologies are not at issue here, and "Plaintiff alleges that the tracking software captured more than just her IP address." *Autotrader.com*, 762 F. Supp. 3d at 930. Regardless, the CIPA provides

[6] Defendant cites to *Licea v. Hickory Farms LLC*, 2024 WL 1698147 (Super. Ct. Los Angeles Cnty. Mar. 13, 2024), a decision overly reliant on legislative history and based on a conclusorily-pled complaint. *Drummer*, 2025 WL 3190656, at *4 n.1; *Garon*, 2025 WL 2522374, at *5. Regardless, *Licea*'s policy point was in part based on the fact that it was unclear whether a third party was involved, unlike here. *Licea v. Hickory Farms LLC*, 2024 WL 1698147, at *4 (Cal.Super. Mar. 13, 2024) ("The conclusive allegations in the first amended complaint in no way … articulate Hickory Farms as a third party for purposes of alleging liability."). *Rodriguez v. Sparc Grp., LLC*, 2025 WL 2993671 (Los Angeles Cnty. Super. Ct. July 9, 2025), likewise ignores an "extended interpretation of the statutory terms." *Shah*, 2024 WL 6903081, at *2. And *Capitol Recs. Inc. v. Thomas-Rasset*, 2009 WL 1664468 (D. Minn. June 11, 2009), unlike here, "involve[s] [a] situation[] where users were directly communicating with the party alleged to be operating the pen register and voluntarily sent that party their IP address." *Shah*, 754 F. Supp. 3d at 932 n.3.

an exemption from the "pen register" definition for a "customer of a wire or electronic communication service" where the alleged "pen register" is used "for billing … for communications services provided by such provider … [or] for cost accounting or other similar purposes in the ordinary course of its business." Cal. Pen. Code § 638.50(b). As Judge Susan van Keulen reasoned:

> [a]s reasoned in *Greenley*, *Shah* and *Mirmalek*, a process, such as the placing of cookies, that collects IP addresses (or other routing, addressing, or signaling information) can be a pen register under the plain meaning of the statute, and as reasoned in *Casillas*, such a process may then be carved out where it is merely used by a provider for billing, for communications services provided by such provider, or other similar purposes in the ordinary course of its business,"

*Walsh v. Dollar Tree Stores, Inc.*, 2025 WL 293922, at *18 (N.D. Cal. Oct. 16, 2025). So, it might be that "consent-management platforms" and software that provides "defenses against cyber-attacks" (Mtn. at 12:22-24) fall under this exception. But those instances are not at issue here. And the trackers of data brokers and data sellers—which are at issue *here*—do not fallen under this exception. *Walsh*, 2025 WL 293922, at *18 ("The Complaint implicates not only 'Essential Cookies,' which may be subject to the carveout similar to the first-party, IP-address-only cookies in *Casillas*, but also 'Analytics Cookies' and 'Advertising Cookies,' which are not used 'for billing,' 'communication services,' or similar purposes.").

## II. AN INTERLOCUTORY APPEAL WILL ONLY UNNECESSARILY DELAY THE LITIGATION, NOT MATERIALLY ADVANCE ITS ULTIMATE TERMINATION

Defendant argues that interlocutory appeal will materially advance the litigation because either "Plaintiff['s] claims will be dismissed" and "even an affirmance may provide useful guidance." Mtn. at 13:13-14. Not so. Defendant "will have the opportunity to appeal" after trial and "[t]he additional burden of … having to complete trial before taking the appeal is not substantial." *Stuart v. Radioshack Corp.*, 2009 WL 1817007, at *4 (N.D. Cal. June 25, 2009). "On the other hand, permitting the interlocutory appeal will … potentially postpone [a] trial for many months, thus materially prejudicing the Plaintiffs and disrupting the Court's calendar." *Id.*

Defendant contends that an immediate appeal is warranted because "Plaintiff brings her case as a putative class action" and "the *in terrorem* effects of asymmetrical discovery [will] preclude ultimate appellate resolution." Mtn. at 13:19-22. This is a giant cowering at the sight of a mouse. Defendant cites the $3.85 million *Mirmalek* settlement reached by Plaintiff's counsel. Defendant's

owner, Ziff Davis, "is a multi-billion dollar … company" with $1.5 billion in revenue this year.[7] Claiming that a settlement worth approximately 0.25% of Defendant's revenue this year—even accounting for whatever attorneys' fees and costs would have been expended in discovery—was *in terrorem* is absurd.[8]

### III. EVEN IF THERE IS A CONTROLLING QUESTION, ALLOWING DISCOVERY TO PROCEED WILL BETTER INFORM THE RECORD

Defendant largely assumes that the Order "rested on its answer to a [controlling] question of law: whether 'CIPA's pen register prohibition extends to software processes that record addressing information in electronic communications.'" Mtn. at 5:18-20. Confusingly, this is *not* the question Defendant put before the Court in the Motion to Dismiss. ECF No. 34 at 4 n.1 ("To be clear, Mashable does not maintain that the Act is limited only to telephones."). And while Defendant may dispute whether software is a "pen register" if it collects the user's own information (it is, as the Court correctly found), there is no credible dispute that the statute covers internet communications and addressing information like IP addresses. *United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2008) ("We conclude that the surveillance techniques the government employed here [that reveal IP addresses] are constitutionally indistinguishable from the use of a pen register."); *see also United States v. Soybel*, 13 F.4th 584, 586-87 (7th Cir. 2021) (pen register installed under federal statute "to monitor internet traffic in and out of the building generally and Soybel's unit specifically"); *United States v. Ulbricht*, 858 F.3d 71, 83 (2d Cir. 2017) (same "to monitor Internet Protocol ('IP') address traffic to and from various devices associated with Ulbricht").

Assuming *arguendo* Defendant is correct, allowing discovery to proceed and re-evaluating the need for appellate review better serves judicial economy. *Shah*, 2024 6903081, at *2 (declining

---

[7] ABOUT ZIFF DAVIS, https://investor.ziffdavis.com/overview/default.aspx.

[8] Defendant also mischaracterizes Plaintiff's counsel's statements in support of the *Mirmalek* settlement, which Plaintiff is not a party to. Plaintiff's counsel noted that while their theory was "novel" a year ago, "the authority has moved in Plaintiff's favor in the last year." *Mirmalek v. Los Angeles Times Communications, LLC*, Case No. 3:24-cv-1797, ECF No. 45 at 10:14-18 (N.D. Cal. Oct. 15, 2025). Further, Plaintiff's counsel stated statutory damages "*may* have been found to be excessive under Ninth Circuit precedent." *Id.* at 3:19 (emphasis added). Given this uncertainty, Plaintiff's counsel believed the better comparison for the value of the settlement was "Plaintiff's actual damages." *Id.* at 3:22. If anything, the *Mirmalek* settlement shows settlements of these claims are anything but *in terrorem*.

to certify interlocutory appeal because "[a]llowing discovery to proceed will permit development of a more fulsome record for consideration"); *James v. Walt Disney Co.*, 2024 WL 664811, at *3 (N.D. Cal. Feb. 16, 2024) ("[T]he outcome of the litigation would be more materially advanced if the court were to establish the full set of relevant facts on which to base the determination whether there is sufficient Article III injury, especially if that determination is fact intensive.").

For instance, Defendant argues that "then the Internet could not function because standard computer operations require recording IP addresses so parties can communicate with one another over the Internet," and "many obviously permissible website functions, that are often supported by third parties, must capture visitors' IP addresses." Mtn. at 12:18-22 (cleaned up). Of course, the former argument "mischaracterizes the SAC" (*Fregosa*, 2025 WL 2886399, at *7), and the technology involved here is worlds different than the examples Defendant gives in the latter argument. Nonetheless, discovery into the functionality of the Trackers and Defendant's purpose in installing and using them would create a more fulsome factual record on which the Ninth Circuit could base its answers to these questions. This discovery would also go to Defendant's defense that "it was the third-party vendors, and not Mashable itself, that installed and operated the trackers." *Fregosa*, 2025 WL 2886399, at *8. In addition, Defendant contends the CIPA "[r]equir[es] a communication with content as an element of a Pen Register Act claim." Mtn. at 11:1. The statute says literally the opposite. Cal. Pen. Code § 638.50(b). But allowing discovery beyond Plaintiff's allegations into what information the Trackers record and decode will shed light on these questions as well.

All in all, regardless of whether Defendant presents a "controlling question of law," allowing discovery into the actual mechanics of how the Trackers work, what information they record and decode, and the purposes for which Defendant installs and uses them would allow any appellate court (or even this Court) to more conclusively answer these questions.[9]

[9] While Plaintiff is confident the Trackers work as she alleges, it is always possibile that discovery may paint a different picture. For instance, although the *Doe* court ultimately dismissed the plaintiff's claims at summary judgment, the court sustained the CIPA claim at the pleadings based on allegations "that Meta's transmission of information through the Pixel is instantaneous." *Doe v. Eating Recovery Center LLC*, 2024 WL 2852210, at *1 (N.D. Cal. June 4, 2024). This illustrates

## CONCLUSION

For the foregoing reasons, the Court should deny Defendant's Motion. Further, because there is no basis to grant interlocutory appeal, there is likewise no basis to stay this action.

Dated: November 24, 2025

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: */s/ Max S. Roberts*
Max S. Roberts

Max S. Roberts (State Bar No. 363482)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-mail: mroberts@bursor.com

**BURSOR & FISHER, P.A.**
Kaili C. Lynn (State Bar No. 334933)
Joshua R. Wilner (State Bar No. 353949)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: klynn@bursor.com
jwilner@bursor.com

**BURSOR & FISHER, P.A.**
Philip L. Fraietta (State Bar No. 354768)
50 Main Street, Suite 475
White Plains, NY 10606
Telephone: (914) 874-0710
Facsimile: (914) 206-3656
Email: pfraietta@bursor.com

*Attorneys for Plaintiff*

---

that prematurely certifying these issues at the pleadings, rather than after discovery, would not "materially advance the termination of the litigation."