James G. Snell (CA State Bar No. 173070)
JSnell@perkinscoie.com
Timothy M. Carter (CA State Bar No. 335212)
TCarter@perkinscoie.com
**PERKINS COIE LLP**
3150 Porter Drive
Palo Alto, California 94304-1212
Telephone: +1.650.838.4300
Facsimile: +1.650.838.4350

Mikella M. Hurley (Admitted *pro hac vice*)
MHurley@perkinscoie.com
**PERKINS COIE LLP**
700 Thirteenth Street, N.W., Suite 800
Washington, D.C. 20005-3960
Telephone: +1.202.654.6200
Facsimile: +1.202.654.6211

Attorneys for Defendant MASHABLE, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DAWN FREGOSA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MASHABLE, INC.,<br><br>Defendant. | Case No. 3:25-CV-01094-CRB<br><br>[Removed from the Alameda County Superior Court, Case No. 24CV103566]<br><br>**REPLY IN SUPPORT OF DEFENDANT MASHABLE, INC.'S MOTION TO CERTIFY FOR INTERLOCUTORY APPEAL AND TO STAY PROCEEDINGS**<br><br>DATE: December 19, 2025<br>TIME: 10:00 a.m.<br>CTRM: 6, 17th Floor<br><br>Complaint Filed: December 17, 2024<br>Action Removed: February 3, 2025<br><br>ORAL ARGUMENT REQUESTED |

## SUMMARY OF ARGUMENT

The Court should certify its October 9 Order (ECF No. 53) for interlocutory appeal pursuant to 28 U.S.C. § 1292(b) because the Order raises novel and controlling questions of law concerning the interpretation of California's Pen Register Act, Cal. Penal Code §§ 638.50, 638.51. Plaintiff does not dispute Mashable's showing that no appellate court has *ever* interpreted the Act, let alone opined on the substantial, controlling questions raised by Plaintiff's allegations here. Section 1292(b)'s factors for certification are easily met.

Plaintiff's Opposition ignores the Ninth Circuit's preference for certification when the question is "novel," *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011), a preference this Court has recognized, *see* Order at 2, *In re Uber Techs. Inc. Passenger Sexual Assault Litig.*, No. 23-md-3084 (N.D. Cal. Jun. 25, 2024), ECF No. 667 (Breyer, J.). Plaintiff instead argues largely that her positions on the motion to dismiss were correct—but that is not the relevant consideration for a Section 1292(b) motion.

**1. Controlling question of law.** The Court's Order decided a question of law about the application of the Pen Register Act to the conduct alleged here. Order at 1, 10–16. Plaintiff does not seriously contest this prong, arguing merely that even if Mashable's alleged conduct were not a pen register, the Court could reconstrue it as a trap-and-trace device. That has nothing to do with the claims Plaintiff pleaded and invited the Court to decide. But even if Plaintiff's major post-hoc reframing of her complaint were proper, it would not change the legal import of the Court's Order.

**2. Substantial ground for difference of opinion**. There are substantial grounds for difference of opinion on at least four independent questions, which have led courts to reach "contradictory conclusions," which is not even required. *See Reese*, 643 F.3d at 688.

Plaintiff's primary response is to assert that the federal judiciary is unanimously aligned with this Court's interpretation. That seriously misstates the confidence those courts have had in their interpretation of the Act—including in *Shah*, where the court acknowledged that similar allegations "present[ ] novel and significant issues regarding the scope of the pen register statute," and left the door open to "readdressing the issue" of certification "at a later phase." *Shah v. Fandom,*

*Inc*., No. 24-cv-01062, 2024 WL 6903081, at *2 (N.D. Cal. Dec. 16, 2024). Plaintiff also ignores the multiple California courts that have agreed with Mashable's interpretation of the Pen Register Act, a consideration that is particularly appropriate given this Court's role, sitting in diversity, to draw on "all available data" to "approximate" state law. *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1093 (9th Cir. 2017). Nor can Plaintiff show that these California judges, faithfully applying their own State's law, are not "fair minded jurists." *ICTSI Oregon, Inc. v. International Longshore & Warehouse Union*, 22 F.4th 1125, at 1130 (9th Cir. 2022) (citation modified). Plaintiff ultimately has no answer to Mashable's identification of serious room for disagreement about fundamental questions of interpretation about the Pen Register Act, as well as the untenable consequences that follow from her interpretation.

**3. Appeal would materially advance the litigation.** Interlocutory appeal of cases raising novel questions of first impression advances the litigation because appellate guidance will inform each subsequent stage of the litigation. Plaintiff's contrary suggestion—that discovery should proceed now without that guidance—invites discovery requests into potentially irrelevant lines of inquiry, along with further litigation on matters that will very likely need to be clarified later (or even prove needless) *following* appellate intervention. Given the "novel and significant issues regarding the scope of the pen register statute," *Shah*, 2024 WL 6903081, at *2, the more efficient course is to seek appellate guidance now. And Plaintiff's dismissive suggestion that Mashable is large enough to absorb the *in terrorem* effects of this case proceeding as a class action understates the pressure placed on defendants to settle even meritless cases.

Dated: December 1, 2025

**PERKINS COIE LLP**

By: */s/ James G. Snell*
James G. Snell
Mikella M. Hurley
Timothy M. Carter

Attorneys for Defendant MASHABLE, INC.

**TABLE OF CONTENTS**


MEMORANDUM OF POINTS AND AUTHORITIES ........ 1

I. INTRODUCTION ........ 1

II. ARGUMENT ........ 3

A. Interpreting the Pen Register Act Raises Controlling Legal Questions ........ 3

B. There Are at Least Four Substantial Grounds for Difference of Opinion ........ 4

C. Appellate Guidance Will Materially Advance the Litigation ........ 13

III. CONCLUSION ........ 15

# TABLE OF AUTHORITIES

**CASES**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....... 14

*Asis Internet Servs. v. Active Response Grp.*,
2008 WL 4279695 (N.D. Cal. Sept. 16, 2008) ....... 15

*Best Carpet Values, Inc. v. Google*
LLC, No. 20-cv-4700, 2022 WL 22843012 (N.D. Cal. May 2, 2022) ....... 15

*Casillas v. Transitions Optical, Inc.*,
No. 23STCV30742, 2024 WL 4873370 (Cal. Super. Ct. Sept. 09, 2024) ....... 5

*Couch v. Telescope Inc.*,
611 F.3d 629 (9th Cir. 2010) ....... 1, 3, 6, 8, 10, 12

*Doe v. Eating Recovery Ctr. LLC*,
No. 23-cv-5561, 2025 WL 2971090 (N.D. Cal. Oct. 17, 2025) ....... 2, 8, 13

*Drummer v. CoStar Grp., Inc.*,
No. 25-cv-1047, 2025 WL 3190656 (C.D. Cal. Oct. 22, 2025) ....... 7

*Dyna-Med, Inc. v. Fair Emp. & Hous. Comm'n.*,
43 Cal.3d 1379 (1987) ....... 8, 11

*Epic Games, Inc. v. Apple, Inc.*,
67 F.4th 946 (9th Cir. 2023) ....... 5

*Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*,
9 F.4th 1167 (9th Cir. 2021) ....... 11

*Garcia v. McCutchen*,
16 Cal. 4th 469 (1997) ....... 4

*Gonzales v. Uber Techs., Inc.*,
305 F. Supp. 3d 1078 (N.D. Cal. 2018) ....... 10

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023) ....... 5

*Guaranty Tr. Co. of N.Y. v. York*,
326 U.S. 99 (1945) ....... 6

*ICTSI Oregon, Inc. v. International Longshore & Warehouse Union*,
22 F.4th 1125 (9th Cir. 2022) ....... 2, 6, 7, 14

*In re Cnty. of Orange*,
784 F.3d 520 (9th Cir. 2015)....6

*In re Uber Techs. Inc. Passenger Sexual Assault Litig.*,
No. 23-md-3084 (N.D. Cal. Jun. 25, 2024) ....1, 4

*Kwan v. SanMedica Int'l*,
854 F.3d 1088 (9th Cir. 2017)....2, 6

*Licea v. Hickory Farms LLC*,
No. 23STCV26148, 2024 WL 1698147 (Cal. Super. Ct. Mar. 13, 2024) ....5

*Mendoza v. Fonseca McElroy Grinding Co.*,
11 Cal. 5th 1118 (2021) ....11

*Mirmalek v. L.A. Times Commc'ns LLC*,
No. 24-cv-1797, 2024 WL 5102709 (N.D. Cal. Dec. 12, 2024)
....7, 10, 12, 14

*Ornelas v. Randolph*,
4 Cal. 4th 1095 (1993) ....11

*Reese v. BP Expl. (Alaska) Inc.*,
643 F.3d 681 (9th Cir. 2011)....1, 4, 10

*Revitch v. New Moosejaw, LLC*,
No. 18-cv-06827, 2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) ....9

*Rodriguez v. Autotrader.com, Inc.*,
No. 24-cv-08735, 2025 WL 1085787 (C.D. Cal. Apr. 4, 2025) ....7

*Rodriguez v. Plivo Inc.*,
No. 24STCV08972, 2024 WL 5184413 (Cal. Super. Ct. Oct. 2, 2024) ....7

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
559 U.S. 393 (2010)....14

*Shah v. Fandom, Inc.*,
No. 24-cv-01062, 2024 WL 6903081 (N.D. Cal. Dec. 16, 2024)....2, 1, 5

*Sterling v. Feek*,
150 F.4th 1235 (9th Cir. 2025) ....4, 13

*Swarts v. Home Depot, Inc.*,
689 F. Supp. 3d 732 (N.D. Cal. 2023) ....8, 9

*United States v. Taketa*,
923 F.2d 665 (9th Cir. 1991)....6

*Williams v. What If Holdings, LLC*,
No. 22-cv-3780, 2022 WL 17869275 (N.D. Cal. Dec. 22, 2022) .......... 8

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) .......... 10

**STATUTES**

28 U.S.C. § 1292(b) .......... 1, 2, 3, 13, 15

Cal. Civ. Code § 1798.120(a) .......... 13

Cal. Penal Code § 631(a) .......... 9

Cal. Penal Code § 638.50(b) .......... 12

Cal. Penal Code § 638.51(b) .......... 9, 10

**OTHER AUTHORITIES**

Rob Bonta, Attorney General: Privacy Policy, https://robbonta.com/privacy-policy; .......... 12

United States Courts: Privacy Policy, https://www.uscourts.gov/privacy-security-policy .......... 12

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff does not dispute that this Court's October 9 Order denying Mashable's motion to dismiss raised questions of law that no appellate court has ever addressed. It is therefore common ground that the question presented in Mashable's Motion to Certify for Interlocutory Appeal (ECF No. 56) addressed "novel" and significant questions about California's Pen Register Act. *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011). And Plaintiff has no answer to the Ninth Circuit's preference for certification under such circumstances, *id.*, a preference that this Court has also recognized, *see* Order, *In re Uber Techs. Inc. Passenger Sexual Assault Litig.*, No. 23-md-3084, ECF No. 667 at 2 (N.D. Cal. Jun. 25, 2024) (Breyer, J.); Motion at 1.

Instead of arguing that this case does not meet the standard for certification under 28 U.S.C. § 1292(b), Plaintiff largely argues that her interpretation of the Pen Register Act is correct. If that is the case, then Plaintiff has nothing to fear from interlocutory appeal. But Plaintiff's own Opposition *undercuts* her argument by revealing fundamental inconsistencies in her pen register theory and by relying on new arguments that this Court did not rely on and that cannot be reconciled with each other. Plaintiff's inconsistent post-hoc rationalizations of her theory, several of which she presents for the first time in opposing interlocutory appeal, only underscore the "extent [to which] the controlling law is unclear." *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010).

Plaintiff's insistence that the supposed "unanimity of the federal judiciary" forecloses interlocutory appeal is legally incorrect and misstates those courts' confidence in the state of the law. Plaintiff's leading case, *Shah*, *agreed* that similar allegations "present[ ] novel and significant issues regarding the scope of the pen register statute." *Shah v. Fandom, Inc.*, No. 24-cv-01062, 2024 WL 6903081, at *2 (N.D. Cal. Dec. 16, 2024). Although *Shah* declined to certify the case at an "early stage" of that litigation, the court expressly left the door open to "readdressing the issue at a later phase," and it also proposed that the parties consider expedited summary judgment to reach a final judgment. *Id.* That "later phase" has not materialized in *Shah* because the case is poised to settle. *See* Pl.'s Mot. for Settlement, ECF No. 71 (Oct. 16, 2025); Def.'s Statement of Non-

Opposition, ECF No. 72 (Oct. 30, 2025). And Plaintiff's supposed "unanimity of the federal judiciary" entirely ignores the federal appellate bench, which has never seen a Pen Register Act case, as well as the judiciary of the State of California, where judges are increasingly *rejecting* CIPA pen-register claims. Plaintiff asks the Court to simply ignore these state-court decisions—a request that cannot be squared with this Court's task, sitting in diversity, to draw on "all available data" to "approximate" state law. *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1093 (9th Cir. 2017). Plaintiff cannot show that the multiple state judges who have adopted Mashable's arguments are not "fair-minded jurists" faithfully applying the law of their own State. *ICTSI Oregon, Inc. v. International Longshore & Warehouse Union*, 22 F.4th 1125, 1130 (9th Cir. 2022) (cleaned up).

As Mashable, its amici, California legislators, and other federal courts have explained, the state of play in CIPA cases is untenable. Over two thousand lawsuits like this one have been filed since 2023, reaching every kind of organization from charities to the Associated Press. *See* Alliance for Legal Fairness *et al*. Amicus Br. at 2, ECF No. 59-1. And the number of suits that are filed is just a drop in the bucket compared to the flood of pre-suit demands. News Media All. Amicus Br. at 8, ECF No. 57-1. In the absence of clear legal standards, these lawsuits are an "existential threat" to many smaller businesses since the costs of defending or settling the cases is at times "catastrophic." *Id*. at 8 (quotations omitted). Because these cases are almost always brought as class actions seeking massive statutory damages, they typically settle—surely explaining the lack of appellate guidance. *See* Motion at 14. This "total mess" only "gets bigger and bigger as the world continues to change and as courts are called upon to apply CIPA's already-obtuse language to new technologies." *Doe v. Eating Recovery Ctr. LLC*, No. 23-cv-5561, 2025 WL 2971090, at *1 (N.D. Cal. Oct. 17, 2025) (Chhabria, J.). Even Plaintiff, in her attempt to forestall appellate guidance, unsubtly hints that Mashable should just settle and give up its right to appellate review. Opp. at 12-13. While that result may help Plaintiff, it would not help clean up the "mess."

Because the factors for certification under Section 1292(b) are met, the Court should permit the Ninth Circuit a first chance to interpret CIPA's Pen Register Act.

## II. ARGUMENT

In response to Mashable's motion explaining why the three factors for interlocutory appeal are satisfied, Plaintiff offers various arguments why she believes that her reading of the Pen Register Act is correct. *See* Opp. 3–12. Those arguments do nothing to undermine Mashable's showing that the Court's Order (1) "involves a controlling question of law"; (2) "as to which there is substantial ground for difference of opinion"; and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation[.]" 28 U.S.C. § 1292(b).

To the extent Plaintiff's arguments are even responsive to Mashable's motion, they serve only to expose major holes in her theory of how a pen register operates and what can trigger liability under Section 638.1—revealing fundamental inconsistencies in Plaintiff's own theory and ultimately confirming the need for interlocutory review. *See Couch*, 611 F.3d at 633.

### A. Interpreting the Pen Register Act Raises Controlling Legal Questions.

Plaintiff does not seriously dispute that this Court's Order rested on a controlling question of law: "whether 'CIPA's pen register prohibition extends to software processes that record addressing information in electronic communications,' specifically software embedded in websites that capture information about website visitors, including their IP addresses." Motion at 5 (quoting Order at 1, 10–15). She does not explicitly brief this prong of Section 1292(b). *See* Opp. at 3.

Plaintiff suggests in passing (at 5) that this question may not be "controlling" because "[e]ven if Defendant is correct" about the definition of a pen register, "that would simply mean that Defendant installed 'trap and trace devices'" also prohibited by Section 638.51. Opp. at 5. That argument is procedurally improper and fundamentally unfair: Plaintiff cannot defeat a motion for interlocutory appeal based on a legal theory that she did not plead and the Court did not analyze. She has amended her complaint twice, each time restating her legal theory that Mashable is liable for installing or using a "pen register"—not a trap-and-trace device. ECF Nos. 12, 30. This Court, in assessing those complaints and Mashable's motions to dismiss them, has therefore interpreted the definition of a "pen register" at Plaintiff's urging. There can be no question that the definition of a pen register is "fundamental" to Plaintiff's claims for relief as she has chosen to plead them.

*Sterling v. Feek*, 150 F.4th 1235, 1247 (9th Cir. 2025). Plaintiff cannot simultaneously defend her victory in the Court's Order and disclaim its square holding.

In any case, Plaintiff's attempt to substantially reframe her complaint is responsive only to one of Mashable's independent arguments: that a pen register records *destination* information transmitted by a monitored device (information analogous to a "number dialed from a monitored phone") but not *originating* or *source* information (analogous to "a caller's own phone number"). Motion at 7–8 (quotation omitted). Reframing the allegations as a "trap and trace" device might (at best) resolve that specific question. *See* Motion at 7–8; Opp. at 5. There is accordingly no serious dispute that this Court's resolution of the legal question that Mashable has identified is controlling as to the case as a whole. Section 1292(b)'s first prong is obviously satisfied.[1]

### B. There Are at Least Four Substantial Grounds for Difference of Opinion.

There are substantial grounds for difference of opinion on at least four independent questions, which have caused courts to reach irreconcilable conclusions about how the Pen Register Act applies to third-party website technologies of the kind alleged in this case. While contrary precedent is not required to justify an interlocutory appeal, *see Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011), the presence of that disagreement among fair-minded judges is a substantial factor weighing in favor of certification.

As Mashable explained (Motion at 6), the most obvious reasons for those divergent results are the novelty of the issues and the lack of appellate guidance: the Ninth Circuit has not "previously considered the issue presented," nor has *any* appellate court. *Sterling*, 150 F.4th at 1247. Both the Ninth Circuit and this Court favor certification of "novel and difficult questions of first impression." *Reese*, 643 F.3d at 688; *accord.* Order, *In re Uber*, No. 23-md-3084, ECF No. 667 (Breyer, J.).

---

[1] Although it is beside the point for the present motion, Plaintiff's suggestion that a pen register and a trap-and-trace device are interchangeable labels that can be applied to the exact same factual allegations is clearly wrong as a matter of basic statutory interpretation. Plaintiff invites a reading of Section 638.51 that does not "give effect and significance to every word and phrase of" the statute but rather treats the statute's separate definitions for pen registers and trap-and-trace devices as "surplusage." *Garcia v. McCutchen*, 16 Cal. 4th 469, 476 (1997).

Plaintiff does not engage with these authorities or the Ninth Circuit's standard for identifying grounds for difference of opinion. Instead, she claims (at 3) that "the entirety of the federal judiciary" has rejected Mashable's argument (cleaned up). But this response seriously overstates the state of play because, as Plaintiff does not dispute, *no appellate court* has ever analyzed the Pen Register Act, and indeed no court had interpreted the Act at all before 2023. *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1050 (S.D. Cal. 2023); Motion at 6. And while Plaintiff tries to paint a picture of uniformity among the handful of district judges in California who have interpreted the statute, even her preferred case, *Shah*, recognized that Plaintiff's expansive theory "presents novel and significant issues." *Shah v. Fandom, Inc.*, No. 24-cv-1062, 2024 WL 6903081, at *2 (N.D. Cal. Dec. 16, 2024). While the *Shah* court elected not to certify in that case at that "early stage," it still "recognize[d]" that there were "novel and significant issues regarding the scope of the pen register statute as applied to tracking software" and left the door open to "readdressing the issue" of interlocutory appeal "at a later phase"—and even proposed that the parties consider expedited summary judgment prior to class certification. *Id*. But the *Shah* parties never reached summary judgment because Shah, represented by Plaintiff's counsel here, moved to settle the case. See Pl.'s Motion for Settlement, ECF No. 71 (Oct. 16, 2025); Def.'s Statement of Non-Opposition, ECF No. 72 (Oct. 30, 2025), No. 24-cv-1062 (N.D. Cal.).

Moreover, Plaintiff herself ignores the entire *state* judiciary of California, from which numerous cases are emerging that agree with Mashable's interpretation of the Pen Register Act. *See, e.g.*, *Casillas v. Transitions Optical, Inc.*, No. 23STCV30742, 2024 WL 4873370, at *4 (Cal. Super. Ct. Sept. 09, 2024); *Licea v. Hickory Farms LLC*, No. 23STCV26148, 2024 WL 1698147, at *4 (Cal. Super. Ct. Mar. 13, 2024).[2] Plaintiff's suggestion (at 4) that such decisions are irrelevant because they are unpublished state trial court decisions "fundamentally misunderstands" this Court's role when sitting in diversity. *Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946, 1001 n.22 (9th Cir. 2023). Applying state law, the Court's role is to "adjudicate" the claim "in a manner that closely

[2] Mashable has moved for judicial notice of these and certain other decisions of California courts discussed in this Reply. *See* ECF No. 56-1, Exs. A–D.

resembles the way in which a state court would adjudicate" it. *In re Cnty. of Orange*, 784 F.3d 520, 531 (9th Cir. 2015); *Guaranty Tr. Co. of N.Y. v. York*, 326 U.S. 99, 108 (1945) (A federal court sitting in diversity is "for that purpose, in effect, only another court of the State."). Although this Court is not *bound* by state trial courts, those decisions are unambiguously relevant "available data" in making that "approximat[ion]" of state law—especially in the absence of appellate authority. *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1093 (9th Cir. 2017). In any case, the question relevant to this Motion is not whether the state trial courts are correct in their interpretation of Section 638.51, but whether the judges issuing those decisions are "fair-minded jurists." *ICTSI Oregon, Inc. v. International Longshore & Warehouse Union*, 22 F.4th 1125, 1130 (9th Cir. 2022) (citation modified). Plaintiff gives this Court no basis to conclude that the multiple California courts rejecting her preferred view of Section 638.51 are not fair-minded.

Plaintiff's threshold roadblocks therefore do not weigh against certification. Nor do her more specific objections to the four independent and substantial grounds for difference of opinion that Mashable identified (Motion at 7–13). Indeed, Plaintiff's rationalizations of her theory, some of which she introduces for the first time in opposing this 1292(b) Motion, only serve to highlight the "substantial ground[s] for difference of opinion," and to emphasize the "extent [to which] the controlling law is unclear." *Couch*, 611 F.3d at 633.

***First***, the fundamental definition of a pen register does not include the conduct alleged here. A pen register tracks information analogous to "the *numbers dialed* from a monitored telephone." *United States v. Taketa*, 923 F.2d 665, 668 n.1 (9th Cir. 1991) (emphasis added). But Plaintiff analogizes Mashable's alleged conduct to tracking *her own* phone number. Motion at 7.

In response, Plaintiff concedes (at 13) that Mashable has never argued that pen-register liability is limited to "legacy telephone equipment," as this Court's Order appeared to construe Mashable's argument. Motion at 7; Order at 10. Plaintiff confusingly suggests (at 13) that Mashable is *now* making that argument, but the language she cites from Mashable's motion simply does not press or even hint at such an argument. *See* Motion at 1; *id*. at 7 ("To be clear, Mashable does not argue that the Pen Register Act is limited to telephone communications or that a pen register

categorically can never be placed on an Internet-accessing device."). In any case, Plaintiff's response confirms the common ground between the parties that Mashable's motion to dismiss did not rest on the same argument as in cases like *Mirmalek*, which turned on the defendant's contention that "CIPA's pen register definition applies 'only to telephone technology.'" *Mirmalek v. L.A. Times Commc'ns LLC*, No. 24-cv-1797, 2024 WL 5102709, at *3 (N.D. Cal. Dec. 12, 2024) (Breyer, J.); *see* Motion at 7.

As to the argument that Mashable *does* raise—that there is substantial disagreement about whether pen registers, by definition, capture information analogous to a "calling" party's own phone number (here, primarily IP addresses)—Plaintiff says little of substance. She argues (at 3) that her claim "involves more information than just an IP address," but the result is the same: the dispositive question is whether the alleged pen register collects "outgoing *information*," such as dialed telephone numbers, destination email addresses, and the "IP addresses of websites visited." *Rodriguez v. Plivo Inc.*, No. 24STCV08972, 2024 WL 5184413, at *2 (Cal. Super. Ct. Oct. 2, 2024) (emphasis added). An IP address is simply the most prominent "type of information" from among that list of user-data types that might be captured by a website. *Id.* And of course, like in *Plivo*, Plaintiff alleges *many times* that the collection of data here focused on her IP address, *e.g.*, SAC ¶¶ 2, 22–25, which is also how this Court interpreted the complaint, *see, e.g.*, Order at 1.

Recognizing *Plivo*'s unmistakable embrace of this clear rule, and the fact that it is "in some tension" with this Court's order, Plaintiff suggests that the case should be disregarded. Opp. at 4 (quotation omitted). Again, as discussed above (at pp. 5–6), the fact that *Plivo* was issued by a state court is particularly relevant as the Court is sitting in diversity, and Plaintiff cannot clear the high bar of showing that the *Plivo* court was not even a "fair-minded jurist[.]" *ICTSI*, 22 F.4th at 1130. Plaintiff's citations to *Drummer* and *Autotrader* (at 5 n.2) in an attempt to distinguish *Plivo* are unavailing because neither case cites *Plivo* at all. *Drummer v. CoStar Grp., Inc.*, No. 25-cv-1047, 2025 WL 3190656, at *1 (C.D. Cal. Oct. 22, 2025); *Rodriguez v. Autotrader.com, Inc.*, No. 24-cv-08735, 2025 WL 1085787, at *1 (C.D. Cal. Apr. 4, 2025).

***Second***, there is room for fair-minded disagreement about whether the Pen Register Act applies to parties to the communication—an "established" exception to other CIPA provisions. *Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732, 744 (N.D. Cal. 2023); Motion at 8–10. Mashable explained why exempting parties to the communication from at least some liability is consistent with the text and very likely necessary to harmonize CIPA as a cohesive statute, even granting this Court's holding that a "categorical" exemption might not be warranted. Order at 12–13.

Even Plaintiff appears to be confused about the extent to which Section 638.51 provides for a party exemption, and her dueling arguments only serve to highlight the law's opacity and confirm the "substantial ground[s] for difference of opinion." *Couch*, 611 F.3d at 633. At one point (at 5), she denies the existence of *any* party exemption under the Pen Register Act. But immediately thereafter (at 5–6) she *concedes* that as a "website operator," Mashable "'is a direct party to any communication from the user's browser and therefore cannot be liable,'" quoting this Court's own discussion. *Id*. That confusion is understandable: CIPA can be a "total mess" that is increasingly difficult to apply to "new technologies." *Doe*, 2025 WL 2971090, at *1. It often requires judicial construction to "distill[ ] . . . down" the text. *Williams v. What If Holdings, LLC*, No. 22-cv-3780, 2022 WL 17869275, at *2 (N.D. Cal. Dec. 22, 2022). That is a strong reason to grant certification.

To the extent that Plaintiff intends to stand by her argument (at 5) that there is no authority for a party exemption in Section 638.51, this dispute is all the more reason to grant certification. As Mashable explained (Motion at 9–10), reading Section 638.51 in harmony with CIPA justifies at least *some* exemption for parties, or else Section 638.51 would suffer from a materially different interpretation from other "statutory sections relating to the same subject." *Dyna-Med, Inc. v. Fair Emp. & Hous. Comm'n*., 43 Cal.3d 1379, 1387 (1987). In addition, a party exemption is necessary to preserve the legality of entirely commonplace tools like caller ID. Motion at 10.

Plaintiff responds (at 7) by citing other statutory provisions that specifically apply their provisions to parties to a communication. That only supports Mashable's argument that in the *absence* of such specific language the party exemption means that the website operator cannot be liable for a pen-register violation. Motion at 8–9. For the first time, Plaintiff cites Section 632's

prohibition on recording confidential conversations without the "consent of all parties"—language that does not appear in Section 638.51's pen-register provisions. Section 632.7, too, requires the "consent of all parties" to record conversations. These provisions make perfect sense for such conversation-recording provisions, because they apply in the first instance to those who are already parties to the conversation. But as for Section 631, which prohibits wiretapping and eavesdropping, it is "established" that a party cannot be liable for "eavesdrop[ping] on its own conversation." *Swarts*, 689 F. Supp. 3d. at 744; Motion at 9. The conclusion to be drawn from Plaintiff's examples is that there is *at least* strong reason to question whether Section 638.51 must be interpreted like Section 631, which similarly addresses nonparty surveillance and contains no specific language directing that parties can be liable.

Plaintiff responds to this logical result by citing (at 7) Section 631's aiding-and-abetting provision—language that, again, does not appear in the pen-register provisions. Cal. Penal Code § 631(a); *see* ECF No. 34 at 11–12. But she specifically disclaimed an aiding-and abetting theory in opposing the motion to dismiss. *See* ECF No. 37 at 12. In any event, the case she cites (at 7), *Revitch v. New Moosejaw, LLC*, No. 18-cv-06827, 2019 WL 5485330 (N.D. Cal. Oct. 23, 2019), *agrees* that parties cannot be liable for primary violations of Section 631 and relies on this aiding-and-abetting provision to conclude that a party could be liable for "enabling" a non-party to eavesdrop. *Id*. at *2. In short, no authority that Plaintiff cites diminishes Mashable's core point: that there are *at least* substantial grounds for difference of opinion about the extent to which Section 638.51 demands the same interpretation as Section 631. Motion at 9–11.

Finally, Plaintiff has no answer to Mashable's argument (Motion at 10) that a party exemption is the only way to avoid declaring illegal commonplace technologies like caller ID. For the first time in earnest, she argues (at 7) that Mashable can avail itself of the "consent exception" in Section 638.51(b), and points to the Los Angeles Times' new "consent wall" (at 10). But this kind of mechanism obviously is not available for users of caller ID. Callers do not provide their consent to have a telecommunications provider digitally display their phone number and name before they can place a call.

Moreover, it is far from clear that a "consent wall" offers website operators the kind of legal silver bullet that Plaintiff suggests. As this Court found in *Mirmalek*, and as Plaintiff here argued in opposition to the motion to dismiss, only a "'provider of electronic or wire communication service'" may install or use a pen register with the consent of the "user of that service," and this provision "does not apply" broadly to websites that do not provide communications services. *Mirmalek*, 2024 WL 5102709, at *5 (quoting Cal. Penal Code § 638.51(b)). Accordingly, Plaintiff's post-hoc rationalization of her theory highlights the law's opacity and the need for appellate guidance to address the extent to which a party exemption exists *and* how related consent provisions might play a role. *See Couch*, 611 F.3d at 633. These issues were not resolved in *Mirmalek* because the parties there have agreed to a class-wide settlement. *See* Motion at 14 & n.5.

***Third***, Mashable explained why the pen-register prohibition may apply only to certain kinds of "communication," which does not occur when a person merely visits a website. Motion at 10.

Plaintiff principally responds (at 8) that there is no caselaw holding as much for Section 638.51. Exactly right, owing to the novelty of the question. That novelty is a *strong* reason to certify. *See Reese*, 643 F.3d at 688. It is also why, as Mashable explained (Motion at 10–11), cases interpreting closely related CIPA provisions like Section 631 and other statutes like the Federal Wiretap Act are instructive: the caselaw from both contexts makes clear that a "communication" sufficient to trigger liability does not occur when a person merely visits a website. *See, e.g.*, *Gonzales v. Uber Techs., Inc.*, 305 F. Supp. 3d 1078, 1086 (N.D. Cal. 2018); *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082 (C.D. Cal. 2021). Plaintiff does not challenge the fundamental logic of this position or explain why the underlying "communication" subject to privacy protections should be read differently across subsections of CIPA. Motion at 11. She mostly claims (at 8) that Section 631 cases are irrelevant. But this is nonresponsive to Mashable's point about the need to read CIPA's provisions in harmony. Indeed, her suggestion (at 8) that when an alleged tracker "records" any such communication, the website operator may also be liable for wiretapping under Section 631, reinforces the need for interpretive uniformity across CIPA's sections because both provisions protect the privacy of an underlying "communication."

Plaintiff also claims (at 8–9) not to understand why such a reading is necessary to "harmonize" Section 638.51 with the rest of CIPA. *Dyna-Med*, 43 Cal.3d at 1387. The answer is simple: When California adopted its version of a pen-register law in 2015, its "courts did not start deciding cases on a blank slate," nor did its "legislature draft" the new "statute based on just its imagination running away." *Flo & Eddie, Inc. v. Sirius XM Radio, Inc*., 9 F.4th 1167, 1174 (9th Cir. 2021). Because, as Mashable explained (Motion at 10–11), it is well established that some communication *with content* is required to trigger liability under these closely related laws, there is at least a reasonable ground for disagreement about whether the Pen Register Act does, too.

***Fourth***, Mashable explained why the substantial—indeed, absurd—consequences of Plaintiff's position warrant substantial caution and further appellate review before charging ahead. Motion at 11–13. Plaintiff's theory of a pen register means that foundational, ubiquitous technologies used on virtually every website are criminal offenses. *Id.* That result should give this Court pause (to say the least), and it favors interlocutory review.

Plaintiff misunderstands Mashable's argument when she states (at 10) that policy considerations are the "province of legislatures." Mashable is not suggesting that policy should override the statute: rather, the consequences of accepting Plaintiff's theory suggest that the statute does not reach as far as she claims. To hold otherwise is to conclude that the California Legislature hid an "elephant[ ]"—criminal liability for commonplace Internet technologies—in the "mousehole[ ]" of a law that does not explicitly direct that result. *Mendoza v. Fonseca McElroy Grinding Co*., 11 Cal. 5th 1118, 1135 (2021) (citation modified). California's rule against "absurd" results is a canon of statutory construction. *Ornelas v. Randolph*, 4 Cal. 4th 1095, 1105 (1993). It justifies caution before finding a massive new criminal prohibition in CIPA's mousehole.

Nor can Plaintiff dismiss (at 9–10) these absurd results and disastrous consequences as "overblown." That is impossible to square with reality on the ground, as confirmed by Mashable's amici. *See* ECF Nos. 57-1, 59-1. In just the past two and a half years, over two thousand lawsuits have been filed against website operators—reaching from food banks feeding the hungry to the Associated Press. ECF No. 59-1 at 2. Indeed, nearly *every* website in California uses some kind of

analytics software that Plaintiff would happily call a pen register, including the California Attorney General and even this Court. *Id.*[3] Particularly as applied to news media organizations, these lawsuits and the sometimes "catastrophic" costs of defending and settling them can pose an "existential threat" to smaller businesses. ECF No. 57-1 at 8 (quotations omitted). And even assuming that Plaintiff's legal theories haven't *yet* transformed the Internet—doubtful given the statements of Mashable's amici—the fact that Plaintiff and her counsel are early adopters of an increasingly aggressive legal theory does not mean that those consequences are not on the horizon.

For the first time in opposition, Plaintiff argues (at 10) that disastrous consequences for "obviously permissible website functions" that involve the capture of visitor IP addresses (Motion at 12) can be avoided through an exemption buried in the pen-register definition. Cal. Penal Code § 638.50(b). The exemption in § 638.50(b) creates a carveout from liability for technologies used by a "provider or customer" of a "wire or electronic communication service" for functions like "billing," "cost accounting," and "other similar purposes." *Id*. According to Plaintiff (at 12), those permissible functions that depend on capturing a website-visitor's IP address—such as defending against malicious DDoS attacks or installing the consent-management software mandated by privacy laws like the CCPA, *see* Motion at 12—"might be" permissible under this "other similar purposes" savings clause. But Plaintiff argued in opposition to Mashable's motion to dismiss that only specific services like "email providers" or internet-service providers qualify as "wire or communication service[s]" under Section 638.51, meaning that most "website providers" would accordingly *not* be protected by this exception under Section 638.50(b). ECF No. 37 at 4; *see also Mirmalek*, 2024 WL 5102709, at *5; *see supra* p.10. Even Plaintiff can only flippantly suggest (at 12) that this "might be" a way to read the statute, and her contradictory attempt to square this interpretive circle underscores the "extent [to which] the controlling law is unclear," and the "substantial ground[s] for difference of opinion." *Couch*, 611 F.3d at 633.[4]

---

[3] *See* Rob Bonta, Attorney General: Privacy Policy, https://robbonta.com/privacy-policy/; United States Courts: Privacy Policy, https://www.uscourts.gov/privacy-security-policy.

[4] Plaintiff's strained reading of the consent exception is also impossible to square with the more recent and more specific law that governs the collection of website-visitor data: the CCPA. *See*

For the same reason, Plaintiff's ad hominem attack about Mashable's motivations—suggesting (at 10) that it prioritizes its "bottom line" over compliance with California law—is unhelpful and irrelevant. Mashable's strong business interest is in operating *in compliance* with California law. The difficulty of complying with CCPA and Plaintiff's view of CIPA makes that task far more challenging. *See* Alliance for Legal Fairness *et al.* Amicus Br. at 12, ECF No. 59-1 (discussing enormous "compliance costs" of California's privacy laws). These interpretive issues warrant the Ninth Circuit's prompt guidance on these foundational questions of *how* businesses should respect the privacy rights of their California customers. The Ninth Circuit should answer whether "the Legislature really intend[ed] to subject companies like [Mashable] to criminal liability for using third-party software to track website activity," and to "criminalize the use of web traffic data" through language that does not explicitly direct that result. *Doe*, 2025 WL 2971090, at *6.

**C. Appellate Guidance Will Materially Advance the Litigation.**

Appellate guidance is also warranted because it is the most efficient way to move forward with this litigation. Plaintiff's claims may be dismissed, limited, clarified, or blessed in full on appeal. Whichever it will be, this case should not charge ahead without guidance on how the Ninth Circuit will ultimately treat these novel questions of law. Motion at 13. Plaintiff's response (at 12) that Mashable may appeal after "final judgment" misses the point: the question that the "materially advance" prong of Section 1292(b) asks is whether it is more efficient to proceed with an appeal now in light of the fact that a later appeal might render further district-court litigation wasteful or unnecessary in hindsight. Motion at 13. Given the pure novelty of the question presented and the substantial grounds for disagreement, there is strong reason to think that appellate clarification might alter the ways in which Plaintiff's claim must proceed, if at all. It would also inform unresolved questions about "which putative class members are eligible for relief. *Sterling*, 150 F.4th

---

*Doe*, 2025 WL 2971090, at *6; Motion at 12. That law specifically *permits* the collection of IP addresses and similar information, subject to a right to opt-out. Cal. Civ. Code § 1798.120(a). It is absurd to think that the CCPA's carefully designed opt-out scheme can be so easily superseded by reading the Pen Register Act to require Plaintiff's universal opt-*in* solution.

at 1247; Motion at 14. Resolving those questions *now* would therefore "appreciably shorten the time, effort, [and] expense" to all involved. *ICTSI*, 22 F.4th at 1131.

Plaintiff's attempts (at 12–13) to minimize the *in terrorem* effects of this case proceeding as a class action are unavailing. Drawing on the proposed $3.85 million *Mirmalek* settlement, she claims that Mashable has nothing to worry about because it is owned by a large company. But this response all but proves Mashable's point and demonstrates that Plaintiff hopes *not* to litigate this case on the merits and through appeal. Plaintiff concedes (at 13 n.8) that the calculation of statutory damages in *Mirmalek* "may have been found to be excessive," but suggests that the parties' agreement to such a sum means that these cases can be settled with relative ease. She fails to acknowledge the obvious fact that the prospect of excessive damages awards is what *causes* defendants to settle even meritless cases and forego appellate review. Motion at 13–14; *see Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 445 n.3 (2010).

For many of the same reasons, it is simply untrue that "allowing discovery to proceed will better inform the record" for an eventual appeal. Opp. at 13–14. Of course, if the Ninth Circuit holds that Plaintiff fails to state a claim, then all discovery will have proven unnecessary. But more fundamentally, what Plaintiff suggests is limitless discovery *untethered* from an informed and coherent understanding of the statute—"unlock[ing] the doors of discovery" to flood the eventual appellate record with information supporting a scattershot theory of the statute. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Indeed, by her own description of the claims, the complaint pleads overlapping, incompatible theories: Plaintiff claims (at 5) that the alleged device here is either a pen register or a trap and trace, or perhaps both; she argues (at 5) that the statute does not permit an exemption for parties, but then immediately concedes (at 6) that Mashable is entitled to some version of that exemption *because* it is a party; and she asserts (at 10) that Section 638.51's "consent" exception is what preserves the basic function of the modern Internet, but then later claims (at 12) that the explanation for her reading of CIPA actually "might be" found in Section 638.50(b)'s savings clause for certain actions of "wire or electronic communication service[s]." These arguments cannot all be correct at the same time. The Ninth Circuit's guidance, at minimum,

would clarify the theories on which Plaintiff could proceed. *Best Carpet Values, Inc. v. Google* LLC, No. 20-cv-4700, 2022 WL 22843012, at *3 (N.D. Cal. May 2, 2022) (explaining how "even an affirmance" would advance the litigation).

Ultimately, Plaintiff agrees (at 14) that the parties join issue on the legal question of what "the statute says." The most efficient course by far is for the Ninth Circuit to address that question now, either confirming that Plaintiff is correct or else explaining why her theories need to be revised.[5]

## III. CONCLUSION

This Court should certify its Order dated October 9, 2025 for interlocutory appeal pursuant to 28 U.S.C. § 1292(b) and stay the case pending the completion of any interlocutory appeal.

Dated: December 1, 2025

**PERKINS COIE LLP**

By: */s/ James G. Snell*
James G. Snell
Mikella M. Hurley
Timothy M. Carter

Attorneys for Defendant MASHABLE, INC.

[5] Plaintiff does not address the need for a stay, other than to note (at 15) that the request would become moot if Mashable's interlocutory-appeal motion is denied. She therefore forfeits any rebuttal to Mashable's argument (Motion at 15) that a stay would be the "most efficient course" to "promote economy of time and effort for [the courts], counsel, and litigants." *Asis Internet Servs. v. Active Response Grp.*, 2008 WL 4279695, at *4 (N.D. Cal. Sept. 16, 2008).